# EXHIBIT A

Case 2:21-cv-03382-HB    Document 46-1    Filed 05/26/22    Page 2 of 10

2022 WL 1633827
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Joseph Noto, Garden State Tire Corp., Stephens Johnson, Individually and on Behalf of All Others Similarly Situated, Plaintiffs-Appellants,

v.

22nd Century Group, Inc., Henry Sicignano, III, John T. Brodfuehrer, Defendants-Appellees.

No. 21-0347-cv
|
ARGUED: SEPTEMBER 2, 2021
|
DECIDED: MAY 24, 2022

Appeal from the United States District Court for the Western District of New York

Plaintiffs Joseph Noto, Stephens Johnson, and Garden State Tire Corporation appeal from a judgment of the United States District Court for the Western District of New York (Sinatra, *J.*) dismissing their complaint against 22nd Century Group and its former CEO and CFO, Henry Sicignano, III and John T. Brodfuehrer. Plaintiffs, investors in 22nd Century Group, allege on behalf of an investor class that (1) defendants engaged in an illegal stock promotion scheme in which they paid authors to write promotional articles about the company while concealing the fact that they paid the authors for the articles; and (2) defendants failed to disclose an investigation by the Securities and Exchange Commission into the company's financial control weaknesses. After public articles revealed the promotion scheme and SEC investigation, the company's stock price fell, and plaintiffs allege they were harmed. The complaint was dismissed by the district court for failing to state a claim upon which relief could be granted.

On appeal, plaintiffs argue that (1) they adequately alleged material misrepresentations and manipulative acts sufficient to sustain claims under subsections (a), (b), and (c) of SEC Rule 10b-5; (2) their claim under § 20(a) of the Securities Exchange Act was premised on a valid predicate violation of § 10(b); and (3) the district court erred in dismissing the complaint with prejudice. On the first and second points, we

agree that the allegation that defendants failed to disclose the SEC investigation states a material misrepresentation and could also support § 20(a) liability. We find no merit in the remaining challenges. Accordingly, we **AFFIRM** in part, **VACATE** in part, and **REMAND** for further proceedings consistent with this opinion.

**Attorneys and Law Firms**

JEREMY A. LIEBERMAN, Pomerantz LLP, New York, NY, for Plaintiffs-Appellants

JOHN A. TUCKER (Jonathan H. Friedman, on the brief), Foley & Lardner LLP, Jacksonville, FL, New York, NY; Charles C. Ritter, Jr., on the brief, Duke, Holzman, Photiadis & Gresens LLP, Buffalo, NY, for Defendants-Appellees

Before: WALKER, CALABRESI, AND LOHIER, Circuit Judges.

**Opinion**

JOHN M. WALKER, JR., Circuit Judge:

**\*1** Plaintiffs Joseph Noto, Stephens Johnson, and Garden State Tire Corporation appeal from a judgment of the Western District of New York (Sinatra, *J.*) dismissing their complaint against 22nd Century Group and its former CEO and CFO, Henry Sicignano, III and John T. Brodfuehrer. Plaintiffs, investors in 22nd Century Group, allege on behalf of an investor class that (1) defendants engaged in an illegal stock promotion scheme in which they paid authors to write promotional articles about the company while concealing the fact that they paid the authors for the articles; and (2) defendants failed to disclose an investigation by the Securities and Exchange Commission ("SEC") into the company's financial control weaknesses. After public articles revealed the promotion scheme and SEC investigation, the company's stock price fell, and plaintiffs allege they were harmed. The complaint was dismissed by the district court for failing to state a claim upon which relief could be granted.

On appeal, plaintiffs argue that (1) they adequately alleged material misrepresentations and manipulative acts sufficient to sustain claims under subsections (a), (b), and (c) of SEC Rule 10b-5; (2) their claim under § 20(a) of the Securities Exchange Act was premised on a valid predicate violation of § 10(b); and (3) the district court erred in dismissing the complaint with prejudice. On the first and second points, we agree that the allegation that defendants failed to disclose the SEC investigation states a material misrepresentation and

could also support § 20(a) liability. We find no merit in the remaining challenges. Accordingly, we **AFFIRM** in part, **VACATE** in part, and **REMAND** for further proceedings consistent with this opinion.

## BACKGROUND

The corporate defendant, 22nd Century Group, Inc. ("22nd Century" or "the Company"), is a publicly traded company that strives to genetically engineer tobacco and cannabis plants to regulate their nicotine levels or cannabinoids. From 2015 to 2019, Henry Sicignano, III was the Company's CEO, and from 2013 to 2019, John T. Brodfuehrer was the Company's CFO. Shortly after Sicignano became CEO, he engaged the consulting firm IRTH Communications ("IRTH") to handle 22nd Century's investor relations. For purposes of this appeal, we accept as true the following allegations in the complaint.[1]

### I. Stock Promotion Scheme

Confidential Witness 1 ("CW1"), Sicignano's executive assistant from January 2016 to February 2018, worked directly with Sicignano and interacted frequently with Brodfuehrer. CW1 saw Sicignano review and approve the Company's press releases. In February and March 2017, Sicignano told CW1 several times that he was "working behind the scenes" to prop up 22nd Century's stock price because the Company "did not have enough cash to operate for much longer."[2] The same year, Brodfuehrer repeatedly told CW1 that, because he had concerns about Sicignano's conduct, he was not comfortable signing the Company's SEC filings.

**\*2** From February 2017 through October 2017, various writers published positive online articles about the prospects for 22nd Century's stock. Many articles repeated statements from the Company's press releases, the FDA's press releases, and Sicignano on earnings calls, in presentations, and at conferences. Defendants paid the writers directly, or indirectly through IRTH, to publish the articles. The articles did not reveal that the Company was compensating the writers.

Based on his conversations with Sicignano, CW1 "came to understand that Sicignano and the Company were paying for writers to write articles disguised as [ ] legitimate articles that just promoted [the Company's] stock" but which

were not identified as stock promotion articles.[3] Based on Sicignano's comments, it was "clear" to CW1 that Sicignano knew that paying third parties to write promotional articles without disclosing that the Company had paid for them was inappropriate.[4] CW1 stated that he was "sure" that Sicignano "reviewed, edit[ed], and/or approv[ed]" the paid stock promotion articles "because Sicignano was intensely focused on everything that was said publicly about the Company and 'went over every Company press release with a fine-toothed comb.' "[5]

On multiple occasions, after the articles were published, 22nd Century's stock price rose. From February 2017 until October 2017, the stock price more than tripled. On October 10, 2017, the Company closed a registered direct common stock offering that yielded $50.7 million in net proceeds.

Then, in the Company's annual 2017 Form 10-K submitted in March 2018 to the SEC, the Company reported that it had sufficient cash on hand to sustain normal operations for several years. The 2017 10-K, as well as the other 10-Ks filed in the class period, also stated that the Company's stock price was subject to volatility and listed 19 factors that, "in addition to other risk factors ... may have a significant impact on" its stock price.[6]

### II. SEC Investigation

In February 2016, defendants filed the Company's 2015 10-K. That 10-K disclosed that the Company's management had concluded that its "internal controls over financial reporting were not effective and that material weaknesses exist[ed] in [its] internal control over financial reporting" as it related to segregation of duties.[7] To ameliorate these weaknesses, defendants hired an accounting manager, Confidential Witness 2 ("CW2"), who reported directly to CFO Brodfuehrer. In its SEC Forms 10-Q for the first, second, and third quarters of 2016, as well as its 2016 10-K, the Company repeated that its financial reporting controls and procedures were not effective and noted that it was undertaking remediation efforts.[8] Ultimately, in its Form 10-Q for the second quarter of 2018, the Company stated that it had "completed the implementation and testing of a remediation plan that was targeted at eliminating our previously reported material weakness in our internal controls over financial reporting primarily resulting from a lack of segregation of duties."[9]

According to CW2, the SEC was investigating the Company at the time he was hired in 2016. CW2 stated that the investigation continued throughout 2016, and that, by the time he left in 2019, he had not seen any statement from the SEC formally closing the investigation. The Company retained counsel to represent it in connection with the investigation, and, in 2016, Brodfuehrer traveled to Washington, D.C. to meet with the SEC. Brodfuehrer told CW2 that he feared that the investigation could cost Brodfuehrer his CPA license or lead to his imprisonment. The SEC investigation was underway throughout the time that the Company was disclosing its ineffective financial reporting controls.

**\*3** On July 16, 2018, the SEC received a nonpublic Freedom of Information Act ("FOIA") request seeking "all documents in the [SEC's] possession ... pertaining to investigations regarding [the Company] for the time period January 1, 2016 through July 16, 2018."[10] On August 13, 2018, a FOIA Officer denied the request pursuant to the FOIA exemption that authorizes the withholding of "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information ... could reasonably be expected to interfere with enforcement proceedings."[11] The SEC Office of the General Counsel affirmed the denial.

### III. The Public Revelations

On February 2, 2018, an online commentator, "Fuzzy Panda" posted an online article that claimed that 22nd Century engaged in a paid stock promotion scheme to illegally inflate its share price. The Company's stock price fell by 16.9%. On October 25, 2018, Fuzzy Panda posted a second article that disclosed the FOIA request denial and suggested that the SEC was investigating the Company. The article also suggested that the Company had paid undisclosed promoters to pump up its stock price in advance of the October 2017 stock offering. The next day, the Company's stock price fell by 4.3%.

In response, on October 26, 2018, the Company, for the first time, broke its silence about the SEC investigation. But it did so by denying any knowledge of an "enforcement proceeding." The Company issued a press release saying the October 25 article was "highly deceptive" and that the Company "has not received any notice of, and the Company has no knowledge of, any enforcement proceeding against [the Company] by the SEC or any other regulator."[12]

On April 17, 2019, Fuzzy Panda posted a third article, repeating the undisclosed stock promoters and SEC investigation allegations. The Company's stock price fell again. The next day, the Company issued another statement denying both the illegal stock promotion and SEC investigation claims, stating that the article "falsely alleges that [the Company] is supposedly under SEC investigation."[13]

On July 26, 2019, the Company announced that Sicignano had resigned as CEO for "personal reasons" but would continue to act as a consultant to the Company.[14] The Company's stock price fell in the days following the announcement. On December 3, 2019, CFO Brodfuehrer retired.

### IV. Procedural History

In November 2019, after this case was transferred to the Western District of New York, plaintiffs filed the amended class action complaint at issue in this appeal. The class consisted of any person or entity that acquired 22nd Century securities between February 18, 2016, and July 31, 2019.

On May 1, 2020, defendants moved to dismiss the amended complaint for failure to state a claim. Plaintiffs asked the district court for an opportunity to further amend the complaint should the court grant any part of defendants' motion. On January 14, 2021, the district court dismissed the entirety of the amended complaint with prejudice and denied plaintiffs' request for leave to amend as futile.

This appeal followed.

### DISCUSSION

We review the grant of a motion to dismiss *de novo*.[15] To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[16] "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[17] In evaluating a complaint, the court draws all reasonable inferences in the plaintiff's favor.[18] But the court is free to disregard conclusory allegations or legal conclusions couched as factual allegations.[19]

**\*4**  We also review *de novo* a district court's denial of leave to amend when denial is based on a legal interpretation, such as the conclusion that amendment would be futile.[20]

## I. Rule 10b-5(b) Claims

The complaint alleges that defendants violated § 10(b) of the Exchange Act[21] and SEC Rule 10b-5(b).[22] Plaintiffs claim that defendants unlawfully published promotional articles and concealed an SEC investigation, all in an effort to artificially inflate the Company's stock price. Plaintiffs contend that when these infractions were brought to light, the stock price fell.

Under Rule 10b-5(b), it is "unlawful for any person, directly or indirectly, ... [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading" in connection with the purchase or sale of securities.[23] To support a claim for material misrepresentation under that rule, a plaintiff must plead: (1) a material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance on the misrepresentation or omission, (5) economic loss, and (6) loss causation.[24] The first two elements must be pled with heightened specificity pursuant to the Private Securities Litigation Reform Act of 1995 and Federal Rule of Civil Procedure 9(b).[25]

### A. Stock Promotion Scheme

The complaint alleges that defendants omitted the material fact that they were paying authors to promote the Company's stock. The district court found that defendants had no duty to disclose that fact and therefore made no material omission.

On appeal, plaintiffs first argue that defendants had a duty to disclose that the Company and IRTH paid the authors of the promotional articles because defendants provided content for, edited, reviewed, and/or approved those articles. But only an article's maker, not its benefactor, has a duty to disclose that it was paid for.[26] And the Supreme Court has made clear that neither the Company nor the individual defendants qualify as a maker here. In *Janus Capital Group v. First Derivative Traders*, the Court held that a mutual fund investment advisor could not be held liable for misstatements included in its client mutual funds' prospectuses.[27] "For purposes of Rule

10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."[28] Thus, because the mutual funds filed the prospectuses with the SEC and had ultimate control over their content, they were the makers of the statements in the prospectuses. The investment advisor, even if he was involved in the preparation of the prospectuses, was not.[29]

**\*5**  The complaint does not adequately allege that defendants had ultimate control over the articles. It contains conclusory statements that "[d]efendants furnished information and language for, prepared, reviewed, approved, and/or ratified the articles,"[30] but does not contain sufficient factual allegations to support that contention. To be sure, the complaint alleges that Sicignano reviewed and approved statements in the Company's press releases,[31] which were then often copied and repeated by the promotional articles.[32] But a person's preparation of a press release that is then repeated in a separate article by a different author does not qualify that person as the "maker" of the separate article's statements. The Supreme Court specifically rejected a holding that would allow plaintiffs "to sue a person who 'provides the false or misleading information that another person then puts into [a] statement.' "[33] The complaint does not adequately allege that Sicignano directly wrote the articles, controlled what the authors put into the articles, or even saw them before their publication. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to state a claim.[34]

Moreover, even if Sicignano had provided some input on the content of the articles, the complaint does not support the conclusion that Sicignano had the "ultimate authority" necessary to brand him the articles' maker.[35] The complaint made no sufficient factual allegation that the articles were published by anyone except the authors. Nor did it sufficiently allege that those authors lacked final control over the articles' contents or did not make the ultimate decision as to what specific information to include. The complaint also does not contain sufficient factual allegations that defendants collaborated with the authors to such an extent that they controlled the articles' publication.[36] Here, any such inference is pure speculation.

Plaintiffs next contend that defendants had a duty to disclose the article payments because defendants, in their SEC

filings, affirmatively warned investors of the volatility of the Company's stock price. This argument also fails.

"Silence, absent a duty to disclose, is not misleading under Rule 10b-5."[37] Rule 10b-5(b), however, makes unlawful the omission of a material fact "necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."[38] Thus, disclosure is required when a corporate statement would otherwise be "inaccurate, incomplete, or misleading."[39] In the Company's 2015-2017 10-Ks, defendants disclosed 19 different factors that could lead to stock price volatility but did not include its paid stock promotion scheme on the list.[40]

Notably, under § 17(b) of the Securities Act of 1933, an issuer who merely pays an author to write positive articles on a stock does not, without more, violate the Act.[41] The articles themselves did little more than republish publicly-available content. Moreover, there is no allegation that the press releases, the content of which was captured in the articles themselves, were false or misleading.

**\*6** Because the complaint does not adequately allege that defendants had a duty to disclose that they paid for the articles' publication, plaintiffs fail to state a claim that the existence of the stock promotion scheme constituted a materially misleading omission.

### B. SEC Investigation

The complaint next alleges that defendants violated Rule 10b-5(b) by failing to disclose the SEC investigation into the Company's accounting controls. The district court found that defendants had no duty to disclose the investigation. Plaintiffs contend that defendants had such a duty because, by not mentioning the investigation, their disclosures of the accounting deficiencies were misleading. Here we agree with plaintiffs.

According to the complaint, throughout 2016 to 2018, the Company's 10-Ks and 10-Qs reported material weaknesses in its internal financial controls, until one 2018 10-Q reported that the Company had completed the implementation and testing of a remediation plan targeted at eliminating those weaknesses.[42] Relatedly, at some point prior to CW2's hiring in 2016, the SEC opened an investigation into the Company.[43] The Company retained counsel and CFO Brodfuehrer traveled to Washington, D.C. to meet with

the SEC.[44] Then, in 2018, the SEC responded to a FOIA request by stating that its disclosure of information about any investigations into the Company from 2016 to 2018 "could reasonably be expected to interfere with enforcement proceedings."[45] After Fuzzy Panda published the SEC's response, the Company publicly denied any notice of an investigation or enforcement proceeding against it.

Defendants had a duty to disclose the SEC investigation in light of the specific statements they made about the Company's accounting weaknesses.[46] "Even when there is no existing independent duty to disclose information, once a company speaks on an issue or topic, there is a duty to tell the whole truth."[47] An omission is material when a reasonable investor would attach importance to it when making a decision.[48] Here, the fact of the SEC investigation would directly bear on the reasonable investor's assessment of the severity of the reported accounting weaknesses. Thus, the Company had a duty to disclose the SEC investigation into the weaknesses throughout the class period.[49] Because defendants here specifically noted the deficiencies and that they were working on the problem, and then stated that they had solved the issue, "the failure to disclose [the investigation] would cause a reasonable investor to make an overly optimistic assessment of the risk."[50]

**\*7** Throughout this period, the existence of an SEC investigation related to the accounting weaknesses was material information that a reasonable investor would have wanted to know. Indeed, the nondisclosure remained a material omission even after the Company represented that it had rectified the problem because the SEC investigation was ongoing. By not disclosing that the SEC was investigating the Company's specific accounting weakness, defendants' statements about that weakness were not accurate and complete.

Finally, defendants' false public denial of any knowledge of the SEC investigation amounts to an admission of the materiality of its nondisclosure. Otherwise, the Company would not have tried to hide it. Moreover, these denials were affirmatively misleading in their own right. Thus, we easily find that the complaint adequately alleged that defendants violated Rule 10b-5(b) both by first omitting mention of the SEC investigation and then by affirmatively denying its existence.[51]

## II. Rule 10b-5(a) and (c) Claims

The complaint next alleges that defendants violated Rule 10b-5, specifically subsections (a) and (c), by illegally manipulating the market through the stock promotion scheme.[52] The district court found that the complaint did not adequately allege a manipulative act or market activity sufficient to state a claim under those rules. We agree.

To state a claim for market manipulation under § 10(b) and Rules 10b-5(a) and (c), a plaintiff must allege: "(1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange."[53] Manipulation "connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities."[54] Accordingly, "[t]he critical question [is] what activity 'artificially' affects a security's price in a deceptive manner."[55] A court must ask whether a defendant injected inaccurate information into the marketplace.[56]

The complaint fails to support a claim that defendants manipulated the market. It does not allege that the market was manipulated by either the information in the articles, the payments to the writers, or the non-disclosure of the payments. There is no allegation that the articles themselves, which consisted of analysis and information derived from public filings, press releases, and statements by management, manipulated the market. Relatedly, there is no claim that defendants paying the articles' authors somehow manipulated the market or was intentionally designed to do so. While plaintiffs argue that the non-disclosure of defendants' payments to the authors was materially misleading to investors (the point addressed—and rejected in Part I), that, in and of itself, does not equate to market manipulation.[57] There is therefore no allegation that defendants affirmatively "injected" inaccurate information into the market: even *if* the payments were material, which we have determined not to be the case, because defendants were not the articles' "makers," they had no responsibility for the payments' disclosure. And there is no allegation that defendants directed the authors not to disclose the payments, or that defendants were anything but indifferent as to whether the authors did so. Thus, plaintiffs fail to plead that *defendants* engaged in any manipulative act

sufficient to sustain a market manipulation claim based on the undisclosed payments.

## III. Section 20(a) Claim

 **\*8**  The complaint also alleges that Sicignano and Brodfuehrer are liable under the control person provision of § 20(a) of the Exchange Act. To state a claim under § 20(a), a plaintiff must demonstrate, *inter alia*, a primary violation by the controlled person.[58]

The district court held that, because plaintiffs failed to plead a primary violation under § 10(b) and Rule 10b-5, the dependent § 20(a) claims must necessarily fail. Because we remand the § 10(b) material misrepresentation claim based on the non-disclosure of the SEC investigation, we also vacate the § 20(a) claim dismissal solely as it pertains to that particular non-disclosure.

## IV. Leave to Amend

At the conclusion of their opposition to the motion to dismiss, plaintiffs requested an opportunity to amend their complaint should any part of defendants' motion be granted. The district court denied the request.[59] While we remand on the dismissal of the SEC investigation non-disclosure aspect of plaintiffs' Rule 10b-5(b) claim, we agree that plaintiffs should not be permitted to amend their complaint to reallege any violations stemming from the nondisclosure of the article promotion scheme.

"[T]his circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b) (6)."[60] But a court need not always allow a party to replead simply because it asked. In particular, denial of leave to amend is proper "where the request gives no clue as to how the complaint's defects would be cured."[61] That is the situation here. In their briefing on appeal, plaintiffs contend that they could "cure any deficiencies with additional testimony ... about [d]efendants' editing, review, and approval" of the promotional articles, but do not allege what specific facts they would include to demonstrate the level of control needed for Rule 10b-5(b) liability.[62] And, at oral argument, plaintiffs' counsel conceded that plaintiffs did not presently have any additional facts regarding defendants' control not already included in the complaint.[63] Plaintiffs also did not explain what they would add to demonstrate how defendants engaged in market manipulation related to the articles. The district

court thus properly denied plaintiffs' request to replead their allegations stemming from the stock promotion scheme.

For the foregoing reasons, we AFFIRM in part and VACATE in part the judgment of the district court and REMAND for further proceedings consistent with this opinion.

**CONCLUSION**

**All Citations**

--- F.4th ----, 2022 WL 1633827

Footnotes

1       *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).

2       Joint App. at 32–33.

3       Joint App. at 33–34.

4       Joint App. at 34.

5       Joint App. at 34.

6       Joint App. at 62–65.

7       Joint App. at 27.

8       The complaint makes no mention here of SEC filings for 2017. *See* Joint App. at 76–77.

9       Joint App. at 27.

10      Joint App. at 55.

11      Joint App. at 55–56 (ellipses in original).

12      Joint App. at 57.

13      Joint App. at 59.

14      Joint App. at 60.

15      *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000).

16      *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

17      *Id.* (internal quotation marks omitted).

18      *Palin*, 940 F.3d at 809.

19      *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted).

20      *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011).

21      15 U.S.C. § 78j.

22      17 C.F.R. § 240.10b-5.

23      *Id.*

24    *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 140 n.3 (2011).

25    *See* 15 U.S.C. § 78u-4(b); *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).

26    *Janus*, 564 U.S. at 141 ("Under Rule 10b-5, it is unlawful for any person, directly or indirectly, to make any untrue statement of a material fact .... To be liable, therefore, [a defendant] must have 'made' the material misstatements ...." (internal quotation marks and alterations omitted)).

27    *Id.* at 137–38.

28    *Id.* at 142.

29    *Id.* at 147–48. This finding is buttressed by Section 17(b) of the Securities Act, which provides that "[i]t shall be unlawful for any person ... *to publish, give publicity to, or circulate* any ... article ... which ... describes [a] security for a consideration received or to be received, directly or indirectly, from an issuer ... without fully disclosing the receipt ... of such consideration." 15 U.S.C. § 77q(b) (emphasis added). Again, only the publisher or author—the maker—of such articles can be liable under § 17(b) for failing to disclose that he has been paid for the article.

30    Joint App. at 35.

31    Joint App. at 35.

32    *See, e.g.*, Joint App. 46–47.

33    *Janus*, 564 U.S. at 144–45 (internal quotation marks omitted).

34    *Iqbal*, 556 U.S. at 678.

35    *See Janus*, 564 U.S. at 142–43 (noting that "[e]ven when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it," and so the speaker, but not the speechwriter, is its maker).

36    *Cf. In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 657 (2d Cir. 2016) (finding that there was a genuine dispute as to whether Pfizer had ultimate authority over statements given by another company's employees because of a fax that stated that Pfizer and the other company *each* had to give final sign-off on statements given by those employees).

37    *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988); *see also Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 101 (2d Cir. 2015) ("[A]n omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts." (quotation omitted)).

38    17 C.F.R. § 240.10b-5(b).

39    *Glazer v. Formica Corp.*, 964 F.2d 149, 157 (2d Cir. 1992).

40    *See, e.g.*, Joint App. at 62–65.

41    *See* 15 U.S.C. § 77q(b); *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1272–73 (11th Cir. 2016).

42    Joint App. at 27, 78–79.

43    Joint App. at 27–28.

44    Joint App. at 28.

45    Joint App. at 55–56.

46    *See Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 214 n.15 (2d Cir. 2020) (noting that Rule 10b-5 imposes a duty to disclose not "all the facts that pertain to a subject," but rather only material facts).

47 *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014).

48 *See Ganino*, 228 F.3d at 161–62.

49 *See Caiola v. Citibank, N.A.*, 295 F.3d 312, 331 (2d Cir. 2002) ("[U]pon choosing to speak, one must speak truthfully about material issues. Once Citibank chose to discuss its hedging strategy, it had a duty to be both accurate and complete." (internal citations omitted)).

50 *Jinkosolar*, 761 F.3d at 251.

51 Defendants argue that plaintiffs' § 10(b) material misrepresentation claims also should be dismissed for the additional reasons that the complaint fails to adequately plead scienter and loss causation. But the district court declined to consider those arguments. *Noto v. 22nd Century Grp., Inc.*, 2021 WL 131050, at *2 n.1 (W.D.N.Y. Jan. 14, 2021). "It is this Court's usual practice to allow the district court to address arguments in the first instance." *Eric M. Berman, P.C. v. City of New York*, 796 F.3d 171, 175 (2d Cir. 2015) (per curiam) (quotation and alteration omitted). Accordingly, we do not address them here.

52 The complaint does not base this claim on the non-disclosure of the SEC investigation.

53 *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007).

54 *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976).

55 *ATSI*, 493 F.3d at 100.

56 *Id.* at 101.

57 *Id.* ("A market manipulation claim [ ] cannot be based solely upon misrepresentations or omissions.").

58 *Id.* at 108.

59 *Noto*, 2021 WL 131050, at *2 n.2.

60 *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (per curiam).

61 *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (internal quotation marks omitted).

62 Appellants' Br. at 54.

63 Oral Arg. Tr. at 31–32.

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.