# EXHIBIT C



100 Deerfield Lane, Suite 240 • Malvern, PA 19355
P: (484) 328-8500 • F: (484) 713-5241

**Direct Dial:** (484) 328-8553
**Email:** sjf@saxtonstump.com

October 3, 2022

**VIA FEDERAL EXPRESS**

SumZero, Inc.
Attn: Legal Department
11 Broadway, 5th Floor
New York, NY 10004

> **RE: Delaware Cnty. Employees Retirement System v. AdaptHealth Corporation,** *et al.***, U.S. District Court (E.D. Pa.), Docket No. 2:21-cv-03382**

Dear Sir/Madam:

This office represents AdaptHealth Corporation, a Defendant in the above-referenced matter currently pending in United States District Court for the Eastern District of Pennsylvania. On September 12, 2022, a process server, at my request, served upon your registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 the enclosed "Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Civil Action." SumZero's response to the subpoena was due on or before September 27, 2022. To date, my office has received no response of any kind from SumZero.

Please contact me <u>no later than October 7, 2022</u> to advise when I can expect to receive SumZero's responses to AdaptHealth's subpoena. If I do not hear from you on or before that day, I will be forced to seek court intervention to have the Subpoena enforced.

Sincerely,

SAXTON & STUMP

Stephen J. Fleury, Jr.

Encl.

Philadelphia, PA • Lancaster, PA • Harrisburg, PA • Malvern, PA • Charleston, SC
saxtonstump.com

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Pennsylvania

| | | |
|---|---|---|
| Delaware Cnty. Employees Ret. Sys. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  2:21-cv-03382-HB |
| AdaptHealth Corp. et al. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                     SumZero, Inc.
c/o Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A attached hereto.

| Place: Saxton & Stump LLC 100 Deerfield Ln, Suite #240 Malvern, PA  19355 | Date and Time: 09/27/2022 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      09/12/2022

| *CLERK OF COURT* | OR | |
|---|---|---|
| | | /s/ Zeh S. Ekono |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    AdaptHealth Corp.
, who issues or requests this subpoena, are:

Zeh S. Ekono, Willkie Farr & Gallagher LLP, 787 7th Ave, NY, NY 10019, zekono@willkie.com (212) 728-9166

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  2:21-cv-03382-HB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**EXHIBIT A**

**DEFINITIONS**

1.    The terms "and" as well as "or" as used herein shall be read and applied interchangeably and shall be construed disjunctively or conjunctively so as to require the fullest and most complete disclosure of all requested information.

2.    The terms "any" or "all" shall mean "each and every" as well as "anyone and everyone." The singular includes the plural and the plural includes the singular. The present tense includes the past and future tenses. Words in feminine, masculine, or neuter form shall include each of the other genders.

3.    "AdaptHealth" shall refer to AdaptHealth Corp. and its current and former directors, officers, or employees.

4.    "AdaptHealth Stock" shall refer to AdaptHealth common stock trading on the NASDAQ under the ticker symbol "AHCO."

5.    "Carrollwood Capital" shall mean Carrollwood Capital LLC, Carrollwood Capital Management, LP, and/or any of their affiliates, and their direct or indirect controlling persons or entities, subsidiaries, predecessors, successors and assigns, parents, stockholders, managers, advisors, divisions, principals, members, officers, trustees, administrators, management personnel, employees, agents, owners, consultants, accountants, investment analysts, directors, partners, contractors, representatives, attorneys, and any other persons or entities acting or purporting to act on their behalf, or who are or have been subject to the direction or control of any of the foregoing.

6.    "Communication(s)" shall have the broadest possible meaning permitted under the Federal Rules of Civil Procedure, and for avoidance of doubt includes, but is not limited to,

1

all inquiries, discussions, conversations, interviews, negotiations, agreements, correspondence, letters, cablegrams, mailgrams, telegrams, telexes, cables, electronically transmitted messages, including email messages, postings on social media platforms (such as Facebook, Twitter, LinkedIn or Instagram), Internet bulletin boards, Internet chat rooms, or other forms of written, verbal or electronic intercourse, however transmitted.

7.    The term "concerning" shall be read and applied interchangeably with and broadly mean discussing, supporting, describing, consisting of, relating to, referring to, pertaining to, containing, analyzing, evaluating, studying, recording, memorializing, reporting on, commenting on, reviewed in connection or conjunction with, evidencing, setting forth, contradicting, refuting, considering, recommending, or constituting, in whole or in part.

8.    "Document(s)" shall have the broadest meaning possible under the Federal Rules of Civil Procedure and shall include, without limitation, any and all written, typed, printed, recorded, or graphic content, however produced, reproduced, or stored (including, without limitation, Electronically-Stored Information), whether an original or a copy, and whether prepared, published, or released by any person or entity, including but not limited to letters, reports, agreements, correspondence, intra-office or inter-office correspondence, electronic mail (such as Gmail), spreadsheets, databases, text messages, and other electronic messages, telegrams, minutes or records of meetings, reports or summaries, expressions or statements, lists, drafts and revisions, invoices, receipts, original and preliminary notes, sketches, records, ledgers, contracts, bills, inventories, financial data, maps, memoranda, accounting and financial records, diaries, journals, calendars, statements, work papers, videotapes, photographs, pamphlets, brochures, advertisements, trade letters, press releases, drawings, recaps, tables, articles, summaries of conversations, computer cards, tapes, diskettes, or other means of electronically or

2

magnetically maintaining information and printouts. "Document(s)" also includes originals (or copies if originals are not available), non-identical copies (whether different from the original because of written notes or underlining of text or otherwise), and translation of any Document.

9.    "Electronically-Stored Information" or "ESI" shall mean information generated, received, processed, recorded, manipulated, communicated, stored, or used in digital form including metadata (*e.g.*, author, recipient, file creation date, file modification date, etc.).  ESI includes, without limitation, data stored on or in computer servers, computer hard drives, computer desktops, laptops, handheld or tablet computers, portable digital media, backup media, CD-ROMs, DVD-ROMs, floppy discs, non-volatile memory including flash memory devices, thumb drives, zip drives, external hard drives, internal or external websites, cloud-based storage systems, personal digital assistants (such as Palm or BlackBerry devices), cell phones, electronic voicemail systems, text messages, instant messages, emails and attachments to emails, or any device or medium capable of storing data in any format. ESI also includes, without limitation, output resulting from the use of any software program or application, including, without limitation, word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, text messages, instant messages, Bloomberg messages, postings on social media platforms, Internet bulletin boards, or Internet chat rooms, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment. All ESI produced shall include sufficient metadata fields to identify, at minimum, its author, recipient, date and time of creation and modification, and where the Document was located.

10.    "Emerald Asset Management" shall refer to Emerald Asset Management and its current and former directors, officers, or employees.

11.     "Individual Defendants" shall mean Luke McGee, Stephen P. Griggs, Jason Clemens, Frank J. Mullen, Richard Barasch, Joshua Parnes, Alan Quasha, Terence Connors, Dr. Susan Weaver, Dale Wolf, Bradley Coppens, and David S. Williams III.

12.     "Jehoshaphat Report" shall refer to the July 19, 2021 report and August 11, 2021 update report issued by Jehoshaphat Research in connection with AdaptHealth.

13.     "Jehoshaphat Research" shall mean the Persons that operate, update, or publish to www.jehoshaphatresearch.com, and any of their affiliates, direct or indirect controlling persons or entities, subsidiaries, predecessors, successors and assigns, parents, stockholders, managers, advisors, divisions, principals, members, officers, trustees, administrators, management personnel, employees, agents, owners, consultants, accountants, investment analysts, directors, partners, contractors, representatives, attorneys, and any other persons or entities acting or purporting to act on their behalf, or who are or have been subject to the direction or control of any of the foregoing.

14.     "Lead Plaintiffs" shall mean Delaware County Employees Retirement System and Bucks County Employees' Retirement System, any of their affiliates, and their direct or indirect controlling persons or entities, subsidiaries, predecessors, successors and assigns, parents, stockholders, managers, advisors, divisions, principals, members, officers, trustees, administrators, management personnel, employees, agents, owners, consultants, accountants, investment analysts, directors, partners, contractors, representatives, attorneys, and any other persons or entities acting or purporting to act on their behalf, or who are or have been subject to the direction or control of any of the foregoing.

15.     "Person" and/or "Persons" shall include natural persons, proprietorships, corporations, partnerships, limited liability companies, trusts, joint ventures, groups,

4

associations, organizations, governments (including all instrumentalities, officers, agents, and subdivisions thereof), and all other business, legal, or artificial entities.

16.    "Putative Class" shall mean all Persons who purchased or otherwise acquired AdaptHealth Stock between November 8, 2019 and July 16, 2021, inclusive.

17.    "Secondary Offering" shall mean the public offering conducted by AdaptHealth of 8,000,000 shares of its Class A Common Stock, at a price to the public of $33.00 per share, consisting of 7,250,000 shares of Class A Common Stock being sold by AdaptHealth and an additional 750,000 shares of AdaptHealth's Class A Common Stock being sold by a selling stockholder, that closed on January 8, 2021.

18.    "SumZero" shall mean SumZero, Inc. and any of its affiliates, and its direct or indirect controlling persons or entities, subsidiaries, predecessors, successors and assigns, parents, stockholders, managers, advisors, divisions, principals, members, officers, trustees, administrators, management personnel, employees, agents, owners, consultants, accountants, investment analysts, directors, partners, contractors, representatives, attorneys, and any other persons or entities acting or purporting to act on its behalf, or who are or have been subject to the direction or control of any of the foregoing.

19.    "SumZero Platform" shall mean the SumZero Cap Intro platform and/or any other platform or website created by, provided by, or affiliated with You.

20.    "You" or "Your" shall mean SumZero, Inc. and any of its affiliates, and its direct or indirect controlling persons or entities, subsidiaries, predecessors, successors and assigns, parents, stockholders, managers, advisors, divisions, principals, members, officers, trustees, administrators, management personnel, employees, agents, owners, consultants, accountants, investment analysts, directors, partners, contractors, representatives, attorneys, and any other

5

persons or entities acting or purporting to act on its behalf, or who are or have been subject to the direction or control of any of the foregoing.

## INSTRUCTIONS

1.     You must make a diligent search of any and all Documents that are (i) in Your possession, custody or control, or (ii) in the possession, custody or control of present or former agents, attorneys, consultants, advisors, representatives, and all other Persons acting or purporting to act on Your behalf, or (iii) otherwise available to You, and furnish all Documents and/or information available to You or subject to Your reasonable inquiry.

2.     Each Request shall be construed according to its own terms in accordance with these Definitions and Instructions.  Although there may be some overlap, no Request should be understood to limit any other.

3.     A Request for a Document shall be deemed a Request for any non-identical copies or drafts of such Documents, as well as all transmittal sheets, cover letters, exhibits, enclosures, appendices or attachments to the Document, in addition to the Document itself.

4.     Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, each responsive Document shall be produced as it is kept in the usual course of business, including its original file folder with all markings intact, or organized and labeled to correspond to the categories identified in these Requests.

5.     To the extent that You deem or consider any Request to be ambiguous, You should set forth the matter deemed ambiguous and the construction You adopted to respond to the Request.

6.     If it is not possible to produce any Document called for by the Request, or if You object to any individual Request in whole or in part, state specifically Your objection(s) or the reason(s) for Your failure to produce the Document.

6

7.     If You object to any of the Requests herein, whether in whole or in part, on the grounds that information sought therein is subject to a claim of attorney-client privilege, work-product immunity, or other privilege or immunity, produce as much of the subject Document as to which no claim of privilege or immunity is made.  With respect to Documents or portions of Documents for which a claim of privilege or immunity is made, state the following:

    i.    the type and nature of the Document or Communication;

    ii.    the date of the Document;

    iii.    the Person(s) to whom such Document or Communication was made, including Persons copied or blind copied on the Document, or the Person(s) present during the Communication;

    iv.    the Person(s) who authored or created or sent the Document or the Person(s) who made the Communication;

    v.    the general subject matter of the Document or Communication in a manner sufficient to support the privilege, immunity or protection claimed;

    vi.    the nature of the privilege, immunity or protection asserted, the Person(s) asserting the privilege, immunity or protection, and/or the specific reason why the Document is not being produced; and

    vii.    the same information referenced in (i)-(vi) above for each enclosure or attachment to each listed Document if the enclosure or attachment is also withheld from production.

8.     An objection or claim of privilege or immunity directed to part of a Request does not constitute an excuse for failure to respond to the parts of a Request for which no objection or claim of privilege or immunity is made.

9.    If any Document responsive to these Requests has been lost, destroyed, or otherwise disposed of, such Document is to be identified as completely as possible, including the following information: contents; author(s); recipient(s); sender(s); copied recipient(s) (indicated or blind); date prepared or received; date of disposal (approximate, if precise date is not known); manner of disposition; Person(s) currently in possession of the Document; Person(s) disposing of the Document.

10.    Notwithstanding anything else to the contrary herein, each word, term, or phrase is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

### PRODUCTION OF HARD COPY DOCUMENTS – FORMAT

1.    Hard copy Documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME" and "CUSTODIAN."  The Documents should be logically unitized (*i.e.*, distinct Documents shall not be merged into a single record, and single Documents shall not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business.  If an original Document contains color, and the color is necessary to understand the meaning or content of the Document, the Document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting so as not to degrade the original image.  Multi-page OCR text for each Document should also be provided. The OCR software shall maximize text quality. Settings such as "autoskewing" and "auto-rotation" should be turned on during the OCR process.

**PRODUCTION OF ESI**

1.     Format: ESI should be produced in single-page, black and white, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet and presentation type files, audio and video files, and Documents with tracked changes reflected in the metadata, which should be produced in native format.  If an original Document contains color, the Document should be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting so as to not degrade the original image.  Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs should show any and all text and images that would be visible to the reader using the native software that created the Document.  For example, TIFFs/JPGs of sent email messages should include the BCC line.

2.     Format – Native Files: If a Document is produced in native format, a single-page, Bates-stamped image slip sheet stating that the Document has been produced in native format should also be provided, with the exception of PowerPoint presentations.  PowerPoint Documents should be produced in native format along with single-page, 300 DPI TIFF/JPG images which display both the slide and the speaker's notes.  Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field.  To the extent that either party believes that specific Documents or classes of Documents not already identified within this protocol should be produced in native format, the parties should meet and confer in good faith.

3.     De-Duplication: Each party shall remove exact duplicate Documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates.  An email that includes content in the BCC or other blind copy field shall not be

9

treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.  De-duplication should be done across the entire collection (global de-duplication) and the CUSTODIAN field should list each custodian, separated by a semicolon, who was a source of that Document and the FILEPATH field will list each file path, separated by a semicolon, that was a source of that Document. Should the CUSTODIAN or FILEPATH metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected Documents should be produced prior to substantial completion of the Document production.

4.      Technology-Assisted Review: Predictive coding/technology-assisted review shall not be used for the purpose of culling the Documents to be reviewed or produced without notifying the requesting party prior to use and with ample time to meet and confer in good faith regarding an agreeable protocol for the use of such technologies.

5.      Metadata: Metadata produced will include the following fields of information, to the extent such information exists and can be readily provided through reasonable efforts: BegBates, EndBates, AttachRange, BegAttach, EndAttach, ParentID, ChildIDs, Custodian, DupeCustodian, FilePath, Subject, ConversationIndex, EmailFolder, From, To, CC, BCC, DateSent, TimeSent, DateReceived, TextPath, TimeReceived, FileType, FileName, Author, DateCreated, DateModified, MD5 Hash, FileSize, FileExtension, DocLink.

6.      Embedded Objects: Embedded files shall be produced as attachments to the Document that contained the embedded file, with the parent/child relationship preserved.  The embedded files should be marked with a "YES" in the load file under the "Is Embedded" metadata field.  The parties agree that logos need not be extracted as separate Documents as long as they are displayed in the parent Document.

7.      Attachments: If any part of an email or its attachments is responsive, the entire email and attachments should be produced, except any attachments that must be withheld or redacted on the basis of privilege.  The parties should meet and confer about whether there is an appropriate basis for withholding a family Document for any reason other than attorney-client or work product privilege.  The attachments should be produced sequentially after the parent email. Documents extracted from links shall be populated with the BegAttach and EndAttach metadata fields to show the family relationship.

8.      Compressed File Types: Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level Document or file is extracted.

9.      Structured Data: To the extent a response to discovery requires production of electronic information stored in a database, the parties should meet and confer regarding methods of production. Parties should consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

10.     Encryption: To maximize the security of information in transit, any media on which Documents are produced may be encrypted. In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

11.     Redactions: If Documents that the parties have agreed to produce in native format need to be redacted, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

**RELEVANT TIME PERIOD**

Unless otherwise indicated, the relevant time period shall be from January 1, 2019 to the present (the "Relevant Time Period"). Any Documents concerning the Relevant Time Period, however, must be produced, even if created or generated before the Relevant Time Period. If a Document created or generated before the Relevant Time Period provides a more complete understanding of at least one other responsive Document that falls within the Relevant Time Period, it must be produced. Furthermore, if a Document is undated, but otherwise responsive to any of the Requests below, it must be produced as well.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1**

All applications to join SumZero submitted by or on behalf of Jehoshaphat Research, www.jehoshaphatresearch.com, Victor Bonilla, Carrollwood Capital, www.carrollwoodcap.com, and/or www.jokerresearch.com.

**REQUEST FOR PRODUCTION NO. 2**

All documents and communications concerning all applications to join SumZero submitted by or on behalf of Jehoshaphat Research, www.jehoshaphatresearch.com, Victor Bonilla, Carrollwood Capital, www.carrollwoodcap.com, and/or www.jokerresearch.com, including but not limited to documents and communications concerning the recommendation of an existing member in support of that application, SumZero's review of that application, SumZero's approval of that application, and SumZero's request for additional information.

**REQUEST FOR PRODUCTION NO. 3**

All invoices, bills, and payment information in connection with the SumZero membership and/or any other service You provide to, for, or involving IP address

12

168.235.82.159, Jehoshaphat Research, www.jehoshaphatresearch.com, Carrollwood Capital, www.carrollwoodcap.com, and/or www.jokerresearch.com.

**REQUEST FOR PRODUCTION NO. 4**

All posts, comments, and/or other communications made, exchanged, or available through the SumZero Platform by or on behalf of Jehoshaphat Research, www.jehoshaphatresearch.com, Victor Bonilla, Carrollwood Capital, www.carrollwoodcap.com, and/or www.jokerresearch.com.

**REQUEST FOR PRODUCTION NO. 5**

All posts, comments, and/or other communications made, exchanged, or available through the SumZero Platform concerning Jehoshaphat Research, www.jehoshaphatresearch.com, Victor Bonilla, Carrollwood Capital, www.carrollwoodcap.com, and/or www.jokerresearch.com.

**REQUEST FOR PRODUCTION NO. 6**

All posts, comments, and/or other communications made, exchanged, or available through the SumZero Platform concerning the Jehoshaphat Report.

**REQUEST FOR PRODUCTION NO. 7**

All posts, comments, and/or other communications made, exchanged, or available through the SumZero Platform concerning AdaptHealth, the Individual Defendants, the Secondary Offering, and/or the Jehoshaphat Report.

**REQUEST FOR PRODUCTION NO. 8**

Documents sufficient to identify the name and affiliation of all Person(s) who posted, commented, or sent communications produced in response to Request Nos. 4, 5, 6, and/or 7.

**REQUEST FOR PRODUCTION NO. 9**

All Documents and Communications concerning the June 9, 2022 Facebook post by Divya Narendra referring to Jehoshaphat Research as a "long-time SumZero member."

**REQUEST FOR PRODUCTION NO. 10**

All contracts, agreements, understandings, or other arrangements concerning, involving, or applicable to Jehoshaphat Research, www.jehoshaphatresearch.com, Carrollwood Capital, www.carrollwoodcap.com, and/or www.jokerresearch.com.

**REQUEST FOR PRODUCTION NO. 11**

All Documents and Communications concerning or with Jehoshaphat Research, an email address with the domain @jehoshaphatresearch.com, and/or www.jehoshaphatresearch.com.

**REQUEST FOR PRODUCTION NO. 12**

All Documents and Communications concerning or with Victor Bonilla, Carrollwood Capital, an email address with the domain @carrollwoodcap.com, www.carrollwoodcap.com, an email address with the domain @ jokerresearch.com, and/or www.jokerresearch.com.

**REQUEST FOR PRODUCTION NO. 13**

Documents sufficient to identify all Person(s) that own, operate, or are otherwise associated with IP address 168.235.82.159, Jehoshaphat Research, www.jehoshaphatresearch.com, Carrollwood Capital, www.carrollwoodcap.com, and/or www.jokerresearch.com, including but not limited to the name and contact information (e.g., address, email address, telephone number) for each such Person.

**REQUEST FOR PRODUCTION NO. 14**

All drafts or versions of the Jehoshaphat Report.

**REQUEST FOR PRODUCTION NO. 15**

All Documents and Communications concerning the Jehoshaphat Report.

**REQUEST FOR PRODUCTION NO. 16**

Documents and Communications sufficient to identify all Persons who participated in drafting, reviewing, approving, performing analysis for, or otherwise contributing to the Jehoshaphat Report.

**REQUEST FOR PRODUCTION NO. 17**

All Documents and Communications concerning AdaptHealth, Luke McGee, the Secondary Offering, and/or the Jehoshaphat Report.

**REQUEST FOR PRODUCTION NO. 18**

Documents sufficient to show every purchase or sale of AdaptHealth Stock that You or Jehoshaphat Research made or were made on Your or Jehoshaphat Research's behalf and, for each such transaction, the (a) date and time of the purchase or sale, (b) the amount of shares acquired or sold, (c) the price at which shares were acquired or sold, and (d) any information relied upon to determine whether to purchase or sell.

**REQUEST FOR PRODUCTION NO. 19**

Documents and Communications sufficient to identify any of Your or Jehoshaphat Research's officers, directors, employees or other representatives who participated in any decision or recommendation concerning Your or Jehoshaphat Research's actual, potential, or contemplated purchase or sale of AdaptHealth Stock.

**REQUEST FOR PRODUCTION NO. 20**

Documents You or Jehoshaphat Research received, reviewed, relied on, considered, learned of, drafted, or proposed when deciding to purchase or sell any of Your or Jehoshaphat Research's AdaptHealth Stock.

**REQUEST FOR PRODUCTION NO. 21**

All Communications with any current or former AdaptHealth officers, directors, or employees.

**REQUEST FOR PRODUCTION NO. 22**

All Communications with Lead Plaintiffs or Emerald Asset Management concerning AdaptHealth, the Individual Defendants, the Secondary Offering, and/or the Jehoshaphat Report.

**REQUEST FOR PRODUCTION NO. 23**

All Communications with Robbins Geller Rudman & Dowd LLP, Kessler Topaz Meltzer Check, LLP, the Rosen Law Firm, Levi & Korsinsky, LLP, Pribanic & Pribanic, LLC, Glancy Prongay & Murray LLP, the Law Offices of Frank R. Cruz, Pomerantz LLP, and Klausner, Kaufman, Jensen & Levinson, concerning AdaptHealth, the Individual Defendants, the Secondary Offering, and/or the Jehoshaphat Report.

**REQUEST FOR PRODUCTION NO. 24**

All Communications with between or among (a) You, (b) any member of the Putative Class, and/or (c) any other Person (excluding Lead Counsel) concerning AdaptHealth, the Individual Defendants, the Secondary Offering, and/or the Jehoshaphat Report.

16