# Exhibit 11

## Summaries of the AdaptHealth Defendants' Expert Reports[1]

| Name | Ex. No. | Summary of Expert Report |
|---|---|---|
| **Dr. L. Adel Turki** | 15 | (i) The Cain Report failed to analyze market efficiency for AdaptHealth's stock following the deSPAC merger.  Certain of the market efficiency indicators for the three, six, and nine months following the deSPAC merger are substantially different from the thresholds and/or measures that were the basis for Dr. Cain's market efficiency conclusion for the entire Putative Class Period; <br><br>(ii) With respect to the Organic Growth Issue, there is no economic evidence that the alleged misrepresentations elicited a statistically significant price increase in AdaptHealth stock, and the movement in AdaptHealth's stock price on the date of the alleged corrective disclosure, July 19, 2021, was neither statistically significant nor due to the factual underpinnings of the Jehoshaphat Report; <br><br>(iii) With respect to the McGee Tax Issue, there is no economic evidence that the alleged misrepresentations elicited a statistically significant price increase in AdaptHealth stock, and the movement in AdaptHealth's stock price on the date of the alleged corrective disclosure, April 13, 2021, was not due to the disclosure of Mr. McGee's alleged involvement in an alleged tax fraud in the April 13 Press Release; and <br><br>(iv) Lead Plaintiffs did not purchase any AdaptHealth securities from March 4, 2021, to the end of the Putative Class Period on July 16, 2021.  One of the Lead Plaintiffs, Bucks County, benefitted from the alleged fraud related to the Organic Growth Issue, and the other Lead Plaintiff, Delaware County, did not experience a loss from the alleged fraud related to the Organic Growth Issue. |
| **Susan G. Markel** | 13 | (i) There is no evidence that suggests the organic growth calculations in the Jehoshaphat Report were derived from information other than that which was publicly available; <br><br>(ii) All of the organic growth calculations in the Jehoshaphat Report can be reproduced using publicly available information; and <br><br>(iii) At least one calculation suggests that Jehoshaphat Research likely made an error in applying its methodology for the organic growth calculations. |

---

[1] The expert reports summarized herein are being contemporaneously submitted with the AdaptHealth Defendants' Class Certification Opposition and are attached to the Declaration of Todd G. Cosenza In Support of the AdaptHealth Defendants' Memorandum of Law in Opposition to Lead Plaintiffs' Motion to Certify Class.

| Name | Ex. No. | Summary of Expert Report | |
|---|---|---|---|
| **Fabio Savoldelli** | 14 | (i) | Short seller reports drafted by dedicated short sellers who have positioned their portfolios to profit from a decline of a target company's stock are not impartial assessments of a company's value because a primary goal of such reports is to negatively impact the stock price of the target company, thereby allowing the short sellers to profit; |
| | | (ii) | The publication of a short seller report can cause a target company's stock prices to decline irrespective of the content in the short seller report; |
| | | (iii) | Short seller reports that cause a short term negative impact on the target company's stock price by virtue of their publication, irrespective of the accuracy of the underlying content, share several common characteristics; and |
| | | (iv) | To the extent that there was a statistically significant decline in AdaptHealth's stock price on July 19, 2021 that resulted from the Jehoshaphat Report, such a decline is attributable to the mere publication of the Jehoshaphat Report, not its contents. |
| **Jack R. Wiener** | 16 | (i) | All shares of AdaptHealth Stock issued and sold in connection with the Secondary Offering bore the same CUSIP number as the shares of AdaptHealth Stock already outstanding, were issued in book-entry-only form—without any physical certificates for beneficial owners—and were registered in DTC's street name, and were held in a single undifferentiated fungible aggregate bulk at DTC, blended with over 46 million other identical, indistinguishable shares of AdaptHealth Stock; and |
| | | (ii) | In light of shares of AdaptHealth Stock from multiple offerings having been blended into a single undifferentiated fungible aggregate bulk at DTC, no method exists by which Lead Plaintiffs or any other alleged beneficial owners would be able to show that they acquired AdaptHealth Stock traceable to the Secondary Offering or traceable to the offering documents that were filed in connection with the Secondary Offering. |
| **Dr. Craig Lewis** | 12 | (i) | Investors do not consider generic, boilerplate statements or redundant statements of historical fact made by a company pertinent to equity investment decisions; |
| | | (ii) | Investors would not have considered the Alleged McGee Tax Issue Misstatements pertinent to equity investment decisions; and |
| | | (iii) | Investors would not connect the AdaptHealth Press Release with the Alleged McGee Tax Issue Misstatements or conclude that the AdaptHealth Press Release revealed information relevant to the accuracy of the Alleged McGee Tax Issue Misstatements. |