UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM and BUCKS COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) | Civ. Action No. 2:21-cv-03382-HB |
| | ) | CLASS ACTION |
| Plaintiffs, | ) ) ) | REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION TO CERTIFY CLASS |
| vs. | ) ) | ELECTRONICALLY FILED |
| ADAPTHEALTH CORP. f/k/a DFB HEALTHCARE ACQUISITIONS CORP., LUKE MCGEE, STEPHEN P. GRIGGS, JASON CLEMENS, FRANK J. MULLEN, RICHARD BARASCH, JOSHUA PARNES, ALAN QUASHA, TERENCE CONNORS, DR. SUSAN WEAVER, DALE WOLF, BRADLEY COPPENS, and DAVID S. WILLIAMS III, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**[REDACTED]**

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ..................................................................................................1

II. ARGUMENT.......................................................................................................4

    A.  Lead Plaintiffs' Exchange Act Claims Are Entitled to Class Certification.............4

        1.  There Is Only One Proposed Class and One Theory of Liability ...............4

        2.  Lead Plaintiffs Exceed Rule 23(a)'s Adequacy Requirements....................5

            a.  Lead Plaintiffs Exceed the Knowledge Required to Be Adequate Class Representatives .........................................................5

            b.  Lead Plaintiffs Have Diligently Monitored Lead Counsel ..............7

            c.  No Conflict of Interest Exists .........................................................10

        3.  Lead Plaintiffs Are Typical Class Representatives....................................11

            a.  Lead Plaintiffs Exceed Rule 23(a)(3)'S Typicality Requirements ...................................................................................11

            b.  There Are No Unique Defenses........................................................12

            c.  Lead Plaintiffs Were Injured by the Alleged Fraud.......................13

        4.  The Class Period Should Not Be Limited...................................................14

        5.  Rule 23(b)(3)'s Predominance Requirement Is Satisfied .........................15

            a.  Lead Plaintiffs Are Entitled to Rely on the *Affiliated Ute* Presumption of Reliance ...............................................................15

                (1)  This Case "Primarily" Involves Omissions .......................15

                (2)  Defendants Fail to Rebut the *Affiliated Ute* Presumption ....................................................................17

            b.  Lead Plaintiffs Are Entitled to the *Basic* Presumption of Reliance...........................................................................................19

                (1)  AdaptHealth's Securities Traded in an Efficient Market During the Entire Class Period.............................21

                (2)  Defendants Fail to Rebut the *Basic* Presumption .............26

4882-9561-9684.v1

**Page**

(i)    Defendants Concede the April 13, 2021 Corrective Disclosure Impacted AdaptHealth's Stock Price ....................................26

1.    Defendants' Premature Truth on the Market Defense Fails ................................28

2.    There Is No Mismatch Between the Alleged Misstated and Omitted Information and the April 13 Corrective Disclosure ...............................31

(ii)    Defendants Cannot Disprove Price Impact for the July 19, 2021 Corrective Disclosure ..........35

c.    Individual Damages Issues Will Not Predominate ........................40

(1)    Lead Plaintiffs Provide a Class-Wide Measure of Damages Consistent with Their Theory of Liability .........41

(2)    Lead Plaintiffs' Damages Model Is Sufficiently Detailed ...........................................................................42

B.    Lead Plaintiffs' Securities Act Claims Are Entitled to Certification....................44

1.    Lead Plaintiffs Have Standing for the Securities Act Claims....................44

2.    Common Questions of Law and Fact Predominate ..................................47

3.    The Class Easily Satisfies the Numerosity Requirement...........................48

4.    Lead Plaintiffs Are Typical and Adequate to Represent the Class............49

5.    Defendants Present No Justification for Narrowing the Class Definition ...................................................................................................49

III.    CONCLUSION..................................................................................................50

4882-9561-9684.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972)................................................................................ *passim*

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ...............................................................32

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)...............................................................16, 28, 33

*Angley v. UTi Worldwide Inc.*,
311 F. Supp. 3d 1117 (C.D. Cal. 2018) ...............................................24

*Aranaz v. Catalyst Pharm. Partners Inc.*,
302 F.R.D. 657 (S.D. Fla. 2014)....................................................23, 26

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
955 F.3d 254 (2d Cir. 2020)............................................................27, 37

*Baker v. SeaWorld Ent., Inc.*,
2017 WL 5885542 (S.D. Cal. Nov. 29, 2017) ....................................31

*Baliga v. Link Motion Inc.*,
2022 WL 3363787 (S.D.N.Y. Aug. 10, 2022),
*R&R adopted in part*, 2022 WL 16707361
(S.D.N.Y. Nov. 4, 2022) ......................................................................17

*Barnes v. Osofsky*,
373 F.2d 269 (2d. Cir. 1967)................................................................46

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)................................................................. *passim*

*Basile v. Valeant Pharm. Int'l, Inc.*,
2017 WL 3641591 (C.D. Cal. Mar. 15, 2017)....................................16

*Beissinger v. Rockwood Comp. Corp.*,
529 F. Supp. 770 (E.D. Pa. 1981) .......................................................16

*Billhofer v. Flamel Techs., S.A.*,
281 F.R.D. 150 (S.D.N.Y. 2012) .........................................................30

*Bing Li v. Aeterna Zentaris, Inc.*,
2018 WL 1143174 (D.N.J. Feb. 28, 2018) ....................................42, 43

4882-9561-9684.v1

**Page**

*Bing Li v. Aeterna Zentaris, Inc.*,
  324 F.R.D. 331 (D.N.J. 2018), *aff'd sub nom.*
  *Vizirgianakis v. Aeterna Zentaris, Inc.*,
  775 F. App'x 51 (3d Cir. 2019) ...................................................................................5, 6, 10

*Bond v. Clover Health Invs., Corp.*,
  2023 WL 1999859 (M.D. Tenn. Feb. 14, 2023)....................................................................25

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
  2023 WL 2932485 (D. Conn. Apr. 13, 2023)............................................................27, 35, 37

*Burges v. Bancorpsouth, Inc.*,
  2017 WL 2772122 (M.D. Tenn. June 26, 2017)..............................................................16, 17

*Cammer v. Bloom*,
  711 F. Supp. 1264 (D.N.J. 1989) ................................................................................ *passim*

*City of Cape Coral Mun. Firefighters' Ret. Plan*
*v. Emergent Biosolutions, Inc., HQ*,
  322 F. Supp. 3d 676 (D. Md. 2018).......................................................................................26

*Clair v. DeLuca*,
  232 F.R.D. 219 (W.D. Pa. 2005) ...........................................................................................12

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)........................................................................................................40, 41, 43

*Cosby v. KPMG, LLP*,
  2020 WL 3548379 (E.D. Tenn. June 29, 2020).....................................................................23

*Cosby v. KPMG, LLP*,
  2021 WL 1828114 (E.D. Tenn. May 7, 2021).................................................................17, 24

*Dartell v. Tibet Pharms., Inc.*,
  2016 WL 718150 (D.N.J. Feb. 22, 2016) ..................................................................29, 44, 46

*De Vito v. Liquid Holdings Grp., Inc.*,
  2018 WL 6891832 (D.N.J Dec. 31, 2018)..............................................................................45

*Dewey v. Volkswagen Aktiengesellschaft*,
  681 F.3d 170 (3d Cir. 2012).....................................................................................................10

*Dodona I, LLC v. Goldman, Sachs & Co.*,
  296 F.R.D. 261 (S.D.N.Y. 2014) ...........................................................................................17

**Page**

*Dotson v. Portfolio Recovery Assocs., LLC*,
2009 WL 1559813 (E.D. Pa. June 3, 2009) ...............................................................6

*Dougherty v. Esperion Therapeutics, Inc.*,
2020 WL 6793326 (E.D. Mich. Nov. 19, 2020) ......................................................23

*EMC Mortg. Corp.*,
2011 WL 566776 (S.D.N.Y. Feb. 8, 2011) ..............................................................13

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) .................................................................................................31

*Fila v. Pingtan Marine Enter. Ltd.*,
195 F. Supp. 3d 489 (S.D.N.Y. 2016) .....................................................................40

*Gallup v. Clarion Sintered Metals, Inc.*,
489 F. App'x 553 (3d Cir. 2012). .............................................................................33

*George v. China Auto. Sys., Inc.*,
2013 WL 3357170 (S.D.N.Y. July 3, 2013). ...........................................................14

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
_U.S._, 141 S. Ct. 1951 (2021) ........................................................................ *passim*

*Gruber v. Price Waterhouse*,
776 F. Supp. 1044 (E.D. Pa. 1991) ..........................................................................16

*Ha. Structural Ironworkers Pension Tr. Fund, Inc.*
*v. AMC Ent. Holdings, Inc.*,
338 F.R.D. 205 (S.D.N.Y. 2021) .............................................................................46

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ...........................................................................................19, 26

*Hatamian v. Advanced Micro Devices, Inc.*,
2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) ........................................................44

*Hayes v. MagnaChip Semiconductor Corp.*,
2016 WL 7406418 (N.D. Cal. Dec. 22, 2016) ....................................................22, 23

*Hayes v. Wal-Mart Stores, Inc.*,
725 F.3d 349 (3d Cir. 2013) ....................................................................................12

*Holwill v. AbbVie Inc.*,
2021 WL 7366274 (N.D. Ill. Sept. 23, 2021) .........................................................28

4882-9561-9684.v1

**Page**

*Howard v. Liquidity Servs. Inc.*,
  322 F.R.D. 103 (D.D.C. 2017)................................................................................42

*Hoxworth v. Blinder, Robinson & Co.*,
  903 F.2d 186 (3d Cir. 1990)......................................................................15, 16, 20

*Hurwitz v. LRR Energy L.P.*,
  2018 WL 6804481 (D. Del. Jan. 2, 2018)..............................................................42

*IBEW Loc. 98 Pension Fund v. Best Buy Co.*,
  818 F.3d 775 (8th Cir. 2016) ................................................................................36

In *Holmes v. Pension Plan of Bethlehem Steel Corp.*,
  213 F.3d 124 (3d Cir. 2000)..................................................................................13

*In re Advance Auto Parts, Inc., Sec. Litig.*,
  2020 WL 6544637 (D. Del. Nov. 6, 2020) ..............................................19, 23, 26

*In re Alstom SA*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005)....................................................................39

*In re Amgen Sec. Litig.*,
  544 F. Supp. 2d 1009 (C.D. Cal. Feb. 1, 2008) ....................................................31

*In re Ariad Pharms. Sec. Litig.*,
  842 F.3d 744 (1st Cir. 2016)..................................................................................46

*In re BancorpSouth, Inc.*,
  2017 WL 4125647 (6th Cir. Sept. 18, 2017) .........................................................26

*In re Bexar Cnty. Health Facility Dev. Corp. Sec. Litig.*,
  130 F.R.D. 602 (E.D. Pa. 1990).............................................................................17

*In re BP P.L.C. Sec. Litig.*,
  2013 WL 6388408 (S.D. Tex. Dec. 6, 2013)......................................................4, 44

*In re BP, PLC Sec. Litig.*,
  758 F. Supp. 2d 428 (S.D. Tex. 2010) ...................................................................14

*In re Celgene Corp. Sec. Litig.*,
  2020 WL 8870665 (D.N.J. Nov. 29, 2020) ............................................................26

*In re Cendant Corp. Litig.*,
  182 F.R.D. 476 (D.N.J. 1998)................................................................................14

4882-9561-9684.v1

**Page**

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (2013)..................................................................................................46

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
  337 F.R.D. 193 (D. Minn. 2020)........................................................................27, 28, 32

*In re Cigna Corp Sec. Litig.*,
  2006 WL 2433779 (E.D. Pa. Aug. 18, 2006) ...............................................................8, 14

*In re Cigna Corp. Sec. Litig.*,
  459 F. Supp. 2d 338 (E.D. Pa. 2006) ..........................................................................11, 14

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
  2017 WL 2608243 (S.D. Tex. June 15, 2017)...................................................................32

*In re Comdisco Sec. Litig.*,
  150 F. Supp. 2d 943 (N.D. Ill. 2001) ................................................................................14

*In re Comverse Tech., Inc. Sec. Litig.*,
  543 F. Supp. 2d 134 (E.D.N.Y. 2008) ..............................................................................33

*In re Conduent Inc. Sec. Litig.*,
  2022 WL 17406565 (D.N.J. Feb. 28, 2022) ....................................................8, 10, 41, 43

*In re Domestic Drywall Antitrust Litig.*,
  322 F.R.D. 188 (E.D. Pa. 2017)........................................................................................10

*In re Dr. Reddy's Lab'y Ltd. Sec. Litig.*,
  2019 WL 1299673 (D.N.J. Mar. 21, 2019)........................................................................12

*In re DVI Inc. Sec. Litig.*,
  2010 WL 3522090 (E.D. Pa. Sept. 3, 2010) .....................................................................40

*In re DVI Inc. Sec. Litig.*,
  249 F.R.D. 196 (E.D. Pa. 2008),
  *aff'd* 639 F.3d 196 (3d Cir. 2011)....................................................................................23

*In re DVI Inc. Sec. Litig.*,
  639 F.3d 623 (3d Cir. 2011), *abrogated sub nom.*
  *Amgen*, 568 U.S. 455 (2013)............................................................................................21

*In re Dynegy, Inc. Sec. Litig.*,
  226 F.R.D. 263 (S.D. Tex. 2005)..................................................................................44, 45

4882-9561-9684.v1

**Page**

*In re EHang Holdings Ltd. Sec. Litig.*,
2022 WL 17718546 (S.D.N.Y. Dec. 15, 2022) ........................................................................40

*In re EQT Corp. Sec. Litig.*,
2022 WL 3293518 (W.D. Pa. Aug. 11, 2022) .....................................................19, 36, 41, 42

*In re eSpeed, Inc. Sec. Litig.*,
232 F.R.D. 95 (S.D.N.Y. 2005) ..............................................................................................11

*In re Fed. Home Loan Mortg. Corp. Sec. Litig.*,
281 F.R.D. 174 (S.D.N.Y. 2012) ............................................................................................25

*In re Finisar Corp. Sec. Litig.*,
2017 WL 6026244 (N.D. Cal. Dec. 5, 2017) ..........................................................................36

*In re FirstEnergy Corp. Sec. Litig.*,
2023 WL 2709373 (S.D. Ohio Mar. 30, 2023) ................................................................15, 19

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
618 F. Supp. 2d 311 (S.D.N.Y. 2009) .....................................................................................39

*In re FleetBoston Fin. Corp. Sec. Litig.*,
253 F.R.D. 315 (D.N.J. Oct. 20, 2008) .............................................................................45, 49

*In re Fuwei Films Sec. Litig.*,
634 F. Supp. 2d 419 (S.D.N.Y. 2009) .....................................................................................29

*In re Glob. Brokerage, Inc.*,
2021 WL 1160056 (S.D.N.Y. Mar. 18, 2021) ........................................................................25

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
579 F. Supp. 3d 520 (S.D.N.Y. 2021)..........................................................................26, 32, 33

*In re Heckman Corp. Sec. Litig.*,
2013 WL 2456104 (D. Del. June 6, 2013)...............................................................................41

*In re Ikon Off. Sols., Inc. Sec. Litig.*,
131 F. Supp. 2d 680 (E.D. Pa. 2001) ......................................................................................40

*In re Initial Pub. Offering Sec. Litig.*,
227 F.R.D. 65 (S.D.N.Y. Dec. 5, 2006)..............................................................................45, 49

*In re JPMorgan Chase & Co. Sec. Litig.*,
2015 WL 10433433 (S.D.N.Y. Sept. 29, 2015).......................................................................42

4882-9561-9684.v1

**Page**

*In re Kosmos Energy Ltd. Sec. Litig.*,
    299 F.R.D. 133 (N.D. Tex. 2014) ...............................................................................7, 47, 48

*In re Lehman Bros. Sec. & ERISA Litig.*,
    2013 WL 5730020 (S.D.N.Y. Oct. 22, 2013) ..................................................................17

*In re Mattel, Inc. Sec. Litig.*,
    2021 WL 4704578 (C.D. Cal. Oct. 6, 2021) ..............................................................26, 32

*In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*,
    2011 WL 3444199 (D.N.J. Aug. 8, 2011) .................................................................28, 29

*In re Merck & Co., Inc. Sec. Litig.*,
    432 F.3d 261 (3d Cir. 2005)..........................................................................................40

*In re Monster Worldwide, Inc. Sec. Litig.*,
    251 F.R.D. 132 (S.D.N.Y 2008) .....................................................................................6

*In re Moody's Corp. Sec. Litig.*,
    274 F.R.D. 480 (S.D.N.Y. 2011) ..................................................................................36

*In re NFL Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016)..........................................................................................12

*In re NutriSystem, Inc. Sec. Litig.*,
    653 F. Supp. 2d 563 (E.D. Pa. 2009) ...........................................................................12

*In re Omnicom Grp., Inc. Sec. Litig.*,
    597 F.3d 501 (2d Cir. 2010)..........................................................................................40

*In re Paulsboro Derailment Cases*,
    2014 WL 4162790 (D.N.J. Aug. 20, 2014) ....................................................................4

*In re Puda Coal Sec. Inc. Litig.*,
    2013 WL 5493007 (S.D.N.Y. Oct. 1, 2013) .................................................................45

*In re Qualcomm Inc. Sec. Litig.*,
    2023 WL 2583306 (S.D. Cal. Mar. 20, 2023) ..............................................................33

*In re RAIT Fin. Tr. Sec. Litig.*,
    2008 WL 5378164 (ED. Pa. Dec. 22, 2008)................................................................45

*In re Rent-Way Sec. Litig.*,
    218 F.R.D. 101 (W.D. Pa. 2003) ...............................................................................4, 12

4882-9561-9684.v1

**Page**

*In re Res. Am. Sec. Litig.*,
202 F.R.D. 177 (E.D. Pa. 2001)...................................................................................9

*In re Safeguard Scis.*,
216 F.R.D. 577 (E.D. Pa. 2003)..................................................................................13

*In re Sandridge Energy, Inc. Sec. Litig.*,
2019 WL 4752268 (W.D. Okla. Sept. 30, 2019) ......................................................28

*In re Schering-Plough Corp./ENHANCE Sec. Litig.*,
2012 WL 4482032 (D.N.J. Sept. 25, 2012) ...............................................................46

*In re Schering-Plough Corp. Sec. Litig.*,
2003 WL 25547564 (D.N.J. Oct. 10, 2003)...............................................................11

*In re Signet Jewelers Ltd. Sec. Litig.*,
2019 WL 3001084 (S.D.N.Y. July 10, 2019) ...........................................................43

*In re Suprema Specialties, Inc. Sec. Litig.*,
438 F.3d 256 (3d Cir. 2006)..................................................................................44, 46

*In re Urb. Outfitters, Inc., Sec. Litig.*,
2016 WL 1043014 (E.D. Pa. Feb. 29, 2016) ...............................................................7

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
2017 WL 1658822 (D.N.J. Apr. 28, 2017) ................................................................44

*In re Vicuron Pharms., Inc. Sec. Litig.*,
233 F.R.D. 421 (E.D. Pa. 2006)...................................................................5, 12, 47, 48

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
2017 WL 2062985 (S.D.N.Y. May 15, 2017) .....................................................29, 30

*In re Xerox Corp. Sec. Litig.*,
935 F. Supp. 2d 448 (D. Conn. 2013)........................................................................40

*In re Zillow Grp., Inc. Sec. Litig.*,
2020 WL 6318692 (W.D. Wash. Oct. 28, 2020) .......................................................28

*Initial Pub. Offerings Sec. Litig.*,
471 F.3d 24 (2d Cir. 2006).........................................................................................48

*Iron Workers Loc. No. 25 Pension Fund v.*
*Credit-Based Asset Servicing & Securitization, LLC*,
616 F. Supp. 2d 461 (S.D.N.Y. 2009)..........................................................................8

4882-9561-9684.v1

**Page**

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011)..........................................................................................1, 14, 18, 21

*Johnston v. HBO Film Mgmt., Inc.*,
    265 F.3d 178 (3d Cir. 2001)....................................................................................16, 20

*Karinski v. Stamps.com, Inc.*,
    2020 WL 6572660 (C.D. Cal. Nov. 9, 2020)...............................................................28

*KBC Asset Mgmt. NV v. 3D Sys. Corp.*,
    2017 WL 4297450 (D.S.C. Sept. 28, 2017)................................................................35

*Klein v. Gen. Nutrition Cos.*,
    186 F.3d 338 (3d Cir. 1999).......................................................................................12

*Kraus v. Paterson Parchment Paper Co.*,
    65 F.R.D. 368 (S.D.N.Y. 1974) .................................................................................14

*Krogman v. Steritt*,
    202 F.R.D. 467 (N.D. Tex. 2001) ....................................................................... *passim*

*Longo v. OSI Sys., Inc.*,
    2021 WL 1232678 (C.D. Cal. Mar. 31, 2021)............................................................29

*Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*,
    2020 WL 5026553 (D. Del. Aug. 25, 2020)..............................................................25

*Lumen v. Anderson*,
    280 F.R.D. 451 (W.D. Mo. 2012).............................................................................21

*Malriat v. QuantumScape Corp.*,
    2022 WL 17974629 (N.D. Cal. Dec. 19, 2022)................................................23, 25, 42

*McNair v. Synapse Grp. Inc.*,
    672 F.3d 213 (3d Cir. 2012)................................................................................12, 49

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) .................................................................................40

*N.J. Carpenters Health Fund v. Rali Series 2006-QO1 Tr.*,
    477 F. App'x 809 (2d Cir. 2012) ...............................................................................48

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
    709 F.3d 109 (2d Cir. 2013)..............................................................................29, 39, 48

4882-9561-9684.v1

**Page**

*Neale v. Volvo Cars of N. Am., LLC*,
    794 F.3d 353 (3d Cir. 2015)..................................................................................................41

*New Directions Treatment Servs. v. City of Reading*,
    490 F.3d 293 (3d Cir. 2007)....................................................................................................5

*Oetting v. Heffler, Radetich & Saitta, Llp*,
    2016 WL 1161403 (E.D. Pa. Mar. 24, 2016)..........................................................................7

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
    2018 WL 3861840 (N.D. Ohio Aug. 14, 2018).............................................................8, 36, 44

*Or. Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*,
    2020 WL 5500458 (D. Colo. Sept. 11, 2020).......................................................................39

*Pearlstein v. BlackBerry Ltd.*,
    2021 WL 253453 (S.D.N.Y. Jan. 26, 2021) .........................................................................32

*Pelletier v. Endo Int'l PLC*,
    338 F.R.D. 446 (E.D. Pa. 2021)..............................................................................5, 13, 20, 21

*Petrie v. Elec. Game Card, Inc.*,
    308 F.R.D. 336 (C.D. Cal. 2015)...............................................................................21, 22, 24

*Pickett v. Iowa Beef Processors*,
    209 F.3d 1276 (11th Cir. 2000) .............................................................................................11

*Pirnik v. Fiat Chrysler Autos., N.V.*,
    327 F.R.D. 38 (S.D.N.Y. 2018) .......................................................................................42, 43

*Pub. Emps. Ret. Sys. of Miss., P.R. Tchrs. Ret. Sys*
*v. Amedisys, Inc.*,
    769 F.3d 313 (5th Cir. 2014) ................................................................................................39

*Ret. Fund v. J.P. Morgan Chase & Co.*,
    301 F.R.D. 116 (S.D.N.Y. 2014) ..........................................................................................44

*Ret. Sys. of Miss. v. Mohawk Indus., Inc.*,
    2022 WL 17920570 (N.D. Ga. Nov. 28, 2022) ......................................................................8

*Ret. Sys. v. Acadia Healthcare Co.*,
    2022 WL 4598044 (M.D. Tenn. Sept. 30, 2022).......................................................16, 17, 27

*Ret. Sys. v. Energy Transfer LP*,
    2022 WL 3597200 (E.D. Pa. Aug. 23, 2022) ..................................................................11, 20

4882-9561-9684.v1

**Page**

*Ret. Sys. v. Prudential Fin., Inc.*,
2015 WL 5097883 (D.N.J. Aug. 31, 2015) ................................................................42

*Ret. Sys. v. S. Co.*,
332 F.R.D. 370 (N.D. Ga. 2019).................................................................... *passim*

*Ret. Sys. v. Walgreen Co.*,
2018 WL 1535156 (N.D. Ill. Mar. 29, 2018)...........................................................43

*Ret. Tr. v. RH, Inc.*,
2018 WL 4931543 (N.D. Cal. Oct. 11, 2018)....................................................25, 43

*Rocco v. Nam Tai Elecs., Inc.*,
245 F.R.D. 131 (S.D.N.Y. 2007) ...............................................................................13

*Roe v. Operation Rescue*,
123 F.R.D. 506 (E.D. Pa. 1988)................................................................................11

*Roman v. Korson*,
152 F.R.D. 101 (W.D. Mich. 1993) .............................................................................4

*Roofer's Pension Fund v. Papa*,
333 F.R.D. 66 (D.N.J. 2019)...........................................................................6, 8, 11

*Rooney v. EZCORP, Inc.*,
330 F.R.D. 439 (W.D. Tex. 2019) ......................................................................27, 36

*Schuh v. HCA Holdings, Inc.*,
2014 WL 4716231 (M.D. Tenn. Sept. 22, 2014)......................................................48

*Schwab v. E\*TRADE Fin. Corp.*,
752 F. App'x 56 (2d Cir. 2018) ................................................................................16

*Schwartzman v. Morningstar, Inc.*,
2014 WL 3843875 (E.D. Pa. Aug. 5, 2014) .............................................................17

*Set Cap. LLC v. Credit Suisse Grp. AG*,
2023 WL 2535175 (S.D.N.Y. Mar. 16, 2023) ..........................................................28

*Shiring v. Tier Techs., Inc.*,
244 F.R.D. 307 (E.D. Va. 2007) .................................................................................6

*Siemers v. Wells Fargo & Co.*,
2007 WL 1140660 (N.D. Cal. Apr. 17, 2007) ..........................................................33

- xiii -

4882-9561-9684.v1

**Page**

*Skeway v. China Nat. Gas, Inc.*,
　304 F.R.D. 467 (D. Del. 2014) .......................................................................................16

*Smilovits v. First Solar, Inc.*,
　295 F.R.D. 423 (D. Ariz. 2013) .....................................................................................24

*Smith v. Suprema Specialties, Inc.*,
　2007 WL 1217980 (D.N.J. Apr. 23, 2007) ...............................................................10, 45

*Stewart v. Abraham*,
　275 F.3d 220 (3d Cir. 2001)..........................................................................................48

*Strougo v. Tivity Health, Inc.*,
　606 F. Supp. 3d 753 (M.D. Tenn. 2022),
　*vacated and remanded sub nom. In re Tivity Health, Inc.*,
　2022 WL 17243323 (6th Cir. Nov. 21, 2022)................................................................35

*Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*,
　546 F.3d 196 (2d Cir. 2008)..........................................................................................25

*Todd v. STAAR Surgical Co.*,
　2017 WL 821662 (C.D. Cal. Jan. 5, 2017) ...................................................................24

*Univ. of P.R. Ret. Sys. v. Lannett Co.*,
　2023 WL 2985120 (3d Cir. Apr. 18, 2023) ................................................................4, 41

*Utesch v. Lannett Co.*,
　2021 WL 3560949 (E.D. Pa. Aug. 12, 2021) ................................................... *passim*

*Vignola v. Fat Brands, Inc.*,
　2020 WL 1934976 (C.D. Cal. Mar. 13, 2020)................................................................48

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
　2014 WL 1395059 (E.D. Pa. Apr. 10, 2014).................................................................11

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
　2016 WL 4138613 (E.D. Pa. Aug. 4, 2016) ..................................................... *passim*

*Waggoner v. Barclays PLC*,
　875 F.3d 79 (2d Cir. 2017)........................................................................................17, 26

*Weiner v. Tivity Health, Inc.*,
　334 F.R.D. 123 (M.D. Tenn. 2020) ...............................................................................41

4882-9561-9684.v1

**Page**

*Willis v. Big Lots, Inc.*,
    2017 WL 1074048 (S.D. Ohio Mar. 17, 2017).........................................................25

*Wilson v. LSB Indus, Inc.*,
    2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018)...........................................................42

*Zlotnick v. TIE Commc'ns, Inc.*,
    123 F.R.D. 189 (E.D. Pa. 1988).................................................................................6

*Zwick Partners, LP v. Quorum Health Corp.*,
    2019 WL 1450546 (M.D. Tenn. Mar. 29, 2019) ................................................31, 36

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §77k.......................................................................................................3, 5, 44
    §77k(e) .....................................................................................................49
    §77l ..........................................................................................................5
    §77o...........................................................................................................5
    §78j(b)..........................................................................................2, 41, 42
    §78u-4 .......................................................................................................1

Federal Rules of Civil Procedure
    Rule 23 ........................................................................................1, 3, 25, 43
    Rule 23(a).........................................................................................1, 5, 50
    Rule 23(a)(3).............................................................................................11
    Rule 23(b)(3)................................................................................15, 41, 42

4882-9561-9684.v1

## INDEX OF DEFINED TERMS

All capitalized terms used in this reply not defined in this index or in this reply have the same meaning as set forth in the Memorandum of Law in Support of Lead Plaintiffs' Motion to Certify Class (ECF 65-1) ("Motion or "Mot.").

All citations and footnotes are omitted and emphasis is added unless otherwise indicated. All "¶__" and "¶¶__" references are to the Complaint unless otherwise indicated.

All "Ex.__" references are to the Declaration of Kevin A. Lavelle in Support of Reply in Further Support of Lead Plaintiffs' Motion to Certify Class ("Lavelle Decl.").

All "Defs.' Ex. __" references are to the Declaration of Todd G. Cosenza in Support of the Adapthealth Defendants' Memorandum of Law in Opposition to Lead Plaintiffs' Motion to Certify Class (ECF 114).

- Luke McGee ("McGee")

- Rule 23 of the Federal Rules of Civil Procedure ("Rule 23")

- Private Securities Litigation Reform Act of 1995 ("PSLRA")

- The January 2021 AdaptHealth stock offering (the "Offering")

- AdaptHealth Defendants' Memorandum of Law in Opposition to Lead Plaintiffs' Motion to Certify Class (ECF 117) (FILED UNDER SEAL) ("Opposition" or "Opp.")

- Bucks County Employees' Retirement System ("Bucks County")

- Transcript of Deposition of Jonathan Lichtenstein. dated February 13, 2023 (Ex. A) ("Del. Tr.")

- Transcript of Deposition of Kimberly S. Doran, dated February 10, 2023 (Ex. B) ("Bucks Tr.")

- Delaware County Employees Retirement System ("Delaware County")

- Emerald Asset Management ("Emerald")

- Memorandum denying Defendants' Motion to Dismiss (ECF 50) ("MTD Order")

- Plaintiffs' Opposition to Defendants' Motion to Dismiss the Consolidated Class Action Complaint (ECF 40) ("MTD Opp.")

- Memorandum of Law in Support of Defendants' Motion to Dismiss the Consolidated Class Action Complaint (ECF 37-1) ("MTD")

4882-9561-9684.v1

- Transcript of Deposition of Joe Garner, dated February 15, 2023 (Ex. C) ("Emerald Tr.")

- Transcript of Deposition of L. Adel Turki, dated May 2, 2023 (Ex. E) ("Turki Tr.)

- Expert Reply Report of Matthew D. Cain, PHD, dated May 22, 2023 (Ex. F) ("Cain Rbt.")

- Defs.' Ex. 15, Expert Report of L. Adel Turki, dated March 29, 2023 ("Turki Rpt.")

- Transcript of Deposition of Matthew Cain, dated February 28, 2023 (Ex. G) ("Cain Tr.")

- April 13, 2021 AdaptHealth Corp.'s Board of Directors' Statement on Co-Chief Executive Officer Luke McGee ("April 13 Release")

- Transcript of Deposition of Craig Lewis, dated May 10, 2023 (Ex. N) ("Lewis Tr.")

- Defs.' Ex. 16, Expert Report of Jack R. Wiener, dated March 29, 2023 ("Wiener Report" or "Wiener Rpt.")

- Professor Daniel Taylor ("Professor Taylor")

- Expert Report of Professor Daniel Taylor (Ex. R) ("Taylor Report" or "Taylor Rpt.")

- Expert Report of Matthew D. Cain, PHD, dated July 26, 2022 (ECF 65-3) ("Cain Rpt.")

- Dr. Matthew Cain ("Dr. Cain")

- Jefferies LLC ("Jefferies")

4882-9561-9684.v1

## I.   INTRODUCTION

Defendants caused substantial damages to AdaptHealth investors by concealing: (i) that McGee, the Company's founder and "visionary" CEO responsible for AdaptHealth's success had, for years, orchestrated an international tax fraud and was then under numerous civil and criminal investigations; and (ii) that AdaptHealth's organic revenue growth had turned negative, caused by McGee's inattention to AdaptHealth while managing his legal jeopardy.   Given the evidence produced thus far, Defendants are understandably desperate to prevent a class from being certified, a fact apparent from their "kitchen sink" approach to opposing class certification.   But while their critiques are numerous, and their briefing voluminous, Defendants raise no meritorious issues, relying on arguments that courts have rejected.   Like other securities cases, this one fits Rule 23 "like a glove."

*First*, the proposed Class Representatives easily satisfy Rule 23(a)'s adequacy and typicality requirements; they are exactly the type of entities contemplated by the PSLRA and Rule 23 to represent investors and they were damaged just like other class members.   Each is an institutional investor that has actively litigated this case, including by retaining and engaging qualified counsel, producing documents, and sitting for depositions.   Each has expressed its understanding of and willingness to undertake the required obligations, and both have been found adequate to serve as class representatives in securities class actions.

In an attempt to undermine this proof, Defendants first resort to taking snippets of Lead Plaintiffs' testimony out of context.   But manufactured complaints fall far short of refuting the clear adequacy of these respected Pennsylvania institutions.   Then, Defendants create a strawman argument based on the false premise that this case is actually two class actions with different legal theories to engineer a purported "conflict" between Lead Plaintiffs and Defendants' hypothetical "second" class action.   But there is only one putative Class and the claims are based on the same legal theory – that Defendants' misstatements and omissions inflated AdaptHealth's stock and options prices, and that those prices dropped when the truth emerged.   Lead Plaintiffs' claims are also based on one course of conduct that concealed McGee's legal troubles and the resulting negative effect on AdaptHealth's organic growth.   Because Lead Plaintiffs, like all Class members,

- 1 -

4882-9561-9684.v1

suffered substantial losses as a result, there is no conflict and Defendants do not dispute that Lead Plaintiffs have vigorously prosecuted all claims, and Lead Plaintiffs will continue to do so.

**Second**, with respect to Lead Plaintiffs' §10(b) claims, Defendants fail to refute Lead Plaintiffs' showing that individual issues of reliance will not predominate over the numerous common questions of fact. Under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), Lead Plaintiffs are entitled to a presumption of reliance because, as pled and at its core, this is an omissions case concerning Defendants' failure to disclose McGee's tax fraud (the largest in Europe's history) and the resulting effect on AdaptHealth's organic revenue and resulting growth. Defendants' attempt to recast Lead Plaintiffs' allegations as primarily concerning affirmative misrepresentations is belied by the record.

Yet, even if the *Affiliated Ute* presumption were not available, Lead Plaintiffs would still be entitled to a presumption of reliance under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) because AdaptHealth common stock traded in an efficient market throughout the Class Period. Defendants do not contest that Lead Plaintiffs have satisfied the universally-employed *Cammer* and *Krogman*[1] factors demonstrating market efficiency, and, in fact, Defendants' own expert assumes the market for AdaptHealth stock was efficient during the Class Period. Not one of Defendants' incorrect and irrelevant critiques of Lead Plaintiffs' expert's analysis undermines a finding of market efficiency.

Defendants' attempts to rebut these presumptions of reliance fail, as well. Contrary to Defendants' claims, there is evidence of direct reliance, and Defendants have not (and cannot) show that Lead Plaintiffs would have purchased AdaptHealth securities at fraud-inflated prices had they known the truth. Defendants also concede that the alleged corrective disclosures (on April 13 and July 19, 2021) resulted in statistically significant price declines, thus precluding a finding that Defendants have met their burden of proving **no** price impact whatsoever, and Defendants present zero evidence that the market actually knew the allegedly omitted information prior to the corrective disclosures, which is a thinly veiled and premature truth-on-the-market

---

[1]    *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989); *Krogman v. Steritt*, 202 F.R.D. 467 (N.D. Tex. 2001).

4882-9561-9684.v1

defense.  Undeterred, Defendants invoke *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, _U.S._, 141 S. Ct. 1951 (2021) ("*Goldman*") as a pretext to rehash previously rejected motion-to-dismiss arguments about the "match" between the alleged misleading statements and omissions and the corrective disclosures.  But these are textbook merits attacks on falsity, materiality, and loss causation, based on reports from ***five*** different experts, that are impermissible at this stage and have no bearing on whether common issues predominate.  This Court has already held that the corrective disclosures are "related" to the alleged misleading statements and omissions. Defendants offer nothing to change that result.

Defendants' challenges to Lead Plaintiffs' proffered damages methodology similarly fail and are routinely dismissed by courts under Third Circuit precedent.  The methodology proposed by Lead Plaintiffs' expert, Dr. Cain is entirely consistent with Lead Plaintiffs' theory of liability and widely recognized as capable of measuring securities fraud damages on a classwide basis. Defendants' contention Lead Plaintiffs have not yet accounted for hypothetical varying levels of inflation or confounding information is another strawman argument.  Lead Plaintiffs are not required to present a detailed model that resolves Defendants' potential defenses at the class certification stage.

***Third***, with respect to Lead Plaintiffs' §11 claims, Defendants raise more impermissible merits-based challenges surrounding Lead Plaintiffs' standing and their ability to trace their purchases back to the Offering.  But, in doing so, Defendants ignore the substantial evidence already in the record that Lead Plaintiffs purchased directly in that Offering pursuant to the registration statement at issue.  Courts throughout the country, including the Third Circuit, recognize that under these circumstances, Lead Plaintiffs have standing to pursue their Securities Act claims.  And Defendants overlook well-accepted methods to trace back to commingled accounts as well as recent developments in recordkeeping that facilitate tracing that will refute Defendants' arguments at summary judgment or trial.

Because Lead Plaintiffs present a straight-forward case for class treatment, meeting all of the prerequisites of Rule 23, Lead Plaintiffs' Motion should be granted in full.

- 3 -

4882-9561-9684.v1

## II.    ARGUMENT

### A.    Lead Plaintiffs' Exchange Act Claims Are Entitled to Class Certification

#### 1.    There Is Only One Proposed Class and One Theory of Liability

Defendants argue that Lead Plaintiffs are pursuing two classes based on two theories of liability. Opp. at 35. But there is only one proposed class and "a single theory of liability: [that Defendants'] . . . misrepresentations or omissions artificially inflated [AdaptHealth's] stock price, and [the Company's] stock price dropped when the truth emerged." *Univ. of P.R. Ret. Sys. v. Lannett Co.*, 2023 WL 2985120, at *4 (3d Cir. Apr. 18, 2023).

Defendants ignore that Lead Plaintiffs have alleged Defendants' scheme as a single course of conduct – that Defendants concealed McGee's legal troubles, which distracted McGee and caused AdaptHealth's organic revenue growth to suffer, which Defendants also concealed. ¶¶5, 6, 30, 127. "Although the Complaint alleges many misrepresentations about various, interrelated topics, because each of Defendants' alleged misrepresentations [and omissions are] part of their broader alleged concealment of the [tax issue and the resulting decline in organic growth], each misrepresentation is categorically part of the same, single theory." *Utesch v. Lannett Co.*, 2021 WL 3560949, at *12 (E.D. Pa. Aug. 12, 2021), *aff'd sub nom. Lannett Co.*, 2023 WL 2985120.

Therefore, the varying misleading statements and omissions at issue in this case pose no obstacle to class certification. *See In re Rent-Way Sec. Litig.*, 218 F.R.D. 101, 116 (W.D. Pa. 2003) ("courts have frequently certified securities fraud class actions involving a series of alleged false and misleading statements").[2]

---

[2]    Defendants' authorities are inapt. *See In re BP P.L.C. Sec. Litig.*, 2013 WL 6388408, at *3 (S.D. Tex. Dec. 6, 2013) (as noted *infra*, there were two "competing theories" at issue, which is not present here.); *In re Paulsboro Derailment Cases*, 2014 WL 4162790, at *12-14 (D.N.J. Aug. 20, 2014) (in this non-securities-fraud case, plaintiffs "proposed two sub-classes" with the second "divided into two further sub-classes"); *Roman v. Korson*, 152 F.R.D. 101, 106 (W.D. Mich. 1993) (in this non-securities-fraud case, plaintiffs failed to show numerosity).

4882-9561-9684.v1

### 2. Lead Plaintiffs Exceed Rule 23(a)'s Adequacy Requirements

Lead Plaintiffs' continued and diligent participation in this litigation confirms the Court's preliminary finding that Lead Plaintiffs are typical and adequate class representatives. *See* ECF 12; *In re Vicuron Pharms., Inc. Sec. Litig.*, 233 F.R.D. 421, 427 (E.D. Pa. 2006) (J. Bartle). They are therefore more than adequate to represent the class. *Bing Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 342 (D.N.J. 2018), *aff'd sub nom. Vizirgianakis v. Aeterna Zentaris, Inc.*, 775 F. App'x 51 (3d Cir. 2019). *See Pelletier v. Endo Int'l PLC*, 338 F.R.D. 446, 475 (E.D. Pa. 2021) (Bucks County named a class representative for "hav[ing] proven itself a very diligent representative since joining this litigation, partaking in briefing and continuing the discovery process."). Delaware County was also previously named as a class representative for a class of investors with claims for alleged violations of Sections 11, 12 and 15 of the Securities Act of 1933 in the *Beaver County Employees Retirement Fund v. Cyan, Inc.* litigation in San Francisco County Superior Court.

### a. Lead Plaintiffs Exceed the Knowledge Required to Be Adequate Class Representatives

Defendants' arguments that both Lead Plaintiffs – institutional investors preferred by Congress – are inadequate class representatives lack merit. Opp. at 5-6, 61-63. "'A class representative need only possess a minimal degree of knowledge necessary to meet the adequacy standard.'" *Utesch*, 2021 WL 3560949, at \*4 n.4 (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)). Courts in this District therefore hold that "[t]here is no need for [p]laintiffs to have mastered the factual and legal issues presented in the case to satisfy the adequacy requirement, because their representation of the class will be accomplished through adequate counsel." *Id.; see also Endo*, 338 F.R.D. at 475; *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2016 WL 4138613, at \*10 (E.D. Pa. Aug. 4, 2016).

Lead Plaintiffs' knowledge far exceeds the required standards. As demonstrated during their depositions, Lead Plaintiffs both know the core allegations in this case that AdaptHealth concealed McGee's tax scheme (and the attendant investigations) and that the Company had manipulated its organic growth metric to hide negative organic growth, rendering their statements false and misleading. Del. Tr. (Ex. A) at 34:2-21, 192:16-23; Bucks Tr. (Ex. B) at 66:5-67:3,

209:13-23.  Lead Plaintiffs' representatives repeatedly testified, in detail, about the theory of the case and therefore demonstrated a level of knowledge that more than "indicat[ed] their general understanding of the allegations and issues in dispute" sufficient to demonstrate their adequacy. *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 77 (D.N.J. 2019).[3]

During their depositions, Lead Plaintiffs also recited specific details regarding the litigation, including: (i) the exact dates of the Class Period (Bucks Tr. at 75:15-18) or the correct months and years (Del. Tr. at 39:17-40:4);[4] (ii) that the litigation was in the class certification discovery stage (Del. Tr. at 42:2-11; Bucks Tr. at 81:4-14); and (iii) that an earlier complaint was filed before they were appointed lead plaintiff (Del. Tr. at 36:13-16; Bucks Tr. at 62:11-18).  Thus, Lead Plaintiffs "demonstrate[d] that [they] underst[ood] the nature of their causes of action . . . that this [was] a class action lawsuit against [the Company] and its executives premised on their false and misleading statements . . . which caused investors, including [Lead] [P]laintiffs and class members, to lose money."  *Utesch*, 2021 WL 3560949, at *4 n.4.  They are therefore both well positioned to protect the interests of the Class, which is further protected by the extensive and continuous involvement of both institutions' solicitors' offices in the litigation.  Del. Tr. at 50:4-13; 95:25-96:8; Bucks Tr. at 80:1-22, 241:24-243:20.[5]

---

[3]   *See, e.g.*, Bucks Tr. at 66:1-68:21; 69:3-70:2; 70:6-18; 71:3-14; 97:1-16; 205:4-206:8; 208:4-15; 208:24-209:23; Delaware Tr. at 33:22-34:21; 96:9-15; 188:4-189:3; 194:6-24; 200:18-24.

[4]   Defendants' claim that Delaware County "does not know the dates of the putative class period" is therefore misleading.  Opp. at 31.  Nor is a plaintiff is required to know the exact day that a class period begins or ends.  *See Aeterna Zentaris*, 324 F.R.D. at 342 ("'Plaintiffs in a complex securities case cannot be expected to be intimately familiar with every factual and legal issue of the case.'").

[5]   Defendants' authority is inapposite.  Opp. at 61-62.  Unlike here, the plaintiffs in those cases were not aware of basic facts or displayed conduct detrimental to adequate representation.  *See In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 135 (S.D.N.Y 2008) (plaintiff "did not know the name of the stock at issue . . . , the name of either individual defendant, . . . whether [plaintiff] ever owned [defendant] stock, . . . if an amended complaint had been filed, . . . whether he had ever seen any complaint in the action, [and] . . . that defendant . . . had moved to dismiss the complaint"); *Dotson v. Portfolio Recovery Assocs., LLC*, 2009 WL 1559813, at *2 (E.D. Pa. June 3, 2009) (plaintiff "gave false testimony under oath by denying his prior claims" in this FDCPA case); *Zlotnick v. TIE Commc'ns, Inc.*, 123 F.R.D. 189, 194 (E.D. Pa. 1988) (plaintiff was represented by his son and "had no knowledge of the substance or timing of his amended complaint"); *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 310, 316-17 (E.D. Va. 2007) (plaintiff

- 6 -

> **b.      Lead Plaintiffs Have Diligently Monitored Lead
> Counsel**

Defendants argue that Lead Plaintiffs' "purported knowledge stems from preparing for their depositions." Opp. at 62.  Their extensive preparation does support their adequacy, but Lead Plaintiffs' knowledge of this case derives from their active interaction with Lead Counsel since they became involved in this litigation.[6]  As Lead Plaintiffs testified, they learned of and discussed the alleged fraud when the potential claim was brought to their attention by Lead Counsel *in September 2021*.  Del. Tr. at 35:21-36:16, 45:12-15; Bucks Tr. at 28:14-21, 81:15-82:5.  And both Lead Plaintiffs reviewed the Complaint multiple times before it was filed in November of 2021.  Del. Tr. at 109:24-110:17; Bucks Tr. at 40:1-7, 204:21-205:1.

Defendants' suggestion that Lead Plaintiffs' knowledge is "not [from] continuously monitoring and/or directing this Action" is therefore belied by the record.  Opp. at 62.  Both Lead Plaintiffs have actively monitored Lead Counsel since the filing of the Amended Complaint.  Del. Tr. at 94:6-7 (communicating with lead counsel "in excess of 100 times"); *Id*. at 58:24-25 ("reviewing [documents] throughout the course of the case."); Bucks Tr. at 242:17-243:12 (Bucks County's solicitor's office "receives information [from Lead Counsel] and reviews it," and "any questions that she would have, she would find out the answers to.").  Lead Plaintiffs have also

---

filed false certifications, gained non-public knowledge from interviewing with defendant company before purchasing stock, and "opt[ed] not to participate in the drafting of the [complaint]"); *In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 141 (N.D. Tex. 2014) (plaintiff "was unable to recognize the names of certain defendants, . . . [and] did not know whether the [company's] stock price dropped, or if it did, what might have caused the drop").

6    Defendants argue that that Lead Plaintiffs are inadequate because, when the original complaint was filed, Lead Plaintiffs "had no knowledge that they had ever purchased AdaptHealth Stock, let alone that they had any complaints about AdaptHealth's disclosures."  Opp. at 6-7; 62.  But Lead Plaintiffs are not required to know about a case *before* becoming involved in it.  *See Oetting v. Heffler, Radetich & Saitta, Llp*, 2016 WL 1161403, at *8 (E.D. Pa. Mar. 24, 2016) (Class certified despite defendants' argument that lead plaintiff "was not aware of the litigation before the first Complaint was filed" because plaintiff "was not a named plaintiff or putative class representative until that time."); *In re Urb. Outfitters, Inc., Sec. Litig.*, 2016 WL 1043014, at *3 n.3 (E.D. Pa. Feb. 29, 2016).  And the use of appropriate portfolio monitoring agreements to bring potential cases to the attention of potential plaintiffs has been universally accepted by courts throughout the country.  *See*, n.9, *infra*.

been actively engaged in discovery.  They each sat for nearly full-day depositions (Bucks Tr. at 246:24; Del. Tr. at 217:11), responded to multiple sets of interrogatories, and undertook extensive efforts to search for and produce documents responsive to Defendants' document demands.[7] Bucks Tr. at 35:3-14, 37:13-19, 58-61, 230-32; Del. Tr. at 149:3-20, 209:9-211:3, 213-16.

Further, Defendants' arguments that Lead Plaintiffs "turned over the mechanics of litigation (*e.g.*, the conduct of discovery) to their outside counsel" (Opp. at 62), are unconvincing as "full consideration of the record reveal[s] that . . . [Plaintiffs] ha[d] knowledge of the underlying facts of the case and of the relevant investments made by their respective organizations, as well as a full understanding of the aims of th[e] case." *In re Cigna Corp Sec. Litig.*, 2006 WL 2433779, at \*4 (E.D. Pa. Aug. 18, 2006), at \*4; *DFC Glob.*, 2016 WL 4138613, at \*10;[8] *Papa*, 333 F.R.D. at 77.  Defendants' claims of "lawyer-driven litigation" thus find no support in the case law or facts.[9]

---

[7]    Defendants' claim that Lead Plaintiffs' discovery was inadequate (Opp. at 30) is unsupported by the record.  Lead Plaintiffs produced information produced in every securities fraud case. Defendants have not pointed to any examples of missing information necessary for this case.

[8]    Defendants' focus on who initiated communications (Opp. at 31) is beside the point.  The extensive interaction and Lead Plaintiffs' resulting knowledge demonstrates their adequacy.  And Defendants have conceded Lead Counsel's experience.  *Id.* at 30 n.27.  Defendants' claim that "Jehoshaphat Research and plaintiffs' law firms orchestrated this Action" (Opp. at 11) is, however, entirely baseless and irresponsible.

[9]    Defendants citation to *Iron Workers Loc. No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461 (S.D.N.Y. 2009), an out-of-circuit case at the lead plaintiff stage, not class certification, is unconvincing because there, the portfolio monitoring agreement had **different** terms than Lead Plaintiffs' here, and courts in the Third Circuit have not found such agreements problematic.  *See, e.g.*, *In re Conduent Inc. Sec. Litig.*, 2022 WL 17406565, at \*3 n.7 (D.N.J. Feb. 28, 2022) ("It is of no moment that Plaintiffs may have learned of this case through a portfolio monitoring service, . . . or that their understanding of this case is informed by the Amended Complaint as drafted by their attorneys."); *See also Pub. Emps.' Ret. Sys. of Miss. v. Mohawk Indus., Inc.*, 2022 WL 17920570, at \*6 (N.D. Ga. Nov. 28, 2022) (Portfolio monitoring agreement "[did] not establish that [lead counsel] [was] inadequate" because "[a]ccording to the testimony, [lead plaintiff] made an independent determination whether it wanted to pursue this litigation.  And [lead plaintiff's] decision to pursue the litigation using [lead counsel] as counsel was certainly reasonable, given the firm's significant experience in securities litigation cases such as this one and depth of knowledge of this area of law.").  Indeed, nothing in Lead Plaintiffs' monitoring agreements require them to choose Robbins Geller if they decide to pursue litigation.

4882-9561-9684.v1

Defendants' suggestion that Plaintiffs are not sufficiently invested in the action (Opp. at 62-63) lacks merit.  Defendants mischaracterize Buck's County's testimony that the "litigation would require 'very little work.'"  *Id.* at 7, 32, 62.  Its designee testified that the phrase meant that Bucks County "anticipate[d] that as a result of being in other class actions lawsuits, [Bucks County] now underst[ood] how to go about searching for documents in an easier way. . . . [with] a better understanding, better equipment . . ." thereby reducing their burden in discovery relative to past cases.  Bucks Tr. at 143:17-144:104.  Similarly, it was important to Delaware County to have an indemnification agreement to avoid "any additional costs" (Opp. at 7, 32, 62), because they "have a fiduciary duty to . . . the retirement fund to preserve . . . the money in the Fund."  Del. Tr. at 79:10-12.  In fact, Defendants acknowledge that Lead Plaintiffs understand their fiduciary duty to the Class.  Opp. at 32-33; Delaware Tr. at 73:14-17; Bucks Tr. at 149:1-7, 245:4-8.  And the fact that neither Lead Plaintiff anticipates paying legal fees for this action is irrelevant.  Opp. at 12.  Defendants cite to no authority suggesting that Lead Plaintiffs are required to advance fees, and they overlook that due to this arrangement, Lead Plaintiffs have received no compensation for their work.  Del. Tr. at 99:11-17; Bucks Tr. at 142:3-9.  Defendants' baseless attacks do not show that either Lead Plaintiff is inadequate.

Defendants argue that Lead Plaintiffs are inadequate because they have not read the misleading disclosures at issue in the case.  Opp. at 31, 62.  But Bucks County testified that they did, and Defendants did not ask Delaware County if they had.  Bucks Tr. at 206:18-207:10; Del. Tr. at 185:7-186:17.  Nevertheless, Defendants cite no case law requiring that Lead Plaintiffs read each disclosure to be adequate.

Defendants also argue that a purported disagreement about the allegations makes Lead Plaintiffs inadequate.  Opp. at 62.  But Defendants omit that Lead Plaintiffs agreed that the statements in paragraph 116 of the Complaint – the only paragraph Defendants questioned both Lead Plaintiffs about – were false and misleading.  Bucks Tr. at 205:4-206:8; Del. Tr. at 188:4-18.  Regardless, Lead Plaintiffs are not required to have a "'complete understanding of the legal basis for the claims,'" especially the circumstances that trigger a legal duty to disclose information.  *In*

- 9 -

*re Res. Am. Sec. Litig.*, 202 F.R.D. 177, 187 (E.D. Pa. 2001); *Aeterna Zentaris,*, 324 F.R.D. at 342.[10]

### c.      No Conflict of Interest Exists

Defendants argue that Lead Plaintiffs have an incurable conflict of interest.  Opp. at 63. But to defeat the adequacy of a proposed class representative, a claimed conflict with absent class members must be "fundamental," *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 184 (3d Cir. 2012), meaning that "some class members claim to have been harmed by the same conduct that benefitted other members of the class." *In re Domestic Drywall Antitrust Litig.*, 322 F.R.D. 188, 199 (E.D. Pa. 2017).  Importantly, "[a] fundamental conflict cannot be '"unduly speculative,"'" as 'hypothetical conflicts ***cannot*** defeat adequacy.'" *Conduent*, 2022 WL 17406565, at *3.  "'[T]o refuse certification . . . [the] conflict must be clear and must be such that the interests of the class are placed in significant jeopardy.'" *Smith v. Suprema Specialties, Inc.*, 2007 WL 1217980, at *6 (D.N.J. Apr. 23, 2007) (ellipsis in original).

Here, Defendants' argument rests on pure speculation – that two purported class periods will create "financial interests [that] diverge incurably from those of any class for" what Defendants call "the Organic Growth Action."  Opp. at 63, 7, 35, 68-69.  Not so.  There is only one Class Period, one theory of the case, and Lead Plaintiffs suffered losses when the truth was disclosed.  *See* §II.A.1., *supra*.[11]  Accordingly, there is no conflict.  *See Utesch*, 2021 WL 3560949, at *4 ("Plaintiffs' and class members' interests are aligned in that they all purchased or acquired and lost money on [the company's] artificially inflated common stock.").

---

[10]   Defendants argue (only in their evidence summary) that "Lead Plaintiffs' respective boards are not involved in this Action . . . ."  Opp. at 31; 23.  But the involvement of each Lead Plaintiff's board is irrelevant given Lead Plaintiffs' testimony that the solicitors and law departments of each county, not the boards, oversee the litigation on a day-to-day basis and update the board as needed. Del. Tr. at 50:4-51:10; Bucks Tr. at 122:17-123:7, 242:6-8.  For this reason, both Lead Plaintiffs testified that the Board members were not likely to have any relevant information.  Del. Tr. at 215:19-25; Bucks Tr. at 239:23-241:20.

[11]   Contrary to Defendants' assertions (Opp. at 63), neither Lead Plaintiff benefited from the alleged fraud.  It is undisputed that both Lead Plaintiffs suffered significant losses from their Class Period purchases.  *See* ECF 5-5 (reflecting $146,093 in losses).

4882-9561-9684.v1

Notably, Lead Plaintiffs have vigorously pursued the very organic growth issue that Defendants' claim will suffer from this supposed conflict, serving multiple sets of interrogatories and requests for production on the issue and establishing their detailed knowledge of the organic growth issue during their depositions. *See supra* at §II.A.2.b. Defendants do not argue otherwise.

But even if there was some conflict, it would not prevent class certification since Lead Plaintiffs "share a strong common interest in establishing all the elements of defendants' liability." *In re Schering-Plough Corp. Sec. Litig.*, 2003 WL 25547564, at *8 (D.N.J. Oct. 10, 2003); *see Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 2022 WL 3597200, at *24 (E.D. Pa. Aug. 23, 2022) (no conflict where "[a]ll Named Plaintiffs ha[d] a financial interest in the outcome of this litigation . . . as they were all holders of [defendants'] securities during the [c]lass [p]eriod and were allegedly injured by the same course of conduct by the [d]efendants").[12]

### 3. Lead Plaintiffs Are Typical Class Representatives

#### a. Lead Plaintiffs Exceed Rule 23(a)(3)'S Typicality Requirements

Defendants argue that Lead Plaintiffs are not typical members of the proposed class. Opp. at 64. They are, again, misguided. "The standard for demonstrating typicality is undemanding and requires that 'the claims of the named plaintiffs and putative class members involve the same conduct by the defendant.'" *Papa*, 333 F.R.D. at 75. Defendants cannot meet their burden to defeat typicality here. *Utesch*, 2021 WL 3560949, at *8. Each class member's claims involve the

---

[12] Defendants' reliance on non-securities fraud cases demonstrates a complete lack of support for their argument. Opp. at 61-63 (citing *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000) and *Roe v. Operation Rescue*, 123 F.R.D. 506, 507 (E.D. Pa. 1988). The two securities cases they do cite, *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2014 WL 1395059 (E.D. Pa. Apr. 10, 2014) and *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005), concerned selecting a lead plaintiff, not class certification, and the "netting" approach Defendants espouse to create their purported conflict is not an acceptable method of determining damages. *See In re Cigna Corp. Sec. Litig.*, 459 F. Supp. 2d 338, 354 (E.D. Pa. 2006) (declining to "requir[e] the jury to apply a cumulative approach that aggregates transactions and off-sets gains and losses stemming from different transactions" at the summary judgment stage). Even if Delaware County's minor gains were "netted" against its substantial losses, Opp. at 63 n.47, both Lead Plaintiffs still have substantial losses. *See* §II.A.1., *supra*.

same conduct by Defendants, and each, including Lead Plaintiffs, relied on the integrity of the market for AdaptHealth securities. *See* §II.A.3.b., *infra*. Lead Plaintiffs are therefore typical. *See DFC Glob.*, 2016 WL 4138613, at *8 ("If a plaintiff's claim arises from the same event, practice, or course of conduct that gives rise to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class."); *Vicuron*, 233 F.R.D. at 426 (same).

### b.      There Are No Unique Defenses

Defendants' argue that Lead Plaintiffs cannot establish standing because they "did not purchase or otherwise acquire AdaptHealth Stock or AdaptHealth options during the Organic Growth Period." Opp. at 64-65. Not true. Defendants' argument is a strawman based on the false premise that there are two class periods. But, as discussed, there is only one Class Period, one legal theory, and one course of conduct. *See* §II.A.1., *supra*. And there is no requirement that a class representative rely on every alleged misstatement during a class period. *See* Mot. at 8. *See also Rent-Way*, 218 F.R.D. at 116 (misstatements and omissions not required to be "uniform for all investors" for class treatment); *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016) ("'"[e]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories" or where the claim arises from the same practice or course of conduct.'"). Because Lead Plaintiffs purchased at inflated prices during the Class Period and suffered losses when the alleged truth was revealed, they have standing to represent the Class. *See* §II.A.2.c., *supra*.[13]

---

[13]   Defendants' authority is inapposite. Opp. at 64-65. *See Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 361 (3d Cir. 2013) (plaintiff could not represent class of customers who owned a manufacturer's warranty because he "d[id] not know if he ha[d] a valid manufacturer's warranty"); *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (plaintiffs were no longer customers of defendant company, but sought to represent a class of customers). Unlike in *Clair v. DeLuca*, a decision at the lead plaintiff stage, Lead Plaintiffs here purchased stock during the Class Period. 232 F.R.D. 219, 228 (W.D. Pa. 2005). In *In re Dr. Reddy's Lab'y Ltd. Sec. Litig.*, 2019 WL 1299673, at *14 (D.N.J. Mar. 21, 2019), *Klein v. Gen. Nutrition Cos.*, 186 F.3d 338, 345 (3d Cir. 1999), and *In re NutriSystem, Inc. Sec. Litig.*, 653 F. Supp. 2d 563, 580 (E.D. Pa. 2009) the courts found that plaintiffs had failed to allege any actionable misstatements before their alleged stock purchases.

- 12 -

Defendants argue that Lead Plaintiffs face a unique defense regarding reliance because Emerald "ignored the integrity of the market with respect to its purchases of AdaptHealth Stock" because it is a value investor.  Opp. at 66-67, 4, 12-13.  Not true.  ███████████████████ ████████████████████████████████████████  *See* §II.A.5.b.(2), *infra*.  And courts hold that value investors both rely on the integrity of the market and that their status does not defeat the presumption of reliance.  *See* n.25, *infra*.

Defendants also argue that Emerald did not rely on any specific AdaptHealth disclosure in deciding to purchase AdaptHealth Stock.  Opp. at 6, 65-67.  Their argument does not reveal a unique defense because "arguments premised on a party's failure to directly rely on misrepresentations do not necessarily rebut the presumption of reliance."  *Utesch*, 2021 WL 3560949, at \*9.  And the argument lacks merit since it derives from Defendants' mistaken position that there are two class periods.  ██████████████████████████████████.  *See infra*, §II.A.5.a.(2).[14]

### c.    Lead Plaintiffs Were Injured by the Alleged Fraud

Defendants argue that Lead Plaintiffs were likely not injured by the alleged frauds.  Opp. at 68.  Not true.  As previously discussed, they both purchased at inflated prices and suffered losses as a result of the corrective disclosures.  *See* §II.A.1., *supra*; ECF 5-5 (Bucks County lost $56,698.69 and Delaware County lost $89,394.99).  Defendants' "two classes" argument fails for the same reasons previously discussed.  *See* §II.A.1., *supra*.[15]

---

[14]  Defendants' cases are inapt.  Opp. at 66-67.  In *Ambac Assurance Corp. v. EMC Mortg. Corp.*, plaintiff was merely a "guarantor of an asset-backed note" and, unlike Lead Plaintiffs, did not purchase securities.  2011 WL 566776, at \*3 (S.D.N.Y. Feb. 8, 2011).  And also unlike Lead Plaintiffs here, the plaintiff in *In re Safeguard Scis.*, was a "day trader."  216 F.R.D. 577, 582–83 (E.D. Pa. 2003).  Notably, this District has also called *Safeguard* into question.  *See Endo*, 338 F.R.D. at 476 ("*Safeguard* is in the minority, as most courts have held that post-disclosure purchases are consistent with a buyer's reliance on the market.").  *Rocco v. Nam Tai Elecs., Inc.*, stands for the same disfavored proposition.  245 F.R.D. 131, 136 (S.D.N.Y. 2007).

[15]  Defendants' authority is distinguishable.  Opp. at 68.  In *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus. Ltd.*, the putative lead plaintiff did not own defendant stock before the single corrective disclosure at issue.  529 F. Supp. 3d 385, 407 (E.D. Pa. 2021).  In *Holmes v. Pension Plan of Bethlehem Steel Corp.*, plaintiffs' claims "were moot before they even filed their complaint" because they had settled the claim in another proceeding.  213 F.3d 124, 136

4882-9561-9684.v1

####        4.        The Class Period Should Not Be Limited

Defendants argue that "[t]here cannot be a single, continuous class period."  Opp. at 68. There can.  Lead Plaintiffs are pursuing a unitary theory of fraud.  *See* §II.A.1., *supra.*  Defendants' authority does not compel a different conclusion.  In *In re BP, PLC Sec. Litig.*, another lead plaintiff stage case, not class certification, the court created a subclass because one plaintiff group's "theory of the case differ[ed] significantly" from the other, and each group demonstrated that they were focused on their own theory.  758 F. Supp. 2d 428, 437-38 (S.D. Tex. 2010).  Here, Lead Plaintiffs have, without dispute, vigorously prosecuted all claims in this case, and Defendants have not, and cannot, make the affirmative demonstration that "the party with the largest financial interest would not adequately represent all stockholders."  *Id*. at 440 (citing *In re Cendant Corp. Litig.*, 182 F.R.D. 476, 479–80 (D.N.J. 1998)).  And *In re Cigna Corp.* actually supports Lead Plaintiffs.  459 F. Supp. 2d at 357.  There, the court denied the defendants' motion for summary judgment based on a lack of economic loss.  *Id.*  Here, Lead Plaintiffs have undisputedly suffered an economic loss.  Notably, the class period in *Cigna* was, as here, inclusive of corrective disclosure dates (*id.*), which refutes Defendants' argument that the purported "McGee Tax Action" would need to end on April 12, 2021.  Opp. at 69.

Defendants similarly argue that the Class Period should not start until November 13, 2019 because the November 8, 2019 statement starting the Class Period was made by DFB, not AdaptHealth, citing *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011).  Opp. at 69.  *Janus* does not help Defendants.  There, the Court found that "an investment adviser should [not] generally be understood to be the 'maker' of statements by its client mutual fund."  *Janus*, 564 U.S. at 145.  But here, AdaptHealth is DFB's successor-in-interest; DFB approved the

---

(3d Cir. 2000).  In *George v. China Auto. Sys., Inc.*, no lead plaintiff was an institutional investor, so their repeated purchases after the class period raised concerns.  2013 WL 3357170, at *7 (S.D.N.Y. July 3, 2013).  *Kraus v. Paterson Parchment Paper Co.*, involved a net seller that was subject to unique defenses including waiver, estoppel, and lack of due diligence.  65 F.R.D. 368, 369 (S.D.N.Y. 1974).  And *In re Comdisco Sec. Litig.*, involved a plaintiff that improperly estimated damages by accounting for its "pre-Class-Period holdings as the purported measure of its claimed loss."  150 F. Supp. 2d 943, 945 (N.D. Ill. 2001).

4882-9561-9684.v1

combination with AdaptHealth on November 7, 2019 and the deal closed November 8, 2019. ¶¶75-75.  There is thus no reason to limit the Class Period.[16]

### 5.    Rule 23(b)(3)'s Predominance Requirement Is Satisfied

The predominance requirement is satisfied under the *Affiliated Ute* and *Basic* presumptions of reliance.  Thus, individual issues will not predominate over common questions.  Mot. at 10-21.

### a.    Lead Plaintiffs Are Entitled to Rely on the *Affiliated Ute* Presumption of Reliance

### (1)    This Case "Primarily" Involves Omissions

As set forth in their Motion, Lead Plaintiffs are entitled to rely on the *Affiliated Ute* presumption of reliance because this case "'primarily'" involves "'failure[s] to disclose.'"  Mot. at 12 (quoting *Affiliated Ute*, 406 U.S. at 153); *see id*. at 3-4; 13-14.  The *Affiliated Ute* presumption is applied to matters "involving '(1) failures to disclose, i.e., "pure omissions"; and (2) failures to clarify "***true but misleading statements***" . . . *i.e.*, "half-truths, which, although analytically closer to lies than to nondisclosure, are obviously closer to omissions than are pure misrepresentations."'" *In re FirstEnergy Corp. Sec. Litig.*, 2023 WL 2709373, at \*19 (S.D. Ohio Mar. 30, 2023) (quoting *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 202 (3d Cir. 1990)).

Here, the Court has already recognized this case involves a scheme to defraud by omission. *See* Mot. at 13-14.[17]  As the Court held, Defendants' "laudatory statements about McGee" "***triggered a duty to disclose***", and their misleading "pro forma net revenue growth" disclosures likewise "did not fulfill [D]efendants' ***duty as a matter of law to disclose omitted information*** to make its disclosures not misleading."  MTD Order at 15, 25-26.[18]  Thus, Lead Plaintiffs "are

---

[16]  Defendants' cite no authority for their argument that "any class period cannot begin until November 25, 2020, when options first began to trade."  Opp. at 69.  And it is non-sensical.  By definition, investors in AdaptHealth options will not have claims until trading started.  And AdaptHealth stock, from which options derived, traded at the start of the Class Period.

[17]  *See, e.g.,* Mot. at 13 ("'Plaintiffs bring this securities fraud action based, in part, ***on AdaptHealth's omission*** . . . .'") (quoting MTD Order at 22); *id*. at 14 ("Defendants . . . '***had a duty to disclose the omitted information***'") (quoting MTD Order at 25); *see also id*. at 32.

[18]  Defendants' argument that "Lead Plaintiffs have not identified an affirmative duty that required the AdaptHealth Defendants to disclose the McGee Tax Issue" (Opp. at 53-56) is a

4882-9561-9684.v1

entitled to the *Affiliated Ute* presumption as to their [omissions claims]" because "Defendants' failure to disclose certain information is what makes the alleged misrepresentations misleading or false." *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*, 2022 WL 4598044, at *8 (M.D. Tenn. Sept. 30, 2022); *Burges v. Bancorpsouth, Inc.*, 2017 WL 2772122, at *10 (M.D. Tenn. June 26, 2017) (claims that Defendants concealed the omitted information, despite the "duty brought about by . . . choosing to speak," entitled to the *Affiliated Ute* presumption of reliance); *Skeway v. China Nat. Gas, Inc.*, 304 F.R.D. 467, 476 (D. Del. 2014); *Basile v. Valeant Pharm. Int'l, Inc.*, 2017 WL 3641591, at *13 (C.D. Cal. Mar. 15, 2017).

Even Defendants recognized, in their motion to dismiss briefing, that Lead Plaintiffs' allegations are premised on omissions, ***not*** affirmative misrepresentations, as Defendants now suggest. Opp. at 51-52.[19] And by previously arguing that Lead Plaintiffs allege "true but misleading statements,"[20] Defendants therefore effectively conceded that this case is based on the very type of "half-truths" qualify for the *Affiliated Ute* presumption. *Hoxworth*, 903 F.2d at 202. Defendants cannot now run from that position to defeat class certification, and their attempt to recast Lead Plaintiffs' allegations as affirmative misrepresentations thus fails.[21]

---

regurgitation of their motion to dismiss argument (*see* MTD Opp. at 13-19), which the Court rejected. *See* MTD Order 50 at 15. In any event, whether Defendants had a duty to disclose the omitted information (*i.e.*, falsity) is a merits issue common to all class members that does not impact certification. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 471-72 (2013).

[19] *See, e.g.,* MTD at 3 ("[Lead] Plaintiffs allege that this change in [organic growth] methodology ***was not adequately disclosed***."); *id*. at 5 ("[Lead] Plaintiffs contend that the ***failure to disclose*** information related to Mr. McGee rendered certain of AdaptHealth's statements concerning . . . its management team, as well as its future and past revenue growth, false and misleading."); *id*. at 20, 21; *id*. at 26, n.115 ("[Lead] Plaintiffs also allege that ***such omissions*** resulted in a violation of Regulation S-K, Item 401."); *id*. at 38.

[20] *See, e.g.*, MTD at 3 ("[Lead] Plaintiffs do ***not*** contend" that AdaptHealth's "pro forma net revenue growth" was "false or inaccurate."); *id*. at 5 ("[Lead] Plaintiffs do ***not even allege*** that any of the Defendants' statements themselves are inaccurate."); *id*. at 21.

[21] Defendants' cases, *Gruber v. Price Waterhouse*, 776 F. Supp. 1044, 1051 (E.D. Pa. 1991) and *Schwab v. E*TRADE Fin. Corp.*, 752 F. App'x 56, 59 (2d Cir. 2018), concern "inaccurat[e]" financial statements and affirmatively false statements that the defendant was complying with a duty of best execution when it was not. *See also Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 193-94 (3d Cir. 2001); *Beissinger v. Rockwood Comp. Corp.*, 529 F. Supp. 770, 785 (E.D. Pa.

- 16 -

The *Affiliated Ute* presumption is, moreover, "not undermined simply because a defendant makes misstatements at the same time it omits material information." *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 270 (S.D.N.Y. 2014). Even "[w]here plaintiffs' claims are based on a combination of omissions and misstatements, courts have acknowledged the applicability of the *Affiliated Ute* presumption as to the element of reliance with regard to alleged omissions." *Bancorpsouth*, 2017 WL 2772122, at *10. *See Acadia Healthcare*, 2022 WL 4598044, at *8; *Baliga v. Link Motion Inc.*, 2022 WL 3363787, at *21 (S.D.N.Y. Aug. 10, 2022), *R&R adopted in part*, 2022 WL 16707361 (S.D.N.Y. Nov. 4, 2022). Thus, *Affiliated Ute* applies, even though certain statements could be characterized as affirmative misstatements.

### (2)   Defendants Fail to Rebut the *Affiliated Ute* Presumption

Defendants claim that the *Affiliated Ute* presumption is rebutted because Lead Plaintiffs' investment manager, Emerald, used a "valuation-driven investment strategy" that purportedly "never considered information like the Miscellaneous Statements," arguing that the omitted tax and organic growth information "would not have affected Lead Plaintiffs' decisions to purchase AdaptHealth stock." Opp. at 4, 57. But Defendants do not cite any authority that the *Affiliated Ut*e presumption may be rebutted at class certification. And even if they had, "[i]n cases that primarily involve omissions, the defendant bears the burden of showing that the investor would have invested even if the defendant had disclosed the omitted fact." *Schwartzman v. Morningstar, Inc.*, 2014 WL 3843875, at *22 (E.D. Pa. Aug. 5, 2014).[22] Defendants have produced **_zero_**

---

1981); *Krogman*, 202 F.R.D. 478 (all concerning affirmative misrepresentations). Unlike in Defendants' cases, the omitted truth here "is not simply correcting a lie but highlighting new categories of information that were previously unknown and filling in gaps." *Cosby v. KPMG, LLP*, 2021 WL 1828114, at *7 (E.D. Tenn. May 7, 2021). Defendants' cases preclude invocation of *Affiliated Ute* only in narrower circumstances, such as where the only alleged omissions are the "inverse" of earlier misstatements. *Waggoner v. Barclays PLC*, 875 F.3d 79, 96 (2d Cir. 2017).

[22]   Defendants' citations to *In re Lehman Bros. Sec. & ERISA Litig.*, 2013 WL 5730020, at *3 (S.D.N.Y. Oct. 22, 2013) and *Schwartzman*, 2014 WL 3843875, at *22 are irrelevant, because there, the courts found that the *Affiliated Ute* did not apply because the allegations were not about omissions, not that the presumption was rebutted. And *In re Bexar Cnty. Health Facility Dev.*

- 17 -

evidence that Lead Plaintiffs, through Emerald, would have done so. *See Basic*, 485 U.S. at 248-49 (To rebut the presumption, defendants must show that plaintiffs would have purchased the stock at the same price had they known the omitted information.). ███████████████████

████████████████████████████████████████████████████

███████████████████████

And contrary to Defendants' suggestion (Opp. at 56-57), ███████████████████

████████████████████████████████████████████████████

██████████████████ *First*, █████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████.[23]

*Second*, Emerald's corporate designee further testified ██████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████ And Emerald's analyst, Dr. Trivedi, ███████████████

---

*Corp. Sec. Litig.*, is inapplicable because there, the court was applying the "'fraud created the market' doctrine." 130 F.R.D. 602, 607 (E.D. Pa. 1990).

[23] ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████



***Third***, Emerald's corporate designee testified ███████████████████

The evidence thus suggests that ████████████████████████, and Defendants have produced no evidence otherwise. Defendants therefore have not, and cannot, rebut the presumption, even assuming that doing so is permissible at this stage.[25]

### b. Lead Plaintiffs Are Entitled to the *Basic* Presumption of Reliance

"Defendants cite to no binding precedent holding that Lead Plaintiffs may not engage both the *Basic* and *Affiliated Ute* presumptions simultaneously." *FirstEnergy*, 2023 WL 2709373, at

---

[24] ████████████████████████████████████████████

[25] Defendants also incorrectly suggest that because Emerald utilized a "sophisticated, valuation-driven investment strategy," it "completely ignored the purported integrity of AdaptHealth's stock price." Opp. at 4, 13, 56-57. Courts have uniformly rejected this argument. "As the Supreme Court explained, even a value investor, 'who believes that certain stocks are undervalued or overvalued and attempts to "beat the market"' . . . implicitly relies on the fact that a stock's market price will eventually reflect material information . . . .'" *In re Advance Auto Parts, Inc., Sec. Litig.*, 2020 WL 6544637, at *5 (D. Del. Nov. 6, 2020) (first ellipsis in original) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 273 (2014) ("*Halliburton* II")); *Utesch*, 2021 WL 3560949, at *8 (same); *In re EQT Corp. Sec. Litig.*, 2022 WL 3293518, at *22 (W.D. Pa. Aug. 11, 2022) (same). Emerald plainly relied on the integrity of the market and AdaptHealth's stock price. *See* ████████████████████████████████████

4882-9561-9684.v1

*20 (applying "the *Basic* presumption to the extent this case involves misstatements").[26]  But, should the Court find the *Affiliated Ute* presumption is not applicable, Lead Plaintiffs may still proceed under the *Basic* presumption of reliance.  *See* Mot. at 14-21.

Here, Lead Plaintiffs meet the requirements for the *Basic* presumption, including that AdaptHealth common stock and options traded on an efficient market during the Class Period according to the *Cammer* and *Krogman* factors.  Mot. at 14-21.  Defendants do not dispute that courts in this Circuit look to the *Cammer* and *Krogman* factors to determine whether the market for a security was efficient.  *See* Mot. at 15.  Yet, Defendants ***do not discuss*** *Cammer* or *Krogman* in their Opposition, despite claiming that Lead Plaintiffs have not demonstrated that the market for AdaptHealth stock was efficient ***only*** during the first nine months of the Class Period.  Opp. at 40.[27] ███████████████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████  Defendants therefore cannot refute Lead Plaintiffs' showing of market efficiency.  *See Endo*, 338 F.R.D. at 481 (market efficient demonstrated where "[d]efendants' expert failed to make any *Cammer*-specific findings – [d]efendants[] failed to address *Cammer* in their opposition").  Lead Plaintiffs are therefore entitled to rely on the *Basic* presumption.

---

[26]  The "unitary burden of proof on the reliance issue" referred to by Defendants (Opp. at 37, n.32) refers only to whether that burden lies with the plaintiffs or the defendants, not whether a plaintiff may rely on both the *Affiliated Ute* and *Basic* presumption of reliance simultaneously. *See Hoxworth*, 903 F.2d at 202.  None of Defendants cases state that a plaintiff may not rely on both presumptions. *See id*. at 202 n.23; *Johnston*, 265 F.3d at 191 n.6; *Energy Transfer LP*, 2022 WL 3597200, at *2 n.2.

[27]  Accordingly, Defendants concede market efficiency during the remainder of the Class Period.

### (1)    AdaptHealth's Securities Traded in an Efficient Market During the Entire Class Period

Defendants argue that the results of Dr. Cain's market efficiency analysis are "less favorable" for the first nine months of the Class Period.  Opp. at 39-40.  But the *Cammer* and *Krogman* factors are assessed over the entire Class Period, not during sub-periods cherry-picked by Defendants to garner "less favorable" results.  Defendants do not cite any authority in support of their approach, and courts have rejected the tactic.  *See Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 359 (C.D. Cal. 2015) (noting "the dearth of precedent for modifying the length of a class period based on failure to meet the *Cammer* factors in certain sub-periods").  But even under this inappropriate sub-period analysis, Lead Plaintiffs still demonstrate market efficiency.

*First*, AdaptHealth's stock traded on the NASDAQ, which Defendants do not dispute is "'frequently held to be a **standalone** basis for finding market efficiency.'" Mot. at 15 (quoting *Endo*, 338 F.R.D. at 481).  Nor do they dispute that AdaptHealth's listing on the NASDAQ "'weighs in favor of a finding of market efficiency.'"  *Id*. (quoting *In re DVI Inc. Sec. Litig.*, 639 F.3d 623, 634 (3d Cir. 2011), *abrogated sub nom. Amgen*, 568 U.S. 455 (2013)).  It would therefore be "remarkable for a court to conclude NASDAQ is not an efficient market – which is why '[s]ecurities traded on NASDAQ are often presumed to be traded on an efficient market.'" *Lumen v. Anderson*, 280 F.R.D. 451, 459 (W.D. Mo. 2012).  Market efficiency is thus met for that reason alone.

But "even if the NASDAQ is not to be automatically accepted as an efficient market, the aforementioned cases (and others too numerous to cite) establish the NYSE and NASDAQ are at least entitled to a **presumption** of efficiency – making it incumbent upon Defendants to rebut the presumption." *Id*. at 459-60 (emphasis in original).  Defendants, however, make no attempt to do so, as neither they, nor their expert, submit any evidence that the market was inefficient. ███

████████████████████████████████

████████████████████████████████

████████████ Cain Rbt. (Ex. F), ¶¶10, 16, 19-21.

Thus, "[w]hile Defendants' strategy here appears to call into question Lead Plaintiffs' expert's conclusions, Defendants have not tried to show that the market for [AdaptHealth] stock was inefficient." *DFC Glob.*, 2016 WL 4138613, at 13.  That is insufficient. ███████████

████████████████████████████████████████████████████████████

███████████ Cain Rbt. at ¶¶10, 16.

***Second***, Defendants do not dispute that Lead Plaintiffs established each of the *Cammer* and *Krogman* factors during the Class Period.  Their focus on purported sub-periods offers no help.

***Cammer* Factor 1**: It is undisputed that AdaptHealth stock's average weekly trading volume during the Class Period was 3.56%, exceeding the 2% threshold established in *Cammer* as justifying a "strong presumption" of market efficiency.  Mot. at 16.  In response, Defendants' expert claims that weekly trading volume was 0.88%, 1.01%, and 1.54% during the first three, six, and nine months of the Class Period, respectively.  Opp. at 40, n.34.  But the fact that AdaptHealth's trading volume "fell below 2% or 1% for multiple months during the class period, despite the [3.56]% figure" is not "persuasive . . . given that *Cammer* identified average trading volume as the relevant number." *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 7406418, at *5 (N.D. Cal. Dec. 22, 2016) (rejecting same argument Defendants make here); *Petrie*, 308 F.R.D. at 359; Cain Rbt. at ¶¶12-15.

████████████████████████████████████████████████████████████

███████████████████████████ Cain Rbt. at ¶¶18.  When the average weekly volume during the first three, six, and nine months of the Class Period is calculated based on the volume of shares that could ***actually trade*** during those periods, the weekly volume is 1.41%, 1.51%, and 2.19%, respectively (Cain Rbt. at ¶18), therefore reflecting the "significant investor interest in the company," and satisfying the 1% threshold for a substantial presumption throughout the first 9 months of the Class Period *Cammer*, 711 F. Supp. at 1286; Cain Rbt. at ¶18.  But even accepting Defendants' sub-period calculation, the average weekly trading volume is ***still above*** the 1% threshold, entitling Lead Plaintiffs to a "substantial presumption" of efficiency.  *Cammer*, 711 F. Supp. at 1286.

4882-9561-9684.v1

***Cammer* Factor 2**:   Defendants do not dispute that AdaptHealth received significant analyst and media coverage over the course of the Class Period, satisfying the second *Cammer* factor.  *See* Mot. at 16.  Instead, Dr. Turki merely claims that, during the first three, six, and nine months of the Class Period, two, three and five analysts covered AdaptHealth, respectively.  Turki Rpt. at 15.  Dr. Turki, however, got it wrong.  During the first three months of the Class Period, as many as ***four*** analysts were already covering AdaptHealth (Cain Rbt. at ¶17), a number sufficient to support *Cammer* factor 2 standing alone.  *See* Mot. at 16 (citing *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 209 (E.D. Pa. 2008) (coverage by just three analysts sufficient), *aff'd* 639 F.3d 196 (3d Cir. 2011)); *Aranaz v. Catalyst Pharm. Partners Inc.*, 302 F.R.D. 657, 669 (S.D. Fla. 2014) (finding that four analysts supports efficiency).

But even two analysts could satisfy the second *Cammer* factor here.  *See Malriat v. QuantumScape Corp.*, 2022 WL 17974629, at *8 (N.D. Cal. Dec. 19, 2022) (crediting Dr. Cain's analysis in deSPAC case and finding coverage by two analysts during the first two months after the deSPAC sufficient because "defendants do not point to a case that says the number of analysts covering the stock must stay above a certain level throughout the class period, nor could I find one"); *Hayes*, 2016 WL 7406418 at *5.

***Cammer* Factors 3 and 4**:   Neither Defendants nor Dr. Turki address, and therefore concede by their silence, that *Cammer* factors 3 and 4 are satisfied.  *See* Mot. at 17-18.

***Cammer* Factor 5**:   Where, as here, the first four *Cammer* factors have been met, courts have "rejected the idea that the fifth *Cammer* factor is necessary to establish market efficiency." *DFC Glob.*, 2016 WL 4138613, at *12; *Advance Auto Parts*, 2020 WL 6544637, at *3 (same); Mot. at 18.  Nevertheless, Dr. Cain determined with an event study that there was a cause-and-effect relationship between new, material AdaptHealth-related information and AdaptHealth's stock price, finding that 4 out of 14 event days (or 28.6%) resulted in statistically significant price movements.  Mot. at 18-19.  Courts regularly find this or a lesser showing satisfies *Cammer* factor 5.  *See Dougherty v. Esperion Therapeutics, Inc.*, 2020 WL 6793326, at *5 (E.D. Mich. Nov. 19, 2020) (finding efficiency where 26% of event dates reflected statistically significant price movements); *Cosby v. KPMG, LLP*, 2020 WL 3548379, at *16 (E.D. Tenn. June 29, 2020) *R&R*

- 23 -

*adopted*, 2021 WL 1828114 (E.D. Tenn. May 7, 2021) (17.65% of event dates); *Angley v. UTi Worldwide Inc.*, 311 F. Supp. 3d 1117, 1122 (C.D. Cal. 2018) (~11% of event dates).

Defendants do not challenge Dr. Cain's results. Instead, Dr. Turki claims that because no event dates during the first nine months of the Class Period resulted in a statistically significant price movement, that is "inconsistent with AdaptHealth's . . . trading in an efficient market during this period." Turki Rpt. at ¶48(c). But "[t]here is no requirement that every event date tested be followed by a statistically significant price reaction in order to conclude that the market for a stock was efficient." *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 386 n.12 (N.D. Ga. 2019) ("*Southern*"); Cain Rbt. at ¶16. Moreover, *Cammer* states only "that 'it would be helpful' for a plaintiff to 'allege empirical facts' as to the fifth factor, but *Cammer* does not require empirical facts as to every trading day." *Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 435 (D. Ariz. 2013). This "evidence of market efficiency on some days can be indicative of market efficiency on other days" *Id*. *See Todd v. STAAR Surgical Co.*, 2017 WL 821662, at *8 (C.D. Cal. Jan. 5, 2017) (finding three event days with price movement supports finding of efficiency ***throughout*** a class period). Accordingly, Dr. Cain's event study reflects market efficiency throughout the entire Class Period.

***Krogman* Factors**:  Nor do Defendants or Dr. Turki dispute that Lead Plaintiffs have satisfied *Krogman* factors 1 and 3 (market capitalization and public float). Mot. at 19-20. Regarding *Krogman* factor 2, Defendants do not dispute that AdaptHealth common stock's bid-ask spread averaged 0.66% during the Class Period, supporting a finding of market efficiency. Mot. at 19-20. Instead, Dr. Turki claims that AdaptHealth's bid-ask spread during the first three, six, and nine months of the class period (1.84%, 1.60%, and 1.21%, respectively), is too high to support market efficiency. Turki Rpt. at 16-17. But courts find markets for securities with bid-ask spreads as high as 2.91% to be efficient, which Defendants do not dispute. *See* Mot. at 19 (citing *Petrie*, 308 F.R.D. at 356). So, even relying on Defendants' data, this *Krogman* factor still supports market efficiency.

Defendants' remaining attacks on Dr. Cain's analysis are misplaced. Defendants incorrectly assert that he did not tailor his analysis to AdaptHealth or its deSPAC transaction. Opp.

- 24 -

at 19-20, 39.  But, as Dr. Cain testified, with the exception of general background sections, such as his qualifications, "all of the data and analyses [in his reports] are unique to the particular subject company" including his analysis of the *Cammer* and *Krogman* factors.  Cain Tr. (Ex. G) at 34:22-35:11; Cain Rbt. at ¶¶14-15.  The similarities from report to report, contrary to Defendants' suggestion, "reflect that fact that securities fraud cases fit Rule 23 'like a glove,' rather than suggest class treatment is inappropriate."  *City of Mia. Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, 2018 WL 4931543, at *3 (N.D. Cal. Oct. 11, 2018).

Defendants' assertion that Dr. Cain did not take into account the circumstances of the lock-up agreements simply ignores Dr. Cain's testimony that he did and that lock-up agreements are commonly present in SPAC transactions.  Cain Tr. 120:2-14; Cain Rbt. at ¶18.  Notably, Dr. Cain has provided similar opinions on market efficiency in multiple other cases that involved SPAC transactions and lock ups, and in each case, the courts certified the class.  *See Bond v. Clover Health Invs., Corp.*, 2023 WL 1999859 (M.D. Tenn. Feb. 14, 2023); *QuantumScape Corp.*, 2022 WL 17974629; Cain Tr. 24:1-20.  Contrary to Defendants' suggestion (Opp. at 19), Dr. Cain's "consideration of the *Cammer* factors in opining on market efficiency" is proper and "does not render his methodology unreliable and does not turn his economic opinion into a legal one."  *Willis v. Big Lots, Inc.*, 2017 WL 1074048, at *4 (S.D. Ohio Mar. 17, 2017).[28]

Last, Defendants' mischaracterize Dr. Cain's testimony as suggesting that the market for AdaptHealth stock may be inefficient at "'certain points.'"  Opp. at 39.  But Defendants take those statements out of context.  *Id.*  Dr. Cain was not talking about AdaptHealth, but smaller stocks that, unlike AdaptHealth, do not trade on a national exchange and have no analyst coverage, limited institutional ownership, and little trading volume.  Cain Tr. at 51:3-17.  Lead Plaintiffs have established market efficiency and the applicability of the *Basic* presumption.

---

[28]   None of Defendants' cases concern, like here, common stock traded on a national exchange. *See Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 210 (2d Cir. 2008) (certificate investors); *Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*, 2020 WL 5026553, at *4 (D. Del. Aug. 25, 2020) (company notes); *In re Glob. Brokerage, Inc.*, 2021 WL 1160056, at *18–19 (S.D.N.Y. Mar. 18, 2021) (notes); *In re Fed. Home Loan Mortg. Corp. Sec. Litig.*, 281 F.R.D. 174, 182 (S.D.N.Y. 2012) (preferred stock).

## (2)    Defendants Fail to Rebut the *Basic* Presumption

To rebut the *Basic* presumption, Defendants must demonstrate by a preponderance of the evidence the "***absence of price impact***" – that the "asserted misrepresentation (or its correction) did ***not*** affect the market price of the defendant's stock." *Halliburton II*, 573 U.S. at 278, 280; *In re Goldman Sachs Grp., Inc. Sec. Litig.*, 579 F. Supp. 3d 520, 526 (S.D.N.Y. 2021) ("Defendants must show a ***complete lack*** of price impact . . . .") (citing *Goldman*, 141 S. Ct. at 1963). This is a "daunting task" (*Aranaz*, 302 F.R.D. at 673) that requires Defendants to prove that the fraud-related news caused "no price impact whatsoever." *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F. Supp. 3d 676, 687 (D. Md. 2018).

Because Lead Plaintiffs can proceed on either a "front-end" or "back-end" price impact theory, Defendants must affirmatively disprove ***both*** to satisfy their burden. *Waggoner*, 875 F.3d at 104-05; *see also In re BancorpSouth, Inc.*, 2017 WL 4125647, at *1 (6th Cir. Sept. 18, 2017) ("[P]rice impact may be demonstrated either at the time that the alleged misrepresentations were made, ***or*** at the time of their correction.") (citing *Halliburton II*, 573 U.S. at 278-80). Defendants do not come close to meeting their burden.[29]

### (i)    Defendants Concede the April 13, 2021 Corrective Disclosure Impacted AdaptHealth's Stock Price

Defendants concede that AdaptHealth's stock suffered a statistically significant price drop in response to the corrective April 13 Release. Opp. at 29, 47, 50. That ends the analysis. A "'statistically significant price adjustment following a corrective disclosure is evidence that the original misrepresentation did, in fact, affect the stock price.'" *In re Mattel, Inc. Sec. Litig.*, 2021

---

[29]   Defendants' arguments concerning "front end" price impact (Opp. at 42) are irrelevant, as Plaintiffs rely on the price maintenance theory. *See, e.g.*, ¶¶148, 177. "[C]ourts have consistently held that alleged misrepresentations can 'have price impact not because they introduce inflation into a share price, but because they "maintain" it.'" *Advance Auto Parts*, 2020 WL 6544637, at *4. "As a result, courts have held that 'the lack of price movement on the dates of the alleged misrepresentations does ***not*** rebut the *Basic* presumption.'" *Id.  See In re Celgene Corp. Sec. Litig.*, 2020 WL 8870665, at *11 (D.N.J. Nov. 29, 2020) ("weight of authority" demonstrates that plaintiffs may proceed on a price maintenance theory and evidence of no "front-end price impact' . . . does not rebut the Basic presumption"); Cain Rbt. at ¶¶24-26.

4882-9561-9684.v1

WL 4704578, at *5 (C.D. Cal. Oct. 6, 2021) (quoting *Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 450 (W.D. Tex. 2019)).  Defendants' "concession dooms [their] attempt to rebut the presumption of reliance because the inquiry is whether Defendants have proven *a complete lack of price impact* during the Class Period, not whether the stock price decline following individual corrective disclosures was caused by the alleged misrepresentations, which is a loss causation analysis not appropriate at this stage."  *Southern*, 332 F.R.D. at 395; *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 2023 WL 2932485, at *12 (D. Conn. Apr. 13, 2023) (same).[30]

Defendants, moreover, do not attempt to prove a "complete lack of price impact," as they contend only that "information other than the McGee Tax Issue" *in* the April 13 Release explains "'*some* or all'" of the price decline.  Opp. at 50-51.  But "for a defendant to erase the inference that the corrective disclosure . . . played some role in the price decline[,] it must demonstrate . . . that the *other events* explain the *entire* price drop."  *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 955 F.3d 254, 270, n.18 (2d Cir. 2020), *vacating and remanding* 141 S. Ct. 1951 (2021).  This, they have not done.  Indeed, the "other information" that Defendants claim caused "some" of the stock drop – that McGee was criminally charged and placed on leave – *directly relates* to the "McGee Tax Issue."  Opp. at 50-51, 73.

Having conceded price impact, Defendants nevertheless ask the Court to resolve loss causation and find that the "McGee Tax Issue" had no price impact because purported previous disclosures made the information "stale."  Opp. at 27, 47-48.  But those "remaining questions" of "what caused [AdaptHealth's] stock price to decline following each of the corrective disclosures (*i.e.*, loss causation) . . . are ultimate questions for the trier of fact on the merits," not for class certification.  *Southern*, 332 F.R.D. at 397; *Alexion*, 2023 WL 2932485, at *12.

---

[30]  *See Acadia Healthcare*, 2022 WL 4598044, at *5 ("Defendants concede the October 2017 corrective disclosure had an impact on Acadia's stock price.  In doing so, Defendants concede they cannot rule out price impact during the Class Period completely."); *In re CenturyLink Sales Pracs. & Sec. Litig.*, 337 F.R.D. 193, 210-11 (D. Minn. 2020) ("Defendants' expert admits that there were statistically significant price drops following two of the three disclosure dates.  This is sufficient to prevent Defendants from 'sever[ing] the link' between the alleged misrepresentations and any impact on [the company's] stock price.") (first alteration in original).

###### 1.    Defendants' Premature Truth on the Market Defense Fails

Unable to disprove price impact, Defendants resort to a premature merits argument that the "McGee Tax Issue" did not cause the April 13 decline in AdaptHealth's stock price because it had purportedly been previously disclosed.  Opp. at 27-28, 47-48.  "Although the term is nowhere mentioned in Defendants' brief, this argument is known as the 'truth on the market defense.'" *Holwill v. AbbVie Inc.*, 2021 WL 7366274, at *2 (N.D. Ill. Sept. 23, 2021).  *See Karinski v. Stamps.com, Inc.*, 2020 WL 6572660, at *7 (C.D. Cal. Nov. 9, 2020) (rejecting contention that same argument "[did] not amount to a truth-on-the-market defense").  But rebutting "'the [fraud-on-the-market] presumption of reliance' . . . by demonstrating that 'news of the [truth] credibly entered the market and dissipated the effects of [prior] misstatements.' . . . 'is a matter for trial' (and presumably also for a summary judgment motion . . . .)."  *Amgen*, 568 U.S. at 481-82 (alterations in original).  Thus, "Courts routinely hold . . . that the truth-on-the-market defense is not appropriately resolved at the class certification stage."  *Holwill*, 2021 WL 7366274, at *2.[31]

But even if appropriately considered, "[t]he possibility that some investors had knowledge of this data, however, does not direct a finding that common issues do not prevail over those issues 'subject only to individualized proof.'"  *Sandridge*, 2019 WL 4752268, at *7; *CenturyLink*, 337 F.R.D. at 211 (whether "the market already was aware" of allegations is a "common question[] that can be adjudicated on a class-wide basis at summary judgment or trial"); *Stamps.com*, 2020 WL 6572660, at *7; *Set Cap. LLC v. Credit Suisse Grp. AG*, 2023 WL 2535175, at *10 (S.D.N.Y. Mar. 16, 2023).  Thus, Defendants' "premature truth-on-the-market" argument "does not pose an obstacle to class certification."  *In re Zillow Grp., Inc. Sec. Litig.*, 2020 WL 6318692, at *8 (W.D. Wash. Oct. 28, 2020); *In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*, 2011 WL 3444199, at *35 (D.N.J. Aug. 8, 2011).

---

[31]  *See In re Sandridge Energy, Inc. Sec. Litig.*, 2019 WL 4752268, at *7 (W.D. Okla. Sept. 30, 2019) ("Lead Plaintiffs accurately argue that this amounts to Defendants raising a truth-on-the-market defense, which 'is inappropriate on a motion for class certification . . . .'").

- 28 -

Yet Defendants' argument also lacks merit substantively.  "[T]he publication of [six] newspaper articles" in a foreign language "does not transform the information contained within the articles into 'matters of general public knowledge' that may properly be imputed to [AdaptHealth's] stockholders." *In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 438 (S.D.N.Y. 2009).  Indeed, "'[t]here are serious limitations on a corporation's ability to charge its stockholders with knowledge of information omitted from a document such as a . . . prospectus on the basis that the information is public knowledge and otherwise available to them.'" *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 127 (2d Cir. 2013) (ellipsis in original).  *See Dartell v. Tibet Pharms., Inc.,* 2016 WL 718150, at \*6 (D.N.J. Feb. 22, 2016) ("The Court is not convinced that this disclosure on a Chinese-language website is sufficient to constitute a corrective disclosure."); *Longo v. OSI Sys., Inc.*, 2021 WL 1232678, at \*7 (C.D. Cal. Mar. 31, 2021) ("[I]t is plainly unreasonable to require an investor to comb foreign websites in languages such as Arabic, Chinese, Russian, etc.").

Furthermore, "Defendants' theory is undermined by evidence that investors were still in the dark throughout the class period."  *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 2017 WL 2062985, at \*5 (S.D.N.Y. May 15, 2017).  It is Defendants' burden to "demonstrate that any such corrective information had been conveyed to the public 'with a degree of intensity and credibility sufficient to counter-balance . . . any misleading information created by' the alleged misstatements."  *Merck*, 2011 WL 3444199, at \*35.  Yet Defendants provide *zero* evidence that either the six German and Danish articles[32] or the SKAT lawsuit revealed the truth to *any* AdaptHealth investors or the market generally.  *See Dartell*, 2016 WL 718150, at \*6 ("Defendants point to no evidence that this disclosure actually was known to the relevant public or that the market quickly priced in the disclosure.").

"That the truth was still not in the market is bolstered . . . ." by the fact that the first analyst reports to mention the "McGee Tax Issue" came *after* its April 13 disclosure by the Company.

---

[32]    Defendants fail to mention in their brief that the six articles they cite were originally published in non-English sources, and Defs.' Exs. 81-85 were translated into English.

*Virtus*, 2017 WL 2062985, at *5.

. Defendants' argument that the subject matter of the investigation was not "new" to the market is thus refuted by the contemporaneous evidence and the market's reaction when the truth was revealed in the April 13 Release.[34]  This "existence of a price decline and analyst commentary highlighting the negative news is, 'of course . . . evidence of price impact.'"  *Southern*, 332 F.R.D. at 396 (ellipsis in original).

That the market was unaware of the "McGee Tax issue" is not surprising.

And, as Defendants admit, "McGee is not named in the Denmark Complaint, nor is he even mentioned by name."  MTD at 28 n.116.  *See also Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 160 (S.D.N.Y. 2012) (information is not "publicly available" simply because it was "posted in an obscure location on

---

[33]  *See*

[34]  The opinions of Defendants' expert, Dr. Turki, are also unhelpful on this point

4882-9561-9684.v1

the internet"); *In re Amgen Sec. Litig.*, 544 F. Supp. 2d 1009, 1030-31 (C.D. Cal. Feb. 1, 2008) (postings on the internet do "not mean the market knew of [the information]").[35]

|  | 2. | **There Is No Mismatch Between the Alleged Misstated and Omitted Information and the April 13 Corrective Disclosure** |
|--|----|------|

Defendants claim that none of the alleged misstatements related to the "McGee Tax Issue" were "corrected" by the April 13, 2021 Release. Opp. at 25, 48. But whether a disclosure is "corrective" is the central inquiry concerning the element of loss causation – a common merits issue not to be decided at class certification. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812-13 (2011).[36] *Goldman* did not change this binding precedent but merely clarified that the "generic nature of an alleged misrepresentation" (*e.g.*, the statement "'we have faith in our business model'"), may be one factor in assessing price impact. 141 S. Ct. at 1960-61. *Goldman*, however, did not hold that loss causation, or other common fact-intensive merits issues, may be resolved at class certification. *See id*. at 1961, n.2 (while a court may use evidence to "decide the price impact issue" it must "'resist[] the temptation to draw what may be obvious inferences for the closely related issues that must be left for the merits'"). Defendants' request that the Court resolve loss causation based on an incomplete record at class certification is therefore inappropriate. And, in any event, "[r]esolution of the dispute regarding whether the statements were corrective 'is an issue that is common to all members of the class and thus does not defeat

---

[35]    Dr. Turki claims that the SKAT lawsuit notified investors that McGee was under investigation by the Danish tax authorities because 2321 Capital Pension Plan is named as a defendant, and, buried in a separate 300+ page SEC filing, 2321 Capital LLC—a *different entity* than 2321 Capital Pension Plan— is identified as being controlled by McGee. Turki Rpt., ¶73. But Defendants do not and cannot explain how investors would have made that connection or identify *any evidence* that the market did so. █████████████████████████████

██████████████████

[36]    *See Zwick Partners, LP v. Quorum Health Corp.*, 2019 WL 1450546, at *14 (M.D. Tenn. Mar. 29, 2019) ("definitively determining causation constitutes a finding on the merits, which is to be avoided at this stage of litigation"); *Baker v. SeaWorld Ent., Inc.*, 2017 WL 5885542, at *12 (S.D. Cal. Nov. 29, 2017).

- 31 -

4882-9561-9684.v1

predominance.'" *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2017 WL 2608243, at *6 n.2 (S.D. Tex. June 15, 2017). *See J.C. Penney Co.*, 2016 WL 8604331, *8 ("Defendants' arguments about whether the disclosures were actually corrective . . . has no bearing on the predominance inquiry for class certification.").

Accordingly, "[a]t this stage of the litigation – when Lead Plaintiffs are ***not*** required to show loss causation – the alleged disclosure need only 'relate[] to,' 'concern,' or be 'linked' to a specific alleged misrepresentation." *Pearlstein v. BlackBerry Ltd.*, 2021 WL 253453, at *18 (S.D.N.Y. Jan. 26, 2021) (emphasis and second alteration in original). Here, the Court already rejected Defendants' "mismatch" argument (MTD at 28, 42), finding that "[t]he investigation and litigation [against McGee for tax fraud] ***are closely enough related to AdaptHealth*** that a jury could reasonably determine that a reasonable investor would want to know this information" and that they "made AdaptHealth's previous statements about how integral he was to the company misleading." MTD Order at 16-17. Defendants' recycled argument therefore fails. *See CenturyLink*, 337 F.R.D. at 211 ("[T]he [c]ourt has already rejected [d]efendants' argument that, as a matter of law, the three disclosures were not actually disclosures."). Defendants' "arguments about whether particular statements were actually disclosures, like arguments about loss causation and that the market already was aware of . . . allegations, are common questions that can be adjudicated on a class-wide basis at summary judgment or trial." *Id*.

Defendants, moreover, "offer no authority for the proposition—nor did the Supreme Court hold—that the *Basic* presumption can no longer withstand ***any*** differing levels of abstraction between misstatement and disclosure." *Goldman*, 579 F. Supp. 3d at 538. And there is no requirement that the corrective disclosures "'mirror'" the alleged misstatements and omissions. *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 230 (5th Cir. 2009); *Mattel*, 2021 WL 4704578, at *5-*6 ("This Court does not read *Goldman* to contradict that a 'corrective disclosure need not be a "mirror image" disclosure . . . .'").

Defendants' remaining argument, that the alleged misstatements relating to the "McGee Tax Issue" are "generic, boilerplate statements" that investors "would have ignored" (Opp. at 26-27, 49-50) is a veiled materiality argument. But "plaintiffs are not required to prove materiality at

- 32 -

the class-certification stage." *Amgen*, 568 U.S. at 468. And here, the Court has already found that this is an issue for trial. *See* MTD Order at 17 ("The question of materiality must therefore be left to the jury as the trier of fact."); *id*. at 32-33 ("[D]efendants omitted crucial details about the CEO . . . . This omission is sufficient for a jury to find that AdaptHealth made materially misleading statements touting the company's leadership and experience as crucial to its success."). Indeed, "[t]he integrity of management is always of importance to investors." *Siemers v. Wells Fargo & Co.*, 2007 WL 1140660, at *8 (N.D. Cal. Apr. 17, 2007); *see In re Comverse Tech., Inc. Sec. Litig.*, 543 F. Supp. 2d 134, 151 (E.D.N.Y. 2008) ("it is plainly material to investors that executives of a company are acting fraudulently"); MTD Opp. at 15.[37]

Thus, "[o]n this point, the evidence and common sense speak as one. As a factual matter . . . '[i]t is difficult to imagine that [AdaptHealth] shareholders would have been indifferent" (*Goldman*, 579 F. Supp. 3d at 534-35) (second alteration in original) had Defendants disclosed McGee's "ties to a major tax fraud scheme and his potential criminal and civil liability." MTD Order at 16. And, contrary to Defendants' claims that certain alleged misstatements were standard disclosures of the type investors would not have relied on (Opp. at 27, 46-47, 50), "the fact that similar companies have made similar statements does not *per se* render a statement incapable of maintaining pre-existing . . . inflation." *Goldman*, 579 F. Supp. 3d at 535. In fact, Defendants' "argument ***misconstrues the inflation-maintenance theory itself***," as such claims "***do not hinge on whether such statements were consciously relied upon, in the moment, by investors*** evaluating [AdaptHealth]." *Id*. *See id*. at 536 ("This Court is hard-pressed to understand why statements such as those at issue here would have achieved such ubiquity in the first place were they incapable of influencing (***including by maintaining***) a company's stock price."); Cain Rbt.

---

[37] Defendants' case are not applicable. In *In re Qualcomm Inc. Sec. Litig.*, the court found a lack of reliance because, unlike here, the alleged corrective information had been widely reported on by stock analysts prior to the corrective disclosure. 2023 WL 2583306, at *12 (S.D. Cal. Mar. 20, 2023). In *Gallup v. Clarion Sintered Metals, Inc.*, the shares at issue "were not traded on the open market", and therefore plaintiffs could not rely on the integrity of the market. 489 F. App'x 553, 555 (3d Cir. 2012). In *Compaq*, reliance was "missing" because "contrary information was widely disseminated to the market by a large number of credible sources." 848 F. Supp. 1307, 1316 (S.D. Tex. 1993).

at ¶¶24-25, 50 (repeated statements can ***maintain*** an inflated stock price that would otherwise deflate had the truth been disclosed).  Defendants' arguments thus have no relevance here given that Lead Plaintiffs rely on the price maintenance theory.

Although it is not required at class certification, the evidence also already refutes Defendants' argument that investors would not consider the Company's management important. That evidence reflects that McGee ████████████████████████████████████ ██████████████████████████.  *See* §II.A.5.a.(2), *supra*.  ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████

Defendants' own expert, Dr. Lewis, also undermines their arguments that the "McGee Tax Issue"-related misstatements are "generic, boilerplate" statements that investors would have "ignored."  Opp. at 26-27; 46.  Dr. Lewis ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████

Dr. Lewis further ██████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

- 34 -

████████████████████████████████████████████████████████

████████████████████████████████████

Dr. Lewis's opinions, consequently, ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

**(ii)    Defendants Cannot Disprove Price Impact for the July 19, 2021 Corrective Disclosure**

Because Defendants have failed to establish the absence of price impact for the April 13, 2021 Release, they have failed to carry their burden of establishing a "complete lack of price impact during the Class Period" and the Court's price impact analysis need go no further. *See Southern*, 332 F.R.D. at 395-96 ("[N]umerous courts addressing class certification have refused to shorten class periods by dismissing subsequent corrective disclosures where some but not all of the stock price declines following the alleged corrective disclosures were statistically significant."). *See Alexion*, 2023 WL 2932485, at *12 (same); *Strougo v. Tivity Health, Inc.*, 606 F. Supp. 3d 753, 766 (M.D. Tenn. 2022), *vacated and remanded sub nom.*, *In re Tivity Health, Inc.*, 2022 WL 17243323 (6th Cir. Nov. 21, 2022) (same); *KBC Asset Mgmt. NV v. 3D Sys. Corp.*, 2017 WL 4297450, at *7-*8 (D.S.C. Sept. 28, 2017) (same).

But even if the Court considers the July 19, 2021 disclosure, Defendants still fail to establish an absence of price impact. Dr. Turki, ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████ Dr. Cain found the same. Cain Rbt. at ¶¶26, 31.

Accordingly, just like for the April 13 statistically significant decline, this concession "dooms"

- 35 -

Defendants' attempt to rebut the presumption of reliance for the July 19 decline.  S*ee* §II.A.5.b.(i), *supra*; *Southern*, 332 F.R.D. at 395.

Relying on a different, but flawed, regression, Dr. Turki also found, however, that the July 19, 2021 stock drop was not statistically significant at the 95% level, but rather at the 89% level. Cain Rbt. at ¶¶28-30.  Based on this finding, Defendants argue they have established a complete absence of price impact.  *See* Opp. at 43.[38]  But proffering a competing expert analysis does not establish a complete lack of price impact, especially when Dr. Cain and Dr. Turki actually ***found*** statistical significance in other regressions.  *See Quorum Health Corp.*, 2019 WL 1450546, at *14 (competing expert opinions "create[] a factual dispute as to the materiality of [a corrective disclosure], which involves complicated questions of causation better left until trial or at the earliest a summary judgment proceeding"); *Southern*, 332 F.R.D. at 389.

Yet, even if Defendants were correct that the July 19 stock price decline was not statistically significant at the 95% level (and they are not), "the absence of a statistically significant price adjustment does ***not*** show the stock price was unaffected by the" alleged misstatements or omissions.  *Rooney*, 330 F.R.D. at 450.  Thus, "courts routinely reject the argument that a non-statistically significant stock price decline proves an absence of price impact."  *Southern*, 332 F.R.D. at 393-394; *id.* at 395 (collecting cases).  "Defendants' reliance on arguments that . . . Defendants' expert[] failed to reach a statistically significant conclusion as to price impact is [therefore] ***not*** a basis to deny class certification."  *EQT*, 2022 WL 3293518, at *15*-16.

---

[38]  Defendants' cases are factually distinct and ignore that they must also demonstrate a lack of "back end" price impact and rely on facts no present here. *See IBEW Loc. 98 Pension Fund v. Best Buy Co.*, 818 F.3d 775, 782 (8th Cir. 2016) (plaintiffs' expert concluded that there was no link between the price of Best Buy's stock and any of the alleged misrepresentations); *In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480, 493 (S.D.N.Y. 2011) (failed to consider back end price impact); *In re Finisar Corp. Sec. Litig.*, 2017 WL 6026244, at *6–9 (N.D. Cal. Dec. 5, 2017) (did not analyze the question of whether a non-significant decline proves an absence of price impact); *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840, at *18 (N.D. Ohio Aug. 14, 2018) (plaintiffs admitted that "there may have been no price impact on the dates of the alleged misrepresentations" and pursued a materialization of the risk theory, not present here).

4882-9561-9684.v1

Further, there is ***positive proof of price impact*** following the July 19, 2021 corrective disclosure, as both experts found a statistically significant decline at the 95% confidence level. And even using Dr. Turki's flawed event study, AdaptHealth's stock experienced residual decline on July 19, 2021 that was statistically significant at the 89% confidence level. Cain Rbt. at ¶28. "This establishes that [AdaptHealth's] stock price experienced a decline after factoring out market and sector effects." *Southern*, 332 F.R.D. at 396, n.33; *see also Alexion*, 2023 WL 2932485, at *12. "Because [AdaptHealth's] stock price suffered negative residual returns following" the July 19 corrective disclosure, "Defendants' citation to non-significance 'merely suggest[s] that another factor also contributed to an impact on a security's price.'" *Southern*, 332 F.R.D. at 396-97 (alteration in original). But "[t]hat 'does not establish that the fraudulent conduct complained of did not also impact the price of the security.'" *Id.*

Defendants, moreover, have ***no alternative explanation*** for what caused the AdaptHealth-specific price decline on July 19, 2021, other than the corrective Jehoshaphat Report (Opp. at 24, 45), and ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ Cain Rbt. at ¶¶32-38; ████████████████████. They therefore cannot meet their burden of demonstrating "***other events*** explain the ***entire*** price drop." *See Goldman*, 955 F.3d at 270, n.18. Having effectively conceded price impact, Defendants again ask the Court to prematurely resolve loss causation and find that the "substance" of the Jehoshaphat Report did not cause the decline because it purportedly relied on publicly available information. Opp. at 23-24, 43-44. But, as for the April 13 corrective disclosure, the "remaining questions" of "what caused AdaptHealth's stock price to decline following each of the corrective disclosures (*i.e.*, loss causation) . . . is an "ultimate questions for the trier of fact on the merits," not for class certification. *Southern*, 332 F.R.D. at 397; *Alexion*, 2023 WL 2932485, at *12 (same). *See* §II.A.5.b.(2)(i), *supra*.

Again unable to disprove price impact, Defendants turn to another premature truth-on-the-market argument to suggest the Jehoshaphat Report did not cause the July 19, 2021 price decline because it was purportedly based on publicly available information and because the change in

AdaptHealth's organic revenue metric had previously been disclosed.  Opp. at 23-24, 43-44.  But, as previously discussed, this truth-on-the-market defense is not appropriately raised or resolved at this stage of the litigation and poses no obstacle to class certification.  *See* §II.A.5.b.(i)1., *supra*.

And, the Court has already addressed Defendants' contention that the change in methodology was "contemporaneously disclosed" and "understood by the market."  MTD at 21; MTD Order at 25.  The Court held that "[t]he use of an asterisk to the growth reporting and written in small font at the bottom of the slide ***did not fulfill*** [D]efendants duty as a matter of law to disclose omitted information to make its disclosures not misleading."  MTD Order at 25.

Defendants now attempt to buttress this (premature) defense by citing to the Q4 2021 AdaptHealth earnings call transcript and subsequent analyst reports to suggest that analysts (and therefore the market) were aware that AdaptHealth had changed its organic growth metric to the new "pro forma" metric.  Opp. at 9; Turki Rpt., ¶¶57-58.  But nowhere in those materials does AdaptHealth disclose the change in the metric.  *See id*.  Nor does any analyst recognize that AdaptHealth's organic growth metric now included revenue from acquisitions under a new "pro forma" metric.  *Id*.  In fact, they do the opposite, continuing to discuss "organic growth" and acquisitions as two ***separate*** components of the Company's revenue guidance.  *See, e.g.*, Turki Rpt., ¶58(d) ("'AHCO's guidance raise is driven by continued organic growth strength, as well as contributions from recently-completed acquisitions.'"); Cain Rbt. at ¶¶40-41.  Thus, this evidence highlights that the "pro forma" metric had ***not*** been adequately disclosed.[39]

Next, Defendants claim that because the Jehoshaphat Report was based on "publicly available" information, the market must have understood the changes to AdaptHealth's organic growth metric.  Opp. at 3, 22-23, 43.  But Defendants again cite ***no evidence*** reflecting that ***any*** market participant had actually undertaken the Jehoshaphat Report's analysis or concluded that

_____

39 ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

- 38 -

AdaptHealth's true organic growth had turned negative.  Defendants' expert ██████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████ Thus, for the same reasons described above, Defendants' truth on the market showing is premature and insufficient to meet their burden.  *See* §II.A.5.b.(i)1., *supra*.

Defendants' argument that other market participants could have conducted the same analysis is misguided.  Opp. at 43.  "An investor should not be called upon to piece together buried information from distinct parts of financial statements in order to understand basic aspects of a company's finances."  *In re Alstom SA*, 406 F. Supp. 2d 433, 453, n.11 (S.D.N.Y. 2005). *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 618 F. Supp. 2d 311, 325 (S.D.N.Y. 2009) ("This Court cannot rule that the scattered disclosures in various amendments, annexes and exhibits to the Prospectus and Registration Statement were sufficient as a matter of law to disclose the material facts to reasonable investors."); *Royal Bank of Scot.*, 709 F.3d at 127 ("'There are serious limitations on a corporation's ability to charge its stockholders with knowledge.").  The substance and findings of the Jehoshaphat Report therefore revealed new information "in a practical sense." *Or. Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, 2020 WL 5500458, at *17 (D. Colo. Sept. 11, 2020) (rejecting argument that analyst report "derived from publicly-available information" is not "new" and may not be corrective).[40]

Defendants' reliance on expert analysis of a former SEC Chief Accountant to reconstruct the Jehoshaphat Report calculations (Opp. at 43; Defs.' Ex 13, ¶¶2-4) is telling, as "complex economic data understandable only through expert analysis ***may not be*** readily digestible by the marketplace." *Pub. Emps. Ret. Sys. of Miss., P.R. Tchrs. Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313,

---

[40]    Though Defendants deride the Jehoshaphat Report, ██████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

323 (5th Cir. 2014).  Moreover, the Jehoshaphat Report was, as Defendants experts concede, also based on ***non-public*** information, including interviews with former AdaptHealth employees.  Cain Rbt. at ¶¶39, 43-46.  Further, Defendants' argument that this information was publicly available prior to the Jehoshaphat Report is undercut by their own prior argument that "the Short-Seller Report ***did not have all of the necessary financial data required to make organic growth calculations under the traditional definition***."  MTD at 14-15.[41]

Finally, Defendants claim that none "of the information in the Jehoshaphat Report (factual or not) indicate that the Organic Growth Statements were false or misleading when they were made."  Opp. at 44.  But this is another recycled motion to dismiss argument that the Court rejected when it sustained Lead Plaintiffs' falsity and loss causation allegations, both of which were based, in part, on the Jehoshaphat Report.  MTD Order at 24-28. And, in any event, whether the "Organic Growth Statements" were false or misleading or caused the stock price to decline are common merits issues that are not resolved at class certification.  §II.A.5.b.(2)(i), *supra*.

### c.      Individual Damages Issues Will Not Predominate

Defendants claim that, according to *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), Lead Plaintiffs must "set forth a methodology for calculating damages on a classwide basis in a manner consistent with their theories of liability" to satisfy the predominance requirement.  Opp. at 58-59.  But Third Circuit law "forecloses" that argument.  *DFC Glob.*, 2016 WL 4138613, at *14-15.  *See*

---

[41]  *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 270-71 (3d Cir. 2005); *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010); *Meyer v. Greene*, 710 F.3d 1189, 1199 (11th Cir. 2013); *Fila v. Pingtan Marine Enter. Ltd.*, 195 F. Supp. 3d 489, 497 (S.D.N.Y. 2016); and *In re EHang Holdings Ltd. Sec. Litig.*, 2022 WL 17718546, at *12 (S.D.N.Y. Dec. 15, 2022) all concerned, unlike here, information already known to the market and analyst "short" reports that did not provide any additional information not already known to the market.  Opp. at 43-44. Here, Defendants have not demonstrated the market was aware of the "McGee Tax Issue" or that AdaptHealth's organic growth had turned negative.  *In re DVI Inc. Sec. Litig.*, 2010 WL 3522090, at *6 (E.D. Pa. Sept. 3, 2010); *In re Xerox Corp. Sec. Litig.*, 935 F. Supp. 2d 448, 494 (D. Conn. 2013) and *In re Ikon Off. Sols., Inc. Sec. Litig.*, 131 F. Supp. 2d 680, 690 (E.D. Pa. 2001) are summary judgment decisions concerning loss causation, not class certification, and here the Court already found, as noted above, that Defendants had a duty to disclose the omitted information contained in the corrective disclosures.  The market's knowledge and loss causation, moreover, are issues common to all Class members that do not prevent loss causation.

*Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 374-75 (3d Cir. 2015) (It is "a misreading of *Comcast*" to interpret it as "'preclud[ing] certification under Rule 23(b)(3) in any case where the class members' damages are not susceptible to a formula for classwide measurement.'"). *Comcast* was "not in regard to a securities fraud litigation, which have generally been certified for class status" (*In re Heckman Corp. Sec. Litig.*, 2013 WL 2456104, at *14 (D. Del. June 6, 2013)), and "the Third Circuit has stated that *Comcast's* 'predominance analysis was specific to the antitrust claim at issue' in that case." *Conduent*, 2022 WL 17406565, at *4.

*Comcast* thus provides no basis to hold that damages-related issues defeat predominance. *See EQT*, 2022 WL 3293518, at *27–28 ("an inability to calculate damages on a classwide basis will not, on its own, bar certification"). Where, like here, "common issues predominate all other issues of law and fact in this case," the Court "need not assess the validity of Lead Plaintiffs' damages model at this time." *Id*.

### (1)    Lead Plaintiffs Provide a Class-Wide Measure of Damages Consistent with Their Theory of Liability

Lead Plaintiffs submit the "out of pocket" damages model for use in this case on a class-wide basis for their Exchange Act claims. Cain Rpt., ¶85-86. The "[u]se of the out-of-pocket damages model in securities case is hardly new or novel – it 'is the standard measurement of damages in Section 10(b) securities cases.'" *Weiner v. Tivity Health, Inc.*, 334 F.R.D. 123, 137 (M.D. Tenn. 2020); *EQT*, 2022 WL 3293518, at *27–28.

Because their "theory of liability is that [Defendants'] misrepresentations 'artificially inflated [AdaptHealth] stock, and that the stock price declined when the truth emerged causing financial loss to those who purchased at inflated prices,'" Lead Plaintiffs' proposal to use the out-of-pocket method to measure loss "is tied to this theory of liability." *Lannett Co.*, 2023 WL 2985120, at *4. *See Utesch.*, 2021 WL 3560949, at *19. Thus, the out-of-pocket model, which will measure damages based on the difference in inflation between when a Class member purchased and later sold AdaptHealth securities, "sufficiently measures damages resulting from

- 41 -

plaintiffs' theory of liability." *Wilson v. LSB Indus, Inc.*, 2018 WL 3913115, at *17 (S.D.N.Y. Aug. 13, 2018). *See Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 47-48 (S.D.N.Y. 2018).

But even if Defendants could identify flaws in Dr. Cain's proposed model, those flaws would apply Class-wide, and common issues would still predominate under Rule 23(b)(3) and therefore have no bearing on class certification. *See, e.g.*, *Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 139-40 (D.D.C. 2017) (certifying class where event study "could be applied 'formulaically' to calculate" damages); *In re JPMorgan Chase & Co. Sec. Litig.*, 2015 WL 10433433, at *7 (S.D.N.Y. Sept. 29, 2015).

### (2)    Lead Plaintiffs' Damages Model Is Sufficiently Detailed

Dr. Cain's submission more than satisfies Lead Plaintiffs' obligations at this stage of litigation. *See, e.g.*, *EQT*, 2022 WL 3293518, at *27-28 ("'At this stage of litigation, Lead Plaintiffs are *not* required to produce a detailed damages model.'"); *Bing Li v. Aeterna Zentaris, Inc.*, 2018 WL 1143174, at *2 (D.N.J. Feb. 28, 2018) (same); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL 5097883, at *12 (D.N.J. Aug. 31, 2015); *Hurwitz v. LRR Energy L.P.*, 2018 WL 6804481, at *3 n.3 (D. Del. Jan. 2, 2018).

Consistent with standard practices in securities class actions, Dr. Cain described his event study methodology for measuring damages. Cain Rpt., ¶¶87-90. Indeed, Dr. Cain's methodology is accepted by courts around the country at class certification. *See QuantumScape*, 2022 WL 17974629, at *15 ("He [Dr. Cain] thoroughly explained how he would calculate damages using the corrective disclosures based on a 'well-accepted methodology under Section 10(b) of the Exchange Act' that is sufficient to show by a preponderance of the evidence that loss causation and damages are capable of being established on a class wide basis.").

Defendants nevertheless contend that Lead Plaintiffs' damages model is not sufficient because Dr. Cain purportedly "offered no reliable means to control for the confounding information . . . in this case," did not take the facts of this case into account, and failed to explain how he will calculate damages for the two categories of misstatements. Opp. at 15, 59. But Defendants' ignore Dr. Cain's testimony explaining that his analysis took into account the specific

- 42 -

facts of this case.  Cain Tr.  255:8-256:23; 259:6-260:2.  And they overlook that courts regularly reject those arguments at class certification.[42]

Last, that Dr. Cain's Report relies on "language [he'd] used before" in past cases and that the "language describing the out-of-pocket damages methodology and the rationale behind it . . . doesn't change from report to report'" indicates that Dr. Cain "is a frequent flyer in these kinds of cases" and "cuts in favor of his reliability rather than against it."  *Utesch*, 2021 WL 3560949, at *16 n.12.  Indeed, that his methodology is used across cases "seems to reflect the fact that securities fraud cases fit Rule 23 'like a glove,' rather than suggest that class treatment is inappropriate."  *RH, Inc.*, 2018 WL 4931543, at *3.  *See Aeterna Zentaris*, 2018 WL 1143174, at *2 (out-of-pocket method acceptable where expert "'cut and pasted'" from another report because "[a]t this stage of litigation, [p]laintiffs are not required to produce a detailed damages model").  Dr. Cain's methodology is sufficient, as virtually all other courts to consider the issue have found, and

---

[42]   *See Conduent*, 2022 WL 17406565, at *5 ("[H]ow Lead Plaintiff will ultimately prove loss causation (*i.e.*, distinguish the impact of [the corrective] disclosure from other disclosures, news, and inflation) is a merits question that need not be answered at class certification."); *Utesch*, 2021 WL 3560949, at *16, n.14 (Dr. Cain "need not support his opinion with a damages model specifying precisely how Plaintiffs will measure the price impact of the various misrepresentations and corrective disclosures alleged here, nor specify exactly how Plaintiffs will distinguish the impact of various other factors to be uncovered in discovery that may have affected [AdaptHealth's] stock price during the class period."); *id*. at *16, n.13 ("propos[ing] a method of calculating damages on a class-wide basis" and "summariz[ing], albeit in general terms, the steps" for calculating out-of-pocket losses found to be sufficient); *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *19-*20 (S.D.N.Y. July 10, 2019) (rejecting Defendants' argument that Lead Plaintiffs' "event study will not be able to distinguish between Plaintiffs' [purported] two distinct theories of fraud"); *Pirnik*, 327 F.R.D. at 47-48 ("*Comcast* does not require Plaintiffs to account for variations in inflation throughout the class period at the class certification stage . . . . [T]o the extent Defendants' argument is that Plaintiffs' model fails to account for factual evidence of varied inflation, that is an argument that goes to the merits of whether Plaintiffs can accurately demonstrate price impact and goes beyond the Rule 23 inquiry."); *Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, 2018 WL 1535156, at *4 (N.D. Ill. Mar. 29, 2018) ("Defendants' arguments to the contrary notwithstanding, *Comcast* does not provide that damages must be measurable in a way that measures only those changes in value attributable to the plaintiffs' theory of liability.").

- 43 -

Defendants provide no evidence otherwise.  ████████████████████████

████████████████████████████████████████████████████████████████[43]

**B.      Lead Plaintiffs' Securities Act Claims Are Entitled to Certification**

**1.      Lead Plaintiffs Have Standing for the Securities Act Claims**

Defendants argue that Lead Plaintiffs lack standing to pursue their Securities Act claims. Opp. at 33-34, 70-72.  Not true.  Section 11 of the Securities Act expressly gives standing to sue to "'any person acquiring such security.'"  *DFC Glob.*, 2016 WL 4138613, at *10 (citing *In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 274 (S.D. Tex. 2005)).  And the phrase "any person acquiring such security" has been interpreted to include "'purchasers of shares issued and sold pursuant to the challenged registration statement.'"  *Dynegy*, 226 F.R.D. at 274.  Courts, including the Third Circuit, hold that investors that purchase directly in an offering meet this standard and have standing to pursue a Securities Act claim.  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 274 n.7 (3d Cir. 2006) (upholding denial of motion to dismiss where plaintiff "alleged that . . . it purchased 47,000 shares of Suprema common stock 'in' the 2001 Offering, making the purchase from underwriter Janney Montgomery"); *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2017 WL 1658822, *13 (D.N.J. Apr. 28, 2017); *Dartell*, 2016 WL 718150, at *4.

The evidence here proves that both Lead Plaintiffs purchased "in" the offering and have standing for their Securities Act claims.  ████████████████████████████████

---

[43]  Defendants' out-of-circuit authority concern unique issues not present here and are therefore inapposite.  *See Newton*, 259 F.3d at 187-88 ("[b]ecause the automated execution of orders . . . did not necessarily injure each class member, . . . 'whether a class member suffered damages would have to be determined on a trade by trade basis.'"); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 141-42 (S.D.N.Y. 2014) (concerning difficulty to value complex asset-backed securities at issue that "at times during the class period . . . may have been below the underlying securities' true value."); *Ohio Pub. Emps. Ret. Sys.*, 2018 WL 3861840, at *19 (involved affirmative expert testimony that a class-wide model could not be constructed for calculating damages for a materialization of the risk theory not present here); *BP P.L.C.*, 2013 WL 6388408, at *15-*17 (concerning two, "competing theories" of liability and the materialization of the risk theory of damages not at issue here); *see also Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *9 (N.D. Cal. Mar. 16, 2016) (distinguishing BP as involving a "non-traditional" theory of liability that was "antithetical to the 'fraud-on-the-market' theory.").

4882-9561-9684.v1

████████████████████████████████████████

███████████; *DFC Glob.*, 2016 WL 4138613, at \*10 (certifying class over defendants' standing objection where plaintiff "purchased thousands of shares of *DFC Global* stock the day after the April 7, 2011 offering, at the offering price, and from one of the Defendants who underwrote the offering"); *Dynegy*, 226 F.R.D. at 274 (purchase on offering date at offering price "demonstrates that [plaintiff] purchased DI common stock in the offering"); *Suprema*, 2007 WL 1217980, at \*6 (same).   And Lead Plaintiffs' investment manager, Emerald, ██████

████████████████████████████████████████

████████████████████████████████████████; *DFC Glob.*, 2016 WL 4138613, at \*10 ("deposition testimony confirmed that the purchase was made on behalf of the [plaintiff] in the April 2011 public offering").  While this evidence, alone, would be sufficient to prove Lead Plaintiffs' standing, ██████████████████████

████████████████████████████████████████

██████    Defendants' standing argument and their focus on what they describe as "bald assertions" in the Complaint simply ignores the evidence.  Opp. at 70.[44]

Defendants argue that Lead Plaintiffs lack standing because they cannot trace specific shares to the offering, citing the Wiener Report to argue that Lead Plaintiffs owned a "pro-rata interest" of a commingled "fungible" account at the DTC.  Opp. at 71.  Defendants' argument fails for two reasons.  First, it (and the Wiener Report) are premature.  Whether a plaintiff can trace its purchase to an offering is a merits question that should not be resolved at class certification.

---

[44]  Defendants string cite a number of cases to argue that Lead Plaintiffs lack standing.  Opp. at 71-72.  They are wrong.  Not one involved investors that purchased directly in the offering, like Lead Plaintiffs did here.  *De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at \*15, \*17 (D.N.J Dec. 31, 2018); *In re RAIT Fin. Tr. Sec. Litig.*, 2008 WL 5378164 at \*4 (ED. Pa. Dec. 22, 2008); *In re Puda Coal Sec. Inc. Litig.*, 2013 WL 5493007 at \* 5-\*9 (S.D.N.Y. Oct. 1, 2013); *In re FleetBoston Fin. Corp. Sec. Litig.*, 253 F.R.D. 315, 345-346, 351 (D.N.J. Oct. 20, 2008); *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 117 (S.D.N.Y. Dec. 5, 2006).  Since both Lead Plaintiffs have standing, Defendants' authority requiring dismissal of claims where no standing exists are inapposite.  Opp. at 72 (string citing cases for proposition that a lack of standing "requires dismissal of [Lead Plaintiff's] claims").

- 45 -

*Suprema Specialities,* 438 F.3d at 274, n.7 (noting that discovery is required "'for plaintiffs to know whether their shares were newly issued or were purchased in the secondary market'"); *Dartell*, 2016 WL 718150 at *4 ("Defendants' argument that Lead Plaintiffs cannot trace their shares to the IPO fails at this stage."); *In re Schering-Plough Corp./ENHANCE Sec. Litig.*, 2012 WL 4482032, at *10 (D.N.J. Sept. 25, 2012) (granting motion to certify class, finding "the argument that [plaintiff] cannot trace its damages to the 2007 offering . . . premature"). Defendants even acknowledge that standing is not a class certification issue. Opp. at 70 ("Standing is a 'threshold jurisdictional' requirement . . . .").

Second, as previously discussed, courts throughout the country recognize that investors that purchase directly ***in*** an offering do so pursuant to the underlying registration statement and have standing to pursue Securities Act claims. *See* p. 44, *supra*; *see also Ha. Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*, 338 F.R.D. 205 (S.D.N.Y. 2021) (certifying class over defendants' tracing arguments, noting that only "some class members, i.e. those who bought on the secondary market ***instead of directly from the underwriters***, will then have to show that 'their purchases can traced back to the Registration Statement'"); *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104 (2013) (purchasing shares "directly in the secondary offering itself . . . would obviously eliminate any questions about the lineage of plaintiffs' shares."). Defendants' tracing argument and Wiener's opinions about the DTC and its effect on tracing are therefore irrelevant.[45]

---

[45] Defendants' authority actually supports Lead Plaintiffs' standing in this case. Opp. at 70 (citing *In re Ariad Pharms. Sec. Litig.*, 842 F.3d 744, 755-56 (1st Cir. 2016) and *Barnes v. Osofsky*, 373 F.2d 269, 271, 273 (2d. Cir. 1967)). In *Ariad*, the First Circuit affirmed dismissal of Securities Act claims where plaintiffs made "'general allegations'" of traceability. 842 F.3d at 755-56. But the Court stated expressly that "[t]he plaintiffs could have met this [tracing] bar by pleading that they 'purchased their shares directly in the secondary offering itself.'" *Id.* (quoting *Century Aluminum*, 729 F.3d at 1106). But in *Ariad* "the named plaintiffs all bought their shares 'on the open market'" and "only one . . . bought on the day of the offering and none of them paid the offering price." *Id.* at 756. *Barnes* is in accord. *Barnes*, 373 F.2d at 271, 273 (rejecting a broad interpretation of standing but noting that appellant "can trace 25 [shares] which were bought from an underwriter, but not the balance – all purchased on the market."). Under *Ariad* and *Barnes*, both Lead Plaintiffs have standing.

- 46 -

Defendants' reliance on the Wiener Report is also misplaced.  Opp. at 33-34, 71.  Wiener opines that since shares of AdaptHealth stock had the same CUSIP number as existing shares and were commingled in one account at the DTC, there is no way for any investor to satisfy the tracing requirement for a Securities Act claim in connection with the secondary offering.  Wiener Rpt., ¶¶51,69-70.  But Wiener overlooks that investors can use well-accepted accounting methods and transaction records to satisfy the tracing requirement.  According to Professor Daniel Taylor ("Professor Taylor"), a Professor at The Wharton School, "[t]imestamped account-level transaction records, in conjunction with FIFO and LIFO accounting methods can be used by parties and courts to trace securities ownership in modern markets."  Taylor Rpt. (Ex. R) at 2.[46]  These accounting methods can be used "to trace the ownership of securities from one account to another, and in turn, all the way back to the issuer" in conjunction with modern records that "show exactly when securities in one account are transferred to another account, whether within the same broker-dealer or between different broker-dealers."  *Id.* at 6-8.  These opinions and arguments, however, must await a complete record at summary judgment and trial.

### 2.      Common Questions of Law and Fact Predominate

Defendants argue that Lead Plaintiffs cannot satisfy the predominance requirement because purported publicly available information raise issues of knowledge.  Opp. at 73.  But they ignore that, as this Court has acknowledged, "[t]he Supreme Court . . . has explained that '[p]redominance is a test ***readily met*** in certain cases alleging . . . securities fraud.'"  *Vicuron*, 233 F.R.D. at 428 (quoting *Amchem*, 521 U.S. at 625, 117 S. Ct. 2231).

Defendants suggest the opposite – that predominance is ***readily defeated***, arguing that "[r]egardless of whether ultimately successful, the actual knowledge defense defeats class certification where 'individual knowledge inquiries might be necessary' to resolve it."  Opp. at 73 (citing *Kosmos Energy*, 299 F.R.D. at 152-53.  Defendants have misread their own authority.  As the court in *Kosmos* made clear, "Defendants, of course, bear the burden . . . on this [actual

---

[46]   To avoid prejudice, Lead Plaintiffs submit the Taylor Report to address the premature merits opinions in the Wiener Report.

4882-9561-9684.v1

knowledge] affirmative defense and, as such, must submit evidence showing the existence of individual investor knowledge sufficient to preclude a finding by the Court that 'common liability issues predominate over individual knowledge issues.'" *Id.*; *Schuh v. HCA Holdings, Inc.*, 2014 WL 4716231, at *9 (M.D. Tenn. Sept. 22, 2014) (quoting *Royal Bank of Scot.*, 709 F.3d at 127 n.12 (defendants did not meet their burden because "[i]f courts held that merely available, as opposed to widely known, public information exposed an untruth or omission, thereby rendering it immaterial, they would effectively shift the burden of proof on §11's affirmative defense").

Defendants have not, and cannot, meet this standard. They have offered zero evidence to suggest that individual investors knew about McGee's involvement in the tax fraud scheme or the investigation. Opp. at 73 (cross-referencing pp. 27-28) (citing Defs.' Exs. 79-85). As discussed in §II.A.5.b.(2)(i)1., *supra*, the six foreign language articles Defendants cite did not inform the market about McGee's connection to the tax scheme or the related investigations.

Defendants' contention that "individual knowledge inquiries are necessary" is contradicted by the record. Opp. at 73. There is no evidence to support this assertion or to suggest that individual inquiries would predominate over common inquiries. *See* §II.A.5., *supra*.[47]

### 3. The Class Easily Satisfies the Numerosity Requirement

Defendants argue that "Lead Plaintiffs have failed to prove numerosity," incorporating their argument that Lead Plaintiffs lack standing because of the manner in which shares were held at the DTC. Opp. at 74. But the class easily meets the 40 member threshold for numerosity in this Circuit. *Vicuron*, 233 F.R.D. at 425 (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)). The fact that AdaptHealth sold 8 million shares to investors in its secondary offering through a syndicate of 15 underwriters leads to the inescapable conclusion that the class consists

---

[47] Defendants' authority is easily distinguishable. Opp. at 73. In each case, evidence of widespread actual knowledge of the omitted information persuaded each court to conclude that individual issues of knowledge could overwhelm the common issues. *Kosmos Energy*, 299 F.R.D. at 144, 152-54; *Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 43-44 (2d Cir. 2006); *Vignola v. Fat Brands, Inc.*, 2020 WL 1934976, at *4-6 (C.D. Cal. Mar. 13, 2020); *N.J. Carpenters Health Fund v. Rali Series 2006-QO1 Tr.*, 477 F. App'x 809, 813 (2d Cir. 2012). Defendants do not present anything remotely similar.

of far more than 40 members with Securities Act claims.  See Ex. S.  And internal records from

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████ [48]

### 4.      Lead Plaintiffs Are Typical and Adequate to Represent the Class

As discussed extensively in §§II.A.3.(a)-(c), Lead Plaintiffs' claims are typical of the class's claims and they have demonstrated their adequacy.  *See* §II.A.2.(a)-(d), *supra*.  Defendants argue that they are not, relying exclusively on their argument that Lead Plaintiffs lack standing to represent the class.  Opp. at 74.  But as discussed, both Lead Plaintiffs have standing.  *See* §II.B.1., *supra*.  Defendants authority is thus inapposite.  *Id.*; *McNair*, 672 F.3d at 224 (no standing where plaintiffs were not customers and not subject to deceptive techniques); *Initial Pub. Offering*, 227 F.R.D. at 121 (no standing for investors that sold above the offering price).

### 5.      Defendants Present No Justification for Narrowing the Class Definition

Defendants ask the Court to narrow the proposed class definition.  Opp. at 74.  But they present no justification, arguing incorrectly that the class as defined is overbroad because it begins before the first date of the secondary offering, ends after the alleged fraud ended, and includes purchasers that cannot satisfy the tracing requirements.  *Id.*  These assertions lack merit.  By the express terms of the statute, any Securities Act claim would be limited to investors that purchased in or traceable to the offering, which would necessarily begin only on the offering date.  ¶105.  Defendant then have the burden to prove, which they have not done, that something other than their misrepresentations and omissions caused the decline in value.  15 U.S.C. §77k(e).  Since the class's Securities Exchange Act claims extend beyond April 13, 2021, there is no justification for shortening the Class Period.  And since Defendants have failed to prove that investors will be

---

[48]   Defendants' reliance on *FleetBoston*, 253 F.R.D. at 350-51, again, is misplaced.  Opp. at 74. *FleetBoston* did not involve purchasers who were "allocated shares in the offering," as Lead Plaintiffs were here.  *Compare* ████, *with FleetBoston*, 253 F.R.D. at 345-346, 351.

unable to trace their shares to the secondary offering, modifying the class definition is unwarranted. *See* §II.B.1., *supra*.

## III.   CONCLUSION

This case, like nearly all securities class actions, is perfectly suited to class certification: the class is numerous; the proposed Class Representatives have demonstrated their adequacy and typicality under Rule 23(a); questions common to the Class exist and predominate; and a class action is indisputably a superior means of litigating Class members' claims. Accordingly, the Court should certify the Class, appoint Bucks County and Delaware County as Class Representatives, and appoint Robbins Geller Rudman & Dowd LLP as Class Counsel.

DATED:  May 22, 2023

ROBBINS GELLER RUDMAN
  & DOWD LLP
DOUGLAS R. BRITTON (admitted *pro hac vice*)
KEVIN A. LAVELLE (admitted *pro hac vice*)
JOSEPH J. TULL (admitted *pro hac vice*)


                    s/ DOUGLAS R. BRITTON
                     DOUGLAS R. BRITTON

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dougb@rgrdlaw.com
klavelle@rgrdlaw.com
jtull@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

KESSLER TOPAZ MELTZER
  & CHECK, LLP
ANDREW L. ZIVITZ (PA #76554)
HELEN J. BASS (PA # 330646)
280 King of Prussia Road
Radnor, PA  19087
Telephone:  610/667-7706
610/667-7056 (fax)
azivitz@ktmc.com
hbass@ktmc.com

Local Counsel for Lead Plaintiffs

- 50 -

4882-9561-9684.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on May 21, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ DOUGLAS R. BRITTON
DOUGLAS R. BRITTON

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  dougb@rgrdlaw.com

4882-9561-9684.v1

# Mailing Information for a Case 2:21-cv-03382-HB DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM v. ADAPTHEALTH CORP. F/K/A DFB HEALTHCARE ACQUISITIONS CORP. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **MICHAEL ALBERT**
  malbert@rgrdlaw.com

- **NAUMON A. AMJED**
  namjed@ktmc.com,ksauder@ktmc.com,hpaffas@ktmc.com,iyeates@ktmc.com,4980043420@filings.docketbird.com,mswift@ktmc.com

- **Lee Albert**
  lalbert@glancylaw.com,lee-albert-5832@ecf.pacerpro.com,info@glancylaw.com

- **ALLISON A. BERKOWITCH**
  ABERKOWITCH@WILKE.COM

- **DOUGLAS R. BRITTON**
  dougb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Helen Jane Bass**
  hbass@ktmc.com

- **JENNIFER N. CARINGAL**
  jcaringal@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **STEVEN D. COSTELLO**
  sdc@saxtonstump.com,lk@saxtonstump.com,dmk@saxtonstump.com

- **Vincent A. Coppola**
  vcoppola@pribanic.com,gregory@pribanic.com

- **Todd Cosenza**
  tcosenza@willkie.com,mao@willkie.com

- **MELISSA HAZELL DAVIS**
  mdavis@griesinglaw.com,dpotts@griesinglaw.com

- **Zeh S. Ekono**
  zekono@willkie.com

- **STEPHEN J. FLEURY , JR**
  sjf@saxtonstump.com,lk@saxtonstump.com,dmk@saxtonstump.com

- **RYAN GANDER**
  RGander@KRAMERLEVIN.com

- **FRANCINE FRIEDMAN GRIESING**
  fgriesing@griesinglaw.com

- **VINCENT P. IANNECE**
  VIANNECE@WILLKIE.COM

- **DANI R. JAMES**
  djames@kramerlevin.com

- **CHRISTOPHER R. KINNON**
  ckinnon@rgrdlaw.com

- **KEVIN A. LAVELLE**
  klavelle@rgrdlaw.com,e_file_sd@rgrdlaw.com,bengfelt@rgrdlaw.com

- **MARGOT G. MOONEY**
  MMOONEY@WILLKIE.COM

- **MATTHEW MUSTOKOFF**
  mmustokoff@ktmc.com,5558085420@filings.docketbird.com,mswift@ktmc.com

- **DANIELLE S. MYERS**
  danim@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **JUAN CARLOS SANCHEZ**
  jsanchez@rgrdlaw.com

- **MARJORIE E. SHELDON**
  MSheldon@KRAMERLEVIN.com

- **JOSEPH J. TULL**
  jtull@rgrdlaw.com

- **ANDREW L. ZIVITZ**
  azivitz@ktmc.com,3949407420@filings.docketbird.com,rhrouda@ktmc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)