# EXHIBIT A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

- - -

DELAWARE COUNTY                  :   CIVIL ACTION NO.
EMPLOYEES RETIREMENT             :   2:21-cv-03382-HB
SYSTEM and BUCKS COUNTY          :
EMPLOYEES' RETIREMENT            :
SYSTEM, Individually and         :
on Behalf of All                 :
Others Similarly                 :
Situated,                        :
                                 :
  PLAINTIFFS,                    :
                                 :
         vs.                     :
                                 :
ADAPTHEALTH CORP. F/k/a          :
DFB HEALTHCARE                   :
ACQUISITIONS CORP.,              :
LUKE MCGEE, STEPHEN P.           :
GRIGGS, JASON CLEMENS,           :
FRANK J. MULLEN,RICHARD          :
BARASCH, JOSHUA PARNES,          :
ALAN QUASHA, TERENCE             :
CONNORS, DR. SUSAN               :
WEAVER, DALE WOLF,               :
BRADLEY COPPENS, and             :
DAVID S. WILLIAMS III,           :
                                 :
         DEFENDANTS.             :
                                 :

- - -

FEBRUARY 13, 2023

- - -

Page 2

**JONATHAN LICHTENSTEIN**

- - -

30(b)(6) videotaped deposition of the Delaware County Employees' Retirement System taken through Jonathan Lichtenstein, via Zoom, beginning at 10:04 a.m., before Beau Dillard, RPR, a Notary Public in and for the Commonwealth of Pennsylvania, State of New York and Certified Registered Professional Reporter.

- - -

JONATHAN LICHTENSTEIN

A P P E A R A N C E S :

ROBINS GELLER RUDMAN & DOWD LLP
BY:  DOUG BRITTON, ESQ.
BY:  KEVIN LAVELLE, ESQ.
BY:  JOSEPH TULL, ESQ.
655 W Broadway
Unit 1900
San Diego, California 92101
(619) 231-1058
Dougb@rgrdlaw.com
Representing the Plaintiffs and
Witness

WILLKIE FARR & GALLAGHER LLP
BY:  ALLISON BERKOWITCH, ESQ.
BY:  ZEH EKONO, ESQ.
BY:  MARGOT MOONEY, ESQ.
BY:  VINCENT IANNECE, ESQ.
BY:  BEN WOLTERS, ESQ.
787 Seventh Avenue
New York, New York 10019
212-728-8994
ABerkowitch@willkie.com
Representing the Defendants,
AdaptHealth

KRAMER LEVIN NAFTALIS & FRANKEL
BY:  RYAN GANDER, ESQ.
1177 Avenue of the Americas
New York, New York 10036
212-715-8994
Rgander@kramerlevin.com
Representing the Defendant,
Luke McGee

- - -

A L S O   P R E S E N T : FRANKIE MATUS,
VIDEOGRAPHER
ROSS COLBY,
The Technician

- - -

Page 4

JONATHAN LICHTENSTEIN

I N D E X

- - -

EXAMINATION                                           PAGE

JONATHAN LICHTENSTEIN

BY MS. BERKOWITCH                                      10

BY MR. BRITTON                                        212

- - -

E X H I B I T S

- - -

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | Tab 1 | 19 |
| Exhibit 2 | Tab 2 | 36 |
| Exhibit 3 | Tab 3 | 43 |
| Exhibit 4 | Tab 4 | 48 |
| Exhibit 5 | Tab 6 | 59 |
| Exhibit 6 | Tab 5 | 65 |
| Exhibit 7 | Tab 7 | 79 |
| Exhibit 8 | Tab 9 | 108 |
| Exhibit 9 | Tab 10 | 110 |
| Exhibit 10 | Tab 11 | 111 |
| Exhibit 11 | Tab 14 | 113 |
| Exhibit 12 | Tab 16 | 114 |
| Exhibit 13 | Tab 16(a) | 118 |
| Exhibit 14 | Tab 19 | 126 |

Page 5

JONATHAN LICHTENSTEIN

| Exhibit 15 | Tab 20 | 131 |
| Exhibit 16 | Tab 22 | 146 |
| Exhibit 17 | Tab 25 | 148 |
| Exhibit 18 | Tab 23 | 153 |
| Exhibit 19 | Tab 26 | 164 |
| Exhibit 20 | Tab 32 | 197 |
| Exhibit 21 | Tab 33 | 199 |
| Exhibit 22 | Tab 35 | 208 |

- - -

Page 6

JONATHAN LICHTENSTEIN

DEPOSITION SUPPORT INDEX

DIRECTION TO WITNESS NOT TO ANSWER

Page    Line

None

REQUEST FOR PRODUCTION OF DOCUMENTS

Page    Line      Description

None

STIPULATIONS

Page    Line

7       1

QUESTIONS MARKED

Page    Line

None

JONATHAN LICHTENSTEIN

- - -

The attorneys participating in this deposition acknowledge that the court stenographer is not physically present in the deposition room and that he will be reporting this deposition remotely.

They further acknowledge that, in lieu of an oath administered in person, the oath will be administered remotely. The parties and their counsel consent to this arrangement and waive any objections to this manner of reporting.

The attorneys have indicated their agreement to the above stipulation off the stenographic record.

It is stipulated and agreed to by and between counsel for the respective parties that all objections, except as to form of the question, are reserved to the time of trial.

- - -

Page 8

JONATHAN LICHTENSTEIN

- - -

THE VIDEOGRAPHER:  Good morning. We are going on the record at 10:04 a.m., Eastern Time, on February 13th, 2023.

This is Media Unit 1 of the video recorded deposition of John Lichtenstein in the matter of Delaware County Employees Retirement System, et al., Versus AdaptHealth Corp. et al., filed in the United States District Court Eastern District of Pennsylvania.  Case Number 2:21-CV-03382-HB.

My name is Frankie Matus representing Veritext and I am the videographer.  The court reporter is Beau Dillard, also from the firm Veritext Legal Solutions.

I am not authorized to administer an oath, I am not related to any party in this action nor am I financially interested in the outcome.

Counsel will now state their appearances for the record.

JONATHAN LICHTENSTEIN

MS. BERKOWITCH:  Good morning, everyone.  I am Allison Berkowitch of Willkie Farr & Gallagher for the AdaptHealth defendants.

And I'm also joined by my colleagues, Zeh Ekono, Margot Mooney, Vincent Iannece and Ben Wolters.

MR. BRITTON:  Good morning. This is Doug Britton with Robbins Geller, on behalf of Plaintiffs and the Witness. Also with me today is Kevin Lavelle and Joseph Tull, both with Robbins Geller.

MR. GANDER:  And good morning, everyone.  This is Ryan Gander from Kramer Levin Naftalis & Frankel, here on behalf of defendant, Luke McGee.

THE VIDEOGRAPHER:  Will the Court Reporter please swear in the Witness.

- - -

JONATHAN LICHTENSTEIN, after having been first duly sworn, was examined and testified as follows:

- - -

Page 10

JONATHAN LICHTENSTEIN

- - -

EXAMINATION

- - -

BY MS. BERKOWITCH:

Q.        Good morning, Mr. Lichtenstein. Can you please state your full name and address for the record?

A.        Sure.  Jonathan, middle initial G, Lichtenstein.  Office or home?

Q.        Office is fine.

A.        201 -- 201 West 8th, you know, hold on.  I always forget our exact county address, I'll give you my home.  1 Chaplin Place, Wallingford, PA 19086.

Q.        Thank you.  And are you being represented by Robbins Geller today?

A.        Correct.

Q.        Have you ever been deposed before?

A.        No.

Q.        And I would like to go over some ground rules for this deposition.  First of all, you are under oath today.

Do you understand that?

JONATHAN LICHTENSTEIN

A.      Correct.

Q.      Great.  Second, it is important that there be a clear record of today's deposition, I'm going to be asking you a series of questions and to ensure that there is a clear transcript of your answers, please respond verbally to all of my questions, no head nods or head shakes.

Do you understand that?

A.      Understood.

Q.      Third, so the Court Reporter can accurately transcribe the deposition, let's try to not talk at the same time.  Please let me finish my question before you answer and I'll let you finish your answer before I start my next question.

Do you understand that?

A.      Agreed.

Q.      Fourth, if you don't understand a question, just let me know and I will do my best to rephrase it.  If you don't say anything, I will assume that you've understood the question.  Do you understand?

A.      Understood.

JONATHAN LICHTENSTEIN

Q.      Fifth, at times your counsel may object to my questions, but unless he instructs you not to answer, you can answer the question when he finishes stating his objection.

Do you understand?

A.      Understood.

Q.      And finally, if at any point you would like to take a break, just let me know or your counsel know.  The only exception is if there is a question pending, in that instance I will ask you to answer the question before we take the break.  Do you understand?

A.      Understood.

Q.      Do you have any questions about the procedures that we'll follow today?

A.      No.  That makes sense.  Thank you.

Q.      Great.  And is there any reason why you can't testify truthfully and accurately today?

A.      No.

Q.      Wonderful.  So I would also like to go over some Zoom deposition rules, obviously, because we are doing this deposition

JONATHAN LICHTENSTEIN

remotely.  I need to ask you a few questions about your environment, where you are right now.

A.      Okay.

Q.      Is there anybody else in the room with you?

A.      No.

Q.      Do you understand that when we are on the record, you are not allowed to communicate with anyone during the deposition and this includes messaging, texting, emailing or chatting in Zoom?

A.      Correct.  I actually have my email -- email shut down and my phone turned off.

Q.      Oh, wonderful.  Thank you for that.  And finally, do you have any written, printed or electronic information with you in the deposition right now?

A.      No.  Nothing that I can reference.

Q.      Okay.  So I would like to start off by asking you a few questions about your background.  Could you please describe your

JONATHAN LICHTENSTEIN

formal education after high school?

A.        Sure.  I graduated from Cornell University, class of '90 and graduated from New York University Law school, class of '96.

Q.        And can you describe your employment history after you graduated?

A.        Sure.  I worked for a number of consulting firms in DC for approximately three years before going to law school.  After law school, I worked for two large firms in Philadelphia, primarily in public finance but also for banking.

I later decided that I was not happy in the large firm environment, did a number of things and then the opportunity to join the County came up in January of 2020 and I've worked here since.

THE VIDEOGRAPHER:  I'm sorry, Counsel.  Is anyone else having a hard time hearing the Witness?

A.        Is this any better?

THE VIDEOGRAPHER:  As of right now, yes, but I don't know.

JONATHAN LICHTENSTEIN

A.        Okay.  I'll try to get --

THE VIDEOGRAPHER:  Maybe speak into the microphone closer and if it happens again we can just go off the record.

A.        Okay.  Can you hear me now?  I have the microphone within about a foot.

BY MS. BERKOWITCH:

Q.        Yeah.  That sounds good to me at least.

A.        Okay.  Great.  Do you need me to repeat any of the prior?

Q.        No.  I think it's okay.  Just quickly, though, could you please just explain what your title and responsibilities were to each of the roles that you mentioned?

So when you were working at a consulting firms, what was your role at those firms?

A.        I was a research analyst doing various, you know, researching topics.  One -- one was a consulting firm that did lobbying on software reuse, the other was a consulting firm that worked on antitrust litigation.

JONATHAN LICHTENSTEIN

And in both cases it was various research and writing on the topics that they were being asked to provide consulting services on.

THE VIDEOGRAPHER:  Yeah. Counsel, we're going to go off the record.  It's too gargled for myself and the Court Reporter.

The time is now 10:12 a.m., we're going off the video record.

- - -

(Whereupon, a recess took place from 10:12 a.m. to 10:14 a.m.)

- - -

THE VIDEOGRAPHER:  The time is now 10:14 a.m., we're going back on the video record.

BY MS. BERKOWITCH:

Q.      So, Mr. Lichtenstein, you were just telling us about your role at the consulting firms that you worked at.  So after you went to law school, you worked for two large firms.  I assume you were an associate at those firms?

JONATHAN LICHTENSTEIN

A.        I was an associate at Drinker. I was later promoted to a member -- I started as an associate at Cozen O'Connor, was later promoted to a member and then later became shareholder.

Q.        And then in January of 2020, you joined the County.  Is that right?

A.        Correct.  Correct.

Q.        And it's the county that currently employs you now?

A.        Correct.

Q.        Okay.  And does the Retirement System consider itself to be a retirement fund or a retirement plan?

A.        Under the Pennsylvania law, every county is able to create a retirement fund for its employees.  It's a defined benefit plan, not a defined contribution.  Under the law there is a set board which consists of three counsel members, the controller and the treasurer, who make all the decisions on behalf of the Fund.

Q.        Got it.  And what is your title at -- well, I guess for the County?

Page 18

JONATHAN LICHTENSTEIN

A.        I'm deputy solicitor for the County and act as the solicitor for the Retirement Board.

Q.        And as deputy solicitor, what does your job entail?  What are your responsibilities?

A.        Follow -- generally everything from helping with right to no requests, helping to draft ordinances and legislation, reviewing contracts, reviewing questions from departments on how they can legally comply with requests from various regulators and agencies.

Q.        And who do you report to?

A.        The solicitor.

Q.        And who is the -- who is that?

A.        William Martin.

Q.        And does anybody report to you?

A.        No.

Q.        And then in your role as solicitor for the Board, what does that role entail?  What are your responsibilities there?

A.        Attend -- attend all meetings, review all contracts and other legal documents for the Board, answer questions that come up,

Page 19

JONATHAN LICHTENSTEIN

you know, in -- in conjunction with outside counsel if needed on retiree benefits and payment and answer any other legal issues that come up to the Board.

Q.        And are those related to the retirement fund?

A.        Yeah.  That's the only thing the Board -- the Board manages the investments in the Fund and the payments out to retirees, that's its sole role.

Q.        Okay.  Great.  I would like to please introduce the first exhibit, which is Tab 1, Ben, as Exhibit 1, please.

- - -

(Whereupon the document was marked, for identification purposes, as Exhibit Number 1.)

- - -

MR. BRITTON:  Mr. Lichtenstein, when you're presented with exhibits, you're free to take as much time as you need to review the exhibit to become familiar with it before you answer any questions about it.

Page 20

JONATHAN LICHTENSTEIN

A.        Thank you.  I'm actually not seeing anything.  There it goes.  Let me --

MS. BERKOWITCH:  Would it be possible -- sorry.  Would it be possible to show the exhibit through the screen share?

THE TECH:  It is.  Would you like me to do that?

MS. BERKOWITCH:  Yes.  Please.

THE TECH:  Okay.  Stand by, please.

MS. BERKOWITCH:  Thank you.

A.        I also have the exhibit up on my screen.

THE TECH:  Sorry.

BY MS. BERKOWITCH:

Q.        In the meantime, Mr. Lichtenstein, do you recognize this document?

A.        Yes.

Q.        What is it?

A.        It is the notice of my deposition today and the topics that will be covered.

Page 21

JONATHAN LICHTENSTEIN

Q.        And can you please go to Page 10 and just scroll through to Page 13?  So prior to today's deposition, did you review the topics of examination that are listed on these pages, 10 through 13?

A.        Yes.

Q.        And are you appearing today as the County's representative as to all of the topics of examination on Pages 10 through 13?

A.        Correct.

Q.        So you are prepared to testify in your 30(b)(6) capacity as to all of the topics in this deposition notice?

A.        Correct.

Q.        Is there anything on this list that you're not prepared to talk about?

A.        No.

Q.        Okay.  And do you understand that as the designated representative for this deposition, my questions are asking about the County's knowledge, not only your personal knowledge?

A.        Correct.

Q.        And when I am asking questions

Page 22

JONATHAN LICHTENSTEIN

about your personal knowledge, I will refer to you as you and when I'm asking about the County's knowledge, I will refer to the County as the County or Delaware County.

Is that okay?

A.    Understood.  Yes.  That's fine.

Q.    And did you prepare to testify on these topics in the deposition notice today?

A.    I reviewed the notice.  I don't know quite what you mean by prepare.

Q.    Well, so how did you prepare? What steps did you take to prepare for this deposition?

MR. BRITTON:  Objection.  Vague and ambiguous as to prepare.  You can answer.

MS. BERKOWITCH:  I can clarify.

BY MS. BERKOWITCH:

Q.    So, for example, how many times did you meet with attorneys from Robbins Geller?

MR. BRITTON:  Hold on one second.  Jonathan, hold on one second. I'm going to caution you to -- you can

Page 23

JONATHAN LICHTENSTEIN

testify about the existence of meetings and conversations, but not about what was said during those meetings and conversations.  So you can answer.

A.       Sorry.  One phone call and two more formal meetings.

BY MS. BERKOWITCH:

Q.       And when did those take place?

A.       Within the last three weeks.

Q.       How long was the phone call?

A.       I would say approximately 30 minutes.

Q.       And how about the two meetings? How long were they?

A.       Approximately an hour and a half to two hours.

Q.       And who did you meet with from Robbins Geller?

A.       The team that's on the phone today.

Q.       Did you speak with any employees of the County?

A.       Yes.  I have spoken with them about the case, not directly with respect to

JONATHAN LICHTENSTEIN

this -- this deposition other than -- other than letting the controller know that this was taking place, but not as to the contents.

Q.       And who did you speak with from the County about this matter, generally?

A.       The controller.

Q.       Okay.  And how long was that discussion?

A.       A couple of minutes.

Q.       And when did that take place?

A.       Within the last month, just -- just telling her that this was coming up and that I was going to be able -- I was going to be the witness for the County.

Q.       Did you speak to any of the Board members?

MR. BRITTON:  Objection.  Hold on.  Objection.  Vague and ambiguous as to time or topic.

MS. BERKOWITCH:  I can clarify again.

BY MS. BERKOWITCH:

Q.       Did you speak to any board members about this deposition?

JONATHAN LICHTENSTEIN

A.      At the last retirement board meeting, it was mentioned that the litigation was ongoing and the deposition was going to be part of that, but no details were shared other than just the existence of the deposition.

Q.      So have you spoken to any of the board members about this action more generally?

A.      No.

Q.      In preparing for this deposition today?

A.      No.

Q.      Other than the individuals that we've discussed, did you speak to anyone else about today's deposition?

A.      No.

Q.      Did you review any documents?

A.      No.

Q.      Did your counsel provide -- so your counsel didn't provide you with any documents to review before today's deposition?

A.      No.

Q.      Is there anything else that you did to prepare for today's deposition?

A.      No.

JONATHAN LICHTENSTEIN

Q.      Okay.  So going back to -- oh, sorry.  Strike that.  One last question.

Are you being compensated for testifying today?

A.      No.

Q.      So going back to kind of the County's structure.  Does the County have any employees?

A.      The County in general?  The county --

Q.      The Retirement System.

A.      The retirement system does not have any direct employees.  The board manages the -- the Fund and makes high-level decisions.  The county controller's office make -- takes care of the administrative side of the Fund, but they're not specifically employed by the Fund, these are just county employees who are doing this as part of their overall duties.

Q.      So you mentioned earlier and just now that the Board administers the retirement fund.  So just to make sure that I understand, the board members are not employed by the County?

JONATHAN LICHTENSTEIN

MR. BRITTON:  Objection.

Misstates his testimony.  You can answer.

A.        The controller and the treasurer are both county employees.  The counsel members are not, they're elected officials.

BY MS. BERKOWITCH:

Q.        Okay.  But you are employed by the County as the solicitor?

A.        Yes.  Yes.

Q.        And does the Fund have any of its own employees?

A.        No.

Q.        Who currently sits on the Board of Directors?

A.        That would be three counsel members; Counsel Member Schaefer, Counsel Member Reuther and Counsel Member Taylor, the treasurer, James Hackett, and the controller, Joanne Phillips.

Q.        And were all of those individuals on the Board during the alleged class period?

A.        No.

Q.        Who was on the Board during the

Page 28

JONATHAN LICHTENSTEIN

relevant period?

A.        I'd have to go back and review. It may also be available publically on the website.  There were other counsel members appointed at various periods of time during that period.

Q.        And so you did not sit on the Board for the entirety of the alleged class period, correct?

A.        I'm not on the Board.  I've been solicitor to the Board since spring of 2020.

Q.        Okay.  Does the Board owe a fiduciary duty to the County?

A.        It owes a fiduciary duty to the retirees to manage the investments on their behalf.

Q.        And does the Board comply with that duty of administering the retirement fund?

A.        I'm sorry.  Could you restate the question?

Q.        Sure.  Does the Board comply with that duty, its fiduciary duty in administering the retirement fund?

A.        Yes.

JONATHAN LICHTENSTEIN

MR. BRITTON:  Objection.

Objection to form.  Vague and ambiguous.

BY MS. BERKOWITCH:

Q.      How does it do that?

A.      The Board hires an overall investment manager, in this case, RBC has been for at least ten years, that oversees a series of investment managers that are financial -- professional financial companies which invest in -- in stocks, bonds and other investments on the Board's behalf.

Q.      Okay.  We'll come back to that in a minute, but that's helpful.  Thank you. How often does the Board meet?

A.      Five times a year.

Q.      And are there minutes recorded in every meeting?

A.      Yes.

Q.      How are they recorded?

A.      They're recorded by hand.  There may have been some meetings during the pandemic where they were recorded by video.  I would have to go back and review.  And then the minutes taken by hand are -- prepared as formal

Page 30

JONATHAN LICHTENSTEIN

minutes and then approved by the Board at the next meeting.

Q.      And who is responsible for recording these minutes?

A.      The controller's office.

Q.      Do you know how the minutes are stored?

A.      They're stored in the files at the controller's office.

Q.      And have all the responsive Delaware County Board minutes been produced in this litigation?

MR. BRITTON:  Objection.  Vague and ambiguous as to responsive.  You can answer.

A.      They're available publically or have been provided.

BY MS. BERKOWITCH:

Q.      Are you familiar with AdaptHealth Corporation?

A.      Yes.

Q.      What is the County's relationship with AdaptHealth?

MR. BRITTON:  Objection to form.

JONATHAN LICHTENSTEIN

Vague and ambiguous as to relationship.

You can answer.

A.      They are one of the stocks which one of our investment managers invested in for a period of time.

BY MS. BERKOWITCH:

Q.      And I should have clarified this earlier, but I am going to refer to AdaptHealth Corporation as AdaptHealth.  Is that okay?

A.      That's fine.

Q.      Okay.  And are you aware of a litigation against AdaptHealth?

A.      Yes.

Q.      Who brought the litigation against AdaptHealth?

A.      It was originally brought by a -- I forget the name, by another party in, I think, July of '21 and the Delaware County Employees Retirement System and the Bucks County Retirement System then filed, they were appointed as lead plaintiffs and then filed an amended complaint.

Q.      And can you recall when the current plaintiffs, so Delaware County and

Page 32

JONATHAN LICHTENSTEIN

Bucks County, filed their motion to be appointed as the plaintiffs?

A.        That all took place in fall of 2021.

Q.        Okay.  Has Delaware County ever purchased shares in AdaptHealth?

MR. BRITTON:  Objection.  Asked and answered.

A.        Yeah.

BY MS. BERKOWITCH:

Q.        And when did the County first learn that it had acquired shares in AdaptHealth?

A.        Can you -- can you -- what do you mean by learn?  I'm not sure.

Q.        When did the County become aware that it had AdaptHealth in its portfolio?  That it housed -- sorry -- AdaptHealth stocks, basically?

A.        Actual knowledge, when we were -- actual knowledge, when our portfolio manager -- or portfolio monitor, Robbins Geller, let us know that there was a potential litigation in one of the stocks in

Page 33

JONATHAN LICHTENSTEIN

our portfolio.

I believe we may have received reports from the investment manager which listed AdaptHealth as one of the stocks held. So I don't know who at the County would have looked at or reviewed those reports.

It went to the controllers' office. I don't believe it was circulated further, but that's -- that can be applied knowledge there, but for actual knowledge, when the suit was brought and we were -- we were told about it by our portfolio manager -- monitor, Robbins Geller.

Q. So sitting here today, you can't say for certain whether someone from the county actually reviewed those reports that listed AdaptHealth stock as being part of the portfolio?

A. They were -- they were received by the controller's office and email.

Q. Okay. Thank you. What claims has Delaware County brought against AdaptHealth and the individual defendants in this action?

A. The claim is twofold, that

Page 34

JONATHAN LICHTENSTEIN

during the period AdaptHealth was selling itself as having a seasoned management team and including CEO, Luke McGee, and did not disclose that he was the subject of fairly serious tax-fraud allegations for which he paid substantial fines.

Secondly, AdaptHealth had sold itself as being a company that both had significant organic growth, being growth in its existing businesses as well as growing from acquisitions.  During the class period, AdaptHealth changed how it recorded organic growth to include revenues from acquisitions, but did not make full and complete disclosure of that to the market so that people would not have obviously known that they were looking at a different number and they concealed that there were -- that was to conceal that there were losses in the organic growth as it had been previously defined.

Q.      So we can agree then that the factual -- there are kind of two classes of claims in this action, based on two separate sets of facts?

Page 35

JONATHAN LICHTENSTEIN

MR. BRITTON: Objection. Vague and ambiguous as to classes of claims. Calls for a legal conclusion. You can answer.

A.     I -- I think my private -- my previous answer covered it.

BY MS. BERKOWITCH:

Q.     Okay. So just throughout this deposition, when we're discussing the claims and allegations related to Luke McGee's alleged involvement in a tax fraud, I will refer to those as the McGee tax issues sometimes.

Does that work okay?

A.     That's fine.

Q.     And then the claims based on the organic growth allegations, I will refer to as the organic growth claims.

Does that sound okay to you?

A.     Yes.

Q.     So when did the County first learn of the alleged misstatements about organic growth?

A.     When this was brought -- when the potential claim on behalf of the County was

JONATHAN LICHTENSTEIN

brought to our attention by Robbins Geller as part of their portfolio monitoring.

Q.        And when did the County learn -- first, sorry, first learn about the allegations related to Mr. McGee's involvement in an alleged tax fraud?

A.        The same.

Q.        Also from Robbins Geller?

A.        Yes.

Q.        And do you recall when the County became aware of this action initially?

A.        I think it was -- it was the summer of 2021.  I think it was shortly -- it was shortly after the initial complaint was filed or around the same timeframe.

Q.        So was it -- well, strike that.

          I would like to introduce the second exhibit, Ben, Tab 2, please?

                    -   -   -

                    (Whereupon the document was marked, for identification purposes, as Exhibit Number 2.)

                    -   -   -

                    THE TECH:  Allie, do you want to

Page 37

JONATHAN LICHTENSTEIN

screen share this?

MS. BERKOWITCH:  Yes, please. If we could do that for all of the exhibits, that would be great.

THE TECH:  Will do.

MS. BERKOWITCH:  Thank you.

BY MS. BERKOWITCH:

Q.        So this is the docket captioned, Delaware County Employees Retirement System and Bucks County Employees versus AdaptHealth which is the docket for this case, correct?

MR. BRITTON:  Objection. Foundation.  You can answer if you know.

A.        That's what it says on the top of the -- the piece of paper.

BY MS. BERKOWITCH:

Q.        So have you ever reviewed this docket before?

A.        No.

Q.        And if we go to Page 14, the complaint that you referenced filed by Mr. Faille is listed there as Docket Number 1. Do you see that?

A.        Uh-huh.  Yes.

JONATHAN LICHTENSTEIN

Q.        So that was filed on July 29th, 2021.  Is it fair to say that the County learned about its potential claims after this action had already been commenced?

A.        I'd have -- I do not know the exact timing.  I believe so.

Q.        So just to clarify, you aren't sure whether Robbins Geller contacted you before or after this complaint was filed?

MR. BRITTON:  Objection.  Misstates testimony.

A.        I believe it was after the complaint was filed.

BY MS. BERKOWITCH:

Q.        Okay.  Has Delaware County asserted the same claims as Mr. Faille did in this complaint?

MR. BRITTON:  Objection.  -- as to claims.  You can answer.

A.        The -- we -- they're both -- they're both about material misstatements by the company.  I do not know if he -- his complaint stated them in exactly the same way that our amended complaint stated them.

Page 39

JONATHAN LICHTENSTEIN

BY MS. BERKOWITCH

Q.      Do you know whether his complaint was based on the McGee tax issue misstatements, alleged misstatements, annual bank growth misstatements, your complaint is?

MR. BRITTON:  Objection. Compound.  You can answer, if you know.

A.      No.

BY MS. BERKOWITCH:

Q.      And do you know if this complaint filed by Mr. Faille was ever amended?

A.      Yes.  It was amended by the co-plaintiffs, Delaware County and Bucks County after -- after we were appointed class representatives.

Q.      What is the alleged class period in this matter?

A.      Approximately, November 2019 through July of 2021.

Q.      Can you please give me the specific dates?

A.      It was -- I -- I know the general, it's November 2019 when the company -- when the company initially became a publically

JONATHAN LICHTENSTEIN

traded company, the shares became publically traded and it was in July of 2021, sometime before this complaint was filed.

Q.    And do you know the date that AdaptHealth went public, started selling its shares publically?

A.    It was in -- it was in November of 2019.  I do not know the exact day.

Q.    Is Delaware County a member of the alleged class?

A.    Yes.

Q.    And why does Delaware County fall within the scope of that class?

A.    I'm sorry.  There was some -- some noise on this end.  Could you repeat?

Q.    Sure.  Why does Delaware County fall within the alleged scope of the class?

MR. BRITTON:  Objection.  Vague and ambiguous.  You can answer.

A.    We made purchases -- the County Retirement System through one of its investment advisories made purchases of AdaptHealth stock during the class period.

BY MS. BERKOWITCH:

JONATHAN LICHTENSTEIN

Q.      Are there any other alleged members for this alleged class?

A.      Yes.  Anyone who had purchased AdaptHealth stock during the class period other than the Defendants.

Q.      And does Delaware County have a formal role in this action?

MR. BRITTON:  Objection.  Asked and answered.  You can answer.

A.      Through one of the co-plaintiffs, the lead plaintiffs.

BY MS. BERKOWITCH:

Q.      And who is the other co-lead plaintiff?

A.      Bucks County's Retirement System.

Q.      Why are there multiple lead plaintiffs in this action?

A.      Because we both had considerable losses and as, you know, neighboring counties, we worked together and this seemed to be another situation in which we could work together on something that would benefit both counties.

Page 42

JONATHAN LICHTENSTEIN

Q.          And what is the current status of this litigation?

A.          Currently we are in the process of discovery.  There had been a motion to dismiss, which was denied.

Q.          And has lead Plaintiffs' class been certified?

A.          We're in the -- the process of discovery leading to -- discovery as part of the class certification motion.

Q.          So earlier you referenced that Robbins Geller reached out to the County about this action.  Do you know when exactly that first communication occurred?

A.          Asked and answered.

MR. BRITTON:  Objection.  Asked and answered.

BY MS. BERKOWITCH:

Q.          So that's no?

MR. BRITTON:  Misstates testimony.  Objection.

BY MS. BERKOWITCH:

Q.          Who initiated that conversation?

A.          Could you repeat the question?

Page 43

JONATHAN LICHTENSTEIN

Q.        Sure.  Who from Robbins Geller initiated the communication?

A.        Laura Stein.

Q.        And do you know what form that communication was in?  Was it a call, email?

A.        Email.

Q.        Email?

A.        Email.

Q.        Did the Board discuss Delaware County's participation in this action in a board meeting?

A.        No.  They had been informed, but there's been no discussion.

Q.        Okay.

MS. BERKOWITCH:  Ben, please, can we introduce Tab 3 as Exhibit 3?

- - -

(Whereupon the document was marked, for identification purposes, as Exhibit Number 3.)

- - -

MS. BERKOWITCH:  Yeah.  If we could just zoom in on that.  Thanks.

BY MS. BERKOWITCH:

Page 44

JONATHAN LICHTENSTEIN

Q.        So this is an email from Kelly Diaz to Joanne Phillips that was sent on November 15th, 2021.  Do you see that?

A.        Yes.

Q.        And attached to this email, it looks like there were draft minutes of the September 22nd, 2021, board meeting?

A.        Correct.

Q.        And if we scroll a bit further down, those draft minutes are attached.

A.        Yep.

Q.        So between understanding that you're not sure of when the first communication from Robbins Geller came, but between that general time period and September 22nd of 2021, are you aware of any communications between Delaware County and Robbins Geller regarding this action and the County's participation in it?

MR. BRITTON:  Objection.  Objection to form.  It also calls for attorney-client privilege.  I'm going to instruct you not to answer that.

MS. BERKOWITCH:  I'm not asking

Page 45

JONATHAN LICHTENSTEIN

about the content of those communications, I'm just asking about whether there were any.

MR. BRITTON:  Well, you can answer to the extent that -- the existence of the communication, but not what the communication was about.

A.      Communications existed.

BY MS. BERKOWITCH:

Q.      Communications existed?  Sorry.

A.      Yes.  There were communications between Robbins Geller and the County regarding this litigation between July of 2021 and these minutes.

Q.      Do you know how many?

A.      No.

Q.      Do you know who was involved from Robbins Geller?

A.      Laura Stein.

Q.      And who was involved on behalf of Delaware County?

A.      Myself and the controller.

Q.      Okay.  And did Robbins Geller provide the County with any documents to

Page 46

JONATHAN LICHTENSTEIN

review?

A.      Yes.

Q.      What kind of documents?

A.      Information in a summary regarding the potential claims in this litigation.

Q.      And did somebody review that on behalf of the County?

A.      Both myself and the controller.

Q.      Did Delaware County undertake any effort to conduct its own research about this action?

MR. BRITTON:  Objection.  Vague and ambiguous as to its own research.

MS. BERKOWITCH:  I can rephrase that.

BY MS. BERKOWITCH:

Q.      Did anyone from the County look into this action and conduct any research?

MR. BRITTON:  Same objection. Are you talking about independent of hiring Robbins Geller?

MS. BERKOWITCH:  Yes.

MR. BRITTON:  Which is what he's

JONATHAN LICHTENSTEIN

testified about?

MS. BERKOWITCH:  Independent of the information that Robbins Geller provided the County with.

A.    No.

BY MS. BERKOWITCH:

Q.    So going back to this exhibit, can you just clarify, who is Kelly Diaz?

A.    She's an employee in the controller's office.

Q.    And Joanne Phillips sits on the Board, correct?

A.    Yes.  She's the controller.

Q.    Great.  So on this cover email it reads, I made some edits.  The attached shows Tracked Changes.  Does Delaware County have a copy of the final version of these minutes?

A.    Yes.  They should be also posted publically on our website -- on the website for the retirement board.

Q.    So you can -- we can put that to the side.

MS. BERKOWITCH:  And then, Ben,

Page 48

JONATHAN LICHTENSTEIN

Tab 4, can we please mark that as Exhibit 4?

- - -

(Whereupon the document was marked, for identification purposes, as Exhibit Number 4.)

- - -

BY MS. BERKOWITCH:

Q.      So are these the final version of the September 22nd, 2021, board meeting minutes?

MR. BRITTON:  Mr. Lichtenstein, take your time to flip through this exhibit before you testify and answer that question.

A.      Let me get to the exhibit.  Hold on.  It's not showing up in my marked exhibits that's on the screen.

MR. BRITTON:  You have to click -- go back and click the marked exhibits tab again.

A.      Okay.  Hold on.  There we go. They appear to be, but I could not answer that question without actually pulling the final

Page 49

JONATHAN LICHTENSTEIN

minutes and reading them word for word.

BY MS. BERKOWITCH:

Q.       Okay.  I can represent to you that they are the final minutes of that board meeting -- of the September 22nd, 2021, board meeting.

So just by way of background, does the Board have to approve the County's participation in any class action lawsuit?

A.       No.  The solicitor's office has that ability.

Q.       And how frequently does the Board discuss ongoing or potential class action litigations?

A.       In my experience, only when it's raised by the solicitor's office or -- only when it's raised by the solicitor's office.

Q.       And how does the solicitor's office determine which lawsuits are worth pursuing?

A.       We rely on the law firms which we have hired as our portfolio monitors to let us know of --

Q.       And -- sorry.

JONATHAN LICHTENSTEIN

A.         To let us know of potential litigation.

Q.         And who was involved in making the final determination about whether to participate or not?

MR. BRITTON:  Objection.  You can answer.

A.         The solicitor's office.

BY MS. BERKOWITCH:

Q.         So that's yourself and the solicitor?

A.         Correct.

Q.         And what do you consider when making that decision?

A.         The size of our -- the size of our loss and whether there's any other factors which would -- which would make the County a good representative for the class or an appropriate representative for the class.

Q.         And is there any board member who in particular oversees class action lawsuits?

A.         No.  Because she's the administrator of the plan in her role as

JONATHAN LICHTENSTEIN

controller, we would consult with the controller because, for example, discovery and other things would be run through her office, but that's in the nature of a consultation.

Q.    So are you primarily responsible for reporting about class action lawsuits to the Board or is it the solicitor or is it both of you?

A.    It's myself.

Q.    Okay.  So going back to Exhibit 4, was approval for the AdaptHealth litigation provided prior to this board meeting?

MR. BRITTON:  Objection.  Vague and ambiguous as to approval.  You can answer.

A.    The solicitor's office had decided to go ahead with this litigation. Whether or not we formally approved it or assigned any documents with Robbins Geller to bring this ahead, I cannot answer off the top of my head.

BY MS. BERKOWITCH:

Q.    So just so I'm clear, what

JONATHAN LICHTENSTEIN

exactly is the process for the County becoming involved in a litigation?  I understand that you testified that the solicitor's office is the one that makes the decision, but does the Board have any role in, I guess, approving that decision or does the solicitor's office just take it to the Board and say, we -- we are going to be in this litigation?

MR. BRITTON:  Objection.  Asked and answered.  You can answer.

A.      The solicitor's office takes it to the -- they advise the Board as to our decision to go ahead with the class action.

BY MS. BERKOWITCH:

Q.      And the Board is not required to take any formal action after that?

A.      No.

Q.      Okay.  So if we go to Page 2, at 6A under the heading, old business, it says -- these minutes discuss your report.  It reads, Mr. Lichtenstein also reported on potential litigation involving alleged misrepresentations by AdaptHealth as to its growth.

Do you see that?

Page 53

JONATHAN LICHTENSTEIN

A.          Yes.  Yes.

Q.          So when you were making this report, did you provide any additional information about the potential litigation other than what's reflected in these minutes?

A.          I don't believe it would have been -- been much.  If anything, it was a sentence or two.  The reports are -- very brief.

Q.          I'm sorry.

A.          The reports are generally --

Q.          Go ahead.

A.          The reports are generally very brief.  It may have been no more -- if there was anything additional presented, it would have been no more than a sentence or two.

Q.          So did you reference any talking points?

A.          I'm not sure what you mean by talking points.

Q.          Okay.  Was there any discussion among the board members of your report regarding this litigation?

A.          No.

Page 54

JONATHAN LICHTENSTEIN

Q.          Did any of the board members have any questions about your report?

A.          No.

Q.          So if we go back to the document, it says -- well, you -- you reported that Delaware County is positioned to be appointed as a lead plaintiff.

Do you see that?

A.          Correct.

Q.          And what made Delaware County positioned to be appointed as the lead plaintiff?

A.          The size of our losses.

Q.          That paragraph -- oh.

A.          Go ahead.

Q.          No.  No.  You go ahead.  Sorry.

A.          No.  No.  It's fine.  It's the size of our losses.

Q.          And how did you -- sorry. Strike that.

When did you get the view that the County was positioned to be appointed as lead plaintiff?

MR. BRITTON:  Objection.  Calls

Page 55

JONATHAN LICHTENSTEIN

for attorney-client privilege.  You can answer that question if you got the information from somewhere other than your lawyers.

A.      I'm not answering on the advice of counsel.

BY MS. BERKOWITCH:

Q.      Okay.  That paragraph also says, Bucks County will also be a proposed co-lead plaintiff.  Has Delaware County ever served as a co-lead plaintiff before?

A.      In my experience, no.  You know, I -- without a review of all litigation by the County Retirement Board, I would not be able to answer.

Q.      So you're not sure of whether Delaware County has ever served as a co-lead plaintiff with Bucks before?  And, I'm sorry, when I say you, I mean the County.

A.      I understood.  But you're also asking about an indefinite history and I cannot answer.

Q.      Okay.  That's fine.  So finally this paragraph says, Laura Stein from

Page 56

JONATHAN LICHTENSTEIN

Robbins Geller brought this class action suit to our attention.  Do you see that?

A.      Yes.

Q.      And so Laura Stein, is she your primary contact at Robbins Geller?  Is she usually the person that reaches out to the County about potential litigations?

MR. BRITTON:  Objection.  Vague and ambiguous as to time.  You can answer.

A.      Yes.  She's generally the one who -- who reports to us if there's specific things within Robbins Geller's portfolio monitoring which mention attention or are potential class action suites or other -- other litigation.

BY MS. BERKOWITCH:

Q.      So the County had a relationship with her before this lawsuit?

A.      Yes.  Robbins Geller is under contract with the County to be one of our portfolio monitors.

Q.      And did Laura Stein address the Board at this meeting?

Page 57

JONATHAN LICHTENSTEIN

A.        No.

Q.        Okay.

MS. BERKOWITCH:  We've been going for nearly an hour so I think now might be a good time to take a quick break.

THE VIDEOGRAPHER:  Okay.  The time is now 11:03 a.m., we're going off the video record.  This concludes Media Unit Number 1.

- - -

(Whereupon, a recess took place from 11:03 a.m. to 11:26 a.m.)

- - -

THE VIDEOGRAPHER:  The time is now 11:26 a.m.  We're going back on the video record.  This will begin Media Unit Number 2.

MR. BRITTON:  Hello, Allie?  The Witness has some testimony that he wants to correct from the first session relating to preparation for the deposition, so --

MS. BERKOWITCH:  Okay.

Page 58

JONATHAN LICHTENSTEIN

MR. BRITTON:  Go ahead, Jonathan.

A.        Yeah.  My apologies.  When you asked about documents, it was for the deposition.  I have reviewed documents all throughout the case and in the time period leading up to this deposition, I wasn't sure about the timeframe to which you were referring.

Also, in terms of being provided depositions, Robbins Geller, as a convenience to me, provided me with a set of the various filings, other court papers and other things that are part of those -- they provided that to me in, you know, one combined set of documents I had seen previously for my convenience.

BY MS. BERKOWITCH:

Q.        Okay.  Thanks for clarifying that.  And you reviewed the documents that they provided you with?

A.        Correct.

Q.        Okay.

A.        As well as reviewing them throughout the course of the case.

Page 59

JONATHAN LICHTENSTEIN

Q.        Understood.  Okay.

MS. BERKOWITCH:  Ben, please, can we introduce Tab 6 as Exhibit 5?

- - -

(Whereupon the document was marked, for identification purposes, as Exhibit Number 5.)

- - -

A.        Yes.  I have it up.

BY MS. BERKOWITCH:

Q.        So these are the Delaware County Board meeting minutes from November 27th, 2021.

Do you see that?

A.        Yes.

Q.        And then if we go to the bottom of Page 2 at 6A, there's a litigation update that you provided?

A.        Correct.

Q.        And in the second paragraph it says, also, we have agreed to proceed as a co-plaintiff with Bucks County on a class action against AdaptHealth since both funds had substantial holdings.

A.        Yes.

Page 60

JONATHAN LICHTENSTEIN

Q.        When did the -- sorry. Actually, strike that.

So is it fair to say that between the September 22nd board meeting and the November 17th board meeting, your office determined that the County would participate in the litigation, the decision was -- yeah?

A.        Correct.

Q.        And did you communicate with any board members about this decision between the September and the November board meetings?

A.        With the controller, Phillips, but in her role as the custodian for the Fund because a lot of the work in terms of discovery, et cetera, falls in her office.

Q.        Is the solicitor's office's approval -- well, not approval, sorry, decision to participate in the litigation documented anywhere besides this document?

A.        We have a engagement letter with Robbins Geller as well as having signed various legal papers as to our, you know, filings with the court as to our participation.

Q.        Did Delaware County communicate

JONATHAN LICHTENSTEIN

with Bucks County about its decision to get involved in the litigation together as co-lead plaintiffs?

A.      Yes.

Q.      What was the nature of those communications?

MR. BRITTON:  Jonathan, I would -- hold on one second.  Objection. Calls for attorney-client privilege.  You can answer that to the extent you don't reveal communications with counsel.  You can answer.

A.      We had a conference call with Bucks County to confirm that we felt that it was appropriate for us to coordinate on this.

BY MS. BERKOWITCH:

Q.      When did that take place?

A.      That would have been prior to the filing of the request to certify the two as lead plaintiffs.

Q.      And why did Delaware County agree to be a lead plaintiff?

A.      Because we have substantial losses and together with Bucks County, we felt

JONATHAN LICHTENSTEIN

we could properly represent the interest of the class.  Overall, it's important for, you know, investors to participate, to help voice the market.

Q.       What do you consider substantial losses to be?

A.       I mean, I think ours were in the area of 90 thousand dollars and Bucks County's were in the 50 to 60 thousand-dollar range.

Q.       So what is the threshold for Delaware County in terms of the amount of loss that makes it worth pursuing a litigation?

MR. BRITTON:  Objection.

Assumes facts.  You can answer.

A.       We don't have a defined threshold.  We rely on the advice of monitoring counsel as to -- as to, you know -- depends on the stock, the county and, you know, what the -- you know, the size of the stock, the size of the losses, et cetera.  It's a, you know, decision based on facts in each matter.

BY MS. BERKOWITCH:

Q.       Can you clarify what you mean by the size of the stock?

Page 63

JONATHAN LICHTENSTEIN

A.        The size of the -- the size of the holdings, my apologies, and the size of the County's holdings relative to others.

Q.        Does anyone on the Board receive additional compensation based on settlements or damages recoveries where Delaware County is a lead plaintiff?

A.        No.

Q.        Does anyone on the Board or any county employees have a personal financial interest in Delaware County's settlements and damages recoveries?

A.        Other than -- not directly. Depending on years of service, various board members may or may not be eligible for the retirement fund.  However, earnings on the retirement fund do not affect what they get, it is a defined benefit plan.

Q.        So just to clarify, by -- not directly, you mean they participate in the retirement fund, they contribute to the retirement fund?

A.        I don't -- I don't know the years of service and -- for each board member

JONATHAN LICHTENSTEIN

and I know at least one, I belive, will be when they retire, eligible for the retirement fund, but, again, they'll be eligible for a defined benefit which is not tied to the performance of the plan or the performance of any stock.

Q.      Why did Delaware County agree to be a co-lead plaintiff with Bucks County?

MR. BRITTON:  Objection.  Asked and answered.  You can answer.

A.      As said before, we both had substantial holdings.  We've worked together on a variety of other matters and we thought we would be a good representative to pursue this on behalf of the class.

BY MS. BERKOWITCH:

Q.      Is there a particular reason why Delaware County didn't do it alone?

MR. BRITTON:  Objection.  Asked and answered.  You can answer.

A.      Can I --

MR. BRITTON:  Yeah.  You can answer.

A.      We're both county retirement funds.  We both have a fiduciary duty to our

Page 65

JONATHAN LICHTENSTEIN

members to get returns on their investments and as both Pennsylvania retirement funds, we thought that making -- that acting together made sense.

MS. BERKOWITCH:  Ben, please can we introduce as Exhibit 6, Tab 5?

- - -

(Whereupon the document was marked, for identification purposes, as Exhibit Number 6.)

- - -

A.        I have it up.

MR. BRITTON:  Mr. Lichtenstein, make sure you flip through the entire document to familiarize yourself with it before answering any questions.

A.        Will do.

BY MS. BERKOWITCH:

Q.        Please let me know once you've finished reviewing.

A.        Yep.

Q.        What is this document?

A.        It's the representation letter with Robbins Geller to act as our counsel in

Page 66

JONATHAN LICHTENSTEIN

this litigation.

Q.      And if we go to Page 3, do you see that it says enclosures underneath -- to the left of the signature?

A.      Uh-huh.

Q.      What were those enclosures?

A.      The letter recites that there was a complaint certification form.

Q.      And is that the complaint that you filed, that Delaware County filed?

A.      I don't know.

Q.      Did you review this letter when it was received?

A.      Yes.

Q.      And did you review the enclosures also?

A.      Yes.

Q.      Why weren't the enclosures produced to us with this letter?

MR. BRITTON:  Objection. Foundation.  You can answer, if you know.

A.      We produced documents as advised by our counsel, with which was appropriate.

BY MS. BERKOWITCH:

Page 67

JONATHAN LICHTENSTEIN

Q.    Okay.  Putting aside the missing enclosures, does this appear to be the complete and accurate contents of the letter?

A.    Yes.

Q.    Has Delaware County entered into any other agreements governing its legal representation in this action?

A.    No.

Q.    Has Delaware County retained any other counsel besides Robbins Geller to represent it in this action?

A.    No.

Q.    Do any employees of Delaware County have other agreements with Robbins Geller?

A.    No.

Q.    Why did Delaware County select Robbins Geller as its counsel?

A.    They have an excellent reputation and have gotten substantial returns for class members for years now in a variety of suites and we believed that they were well positioned to represent the Fund.

Q.    Does Delaware County expect

Page 68

JONATHAN LICHTENSTEIN

Robbins Geller to act in its best interest?

A.        We expect Robbins Geller to act in the best interest of the class, including Delaware County.

Q.        So if there is a conflict of interest between Delaware County's interest and that of the class, whose interest does Delaware County expect Robbins Geller to protect?

MR. BRITTON:  Objection.  Vague and ambiguous as to conflict and incomplete hypothetical.  You can answer.

A.        Our interest in this litigation is solely as a member of the class, so I don't anticipate that that would arise.

BY MS. BERKOWITCH:

Q.        If there's a conflict of interest between Delaware County interest and that of Bucks County, whose interest does Delaware County expect Robbins Geller to protect?

MR. BRITTON:  Same objections.

A.        I would have to take a look at the peeking rules of professional conduct on co-representations, but, again, both retirement

Page 69

JONATHAN LICHTENSTEIN

systems are involved both solely as members of the class so I wouldn't anticipate that coming up.

BY MS. BERKOWITCH:

Q.    Did Delaware County consider any other law firms to represent it in this action?

A.    It was discussed with the solicitor as to whether or not we should retain Robbins Geller and was decided they were appropriate.

Q.    I don't think that answered the question. Did the County consider any other law firms in addition to Robbins Geller or as an alternative?

A.    No.

MR. BRITTON: Objection. Asked and answered. You can -- you can answer.

A.    No. It was discussed whether or not to review or look for other law firms.

BY MS. BERKOWITCH:

Q.    Has Robbins Geller represented Delaware County in other securities class actions in the past?

A.    Yes.

Page 70

JONATHAN LICHTENSTEIN

Q.    How many?

A.    I believe we have one currently, within the last three years, I don't know of any others.  I do not believe, I know we have one currently.  Within the last three years, I don't know of any others.

Q.    What is that action?

A.    It's related to Cabot oil.

Q.    Is it a securities class action?

A.    Yes.

Q.    And is Delaware County serving as lead plaintiff in that case?

A.    Yes.

Q.    And did Robbins Geller bring that case to Delaware County's attention as well?

A.    Yes.

Q.    Putting aside securities class actions, has Robbins Geller represented Delaware County in any other kind of lawsuit in the past?

A.    No.  They represent -- they -- I don't know if it's represent, they are employed by us as one of our portfolio managers.

Page 71

JONATHAN LICHTENSTEIN

Q.        So before Delaware County first communicated with Robbins Geller back in the summer of 2021 about this litigation, was Delaware County aware of any losses with its holdings in AdaptHealth?

MR. BRITTON:  Objection.  Asked and answered.  You can answer.

A.        Actual -- actual knowledge, I don't believe so.  It would have been discussed, there were portfolio reports that -- that Emerald was preparing -- was sending on a regular basis.

BY MS. BERKOWITCH:

Q.        And I just would like to clarify one of the terms that you used earlier.  You referred to Robbins Geller a few times now as your portfolio managers.  What do you mean by that?

A.        It's -- it means it's a Monday morning and I keep on meaning to say monitor instead of manager.

Q.        Got it.  So why did Delaware County decide to pursue a securities litigation against AdaptHealth?

Page 72

JONATHAN LICHTENSTEIN

MR. BRITTON:  Objection.  Asked and answered.

A.        I'd refer to my previous answer. We had -- what we felt were substantial losses and that we were well positioned to represent the class of investors who were damaged.

BY MS. BERKOWITCH:

Q.        So the same reasons why Delaware County wanted to be a lead plaintiff is why it wanted to pursue this class action as well?

MR. BRITTON:  Same objection.

A.        Yeah.  I don't see the difference between -- I mean, if you're not a lead plaintiff, you're just part of the class, as I understand it.  So I don't understand the question.

BY MS. BERKOWITCH:

Q.        Well, if you weren't lead plaintiff, would you still be involved in this securities action?

A.        No.

Q.        What is the purpose or goal of this litigation from Delaware County's perspective?

Page 73

JONATHAN LICHTENSTEIN

MR. BRITTON: Objection. Compound. You can answer.

A. To obtain a recovery for the class including the Retirement System for the losses caused by the fraud undertaken by AdaptHealth.

BY MS. BERKOWITCH:

Q. Does Delaware County want to maximize its potential return?

MR. BRITTON: Objection. Vague and ambiguous as to return. You can answer.

A. Delaware County's only interest is as a member of a class. As a representative of the class, we would act to maximize the return for the class.

BY MS. BERKOWITCH:

Q. Does Delaware County expect its counsel to mitigate this action in a manner that maximizes its potential return?

MR. BRITTON: Objection. Vague and ambiguous as to return. You can answer.

A. Delaware County expects its

Page 74

JONATHAN LICHTENSTEIN

counsel to pursue the action, to maximize the recovery for the class, for the fraud on the market undertaken by AdaptHealth.

BY MS. BERKOWITCH:

Q.        I'd like to look at some of the specific provisions in the engagement letter.

A.        Sure.

Q.        So if we go to Page 1, Paragraph 1, it reads, we will prosecute the action on a contingency fee and cost basis.

What does this mean?

A.        It's -- I think it's set forth in the -- in the footnote that Robbins Geller will only receive their contingency fee if they're compensated, you know, as counsel through -- for the class through the litigation and the contingency fee percentage is going to be negotiated, but will not exceed 28 percent.

Q.        To clarify, Robbins Geller is only compensated if Delaware County brings the suit and recovers?

A.        If the class recovers, correct, and it's approved -- it's approved by the court.

JONATHAN LICHTENSTEIN

Q.        Is a contingency basis the only way that Robbins Geller will be compensated for prosecuting this case?

A.        Yes.

Q.        There are no other arrangements or understandings?

A.        No.

Q.        What is the fee?

MR. BRITTON:  Objection.  Asked and answered.  Objection as to vague and ambiguous as to the fee.

A.        That's set forth in -- as Footnote 1 of this document.

BY MS. BERKOWITCH:

Q.        At Paragraph 2 it states, we will advance all fees and expenses necessary to prosecute the case regardless of whether the case ultimately proceeds as a class action or individual action.  Delaware County will have no responsibility for legal fees and expenses.

Does this mean that Robbins Geller is paying for all fees and expenses?

A.        Delaware County will not be, I assume -- I do not know -- I cannot state

JONATHAN LICHTENSTEIN

otherwise as to Robbins Geller.  I have no knowledge that they have anyone else that's paying for legal fees and expenses.  I know it's not Delaware County.

Q.       And why is this the arrangement?

MR. BRITTON:  Objection. Foundation.

A.       This is typical in a contingency fee representation.

BY MS. BERKOWITCH:

Q.       And then if we look at paragraph three, Delaware County agrees that we may divide fees with other attorneys for serving as local counsel as referral fees or for other services performed.

Who are the other attorneys being referenced here?

A.       I do not believe there are any at the moment.  To the extent that there's a need for local counsel -- there may -- there may in fact be local counsel, we've been working directly just with Robbins Geller.

Q.       Do you know if there are any attorneys who are serving as your local

Page 77

JONATHAN LICHTENSTEIN

counsel?

A.        I do not.

Q.        Does anyone else at the County know?

A.        It would be reflected in the -- the legal filings.

Q.        Are there any attorneys who are entitled to referral fees?

A.        Not to my knowledge.  I can't speak to Robbins Geller or their arrangements.

Q.        Are there any attorneys who have performed other services on this matter for Delaware County?

A.        Not other than through Robbins Geller pursuant to the terms of this letter.

Q.        So then if we look at Page 9, paragraph -- sorry -- Page 2, Paragraph 9, it states, Robbins Geller will defend and indemnify Delaware County for any claims asserted against Delaware County for its institution, prosecution and/or resolution of this action, including, but not limited to, claims or sanctions involving attorneys' fees or costs.

Page 78

JONATHAN LICHTENSTEIN

What does this mean?

A.      You want a legal analysis or my personal understanding?  I'm not quite sure what you mean here.

Q.      I want the County's understanding from -- with you as their corporate representative.  What does the County understand this to mean?

A.      That we will not be responsible for claims -- and I don't know what they would be, that are asserted against Delaware County so that we're not looking at taking on any fees or costs for claims or sanctions or other things if for some reason pursuing this action results in those.

Q.      So if any claims were brought against Delaware County as a result of its present claims against AdaptHealth, Robbins Geller would be responsible for any of the related costs?

A.      Yes.  We would look to recover -- we would look to them.

Q.      Is this indemnification provision important to Delaware County?

Page 79

JONATHAN LICHTENSTEIN

A.        It was important to our decision to undertake this -- this action.  Yes.

Q.        Why is that?

A.        Because the County does not want to take on any additional costs that we don't anticipate as part of pursuing on behalf of the class.

Q.        And why is that?

A.        We have a fiduciary duty to be members of the retirement fund to preserve their -- the money in the Fund and, you know, any claims against the -- the Fund could -- would result in less money available to pay retiree benefits, so we're fulfilling our fiduciary duty by protecting the assets of the Fund.

MS. BERKOWITCH:  Ben, please can we introduce Tab 7 as Exhibit 7?

- - -

(Whereupon the document was marked, for identification purposes, as Exhibit Number 7.)

- - -

A.        Yep.

JONATHAN LICHTENSTEIN

BY MS. BERKOWITCH:

Q.      Do you recognize this document?

A.      Yes.

Q.      Is this the monitoring agreement that you were referencing earlier?

A.      Correct.

Q.      And when did Delaware County enter into this agreement?

A.      2013.

Q.      And was this agreement in effect during the alleged class period?

A.      Yes.

Q.      Had there been any amendments to it?

A.      No.

Q.      And if we go to Page 3, you can see all the signatories to this agreement.  Who from Delaware County signed this agreement?

A.      It states that it's the chair of the board of the counsel and the secretary of the retirement plan.

Q.      And do they still work for Delaware County?

A.      No.

Page 81

JONATHAN LICHTENSTEIN

Q.      And from Robbins Geller it looks like Laura Stein, Sandra Stein and then a member of the firm signed.  Do you know who the member of the firm was?

A.      No.

Q.      And is this the same Laura Stein that reached out to Delaware County about AdaptHealth, this litigation?

A.      I have no way of knowing that. This was an agreement signed in 2013 and Laura Stein isn't that uncommon of a name.

Q.      But you are representing the County today, correct?

A.      It appears to be.

Q.      Okay.  What is the purpose of this agreement?

A.      To employ an experienced law firm to look at our portfolio, to monitor securities claims in the market and to let us know when the retirement -- the retirement fund may have -- have potential claims that it can pursue.

Q.      Does the County undertake any of its own efforts to monitor its securities in

Page 82

JONATHAN LICHTENSTEIN

its investments?

A.        No.   We -- not directly.   We employ an investment manager that then supervisors individual investment advisors who purchase securities on behalf of the County.

Q.        So if we look at Page 1, Paragraph 1, it states, the client engages attorneys to monitor the client's United States-listed securities portfolio in connection with potential claims against such persons, entities, companies and/or associations who may be liable for damages you ever suffered by the client as a result of breaches of fiduciary duties, fraud, misrepresentation or other violations of federal and/or state securities laws.

Do you see that?

A.        Yes.

Q.        So does this mean that Robbins Geller was tasked with analyzing Delaware County's losses to determine after the fact whether it could bring a securities form or another claim?

A.        Correct.

Page 83

JONATHAN LICHTENSTEIN

MR. BRITTON:  Objection.  Vague and ambiguous.

BY MS. BERKOWITCH:

Q.      How many potential lawsuits have been brought to Delaware County's attention pursuant to this agreement?

MR. BRITTON:  Objection.  Vague and ambiguous as to time.  You can answer.

A.      Okay.  There have been -- there have been ones brought to our attention.  It would take a review of files to get you an exact number.

BY MS. BERKOWITCH:

Q.      So you don't know how many exactly?

A.      I mean, this is only going back ten years.  I -- you know, again, I understand I'm interested on behalf of the Fund, but that would take research.

Q.      Has Delaware County ever declined to bring a potential lawsuit recommended by Robbins Geller?

A.      Yes.

Page 84

JONATHAN LICHTENSTEIN

Q.        Do you know what that action or those actions were?

A.        It would have been a securities class action similar to -- well, not similar to -- it would have been a securities class action based on fraud or misrepresentation to the market.

Q.        And how many potential suites has Delaware County declined to bring after Robbins Geller has proposed them?

A.        Again, that would take research. This -- this is a ten-year agreement.

Q.        Do you have a rough estimation?

A.        No.

Q.        How many potential lawsuits originating from this agreement were actually pursued by Delaware County?

MR. BRITTON:  Objection.  Vague and ambiguous as to time.

A.        Within the last three years, there have been two.

BY MS. BERKOWITCH:

Q.        What are those actions?

A.        The current action and an action

Page 85

JONATHAN LICHTENSTEIN

against Cabot oil.

Q.        And before the past three years?

A.        I would have to -- it would -- it would undertake research.

Q.        Did Delaware County's involvement in the AdaptHealth litigation originate from this agreement?

A.        It -- we became aware of the fraud through Robbins Geller's reporting obligations under the -- this agreement.

Q.        So is it fair to say that Delaware County did not want to bring this lawsuit over its AdaptHealth losses before Robbins Geller proposed it?

MR. BRITTON:  Objection. Assumes facts.  You can answer.

A.        We wouldn't have known of it.

BY MS. BERKOWITCH:

Q.        And so you referenced just now, so earlier in the case, Delaware County Employees Retirement System Versus Cabot Oil and Gas Corporation?

A.        Yes.

Q.        So to confirm, that's the other

Page 86

JONATHAN LICHTENSTEIN

case that originated from this agreement that Delaware County is serving as lead plaintiff in?

MR. BRITTON:  Objection. Misstates testimony.  Vague and ambiguous as to originated.

A.         We were -- became aware of the alleged fraud in the Cabot oil and gas litigation as a result of monitoring underneath this agreement.

BY MS. BERKOWITCH:

Q.         And does Robbins Geller represent Delaware County in that matter?

A.         They're currently representing us.  Yes.

Q.         Does Delaware County compensate Robbins Geller for identifying litigation opportunities under this agreement?  Sorry.

A.         No.

Q.         No.  Sorry.  Is that -- you said no?

A.         Correct.

Q.         How -- sorry.  Has Delaware County entered portfolio monitoring agreements

Page 87

JONATHAN LICHTENSTEIN

with any other law firms?

A.      Yes.

Q.      How many?

A.      We currently have them with a firm called Berger Montague and a firm called Lowey Dannenberg.

Q.      So in addition to its agreement with Robbins Geller, those are the only two other monitoring agreements that you have?

A.      Correct.

Q.      That the County has?

A.      Correct.  There was another firm and I'm just -- I don't have the name in front of me, that was involved that no longer -- that was previously involved that no longer does that, no longer does portfolio monitoring.

Q.      What is the purpose of having multiple monitoring agreements with different firms?

A.      It allows us to ensure that all claims are brought to our attention by having a variety -- by having different firms, each looking separately at the market and at our holdings.

JONATHAN LICHTENSTEIN

Q.        How much has Delaware County received from settlements and damages awards in securities class actions where Delaware County is a lead plaintiff?

MR. BRITTON:  Objection.  Vague and ambiguous as to time.

A.        That would take research.

BY MS. BERKOWITCH:

Q.        Is that something that -- strike that.

Is that not something that Delaware County pays attention to?

A.        No.  It's just that the exact numbers and why it would have to be gotten out of our financial records.

Q.        And you didn't review those records in preparation for today's deposition?

A.        No.

Q.        How much money has Delaware County received from settlements and damages awards in securities class actions where Delaware County is not a lead plaintiff?

MR. BRITTON:  Same objection. You can answer.

Page 89

JONATHAN LICHTENSTEIN

A.         Again, overall, that would take research.  In terms of last year, it was just reported at the last retirement board meeting by our corporate trustee that we received, I think, approximately $4,000, something under $10,000 in 2022.

Q.         Which action was that recovery related to?

A.         It was related to a variety of our -- of actions until the portfolio.  Again, you know, like -- like any other shareholder, we participate in any number of classes and, you know, get recoveries from them.

Q.         How many securities class actions is Delaware County involved in at any given time on average?

MR. BRITTON:  Objection.  Vague and ambiguous as to time.  You can answer.

A.         As lead plaintiff or as in any -- in any capacity?

BY MS. BERKOWITCH:

Q.         Well, both, but we can start with lead plaintiff.

Page 90

JONATHAN LICHTENSTEIN

A.      Lead plaintiff, within recent years has been no more than one or two.  I couldn't speak to all class actions, I mean, we're involved to the same extent as anybody -- any other Fund that has a 5 to 600 million-dollar portfolio, happens to own stocks that are subject to class actions.

Q.      And how many is that, usually?

MR. BRITTON:  Objection. Foundation.  You can answer, if you know.

A.      We own 5 to 600 million dollars in securities and some of them may be subject to class actions.  I can't speculate as to the exact number.

BY MS. BERKOWITCH:

Q.      So you don't know how many class actions Delaware County is involved in currently, for example?

MR. BRITTON:  Objection.  Vague and ambiguous as to involved in and misstates his testimony.

A.      We're lead plaintiff in two.  As to everything else, we're, you know, I cannot answer.  It's a 600 million-dollar portfolio, I

Page 91

JONATHAN LICHTENSTEIN

assume there's a variety of class actions that are subject to some stocks in that portfolio. I would not know which ones without further research.

BY MS. BERKOWITCH:

Q.    Okay.  And the County doesn't make efforts to monitor that then?

MR. BRITTON:  Objection.

Misstates the testimony.

A.    We do make efforts.  We hire three portfolio monitoring firms to bring class actions to our attention where there needs to be something specific pursued.

Our corporate -- our trustee which holds all the -- all the securities on behalf also will receive reports of recoveries or the ability to participate in a class and they handle that.  So we have professionals handling it on our behalf.

BY MS. BERKOWITCH:

Q.    Going back to the signatories of this document and Ms. Stein, is she one of the Robbins Geller's attorneys that is representing Delaware County in this action?

Page 92

JONATHAN LICHTENSTEIN

A.        Yes.

MR. BRITTON:  Objection as to form.  Vague and ambiguous as to representing.

A.        Yeah.  She is a member of Robbins Geller and Robbins Geller is representing us and she has been involved in this litigation.  I don't -- again, as my counsel stated, I'm not quite sure what representing means.

BY MS. BERKOWITCH:

Q.        Do you know if she has filed a notice of appearance?

A.        I'd have to -- I'd have to refer to the legal papers.

Q.        Since Delaware County decided to pursue this action, how frequently has the County communicated with Robbins Geller about this action?

A.        On a frequent -- on a frequent basis, but it depending, again, on where we are in -- in the action.  For example, you know, we had very frequent communication around becoming or applying to be co-lead plaintiff when the

Page 93

JONATHAN LICHTENSTEIN

amended complaint was filed, where there have been other legal proceedings and other filings and, you know, with the discovery process.

So it's not a -- it's frequent communication as needed, it's not a -- you know, can't really be characterized beyond that.

Q.      So how often would those communications happen, recognizing that they occur more frequently around certain events in this litigation?

MR. BRITTON:  Objection.  Vague and ambiguous as to time.  Asked and answered.  You can answer.

A.      For example, around the time of the application to be co-lead plaintiff or filing the complaint, we might have daily communications for a short period of time, you know, same with discovery and others.  It's -- it's sporadic.

BY MS. BERKOWITCH:

Q.      So in total, how many times do you think the County has spoken with Robbins Geller since deciding to participate in this

Page 94

JONATHAN LICHTENSTEIN

action?

A.    Could you clarify spoken versus --

Q.    Communications?

A.    I would say including both calls and emails, in excess of 100 times.

Q.    And who at Robbins Geller have those communications been with?

A.    Laura Stein as well as the team on this call.

Q.    Has Delaware County initiated any of these communications?

A.    Yes.  When we -- yes.

Q.    How many times?

A.    I would guess in the 10 to 20 range.

Q.    So about -- you can keep going. Sorry.

A.    That's fine.

Q.    So about what percentage of the time would you say 10 to 20 communications are?

A.    I would say it's maybe 10 to 15, maybe 20 percent of the communications.

Q.    So taking into consideration all

Page 95

JONATHAN LICHTENSTEIN

of the communications between Delaware County and Robbins Geller, who has initiated the most conversations?

MR. BRITTON: Objection. Asked and answered.

A.      I think 10, 15 percent is less than 85 to 90, so it would be Robbins Geller.

MS. BERKOWITCH: I think that now would be a good time to take another break.

THE VIDEOGRAPHER: The time is now 12:15 p.m. We're going off the video record. This concludes Media Unit Number 2.

                    -  -  -

(Whereupon, a recess took place from 12:15 p.m. to 12:33 p.m.)

                    -  -  -

THE VIDEOGRAPHER: The time is now 12:33 p.m., we're going back on the video record. This will begin Media Unit Number 3.

BY MS. BERKOWITCH:

Q.      Mr. Lichtenstein, who at

Page 96

JONATHAN LICHTENSTEIN

Delaware County is responsible for overseeing Delaware County's participation in this litigation?

A.          The solicitor's office.

Q.          And, again, to confirm, that's you and then the solicitor?

A.          Correct.

Q.          And what type of relief is Delaware County seeking from the court?

A.          On behalf of the entire class, we are seeking damages related to the inflated price at which class members may have bought stock as a result of the fraud on the market by AdaptHealth.

Q.          Does Delaware County expect to recover its alleged losses?

A.          As a class participate, it would have to be calculated based on each individual stock purchase as I've testified before, the overall estimate is approximately 90 thousand dollars.

Q.          And does that meet the County's expectation since it decided to participate in this action?

Page 97

JONATHAN LICHTENSTEIN

A.        Correct.  Our anticipation has been that we would participate and receive compensation as a class member related to our losses.

Q.        When did the County first estimate its losses from AdaptHealth's alleged fraud?

A.        That was done in connection in -- that was done in connection with our decision to participate in the action and to move to become lead plaintiff or co-lead plaintiff.

Q.        So over the summer of 2021?

A.        Correct.

Q.        And at the time, I believe you said that the expected recovery was around 90 thousand dollars?

A.        Correct.

Q.        Is Delaware County's expected recovery different now?

A.        No.  But, again, that was our losses.  It depends on the recovery.  We would -- we would receive a proportionate loss based on our losses just like any other class

JONATHAN LICHTENSTEIN

member so it may not be the full 90, it would be whatever is recovered by the class.  It would be a calculated amount based on what's recovered by the class.

Q.      If Delaware County were compensated for its alleged losses, would that satisfy its interest in pursuing this litigation?

A.      Correct.  If it was -- if the class is compensated for its losses.

Q.      And why is that?

A.      The purpose of the litigation is to obtain recovery for the class for losses as a result of fraud perpetrated by AdaptHealth, so getting financial recovery for those losses would be -- would be compensation for fraud.

Q.      So I don't think that I was clear in my question.  I am just talking about Delaware County, not the entire class as a whole.  The class hasn't been approved yet.

So specifically as to Delaware County, the County's losses were compensated, would that satisfy the County's interest in pursuing this action?

Page 99

JONATHAN LICHTENSTEIN

MR. BRITTON: Objection. Asked and answered. You can answer if you have anything to add.

A.        Participating on behalf of the class, so this is not an individual lawsuit for Delaware County. So to the extent the class is certified, just having Delaware County paid would not be sufficient.

BY MS. BERKOWITCH:

Q.        Has any outcome been promised by Delaware County?

A.        No.

Q.        And has Delaware County received any compensation for its service as lead plaintiff?

A.        No.

Q.        Does Delaware County expect to receive any compensation for its status as lead plaintiff?

A.        We expect --

MR. BRITTON: Hold on one second. Hold on. Objection. Asked and answered. You can -- you can answer.

A.        The court has the power to order

Page 100

JONATHAN LICHTENSTEIN

payment of certain costs such as my time at this -- at this deposition, but in terms of recovery of any compensation for our losses, we would participate solely as a member of the class.

BY MS. BERKOWITCH:

Q.      So Delaware County does expect to be reimbursed for the time of its employees, you specifically, who have worked on this action?

A.      We understand that the court has the power to do that.  I don't know if it's an expectation.

Q.      And would Robbins Geller be the entity that would be covering that reimbursement?

MR. BRITTON:  Objection to form.  Asked and answered.  Misstates his testimony.  You can answer, Jonathan.

A.      We would not be paid from our -- by Robbins Geller, we would be paid by order of the court from the recovery from AdaptHealth.

BY MS. BERKOWITCH:

Q.      But earlier I thought that you

Page 101

JONATHAN LICHTENSTEIN

testified that all costs and expenses would be covered by Robbins Geller?

A.     External costs and expenses but it's not costs and expenses of, for example, my time.  That would be costs and expenses of -- I don't know who is paying for holding this deposition, for any expert witnesses, et cetera, for court filing fees, it's not referring to -- to clarify, it's not referring to any cost of the County.

So this would be -- those would only be cost to the County in terms of employee time, that solely would be covered by a court order from the recovery.

Q.     Okay.  Is reimbursement important to Delaware County?

A.     No.

Q.     What does Delaware County understand its role to be in this litigation as the plaintiff?

A.     We are to represent if -- if approved the class, we would have a duty to the class to maximize the recovery and we have a duty to employ and monitor counsel in --

Page 102

JONATHAN LICHTENSTEIN

litigation.

Q.        Is there anything else?

A.        I mean, we have our duties -- we have our duties as co-lead plaintiff to represent the class.  I'm not sure what else you're -- you're referring to.

Q.        So is Delaware County approaching its role any differently as a co-lead plaintiff than it were if it was the sole lead plaintiff?

A.        No.

Q.        Does having Bucks County as a co-lead plaintiff make it easier for Delaware County to serve as lead plaintiff?

A.        Are you referring to the work for the County or to the approval of the co-lead plaintiffs and pursuing the litigation?

Q.        Let's start with its -- in terms of duties and responsibilities.  Does it change -- does it change the County's understanding of what its duties and responsibilities are?

A.        No.

Q.        And in terms of pursuing a

Page 103

JONATHAN LICHTENSTEIN

litigation?

A.        You know, I -- my understanding of the securities laws is that having a class representative as co-lead plaintiff that have similar interests and have -- are able to combine the losses is beneficial in motions for class certification and in the motions previously where we were appointed as class representative.

Q.        Beneficial in what way?

A.        You have two instead of one and you have 150,000 in losses, approximately, instead of 90.

Q.        Has Delaware County considered the interests of other class members?

MR. BRITTON:  Objection.  Vague and ambiguous as to considered the interests.  You can -- and asked and answered.  You can answer.

A.        Delaware County is participating in this as a member of the class as all people other than defendants who purchased stock during the proposed class period.  So we are considering the members -- all -- the interests

JONATHAN LICHTENSTEIN

of all members of the class and recovery for losses during that period.

BY MS. BERKOWITCH:

Q.      What are those interests?

A.      Being compensated for buying stock at an inflated price because there was material information which AdaptHealth had not provided to the market and which was not otherwise -- and -- and it concealed.

Q.      And how is the County considering those interests?

MR. BRITTON:  Objection.  Asked and answered.

A.      Again, the County understands that it's participating in this as a member of the class and our recovery for the fraud on the market will be solely as a member of a class.

BY MS. BERKOWITCH:

Q.      I don't think that that exactly answered my question.  How exactly is the County considering the interests of the other class members?

MR. BRITTON:  Objection.  Asked and answered.  You can answer.

Page 105

JONATHAN LICHTENSTEIN

A.        Maximizing recovery for the class.

BY MS. BERKOWITCH:

Q.        Okay.  Are you aware of any conflicts between the County's interests and those of other members of the class?

A.        No.  The class -- the County is only seeking recovery as a member of the class.

Q.        Have you undertaken any efforts to determine whether there are any conflicts?

A.        A bit of a -- if we're only representing -- if we're only participating in this as a member of the class, we don't have any conflicts to worry about because our only recovery would be as a class member.  So there are --

Q.        So you -- just to make sure I understand, you have not undertaken any efforts to look into whether there are conflicts that exist?

MR. BRITTON:  Objection.  Asked and answered.

A.        There is no conflict that can exist because we are only seeking recovery as a

JONATHAN LICHTENSTEIN

member of the class.

BY MS. BERKOWITCH:

Q.      If the County becomes aware of such conflicts, is it willing to withdraw as lead plaintiff?

MR. BRITTON:  Objection.  Asked and answered.  You can -- sorry, Jonathan.  You can answer.

A.      We're only -- we're only participating as a member of the class.  So there should not be any such conflict.

BY MS. BERKOWITCH:

Q.      Has Delaware County ever pursued litigation, be it securities related or not, that was contrary to its own interests?

A.      No.

Q.      Has Delaware County communicated with any other alleged class members regarding this action?

A.      Bucks County Retirement System.

Q.      Anyone else?

A.      No.

Q.      And when Delaware County communicates with Bucks County, do they

Page 107

JONATHAN LICHTENSTEIN

communicate directly or through Robbins Geller?

A.      Both.

Q.      And Delaware County views its interests to be aligned with those of Bucks County, correct?

A.      Right.  We're both seeking recovery solely as members of the same class, so our -- our interest in this litigation are aligned.

Q.      Has Delaware County been an active participant in this litigation?

A.      Yes.

Q.      How so?

A.      We've reviewed all -- all the filings prepared by Robbins Geller.  We reviewed all the information they provided regarding the potential claim as reflected in those filings.

We've monitored their progress. We've been on calls, responded to emails, we reviewed all the filings and are reviewing them -- have provided comments and we continue to monitor their -- their service in -- in this -- as our attorneys and as attorneys for

Page 108

JONATHAN LICHTENSTEIN

the -- for the potential class.

Q.      How have you been monitoring their progress?

A.      We've been reviewing all emails and -- which update us, reviewing all filings and reviewing everything that's been filed by Defendants as well.

Q.      And so just a minute ago we discussed that your office is responsible for overseeing the litigation.  What have you done to manage it?

MR. BRITTON:  Objection.  Asked and answered.

BY MS. BERKOWITCH:

Q.      Anything in addition to what you just mentioned?

A.      No.

Q.      Okay.

MS. BERKOWITCH:  Ben, please, could we introduce Tab 9 as Exhibit 8, I believe?

- - -

(Whereupon the document was marked, for identification purposes, as

Page 109

JONATHAN LICHTENSTEIN

Exhibit Number 8.)

-  -  -

A.       Yep.  I have it here.

MR. BRITTON:  And, again, Mr. Lichtenstein, make sure to flip through this document to familiarize yourself with it before you answer questions.

A.       Absolutely.

MR. BRITTON:  Allie, is there any section that you would like him to focus on while he's doing his review?

MS. BERKOWITCH:  Not for the time being.

MR. BRITTON:  Okay.

MS. BERKOWITCH:  We will come back to it, the substance of it --

BY MS. BERKOWITCH:

Q.       But for now I'm not focused on that, if you would prefer to review it later.

A.       All right.  I flipped through quickly.  Are there specific questions or --

Q.       Well, yes.  Not to do with anything inside of it for now, but did Delaware

Page 110

JONATHAN LICHTENSTEIN

County review this document before it was filed?

A.    Yes.

Q.    And who reviewed that document?

A.    Both myself and the controller.

Q.    And when exactly before the document being filed did you review it?

A.    It would have been within the month prior -- within a month or two months prior.

Q.    Do you recall how many times you reviewed it?

A.    We were sent multiple drafts which were reviewed and commented.  I cannot speak to exactly how many.  I just don't recall.  More than once.

MS. BERKOWITCH:  Ben, please can we introduce Tab 11 as Exhibit 9?  Oh, I'm sorry, Tab 10 as Exhibit 9?

- - -

(Whereupon the document was marked, for identification purposes, as Exhibit Number 9.)

- - -

Page 111

JONATHAN LICHTENSTEIN

A.          Yep.  I have it here.

BY MS. BERKOWITCH:

Q.          Are you familiar with this document?

A.          If you just give me a minute to --

Q.          Sure.

A.          -- flip through.  Yes.  I am.

Q.          And did Delaware County review this document before it was filed?

A.          Yes.

Q.          And who reviewed the document?

A.          Myself and the controller.

Q.          And do you recall when before it was filed you reviewed it?

A.          I would -- again, within the short time period, within the month or so prior to being filed we would have reviewed multiple drafts.

Q.          Okay.

MS. BERKOWITCH:  Ben, can we introduce Tab 11 as Exhibit 10, please?

-   -   -

(Whereupon the document was

JONATHAN LICHTENSTEIN

marked, for identification purposes, as Exhibit Number 10.)

- - -

A.      I have it here.

BY MS. BERKOWITCH:

Q.      Are you familiar with this document?

A.      Yes.

Q.      Has Delaware County reviewed it before?

A.      Yes.

Q.      And who reviewed it?

A.      Myself and the controller.

Q.      And when did you review it?

A.      We would have seen it shortly after it was -- after it was issued.

Q.      So can you give me a rough time estimate?

A.      June 2022.

Q.      And what is Delaware County's understanding of this decision?

A.      This decision states that the co-plaintiffs have overcome the initial barrier to a securities class action or actually, any

Page 113

JONATHAN LICHTENSTEIN

lawsuit which is whether or not on the base we stated a claim and this denied the Defendant's motion to admission for failure to state such a claim.

MS. BERKOWITCH:  Ben, can we introduce Tab 14 as Exhibit 11, please?

-   -   -

(Whereupon the document was marked, for identification purposes, as Exhibit Number 11.)

-   -   -

A.       I have it.  Yes.

BY MS. BERKOWITCH:

Q.       Has the County reviewed this document before?

A.       Yes.

Q.       And who reviewed it?

A.       Myself and the controller.

Q.       And when was it reviewed?

A.       As with the other filings in this case, we would have reviewed drafts with it -- drafts and then the final within, approximately, a month before it being filed.

Q.       Have lead plaintiffs retained an

Page 114

JONATHAN LICHTENSTEIN

expert in this matter?

A.        Yes.

Q.        Do you know what the expert's name is?

A.        I'd have to review the -- the filing to refresh.

Q.        And is this something that Delaware County knew of before preparing for this deposition?

A.        Yes.

MS. BERKOWITCH:  Ben, please can we introduce Tab 16 as Exhibit 12?

- - -

(Whereupon the document was marked, for identification purposes, as Exhibit Number 12.)

- - -

A.        Yep.  I have it now.

MR. BRITTON:  I'm going to lodge an objection to this exhibit in that its incomplete.  It's only the exhibits to the larger motion for lead plaintiff.

MS. BERKOWITCH:  I was about to clarify that, indeed, it is Exhibit B to

Page 115

JONATHAN LICHTENSTEIN

the motion for the -- Plaintiffs, filed as Docket Number 5 on November 27th, 2021.

BY MS. BERKOWITCH:

Q.        And if you could just scroll down to the next page, please?

A.        Sure.  The signature for the page with the signatures or the page showing the transactions?

Q.        Yeah.  This page is great, the one on the screen, Page 2.

A.        Okay.  Sorry.

Q.        No worries.  So this is Delaware County's certification that was submitted with its lead plaintiff appointed motion?

And as you can see in the last line above the signature it is dated September 23rd, 2021?

A.        Okay.

Q.        Is this -- actually -- strike that.

If you look at Paragraph 5, Delaware County has listed as an action that it

JONATHAN LICHTENSTEIN
sought to serve or did serve as a representative party within the past three years, the Cabot oil case you were discussing earlier, right?

A.      Correct.

Q.      So is this an accurate list of actions where Delaware is serving as lead plaintiff as of today?

A.      Yes.

MR. BRITTON:  Objection. Foundation.  You mean in addition to this one?

MS. BERKOWITCH:  No.  I mean -- yes.  I do mean in addition to this one.

A.      That's how I took it.  Yes, the two were involved in the AdaptHealth and the Cabot Oil listed here.

BY MS. BERKOWITCH:

Q.      So what work does the County do in its role as lead plaintiff in the Cabot Oil case?

A.      We have the same responsibilities to the class as we do here, which is to employ and monitor counsel and just

JONATHAN LICHTENSTEIN

to continue to review the proceedings so that they're prosecuted to maximize recovery for the class.

Q.    And so Delaware County views its role as being very similar to its role in Cabot Oil in this action?

A.    Correct.

Q.    How much time does Delaware County spend on the Cabot Oil case?

A.    It would not be -- I would not be able to give you a total amount.  I would say it's similar to this in that it's sporadic patches of work, probably numbering in the hours -- in, you know, hours here and -- not individual hours, but, you know, hours spent when they're -- when there's news in the case either reviewing orders or reviewing documents or reviewing or communicating about strategy with counsel.

Q.    What's the current status of that matter?

A.    I -- I would have to -- I would have to refresh.  I don't believe it's as advanced as this.  It was moved from

Page 118

JONATHAN LICHTENSTEIN

Pennsylvania to Texas, which has slowed down the proceedings and there's been some motion practice since.

Q.      Okay.  I would like to turn your attention to another document.

MS. BERKOWITCH:  Ben, please can we introduce Tab 16(A) as Exhibit 13?

- - -

(Whereupon the document was marked, for identification purposes, as Exhibit Number 13.)

- - -

A.      Yep.  I have it here.

BY MS. BERKOWITCH:

Q.      So these are the Delaware County board minutes from September 22nd, 2020, right?

A.      Uh-huh.

Q.      Have you ever reviewed these minutes before?

A.      Yes.

Q.      When did you review them?

A.      I would have reviewed them at the time -- at the time when they were at the next meeting following September 22nd.

JONATHAN LICHTENSTEIN

Q.        Okay.  And if we turn to Page 7 under 6B there's the solicitor's report?

A.        Correct.

Q.        So can you please just read the second and third paragraphs there?

MR. BRITTON:  Take your time to read the entire section, Mr. Lichtenstein.

A.        Yep.

BY MS. BERKOWITCH:

Q.        So here we can see it reads that first item of the Board to consider is whether to proceed with Laura Stein of Robbins Geller. They brought to our attention that a securities fraudulent transaction was filed against Cabot Oil, the matter that we've just been discussing.

And later on in this paragraph it says that Robbins Geller believes that Delaware County's employment -- sorry -- employees retirement fund would be best suited to represent the interests of the class as a Pennsylvania based plaintiff.

What does best suited mean here?

Page 120

JONATHAN LICHTENSTEIN

A.        Meaning we would be interested, meaning that this was a fraud which occurred in Pennsylvania and as a Fund in Pennsylvania, we were directly affected by, you know, a fraud in our own backyard.

Q.        Okay.  And if we look at the second -- well, the third paragraph in that section, beginning Secretary Phillips said while we don't typically receive a lot of money from these cases, there is no cost to the County except time and effort to support the case.

Do these cases refer to securities class actions?

A.        Correct.

Q.        And what did Secretary Phillips mean when she said that we don't typically receive a lot of money from these cases?

A.        She's speaking as to her experience.

Q.        In your experience, how much does the County typically receive from securities class actions?

MR. BRITTON:  Objection.  Vague

Page 121

JONATHAN LICHTENSTEIN

and ambiguous as to time.  Asked and answered multiple times.  You can answer.

A.       Well, like I said, I know last year it was under $10,000, that's the most recent information I -- I have.  Anything further back, I'd have to research.

BY MS. BERKOWITCH:

Q.       Okay.  So earlier we established that the Board has fiduciary obligations to the Fund and is required to act in the fund's best interests.

A.       Yep.

Q.       Do you recall that?

A.       Correct.

Q.       And we also discussed as part of that, that the funds -- as part of that duty, one of those duties is to maximize Delaware County's potential return.

Do you recall that?

A.       Correct.

MR. BRITTON:  Objection.

Misstates the testimony.

BY MS. BERKOWITCH:

Q.       So why would the County pursue

Page 122

JONATHAN LICHTENSTEIN

litigation from which it does not typically receive a lot of money?

MR. BRITTON:  Objection.  Vague and ambiguous as to time period.  You can answer.

A.       As a participant in the market, it's important that frauds on the market are policed and it's important that large investors, at least I think we're a large investor, maybe not, like the Delaware County Employees Retirement System pursue these cases rather than letting them go.

BY MS. BERKOWITCH:

Q.       Why is it Delaware County's role to police the market?

A.       I think -- I think all large investors are interested in the market being efficient and having accurate information and if securities class actions are not pursued, then there's an incentive for fraud on the market, which would overall hurt returns.

Q.       And what do you mean when you say -- or when you refer to the market being efficient, what does that mean?

Page 123

JONATHAN LICHTENSTEIN

MR. BRITTON:  Hold on one second.  Objection.  Calls for expert opinion, legal conclusion.  You can answer.

MS. BERKOWITCH:  The Witness just used that word, I would just like to state for the record.

MR. BRITTON:  Just stating my objection.  You can answer.

A.       When someone buys a stock, they should be buying it based on accurate information.

BY MS. BERKOWITCH:

Q.       And does Delaware County understand its role in this litigation to be policing the market as well?

A.       We're representing the class to maximize their recovery as a result of actions like this, then there's a -- there's a disincentive for companies to engage in frauds on the market.

Q.       So -- actually, strike that.

So going back to the document, Secretary Phillips also says in that third

Page 124

JONATHAN LICHTENSTEIN

paragraph, there is no cost to the County except time and effort to support the case.

A.       Yep.

Q.       If the expectation had been that participated as lead plaintiff would have a cost, would that have affected the County's willingness to participate as lead plaintiff?

MR. BRITTON:  Objection.  Asked and answered.

A.       It would have been taken into account.

BY MS. BERKOWITCH:

Q.       And time and effort to support the case, by that reference, you --

A.       Sorry.  Go ahead.

MR. BRITTON:  Let her finish her question.

A.       I apologize.

BY MS. BERKOWITCH:

Q.       No.  That's okay.  When she's referring to that, I'd just like to confirm that you can't clarify what that actually means in quantifiable terms?

A.       In terms of the exact amount of

Page 125

JONATHAN LICHTENSTEIN

time?

Q.      In terms of the exact amount of time or even a rough approximation.

A.      I mean, I -- nothing that I -- I -- you know -- no.  I can't.

Q.      Okay.  Okay.

MS. BERKOWITCH:  Ben, can we please -- actually, strike that.  Can we please go back to Exhibit 5, which should be the November 17th board minutes?

A.      Yes.

BY MS. BERKOWITCH:

Q.      Thank you.  So if we go to Page 2, again, the litigation update that you provided --

A.      Yep.

Q.      -- you reference a UBS matter?

A.      Yes.

Q.      Was that a securities class action case?

A.      No.

MR. BRITTON:  I'm also going to caution the Witness not to reveal any attorney-client communications in

Page 126

JONATHAN LICHTENSTEIN

connection with that matter.

MS. BERKOWITCH:  Okay.  And can we please go to, Ben, tab -- sorry, Tab 19 and introduce that as Exhibit 14.

- - -

(Whereupon the document was marked, for identification purposes, as Exhibit Number 14.)

- - -

A.       I have it here.

BY MS. BERKOWITCH:

Q.       Okay.  Great.  And so these are the Delaware County board minutes from June 26th, 2019, right?

A.       Okay.

Q.       And then if we go to Page 3 at the top, it's 6A, old business.  Could you just read the paragraph marked A?

A.       Sure.  I've read.

Q.       Okay.  Great.  And do you see that in the second line this paragraph references an action against U.S. Express?

A.       Yes.

Q.       Where the County was asked to be

Page 127

JONATHAN LICHTENSTEIN

outside counsel -- sorry -- was asked to be lead plaintiff by outside counsel?

A.    Yes.

Q.    Was this a securities class action?

A.    I would have to -- I would have to research.  I was not on the Board at the time.  I was not at the County at the time and beyond the proposed class action, I do not have any of the details of the case at my -- available.

Q.    Do you know if Robbins Geller represented Delaware County in that action?

MR. BRITTON:  Objection.  Asked and answered.  You can answer if you know.

A.    I think the -- just reading from the minutes, it says that the County was not -- did not pursue that case, so counsel advised that it turned out the County was not positioned to be the best lead case -- plaintiff more appropriate for this case, so I know the County did not pursue it.

BY MS. BERKOWITCH:

Page 128

JONATHAN LICHTENSTEIN

Q.         Okay.  And then further down in that paragraph there's another action that's referenced, the Livent matter.

Do you see that?

A.         Yes.

Q.         Who asked the County to participate as lead plaintiff in that action?

MR. BRITTON:  Objection.  Foundation.  You can answer, if you know.

A.         I don't know anything.  I would have to research.

BY MS. BERKOWITCH:

Q.         Okay.  So, again, as the County's representative, you don't have knowledge as to these cases?

A.         The County has knowledge, I just can't produce it off the top of my head.

MR. BRITTON:  I'll also note for the record that we've lodged an objection to providing information beyond a three-year time period provided in the PSLRA.

So to the extent that you're suggesting to the Witness that he's not

**Page 129**

JONATHAN LICHTENSTEIN

prepared for this deposition, it also misstates the record because it ignores our objection.

MS. BERKOWITCH:  Well, I believe that the certification was signed on September 23rd, 2021, right?

MR. BRITTON:  I don't know.  I'm stating for the record we've objected to providing information beyond the three-year period provided in the PSLRA.

MS. BERKOWITCH:  I believe these minutes would actually fall within the three-year period, but -- so the record reflects that.

MR. BRITTON:  Okay.

MS. BERKOWITCH:  Okay.

BY MS. BERKOWITCH:

Q.       So based on these minutes, Delaware sought to serve as the lead plaintiff, correct?

MR. BRITTON:  As to the Livent matter?

MS. BERKOWITCH:  Yeah.  Sorry.

A.       I can read the words -- I can

Page 130

JONATHAN LICHTENSTEIN

read the words of the minutes that said they were asked to participate and they were approved.

BY MS. BERKOWITCH:

Q.        And you don't know if it's a securities class action or not?

A.        No.

Q.        Can we agree that if it were a securities class action, it should have been listed on the County's certification?

MR. BRITTON:  Objection.
Foundation.  Calls for speculation.
Calls for a legal conclusion.

BY MS. BERKOWITCH:

Q.        Because it would fall within the three-year period of the certification?

MR. BRITTON:  Same objections.
You can answer, if you know.

A.        I do not -- to my knowledge, we did not participate, we have not participated in this case.  I do not have the exact history of what happened after this meeting.

BY MS. BERKOWITCH:

Q.        I just have a few more questions

Page 131

JONATHAN LICHTENSTEIN

on this and then we can take a break hopefully.

MS. BERKOWITCH: Ben, can you please introduce Tab 20 as Exhibit 15?

- - -

(Whereupon the document was marked, for identification purposes, as Exhibit Number 15.)

- - -

A.     Yes.

BY MS. BERKOWITCH:

Q.     And so these are board minutes from November 28th, 2018?

A.     Correct. That's what they -- that's what relates at the top.

Q.     And if we go to Page 3, Paragraph 5C entitled U.S. Technologies Litigation, could you just read that paragraph for me?

A.     Sure. Yes.

Q.     So this paragraph explains that outside counsel, Laura Stein, contacted Ms. Phillips regarding a potential litigation that Ms. Stein thought Delaware County should be involved with as a lead plaintiff.

Page 132

JONATHAN LICHTENSTEIN

The second sentence reads, in order to participate, we will require to act before there was time to get a vote from the retirement board.  After discussion with Mr. Catania, Ms. Phillips circulated an email to the members of the Board and received the go-ahead to proceed subject to ratification by the Board at the next meeting.

A.        Okay.

Q.        Based on these notes -- sorry -- these minutes, it seems as though there was some kind of an approval process that was required from the Board.

Can you explain how that kind of squares with what we discussed earlier?

A.        The current solicitor is of the opinion that he has sole power to oversee litigation.  I don't know what the solicitor at the time, Mr. Catania, felt or what position he took.

Q.        That's helpful.  Thank you.  Do you have any knowledge of whether Delaware County pursued this action?

A.        I would have to research.

Page 133

JONATHAN LICHTENSTEIN

Q.        Okay.  Do you intend to continue the lawsuit against AdaptHealth on an individual basis if the class is not certified?

MR. BRITTON:  Objection.  Calls for speculation.

A.        I can't answer that.  It would -- it would depend on -- it would have to be -- as he said, speculated, I would have to speculate as to the opinions of the solicitor.

MS. BERKOWITCH:  Okay.  I think that's a good place to stop for lunch.

THE VIDEOGRAPHER:  The time is now 1:28 p.m., we're going off the video record.  This concludes Media Unit Number 3.

-  -  -

(Whereupon, a recess took place from 1:28 p.m. to 2:01 p.m.)

-  -  -

THE VIDEOGRAPHER:  The time is now 2:01 p.m., we're going back on the video record.  This will begin Media Unit Number 4.

MR. WOLTERS:  Can we unmute

Page 134

JONATHAN LICHTENSTEIN

Allie Berkowitch again?

MS. BERKOWITCH:  Can you hear me now?

A.       Yes.  We can hear you.

BY MS. BERKOWITCH:

Q.       Okay.  Thank you for confirming. Mr. Lichtenstein, is Delaware County's retirement fund a defined benefit pension fund?

A.       Yes.

Q.       Oh, I'm sorry.  I didn't hear it.

A.       Yes.

Q.       Okay.  Thank you.  Sorry.  And when did the Fund begin?

A.       I would have to go back and look.  It's been in existence for at least 25, 30 years, the Pennsylvania pension fund, whenever the County created it.  So it's historical.

Q.       And what is the purpose of the Fund?

A.       To provide for defined benefit pension payments to former employees of the county.

JONATHAN LICHTENSTEIN

Q.        So employees make contributions to the Fund?

A.        Yes.

Q.        And what happens to those contributions?

A.        The contributions together with any legally required contribution from the County is put into the Fund and invested on behalf of the current and future members of the Retirement System, the former employees.

Q.        And the goal of the Fund is to maximize the returns for participants.

Is that right?

A.        It's to maximize return to make sure that sufficient funds are on hand for the participants.  Again, the participants don't get more or less depending on investment strategies or investment returns, it's a defined benefit plan.

Q.        Okay.  Are there any other goals --

A.        No.

Q.        -- define.  Okay.  And who is responsible for ensuring these goals are

Page 136

JONATHAN LICHTENSTEIN

fulfilled?

A.        The Board of the Retirement System.

Q.        Does the Board ever take actions with respect to the Fund that are not consistent with the goals that we just discussed?

A.        No.

Q.        And is the County's participation in this litigation as lead plaintiff consistent with the fund's goals?

A.        Yes.

Q.        How so?

A.        By seeking a recovery for losses to the Fund from a fraud -- perpetuated on the market, members of the class of similarly situated investors.

Q.        And during each year of the alleged class period, what was the approximate amount of the fund's assets?

MR. BRITTON:  Objection. Foundation.  You can answer, if you know.

A.        It would be between 400 and 600 thousand -- 600 million, sorry, is my -- that

JONATHAN LICHTENSTEIN

would -- to get a precise number would take research, it's currently in the mid 500 million-dollar range.  I can't quite speculate on the -- you know, how things have gone up and down, so around --

BY MS. BERKOWITCH:

Q.        Oh, I'm sorry.  I cut you off.

A.        At the time of the class, I would have to estimate -- I could estimate around 500 million, but an exact answer, I would have to go back and look.

Q.        And would members of the Board have a better understanding of those specific numbers?

A.        I think anyone who has asked for specific investment numbers that are, you know, at this point three or four years old would probably have to go back and look at documents, to give you a more precise number.

Q.        During the alleged class period, was any portion of the fund's assets invested in U.S. equities?

A.        Yes.

Q.        And who was responsible for

JONATHAN LICHTENSTEIN

making investment decisions with respect to the fund's assets that were invested in U.S. equities during the class period?

A.    The Retirement Board employees and overall investment manager, RBC Securities. RBC Securities within the board's -- within the Board's investment policy will then recommend individual investment advisors who then manage different portions of the portfolio with different aims, i.e., U.S. -- you know, U.S. fixed income, U.S. Large Cap Stocks, foreign stocks, et cetera.

And then RBC as the investment manager for the Board then monitors and reports back to the Board on the performance of individual investment advisors.

Q.    So the retirement board employees that you just referenced, they played a role in -- actually, strike that.  Let me rephrase.

Did the retirement fund employees that you just referred to play a role in investment decisions?

MR. BRITTON:  Objection to form.

JONATHAN LICHTENSTEIN

Misstates testimony.  I don't think he referred to retirement board employees. You can answer, if you --

MS. BERKOWITCH:  I think he did refer to retirement employees.

A.      I believe I referred to the members of the Board, the members of the Board are not employees of the Fund.  The members of the Board monitor the overall performance of individual investment advisors as -- as reported to them by the overall investment manager for the Fund.

BY MS. BERKOWITCH:

Q.      Okay.  But they didn't play a role in the decision making about the U.S. investments, right?  The investments of the U.S. in that -- U.S. equities?

A.      No.  They play -- they only play a role in selecting the investment advisor who then makes those investments within the -- you know, the restrictions agreed upon for their portion of the portfolio.

Q.      And so --

MR. BRITTON:  Allie -- hold on

Page 140

JONATHAN LICHTENSTEIN

one second, Allie, just to be clear for the record, when you say they, you're talking about the Board, the Board members?

MS. BERKOWITCH:  Yes.  Sorry about that.

MR. BRITTON:  Okay.

MS. BERKOWITCH:  Yes.

MR. BRITTON:  All right.

BY MS. BERKOWITCH:

Q.     And County employees also did not play a role in any of the investment decisions made during the class period as it relates to U.S. equities, right?

A.     Correct.

Q.     So during the alleged class period, RBC, who was the investment consultant for Delaware County during that time, played a role in making investment decisions.  What about --

A.     No.  Sorry.  I'm sorry.  That misstates my testimony.

MR. BRITTON:  Right.  Hold on. Let me lodge an objection, Jonathan.  The

Page 141

JONATHAN LICHTENSTEIN

objection misstates his testimony, he specifically testified that RBC does not play a role in the investment decisions.

BY MS. BERKOWITCH:

Q.      Can you give me the specific -- of the people, individuals or entities that were making the decisions, investment decisions during the class period?

MR. BRITTON:  Are you talking about for AdaptHealth or for all -- all securities?

MS. BERKOWITCH:  With respect to Fund assets that were invested in U.S. equities during the class period.

MR. BRITTON:  Okay.  Objection. Vague and ambiguous as to time.  You can answer.

A.      Again, as to every investment manager, I can't -- I would need to do research to testify to that.  Among them was EMERALD, Emerald Advisors.

BY MS. BERKOWITCH:

Q.      So there were other investment advisors who were in charge of making

Page 142

JONATHAN LICHTENSTEIN

investment decisions on behalf of Delaware County but you just don't know how many or who they were?

A.    Correct.  That would take some research, especially with an undefined period -- during the class period, that would take some research.  I just --

Q.    Okay.  And is there anyone else at Delaware County who would have that information?

A.    It should be in the reports we receive from -- it is in the reports that we receive from RBC.

Q.    And who reviewed those reports?

MR. BRITTON:  Objection.  Asked and answered.  You can answer.

A.    The reports from RBC are shared with the Board.

BY MS. BERKOWITCH:

Q.    But you don't know for certain whether anyone actually reviewed them?

A.    I -- I'm not sure where you're getting that from.  They are reviewed from RBC actively with the Board.

Page 143

JONATHAN LICHTENSTEIN

Q.      Okay.  Were there any County employees responsible for overseeing the investment decisions of the investment advisors during the alleged class period?

A.      No.

Q.      Were there any Board members responsible for overseeing the investment decisions, specifically?

A.      No.

Q.      What portion of the fund's assets were managed by Emerald during the alleged class period?

A.      That would have to be researched.

Q.      Has Emerald ever asked for more of the County's assets than it currently has authority over?

MR. BRITTON:  Objection.  Vague and ambiguous.  I think you've got two different time periods going on in that question, have they ever asked for more assets than the County currently has.

I'm just going to -- objection. Vague and ambiguous.  You can answer, if

Page 144

JONATHAN LICHTENSTEIN

you can -- if you understand it.

MS. BERKOWITCH:  Doug, I would appreciate it if you would stop making speaking objection, please.

MR. BRITTON:  Well, when your questions are contradictory within themselves, I -- I can make -- I haven't been making speaking objections all day, Allie.

MS. BERKOWITCH:  I didn't say you had been making them all day --

MR. BRITTON:  I'm making a clarification for the record.  I'm making a clarification for the record.

BY MS. BERKOWITCH:

Q.      You can go ahead.

A.      In my -- any recommendations to the Board as to increasing or decreasing a specific manager are done through RBC.  Whether or not there was any communication from Emerald to RBC, I do not know.

Q.      Do you know what the approximate amount of assets managed by Emerald was during the alleged class period?

Page 145

JONATHAN LICHTENSTEIN

A.        I would have to research that.

Q.        Who decided to appoint Emerald as an investment advisor?

A.        The retirement board.

Q.        And why was that not selected as an investment manager?

A.        I'm unable to answer, that was done at least ten years ago.

Q.        When was Emerald appointed to serve as an investment manager for Delaware County?

A.        I don't have the -- I don't have the exact date in front of me, but I believe they've been in place for at least ten years.

Q.        Does the County have confidence in Emerald's investment decision making?

A.        If they didn't, then as previously testified, they're -- we rely on the advice and the monitoring by RBC as to the performance of our investment advisors.

If the Board was unhappy with the performance of Emerald, then they would have made a change, they've been in place for, I believe, at least ten years and they haven't

Page 146

JONATHAN LICHTENSTEIN

been replaced, so --

Q.        So does the County have a process in place to address unsatisfactory performances by its money managers?

MR. BRITTON:  Objection.  Asked and answered.  You can answer.

A.        The Board would raise any concerns with RBC at the board meetings when investment performance is reviewed and would request RBC to either increase or decrease individual investment managers or to look for additional investment managers or different sectors, et cetera.

BY MS. BERKOWITCH:

Q.        So the Board would request that of RBC?

A.        Correct.

MS. BERKOWITCH:  Ben, please, can we introduce Tab 22 as Exhibit 16?

- - -

(Whereupon the document was marked, for identification purposes, as Exhibit Number 16.)

- - -

Page 147

JONATHAN LICHTENSTEIN

A.          Yes.

BY MS. BERKOWITCH:

Q.          Are you familiar with this document?

A.          Yes.

Q.          What is it?

A.          It's the contract with Emerald Advisors to manage a portion of the retirement fund's portfolio.

Q.          And if we go to Page 1 at the top of the page, it says the agreement made this blank day of blank, 2000.

A.          Uh-huh.

Q.          Do you know exactly when this document was executed?

MR. BRITTON:  And, Jonathan, take a look at the entire agreement before you answer any questions about it.

A.          No.  I do not.

BY MS. BERKOWITCH:

Q.          Is this the final version of this advisory contract?

A.          Yes.

Q.          Was this agreement in effect

Page 148

JONATHAN LICHTENSTEIN

during the alleged class period?

A.        Yes.

Q.        And were there any amendments or addendums made to it?

A.        Again, this is a contract that was entered into over 20 years ago.  If there was any specific amendment, we'd have to do additional research.  My understanding is that this is the contract that's still in place as to their duties.

MS. BERKOWITCH:  Ben, can you please introduce Tab 25 as Exhibit 17?

- - -

(Whereupon the document was marked, for identification purposes, as Exhibit Number 17.)

- - -

BY MS. BERKOWITCH:

Q.        Is this an amendment to the advisory agreement we were just looking at?

A.        If you could give me a minute to review?  That's what it purports to be.

Q.        So you were not aware of this document's existence before now?

Page 149

JONATHAN LICHTENSTEIN

A.        Personally, no.

Q.        And this document didn't come up in any of the searches that the County did for documents in responses to Defendant's requests for production?

A.        We produced what we believed were responsive documents.

Q.        So the County didn't think this was a responsive document?

A.        I was -- I was not personally part of that search.  We reviewed documents in the file and reviewed them with our counsel, Robbins Geller, as to what was produced.

Q.        Okay.  We can take that down and let's go back to Exhibit 16.  And if we go to Page 2, Paragraph 4, it reads, Emerald shall have sole discretion with respect to investments of funds in the account as to purchases and sales without prior consultation.

A.        Okay.

Q.        What does sole discretion mean?

A.        It means that they can make the decisions without consulting with the County.

Q.        So Delaware County has no role

Page 150

JONATHAN LICHTENSTEIN

to play in the investments that Emerald makes on its behalf?

MR. BRITTON:  Objection. Misstates the testimony.

A.        Our role -- the role to play is in selecting Emerald in -- in -- as it -- as it goes on in the next sentence to say, that Emerald shall be bound for such written guidelines by the management account as from time to time to be provided.

I do not -- you know, and so they don't have unlimited discretion to buy any security under the -- the sun.  If they were buying shares of, you know, foreign companies, et cetera, that would be outside of what their portfolio was supposed to invest in, but they have a specific portfolio with a specific plan, I think there's -- there's a Small Cap Growth and within that broad classification, they have investment discretion.

BY MS. BERKOWITCH:

Q.        So within this Small Cap Growth, the Company's investment -- sorry -- it invested in, Emerald does not need to consult

Page 151

JONATHAN LICHTENSTEIN

with the County before making decisions about those investments?

A.      Correct.  Not -- no -- no input is needed from the County for a specific purchase.

Q.      And is it fair to say that Emerald has a fiduciary duty to the Fund, the retirement fund?

A.      That's my understanding of U.S. public -- of U.S. law for investment advisors.

Q.      And if we look at the line that you just referred to, the second sentence, Emerald shall be bound by such written guidelines for the management of the account and shall from time to time be provided.

Did Delaware County provide any written guidelines to Emerald during the alleged class period?

A.      I would have to research. Again, this is an agreement that's been in place for 20-plus years.

Q.      So nobody at the County is qualified to speak about whether the County provided Emerald with any written guidelines?

Page 152

JONATHAN LICHTENSTEIN

A.      It would need to be researched. I'll defer to counsel on that.

Q.      Okay.  And if we go to Paragraph 7, which is on Page 3, it reads, Emerald shall provide such reports regarding the account quarterly and as may agreed upon, I think that means be agreed upon, by the parties from time to time.

So focusing specifically on the alleged class period, did Emerald provide reports directly to Delaware County?

A.      Yes.

MR. BRITTON:  Objection.  Asked and answered.

BY MS. BERKOWITCH:

Q.      You can answer.

MR. BRITTON:  He did.

A.      Yes.

BY MS. BERKOWITCH:

Q.      Thanks.  And how frequently did Emerald provide those reports?

A.      I believe they were monthly, but they may have been quarterly.

Q.      And how were -- oh, sorry.

Page 153

JONATHAN LICHTENSTEIN

A.      No.  That's fine.

Q.      How were those reports provided to the County?

A.      They were sent by email to the controller's office.

MS. BERKOWITCH:  Okay.  Ben, please can we introduce Tab 23 as Exhibit 18?

- - -

(Whereupon the document was marked, for identification purposes, as Exhibit Number 18.)

- - -

BY MS. BERKOWITCH:

Q.      So this is a July 23rd, 2021, email from Hannah Arnold to Joanne Phillips and Eileen Ricketts.

A.      Correct.

Q.      Serena Tenant is copied as well. Have you seen this document before?

MR. BRITTON:  Jonathan, make sure you flip through the whole document before you answer any questions about it.

A.      I have seen examples of the

Page 154

JONATHAN LICHTENSTEIN

Emerald report as part of the litigation process. I cannot tell you whether or not it was this one specifically.

BY MS. BERKOWITCH:

Q.        And do you recall when you reviewed those statements?

A.        It was sometime as part of the litigation process.

Q.        Was it in preparation for this deposition or before?

MR. BRITTON:  Objection.  Vague as to preparation for this deposition.
You can answer.

A.        I have seen these client statements previously as part of the litigation process.  I can't tell you it exactly, the time.

BY MS. BERKOWITCH:

Q.        Okay.  Are you aware of who Hannah Arnold is or Serena Tenant?

A.        No.

Q.        Do you know who Delaware County's primary contacts at Emerald were?

A.        No.

Page 155

JONATHAN LICHTENSTEIN

Q.       Okay.  So if we go to the page ending with the Bates ending in 0749 -- well, actually, sorry, actually before we do that, go to Page 2 -- yeah.  That is that one.  This is the client account review to Delaware County dated June 30th, 2021, right?

A.       Okay.

Q.       Okay.  And so if we go to Page 6 of 16, the Bates -- the little Bates number is 754, it ends in 754.  Yeah.  That's right.

A.       Yep.

Q.       So do you see that underneath the healthcare line towards the bottom of the page, Delaware County Holdings, in AdaptHealth are listed?

A.       Yes.

Q.       And it shows in the unrealized gain loss column, a loss of 78,341.60.

A.       Okay.

Q.       And then right underneath of that, there is a listing for Applied Therapeutics, Inc, which shows a loss of 108,336.42 in their unrealized gain loss column.

Page 156

JONATHAN LICHTENSTEIN

A.       Okay.

Q.       And similarly second up from the bottom, Avrobio INC shows a loss of 89,043.01?

A.       Okay.

Q.       Do you see that?

A.       Yes.

Q.       How do Delaware County losses in Applied Therapeutic and Avrobio compare to its loss in AdaptHealth holdings in Q2 2021 of this statement?

MR. BRITTON:  Objection. Foundation.  Beyond the scope of the deposition notice.  You can answer, if you know.

A.       The numbers are the numbers.  I would have to -- unrealized gain loss does not say the time period is over, so --

BY MS. BERKOWITCH:

Q.       Well, this is the Q2, 2021 statement, right?

A.       Right.

Q.       But in any event --

A.       I can visually see the numbers on the page.  I don't know what you're asking

JONATHAN LICHTENSTEIN

me to speculate on in your question.

Q.      So are the losses for Applied Therapeutics and Avrobio greater or less than the loss of AdaptHealth?

MR. BRITTON:  Objection.  Asked and answered.

MS. BERKOWITCH:  I don't believe that was answered.

MR. BRITTON:  Yeah.  He told you that they were bigger than -- the numbers were bigger than the one in the AdaptHealth column.  You can answer.

A.      To repeat, the numbers on the page are what they are, they say that those two losses are larger.  However, that's an unrealized gain loss column, so I don't know how long any of those stocks had been held for and whether or not the unrealized gain loss is just a current year or represents the entire time period for the holding.  So --

BY MS. BERKOWITCH:

Q.      I --

A.      -- I don't know what the comparison being made is.

Page 158

JONATHAN LICHTENSTEIN

Q.        Okay.  Is a loss of 108,336.46 a greater loss than 78,341.60?

MR. BRITTON:  Objection.  Asked and answered.  Allie, you're starting to harass the Witness.  Please move on to a -- substantive topic that is relative.

MS. BERKOWITCH:  Doug, I'm not harassing the Witness.

MR. BRITTON:  You are.  You've asked him the same question four times.  He's told you.

MS. BERKOWITCH:  He's not answering my question.

MR. BRITTON:  That the numbers are bigger.  He's told you the numbers are bigger.

MS. BERKOWITCH:  It's a very simple question.  Are they greater or are they lesser?

MR. BRITTON:  He said the numbers are bigger.

MS. BERKOWITCH:  Doug, you said the numbers are bigger.  He has not said that.

Page 159

JONATHAN LICHTENSTEIN

MR. BRITTON:  All right.  You can answer the question again.

A.        The Number 108 and the number -- the Number 108,336.42 and the number 89,043.01 are both larger than the number 78,341.60.

BY MS. BERKOWITCH:

Q.        Thank you.

A.        As to what they measure --

Q.        That's what I asked.  Thank you.

MR. BRITTON:  Mr. Lichtenstein, you can finish your answer.  Allie, you don't have the ability in this deposition to cut him off from his answer.

If you don't like his answer, it's too bad, but he gets to finish his -- his answer.  So please do not cut off the Witness.

Mr. Lichtenstein, if you have anymore to add, you can add it.

A.        No.  That was -- I appreciate it.  That was -- that was it.

BY MS. BERKOWITCH:

Q.        To your knowledge, did -- to the County's knowledge, did Delaware County sue

Page 160

JONATHAN LICHTENSTEIN

Applied Therapeutics or Avrobio for securities fraud?

A.      No.

MR. BRITTON:  Objection. Foundation.  Outside the scope of this deposition.  You can answer, if you know.

A.      No.

BY MS. BERKOWITCH:

Q.      And why not?

MR. BRITTON:  Objection.  Same objections.

A.      Because we've not been provided information that their management had provided -- had perpetrated fraud on the market.

BY MS. BERKOWITCH:

Q.      Did Robbins Geller suggest that Delaware County consider suing either of these companies?

MR. BRITTON:  Objection.  Calls for attorney-client privilege.  I instruct you not to answer that question.

BY MS. BERKOWITCH:

Q.      Were there any other agreements

Page 161

JONATHAN LICHTENSTEIN

for Emerald to provide reports to Delaware County than pursuant to the advisory agreement we were just discussing?

A.    No.

Q.    So when Delaware County received these reports from Emerald, what did it do with them?

A.    They were kept in the files in the controller's office.

Q.    Were there ever circulated internally?

A.    Not to my knowledge.

Q.    Was there one person or several people in particular who were responsible for reviewing them?

A.    Again, there's no one at the County -- we received these reports, there's no one at the County who is responsible for monitoring individual managers, that's done by RBC.

Q.    What would happen if somebody had a concern about one of these statements?

MR. BRITTON:  Objection.  Calls for speculation.  Assumes facts.  You can

Page 162

JONATHAN LICHTENSTEIN

answer.

A.        The general process when any questions come up on the portfolio is to ask our investment advisors or managers at RBC for further information.

BY MS. BERKOWITCH:

Q.        Were there certain performance outcomes that required the reports to be escalated?

A.        There's not any obligation to report that's -- that it's escalated, it's -- RBC reports to the Board at the meetings and if there are questions either at the meetings or something for some reason comes up between meetings, the request made to RBC for more information.  There's not an escalation or other sort of process like that in place.

Q.        So if we scroll back to the first page of this document and look at the cover email, it doesn't appear that anyone from RBC is on this email.  Do you know why that is?

A.        I don't know what RBC receives.

Q.        So how would RBC have received the client account review and the documents

Page 163

JONATHAN LICHTENSTEIN

that we were just looking at?

MR. BRITTON:  Objection. Foundation.  Calls for speculation.  You can answer.

A.      RBC provides the Board with a detailed analysis of the performance of each of its investment managers, including Emerald.  I do not -- I'm not privy to how RBC gets that information.

BY MS. BERKOWITCH:

Q.      Has Delaware County ever asked for a call or meeting with Emerald after reviewing a quarterly report?

A.      To my knowledge, no.

Q.      Has Delaware County ever sent a written communication to Emerald after reviewing a quarterly report?

A.      To my knowledge, no.

Q.      Were these reports ever discussed internally by county employees?

A.      To my knowledge, no.

Q.      And just to confirm, that's the County's knowledge?

A.      I mean, it's a highly

JONATHAN LICHTENSTEIN

speculative answer.  You know, I don't -- I don't know.  You know, I don't believe so, but I'm not privy to every conversation and I don't think anyone at the County is privy to every conversation the County has had.

Q.      Outside of these --

A.      There was nothing that was -- nothing that was escalated to the Board.  Not -- escalated is wrong, there was no process for escalation.  There's nothing that was brought to the attention of the Board.

Q.      So outside of the quarterly reports, did Emerald have any communications with Delaware County during the alleged class period?

A.      No.

MS. BERKOWITCH:  Ben, can we please introduce Tab 26 as Exhibit 19?

- - -

(Whereupon the document was marked, for identification purposes, as Exhibit Number 19.)

- - -

A.      Uh-huh.  Yes.  I have it here.

Page 165

JONATHAN LICHTENSTEIN

BY MS. BERKOWITCH:

Q.    Would you like to take a moment to review it?

A.    Sure.  Thank you.  Okay.

Q.    So are you familiar with this document?

A.    Yes.

Q.    What is it?

A.    It's the investment policy for the retirement fund.

Q.    And if we look at the last page, on the signature page, this document was executed in April of 2013, correct?

A.    Correct.

Q.    And was this policy statement in effect during the alleged class period?

A.    Yes.

Q.    Were any changes made to it during that time or since?

A.    There were no changes during the class period.  I don't believe there are any further changes.  I would have to double check and research.

Q.    Okay.  And if we go to Page 3,

JONATHAN LICHTENSTEIN

the purpose of the policy statement is laid out.

A.        Uh-huh.

Q.        And in the preamble of that, it says the purpose of this investment policy statement is to assist the Board in effectively supervising, monitoring and evaluating the investment of assets of the Fund.

How does the Board supervise, monitor and evaluate the investments of the fund's assets?

MR. BRITTON:  Objection.  Asked and answered.

A.        The Board employs a professional investment manager, RBC, that then monitors, supervises and evaluates the individual investment advisors that invest funds on behalf of the Fund.  RBC then reports back to the Board as to relative performance versus benchmarks.

BY MS. BERKOWITCH:

Q.        So the Board does not monitor or track the fund's investments itself directly?

MR. BRITTON:  Objection.  Asked

Page 167

JONATHAN LICHTENSTEIN

and answered.

A.        No.   They rely on their professional investment manager, RBC.

BY MS. BERKOWITCH:

Q.        Okay.  And then if we look at paragraph -- well, sorry, Number 2 under the purpose section.  It says that another one of the purposes or a sub purpose is to establish an appropriate investment strategy for managing all Fund assets, including an investment time horizon, risk tolerance ranges and asset allocation.  Do you see that?

A.        Yes.

Q.        Did Emerald pursue these objections on behalf of Delaware County during the class period?

A.        They were not invested in all Fund assets.  They were considered an appropriate investment advisor within the portfolio that the Fund maintained given their investment returns and their -- the type of funds -- the type of stocks they were investing in.

So they were part of an

Page 168

JONATHAN LICHTENSTEIN

appropriate investment strategy, but they were not establishing the -- the investment strategy or in charge of all aspects of it.

Q.      So for the portion of the Fund assets that Emerald was responsible for, does the County believe that Emerald pursued these objectives on behalf of the County?

A.      The County has been satisfied enough with the performance of Emerald in investing in the specific sector that they invest in to keep them on as an investment advisor for over 20 years.

Q.      Okay.  And then if we go to Page 5 at the bottom there is a paragraph about risk tolerances.

A.      Okay.

Q.      It states that the Board recognizes that the objectives of the Fund cannot be achieved without incurring a certain amount of principle volatility.

So when investing with Emerald, did Delaware County understand that its assets would be exposed to risks?

A.      Yes.

Page 169

JONATHAN LICHTENSTEIN

Q.        What were those risks?

A.        There's the overall -- I mean, we could go into investment theory for a few minutes, but basically it's the overall risk of changes in the U.S. markets in general. There's the risk that a specific stock is within a sector that declines or there could be a specific risk that a stock declines for reasons which are specific to that company, either it's mismanaged or there's some other event that affects just that company, not it's whole sector.

I don't think generally when you invest, you're investing -- expecting volatility based on fraudulent behavior of market -- of management.

Q.        Well, is it fair to say that Delaware County understood that the performance of the portfolio could result in losses?

A.        Yes.

Q.        Okay.  So if we go to Page 6, there's a section about the selection of investment managers.

A.        Okay.

Page 170

JONATHAN LICHTENSTEIN

Q.        And -- sorry.  Just give me one second.  And the last bullet point there says, the investment manager must clearly articulate the investment strategy that will be followed and document that the strategy has been successfully adhered to over time.

Has Emerald clearly articulated an investment strategy that it follows?

A.        The monitoring of that would have been by RBC.

Q.        So the County isn't aware of what the strategy that Emerald has adopted is?

MR. BRITTON:  Objection.  Misstates his testimony.  RBC is working on their behalf.  You can answer.

A.        They are -- are to be, again, I believe that they're Small Cap Growth and in terms of he whether or not they're following that strategy, that monitoring has been delegated on our investment manager.

To the -- I guess, here, you know, these terms go all over the place.  Here, RBC would be -- at the first paragraph before the bullet point, it says the Board with the

Page 171

JONATHAN LICHTENSTEIN

assistance of their independent investment consultant, that's what I've been referring to as RBC as the investment manager, here where it talks about investment managers, that's what I've been colloquy referring to as investment advisories.  So I hope that clarifies.

BY MS. BERKOWITCH:

Q.        So does the County have an understanding of how this Small Cap Growth strategy works or would that have been left to RBC as well?

A.        Yes.  RBC -- yes.  It does have an understanding.  RBC does provide information to the Board on each of the managers and what the goals are of their specific performance, their specific portion of the portfolio.

Q.        So what is that understanding?

MR. BRITTON:  Objection.  Asked and answered.  You can answer.

A.        Sorry.  Small Cap Growth Fund.

BY MS. BERKOWITCH:

Q.        And is that the strategy that the Fund was invested in during the alleged class period?

Page 172

JONATHAN LICHTENSTEIN

A.          Yes.

Q.          Is the Fund invested in any other Emerald strategies?

A.          I do not believe so.

MR. BRITTON:  Objection.  Vague as to time.

A.          Within the class period, no.

BY MS. BERKOWITCH:

Q.          How does Emerald determine what securities to buy for Delaware County?

MR. BRITTON:  Objection. Foundation.  Calls for speculation.

A.          You would have to ask them.

BY MS. BERKOWITCH:

Q.          Was Delaware County expecting individualized security selection for the Fund's assets?

A.          I have no idea what you mean by that.

Q.          As in does the County -- did the County expect that Emerald would be individually investing the Fund's money or investments versus as part of a larger strategy?

Page 173

JONATHAN LICHTENSTEIN

MR. BRITTON: Objection. Vague and ambiguous as to individually investing. You can answer.

A.      Do you mean that they would be investing into individual stocks as opposed to individual -- as opposed to investing in funds?

BY MS. BERKOWITCH:

Q.      Were they investing Delaware County's assets in an individualized -- I'm going to say personalized way rather than as a larger strategy with other investors as well?

MR. BRITTON: Objection. Vague and ambiguous.

A.      I don't know overall how Emerald operates internally. I just know what they are investing for the County.

BY MS. BERKOWITCH:

Q.      And did Delaware County have the ability to direct Emerald to buy a particular security on its behalf?

A.      No.

Q.      So if Delaware wanted to direct Emerald, how would it -- could it be go about doing that?

Page 174

JONATHAN LICHTENSTEIN

MR. BRITTON:  Objection.  Asked and answered.

A.      I think they're agreement is pretty clear that they have full investment discretion.

BY MS. BERKOWITCH:

Q.      Has Delaware County ever specifically directed Emerald to buy or sell particular security whether it be for AdaptHealth or another stock?

MR. BRITTON:  Objection.  Asked and answered.

A.      No.  We don't have the ability to do so per their agreement.

BY MS. BERKOWITCH:

Q.      And has Delaware County ever requested any deviations from the investment strategy of Emerald?

A.      No.

Q.      Turning to Page 8, there's a section on prohibited securities.

A.      Yep.

Q.      If you could read that paragraph through.

Page 175

JONATHAN LICHTENSTEIN

A.      Yep.

Q.      Outside of these restrictions, did Delaware County place any other restrictions on which U.S. companies Emerald could invest in?

A.      No. As long as it was within their portfolio or their stated sector.

Q.      Okay.  And then further down right above the bottom on Page 8 there is a section about the independent investment consultant.

A.      Correct.

Q.      The first sentence states that the Board will appoint a consultant to assist them in the investment process and maintaining their compliance to this policy.  So that investment consultant is RBC, as I think we have established.

A.      Correct.

Q.      Was RBC the investment consultant during the class period as well?

A.      Yes.

Q.      And when was RBC appointed?

A.      They've been in place for at

JONATHAN LICHTENSTEIN

least ten years.

Q.        And that engagement is ongoing today?

A.        Correct.

Q.        Why was RBC selected as opposed to other consultants?

A.        I would have to speculate, again, they've been in place for over ten years.

Q.        And on Page 3 we discussed the purpose of the investment policy statement and that's to establish an appropriate investment strategy.  Is RBC or Emerald primarily responsible for enacting and managing the strategy?

MR. BRITTON:  Objection.
Compound.  You can answer.

A.        RBC within this policy advises the Board on how to invest within that overall objective.  Emerald would be -- Emerald would be one of the investment direct -- the investments -- not -- they're not an investment directly.  Emerald would be one of the portions of implementing that investment strategy.

Page 177

JONATHAN LICHTENSTEIN

BY MS. BERKOWITCH:

Q.        And so does RBC oversee all of the Fund's assets or at least a portion?

A.        All.  They -- yes.  All.

Q.        Did RBC have any input on the Fund's AdaptHealth investments?

A.        Per their contract, Emerald had complete discretion over, like, stocks, it had -- over investments, investment funds -- the funds in for the Fund.  RBC would have been involved in monitoring their overall performance versus an index and how they -- and whether or not continued investment in that sector was appropriate.

Q.        Did RBC ever discuss AdaptHealth with the Fund?

A.        No.

Q.        Do you know if RBC ever discussed AdaptHealth with Emerald?

MR. BRITTON:  Objection.  Calls for speculation.

A.        I would have no idea.

BY MS. BERKOWITCH:

Q.        So moving on to Page 9, there is

Page 178

JONATHAN LICHTENSTEIN

a section about the review of investment
performances.

A.        Uh-huh.

Q.        That states that -- well, the
independent investment consultant shall report
on a quarterly basis to the Board to review the
total investment performance.

In addition, the independent
investment consultant will be responsible to
keeping the Board advised of any material
change and all money managed, personnel and
investment strategy and other personal
information potentially affecting performance
of all investments.

So does RBC update the Board on
a quarterly basis on the Fund's performance?

A.        Yes.  It's an approximate
quarterly basis as the Fund meets five times a
year, so it's actually a little more frequently
than quarterly.

Q.        And how does it prevent --
sorry, how does it present these performance
reviews?

A.        They're presented as -- as a

JONATHAN LICHTENSTEIN

listing of each of the money managers, they're overall how much they hold and compares their investment returns overall for different time periods to the appropriate benchmark for that sector.

Q.    So are these written materials or do they give, you know, any personal -- virtual presentations?

A.    They're written materials that are -- they're written materials which they then give a presentation to the Board on.  It will also overall look at investment returns in sort of a, you know, typical state of the market, where things are going, what's -- you know, just like a general overview of the U.S. economy, the U.S. markets, international markets and where things are going on.

Q.    So it performs written analyses and overviews that it shares with the Board?

A.    Yes.

Q.    And how often does the County communicate with RBC outside of these quarterly updates?

A.    With respect to investment

Page 180

JONATHAN LICHTENSTEIN

performance?

Q.      Yes?

A.      Rarely.

Q.      Do you know who is the primary contact from RBC for the County?

A.      You know, I'm always -- I'm always blanking on his name.  They're two different people at RBC.  It's something I have to look up in my email and send to you.  I just don't have it off the top of my head.  I see them four or five times a year and I never remember his name, so I apologize.

Q.      That's okay.  Does -- did RBC communicate with Emerald on behalf of the County during the alleged class period?

A.      Again, I don't know what RBC and Emerald have communicated between them.

Q.      Did RBC ever communicate with the County on Emerald's behalf during the alleged class period?

A.      No.

Q.      To the County's knowledge, did RBC ever provide an update about any material changes related to Emerald's performance during

Page 181

JONATHAN LICHTENSTEIN

the class period or shortly thereafter?

MR. BRITTON:  Objection.  Vague as to who.  You can answer.

A.        RBC would have provided the updates to the Board on Emerald's overall investment performance, whether anything -- any change in their overall performance was reviewed as material, I don't know.

BY MS. BERKOWITCH:

Q.        Okay.

MS. BERKOWITCH:  I think this is a good time to take a break.  We've been going for about an hour, just over.

A.        Okay.

THE VIDEOGRAPHER:  The time is now 3:04 p.m., we are going off the video record.  This concludes Media Unit Number 4.

- - -

(Whereupon, a recess took place from 3:04 p.m. to 3:21 p.m.)

- - -

THE VIDEOGRAPHER:  The time is now 3:21 p.m., We're going back on the

Page 182

JONATHAN LICHTENSTEIN

video record.  This will begin Media Unit Number 5.

BY MS. BERKOWITCH:

Q.      I would like to turn to Exhibit 12, please.

MR. BRITTON:  Sure.

BY MS. BERKOWITCH:

Q.      And if we can go to the third page, did you review this document before it was filed?

A.      This is the certification by Bucks.

Q.      Correct.

A.      No.

Q.      No.  This should have been the Delaware one.

MR. BRITTON:  I think that's Page 2.

A.      Yes.

BY MS. BERKOWITCH:

Q.      I think that the Schedule A is the Bucks one.  If you go to the next page?

A.      Yes.  Page 3?  You want me to look at Page 3?

Page 183

JONATHAN LICHTENSTEIN

Q.        Right.  So those are the Delaware County transactions?

A.        Correct.

Q.        Okay.  Is this information regarding Delaware County's purchases and sales of AdaptHealth stock accurate?

A.        Yes.

Q.        And how did you make that determination?

A.        Robbins Geller -- Robbins Geller, as our attorneys, has access -- has access to the record of our corporate trustee who holds all the Delaware County securities and they assisted us in preparing us.

Q.        So if we look at the first part of this, I guess, chart, which it says shares acquired.

A.        Okay.

Q.        -- refers to Delaware County's purchases of AdaptHealth stock during the alleged class period, right?

A.        Correct.

Q.        And they're all accurate?

A.        Correct.

JONATHAN LICHTENSTEIN

Q.      And then just below that, shares disposed, those are all of the sales that Delaware County made of AdaptHealth stock during the alleged class period as well, correct?

A.      Correct.

Q.      And they look all accurate?

A.      Yes.

Q.      Were there any other purchases of AdaptHealth stock by Delaware County during the alleged class period that do not appear on this certification?

A.      No.

Q.      Similarly, were there any sales of AdaptHealth stock by Delaware County during the alleged class period that don't appear here?

A.      No.

Q.      So did Delaware County make any efforts to monitor developments on AdaptHealth directly?

A.      No.

Q.      Did any of Delaware County's employees have any direct contact with anyone

Page 185

JONATHAN LICHTENSTEIN

at AdaptHealth?

A.        No.

Q.        Was Delaware County aware of any nonpublic information about AdaptHealth?

A.        No.

Q.        Has Delaware County ever reviewed any public documents provided by AdaptHealth?

MR. BRITTON:  Objection.  Vague and ambiguous as to time.  You can answer.

A.        Publically filed SEC documents were among the things that were reviewed as part of the litigation process by Delaware County.

BY MS. BERKOWITCH:

Q.        And who reviewed these documents?

A.        Myself and the controller.

Q.        And were they reviewed in preparation for this deposition or before?

MR. BRITTON:  Objection.  Vague and ambiguous as to preparation for this deposition.

Page 186

JONATHAN LICHTENSTEIN

A.        They were reviewed as part of the litigation process.

BY MS. BERKOWITCH:

Q.        So when you say as part of the litigation process, what is that time period that you're referring to?

A.        From the day that we were contacted to look into this matter and whether we'd be interested in being a lead plaintiff up and through today.

Q.        And when you reviewed these public documents, what information did you learn from your review?

A.        There were selected portions of the public documents that were used as evidence for the misstatements by AdaptHealth.

Q.        So your review was contained to the portions that you -- not you -- Delaware County and Bucks County allege to be misleading in the complaint?

A.        Correct.

Q.        Okay.  I'd like to look at a few of those alleged misstatements.

A.        Okay.

JONATHAN LICHTENSTEIN

MS. BERKOWITCH:  Ben, please, can we go back to -- it's Tab 9, so I think it's Exhibit 8 is the complaint.

A.        Yep.

BY MS. BERKOWITCH:

Q.        And then if we could please go to Page 49, Paragraph 116 and if you could just read that through.

A.        Yes.

Q.        So prior to reviewing the complaint, drafts of the complaint, had you ever reviewed this statement before?

A.        Prior to the complaint being reviewed and drafted, Robbins Geller had -- has shared with us some summary information describing the case and I do not recall whether these statements were in that summary information, but otherwise, the only time we've seen this is as part of the litigation process.

Q.        And did you review the transcript of the Q4, 2020 earnings call that is referenced in this paragraph?

A.        No.

Q.        Is Delaware County alleging that

JONATHAN LICHTENSTEIN

this statement is false or that it is misleading?

A.        We're alleging that it's misleading because the term organic growth had previously been used by AdaptHealth to mean growth in existing businesses whereas -- whereas starting with this -- at some point in 2020, AdaptHealth began to report what they were calling still organic growth number but which instead was actually including revenue from acquisitions.

So the description of organic growth of changed without adequate disclosure to the market as to what the change had been made which made this paragraph misleading to someone who was thinking of organic growth was still what it had been in previous reporting.

Q.        So is it Delaware County's position that the entirety of this paragraph is misleading or just a portion of it?

A.        The entirety, because all the reference to organic growth were referring to the newly calculated number and not to the previously calculated number without adequate

Page 189

JONATHAN LICHTENSTEIN

disclosure of the change in what was being called organic growth.

Q.    Has Delaware County ever discussed the way that AdaptHealth calculates organic growth with Emerald either during or after the class period?

A.    No.

Q.    Did Delaware County ever discuss the way AdaptHealth calculated organic growth with anyone else?

MR. BRITTON:  Objection.  Calls for attorney-client privilege.  Don't disclose communications with Counsel. You can answer.

BY MS. BERKOWITCH:

Q.    Does Delaware County -- oh, I'm sorry.

A.    I'm sorry.

MR. BRITTON:  You can answer to the extent it doesn't include communications with Counsel.

A.    No communications other than those protected by privilege.

BY MS. BERKOWITCH:

Page 190

JONATHAN LICHTENSTEIN

Q.        Has Delaware County ever invested in company to calculate organic growth in a manner similar to AdaptHealth?

A.        I can't answer that question because Delaware County doesn't get involved in analyzing specific companies, so we -- we would not have seen that or have knowledge of that, that would have been up to our investment managers.

Q.        And has Delaware County ever discussed the way that any company that it is invested in calculate organic growth with Emerald?

MR. BRITTON:  Objection.  Asked and answered.

A.        No.

BY MS. BERKOWITCH:

Q.        Oh, go ahead.

A.        I was answering your question. I, you know, just by Doug's objections, I was answering your question which was, no, we have not discussed that with Emerald.

Q.        Could we please turn to Page 39, Paragraph 94?

Page 191

JONATHAN LICHTENSTEIN

A.      Yep.

Q.      Can you just give it a read through?

A.      Yes.

Q.      Had you ever reviewed this statement prior to reviewing it for the company?

A.      No.

Q.      And I would like to go kind of line by line here of the quoted text.  So the first line is, we had an extraordinarily busy and productive second quarter.

Is Delaware County alleging that that statement is false or that that statement is misleading?

MR. BRITTON:  Objection.  Vague and ambiguous as to the scope of this statement.  You can answer.

A.      No.

BY MS. BERKOWITCH:

Q.      The next sentence, our core business performed well and we were active in identifying attractive acquisition candidates to help further our strategic long-term goals.

Page 192

JONATHAN LICHTENSTEIN

Are you alleging that this sentence is false or that it is misleading?

A.      We're alleging that there's a material omission in that key to acquisitions was Defendant McGee, who was at that time implicated in a massive tax fraud which later led him to leave the company.

Q.      And you're alleging that based on this specific sentence?

MR. BRITTON:  Objection.  Asked and answered.

BY MS. BERKOWITCH:

Q.      Can you identify what portion of this sentence is misleading?

A.      There's a material omission in that the sentence states that identifying attractive acquisition candidates is needed -- will help further our strategic long-term goals without mentioning that one of the keys to that acquisition candidates, Defendant McGee was likely to be or could be leaving the company because of his legal troubles.

BY MS. BERKOWITCH:

Q.      Would you agree that this is a

Page 193

JONATHAN LICHTENSTEIN

backwards looking statement, though?

MR. BRITTON:   Objection.   Vague and ambiguous as to backwards looking. Calls for a legal conclusion.   You can answer, if you know.

A.      When talking to the market, you have an overall duty to make sure that investors have all relevant information and we're alleging that not all relevant information was given.

BY MS. BERKOWITCH:

Q.      Would you consider this sentence to be a statement of historical fact?

MR. BRITTON:   Objection.   Vague and ambiguous as to historical fact. Calls for a legal conclusion.   You can answer, if you know.

A.      It talks to strategic long-term goals which is forward looking.

BY MS. BERKOWITCH:

Q.      So you referenced that there was this sentence included a material omission.   Do you know what the disclosure requirements are that apply here?

Page 194

JONATHAN LICHTENSTEIN

MR. BRITTON:  Objection.  Asked and answered.

A.        10B-5 of the securities laws.

BY MS. BERKOWITCH:

Q.        And is it your understanding that the information Delaware County alleges to be omitted is required to be in this particular section of -- sorry -- strike that.

Is it Delaware County's understanding that the alleged omitted information would need to be disclosed in this particular type of statement which is the Q2, 2020 earnings score?

MR. BRITTON:  Objection.  Calls for a legal conclusion.  You can answer.

A.        Anything that was talking to long-term and future strategy and -- and achieving goals, needed to be -- in terms of -- needed to be combined with the information which was not included that there was likely to be a major change in the company with Defendant McGee as he was being asked to leave with his participation in a massive tax fraud.

BY MS. BERKOWITCH:

Page 195

JONATHAN LICHTENSTEIN

Q.        So for the rest of this paragraph we will, as previously announced, we closed the strategic -- I think it says two strategically important acquisitions on July 1st, 2020, Solara Medical Supplies and Active Style, Inc.  Solara is a leading independent distributor of continuous glucose monitors in the U.S.

Is there anything about that that you -- sorry -- that Delaware County is alleging to be false or misleading?

MR. BRITTON:  Objection.  Asked and answered.  You can answer.

A.        Nothing misleading other than to is misspelled instead of t-w-o.

BY MS. BERKOWITCH:

Q.        Okay.  And then same question for the final sentence in that except, is there anything -- is there anything that you are alleging in this statement that is false or misleading?

A.        No.

Q.        Okay.  Did Delaware County ever ask Emerald if they relied on any of these

Page 196

JONATHAN LICHTENSTEIN

statements?

A.      No.

Q.      Has Delaware County ever invest in any company where an officer or director was or is accused of tax fraud?

A.      I'm not able to answer that.  I don't think anybody at the Fund could answer that, you know, in a 5, 600 million-dollar portfolio that's been invested for years now, there probably was but I don't think myself or anybody at the Fund or at the County could answer that question.

Q.      When did Delaware County learn that AdaptHealth had placed Mr. McGee on unpaid leave?

A.      As part of the communications from Robbins Geller informing us of the potential for a class action litigation.

Q.      And when did Delaware County learn that Mr. McGee had been charged in Denmark in connection with the alleged tax fraud?

A.      The same.

Q.      Okay.

Page 197

JONATHAN LICHTENSTEIN

MS. BERKOWITCH:  Ben, please, can we introduce Tab 32 as Exhibit 20?

- - -

(Whereupon the document was marked, for identification purposes, as Exhibit Number 20.)

- - -

A.       Yes.  I have it here.

BY MS. BERKOWITCH:

Q.       Are you familiar with this document?

A.       Yes.

Q.       What is it?

A.       It's the press release from AdaptHealth when Mr. McGee was placed on unpaid leave from his role with the company.

Q.       Has Delaware County reviewed this document before?

A.       Yes.  As part of the litigation process.

Q.       When did Delaware County first learn about AdaptHealth's April 13th press release?

A.       As part of the litigation

Page 198

JONATHAN LICHTENSTEIN

process.

Q.        Did Delaware County make any investment decisions with respect to AdaptHealth's stock based on this press release?

MR. BRITTON:  Objection.  Asked and answered.  You can answer.

A.        No.  The County doesn't make investment decisions, we have our professional investment managers do that.

BY MS. BERKOWITCH:

Q.        Has the County ever discussed this press release with anyone outside of counsel?

A.        No one -- no one outside of counsel.

Q.        And I'd like to return to Exhibit 18.

A.        Yep.

Q.        And if we could go to the page with the Bates number ending in 0765?  Oh, that's the whole thing.  It's Page 3 --

A.        3 of 16?

Q.        Wait.  It's Bates -- if you look

Page 199

JONATHAN LICHTENSTEIN

at the little Bates number, not the bottom one but the one up top it ends in 0765.  Yeah.  Economic and Portfolio Commentary was attached to the Q2, 2021 client account review that we looked at earlier that was transmitted by the email from Hannah Arnold to Joanne Phillips in July of 2021.

A.      Okay.

Q.      Have you ever seen this document before?

A.      I have seen Emerald Advisors quarterly reports.  I don't know specifically if I have seen this one.

Q.      Okay.  Okay.  And then --

MS. BERKOWITCH:  Ben, can we please introduce Tab 33 as Exhibit 21?

-   -   -

(Whereupon the document was marked, for identification purposes, as Exhibit Number 21.)

-   -   -

A.      Yes.

BY MS. BERKOWITCH:

Q.      Do you recognize this document?

Page 200

JONATHAN LICHTENSTEIN

A.        Yes.

Q.        What is it?

A.        It's a report from an entity called Jehoshaphat Research on AdaptHealth.

Q.        And has Delaware County ever reviewed this document before?

A.        Yes.  As part of the preparation for this litigation.

Q.        Do you recall when --

A.        As part of the litigation process.

Q.        Do you recall when more specifically you reviewed this document?

A.        No.

Q.        And what does Delaware County understand this document to show?

A.        The Delaware County understands that this digs deeper into the organic growth of AdaptHealth and flags the change that was made back in 2020 to change how organic growth was shown in its quarterly earnings reports and that instead of growing, it was actually negative.

Q.        And when did the County first

Page 201

JONATHAN LICHTENSTEIN

learn about this report?

A.      As part of the litigation process.

Q.      What does the County know about Jehoshaphat Research?

A.      Nothing other than what was -- what -- however they described themselves in this statement -- in this report.

Q.      And have you read this report in its entirety?

A.      No.

Q.      Do you know who operates Jehoshaphat Research?

A.      No.

Q.      Did you know about the contents of this report before it was issued?

A.      No.

Q.      And prior to learning about the potential litigation opportunity from Robbins Geller in this action, had Delaware County ever had any discussions about this report with anyone?

A.      No.

Q.      And has Delaware County ever had

Page 202

JONATHAN LICHTENSTEIN

any communication with anyone at Jehoshaphat Research?

A.       No.

Q.       Does Delaware County maintain a physical office?

A.       Yes.

Q.       And does it keep physical files related to its retirement fund?

A.       Yes.

Q.       Where are those files kept?

A.       They're kept in the controller's office at Government Center in Media, Pennsylvania.

Q.       And the controller is responsible for overseeing those files?

A.       Correct.

Q.       Does Delaware County have its own email domain?

A.       Yes.

Q.       And what is it?

A.       Co.Delaware.Pa.Us.

Q.       Who is responsible for overseeing Delaware County's email network?

A.       Our -- our information

Page 203

JONATHAN LICHTENSTEIN

technology department.

Q.        And is your network hosted by Outlook?

A.        I'm not quite sure as to what you mean by hosted.

Q.        Do you know what the name of the email software is?

A.        We -- we generally use Outlook.

Q.        Do you know what the default retention setting is?

A.        I do not know specifically. However, I do know that the County keeps emails for a very long time line, at least five years.

Q.        And do you, personally, have a Delaware County email address?

A.        Yes.

Q.        And is that the email address that you used to conduct business on behalf of Delaware County?

A.        Yes.

Q.        Does anyone else conduct business on behalf of the county using a different email network?

A.        All business -- all County

Page 204

JONATHAN LICHTENSTEIN

business should be done through -- well, the business of the retirement fund and the solicitor's office and counsel would all be done through that email address.

The County does maintain other -- other domains for other parts of the County that aren't related.  For example, our human services department, which does, you know, housing for the homeless, mental health treatment, et cetera, has its own domain.

Our library system has its own domain, there are probably other examples but for the persons that would be involved in this litigation being the controller's office, the solicitor's office and the Board of the -- and the Retirement Board, they would all use the County -- the CO.Delaware.PA.US.  domain.

Q.      And during the class period, would all of the board members have had email addresses with this domain name?

A.      Yes.

Q.      What are the document retention policies for Delaware County?

MR. BRITTON:  Objection.  Asked

Page 205

JONATHAN LICHTENSTEIN

and answered.

A.          For documents, there is a document retention policy.  It's dated.  I know it's currently under review and I don't know where the -- where the status is right now of updating that.

In terms of the retirement board, the retirement board itself, I do not -- I do not believe has adopted a records retention -- could you excuse me for just one second?  I need to let a couple people know that I'm not going to make a 4:00 o'clock call, it's nothing essential, I just need to give them an update.

MS. BERKOWITCH:  Sure.  We can go off the record.

THE VIDEOGRAPHER:  The time is now 3:55 p.m., we're going off the video record.

- - -

(Whereupon, a recess took place from 3:55 p.m. to 3:57 p.m.)

- - -

THE VIDEOGRAPHER:  The time is

JONATHAN LICHTENSTEIN

now 3:57 p.m., we are going back on the video record.

BY MS. BERKOWITCH:

Q.      So we were just discussing Delaware County's email domain.  And then I believe I asked -- we just asked the document retention policy.  So can employees delete emails?

A.      Within -- I can't speak to -- you can delete an email in Outlook, to what extent that means a permanent deletion in Outlook, I can't speak to the technical.

Q.      And is Delaware County aware of its obligation to preserve documents related to this action?

A.      Absolutely.

Q.      And did Delaware County take steps to preserve documents related to this action?

A.      Yes.

Q.      Did it issue a legal hold?

A.      The appropriate -- you know, myself in the solicitor's office and the appropriate person in the controller's office

Page 207

JONATHAN LICHTENSTEIN

were instructed not to delete or destroy any documents.

Q.        Did the legal hold go out to any other employees?

A.        No.  Those were the only people that were thought likely at all to have documents.

Q.        And how were you and the solicitor's office notified about the legal hold?

A.        As part of retaining Robbins Geller and deciding to move forward with this litigation, they informed us that we needed to preserve all documents.  In fact, I think it's detailed specifically in their engagement letter.

Q.        And what steps did you take to preserve documents?

A.        All people who would have had documents pertaining to -- if any, pertaining to this litigation, myself and the persons in the controller's office were told not to destroy or otherwise -- or documents or delete emails.

JONATHAN LICHTENSTEIN

Q.      And did members of the Board during the alleged class period receive the legal hold?

A.      No.

Q.      And current board members, did they receive it?

A.      No.

MS. BERKOWITCH:  Ben, if we could introduce Tab 35 as Exhibit 22?

- - -

(Whereupon the document was marked, for identification purposes, as Exhibit Number 22.)

- - -

A.      Yep.

BY MS. BERKOWITCH:

Q.      Have you reviewed this document before?

A.      Yes.

Q.      And what do you understand it to be?

A.      It's your request for production of documents -- it's the Defendant's request for the production of documents from --

Page 209

JONATHAN LICHTENSTEIN

Retirement System in Bucks County, Retirement System as part of this litigation.

Q.        And did you review these requests before Delaware County served its responses and objections to them on August 18th of 2022?

A.        Yes.

Q.        And did Delaware County undertake efforts to search for all the requested documents?

A.        Yes.

Q.        What did you do exactly?

A.        We consulted with Robbins Geller as to appropriate email searches to take -- undertake, given the way the Board is run and administered and the controller -- her long-time assistant to search the files for responsive documents.

Q.        And you searched for both physical documents and electronic documents?

A.        Correct.

Q.        And you say it was a long-time assistant that handled the search?

A.        Correct.

Page 210

JONATHAN LICHTENSTEIN

Q.        Is that right?  Okay.

MR. BRITTON:  To be clear, the physical search?

MS. BERKOWITCH:  Sorry?

A.        The physical search, yeah.  The email search was done through our IT department after reviewing appropriate search parameters are Robbins Geller.

BY MS. BERKOWITCH:

Q.        Do you know what search -- sorry.  Let me rephrase.

Do you know what search terms were used for the email search?

A.        It was a fairly inclusive list, which included AdaptHealth, the names of the defendant, Jehoshaphat, and other relevant terms.  Again, we worked with Robbins Geller to do a good faith email search to find anything that was likely to be relevant to this litigation as requested.

Q.        Are you aware of whose emails in particular Delaware County searched?

A.        Myself and the controller.

Q.        And none of the board members,

**Page 211**

JONATHAN LICHTENSTEIN

either during the class period or since?

A.    No.

Q.    Okay.

MS. BERKOWITCH:  Let's go off the record for a minute, please.

THE VIDEOGRAPHER:  The time is now 4:04 p.m., we're going off the video record.  This concludes Media Unit Number 5.

- - -

(Whereupon, a recess took place from 4:04 p.m. to 4:18 p.m.)

- - -

THE VIDEOGRAPHER:  The time is now 4:18 p.m., we're going back on the video record.  This will begin Media Unit Number 6.

MS. BERKOWITCH:  I don't think that we have anymore questions, so that's the end of the examination for us.  Thank you very much for your time.

MR. BRITTON:  I have just a few follow-up questions.

Page 212

JONATHAN LICHTENSTEIN

- - -

EXAMINATION

- - -

BY MR. BRITTON:

Q.        Good afternoon, Mr. Lichtenstein.  My name is Doug Britton with Robbins Geller representing the Plaintiffs, yourself, obviously, in this deposition.

I want to visit a couple of points that you testified about in response to defense counsel's questions.  The fist one was about the litigation hold to the Board of Directors.  Do you recall that testimony?

A.        Correct.

Q.        And you testify you did not send a litigation hold communication to the individual board members.  Is that correct?

A.        Correct.

Q.        Can you explain why?

A.        It was extremely unlikely that they have any relevant documents.  The solicitor's office would -- would retain and keep any legal documents, any administrative documents and legal documents the Fund would be

Page 213

JONATHAN LICHTENSTEIN

kept by the controller's office.

The controller under the terms of the charter is the legal custodian for all of the documentation for the Fund -- under the County charter which controls our --

Q.      Okay.  Great.  And is that the same reason why you did not select the individual board members as custodians for the search?

A.      Correct.

Q.      Great.  How did the County charter influence the search that the County performed for this case?

A.      The County charter, you know, influenced the fact that we only looked in the controller's office and the solicitor's office. Overall, under Pennsylvania law, there's the -- separate from the charter, there's also the Pennsylvania Sunshine Act which puts limitations on public officials such as the retirement board members discussing matters outside of meet -- public meetings in any way that could be construed as deliberation.

So it's extremely unlikely that

Page 214

JONATHAN LICHTENSTEIN

that would have been direct -- and also based on my experience from the Board, it also would be unlikely that board members would be communicating without it either going through the controller's office or the solicitor's office about any of the matters relevant to the litigation.

Q.        In your experience, how does the Sunshine Act influence how the board members communicate?

A.        It makes them -- to communicate things that would be the subject of -- of a public meeting because they don't want to be construed, there are penalties for having deliberations outside a public meeting and they don't want to be construed as doing that.

So any communication that would involve a significant -- enough of the board members to constitute to be able to vote on a matter, they will avoid any specific talk of matters to be decided.

Q.        Okay.  Great.  And in your experience, do you have an issue with the Retirement System with folks deleting

Page 215

JONATHAN LICHTENSTEIN

documents?

A.        No.

Q.        Is the opposite true?

A.        In general at the County, I also work on our open records requests, you know, we've had discussions about how the opposite is true, that we keep emails for a long period of time and that it would make our work on open records requests easier if we shortened our document retention.

Q.        Okay.  Great.  And are you confident that the Retirement System produced the responsive documents that it has in its possession in response to the Defendant's document request by conducting the searches that it conducted?

A.        Yes.

Q.        And by searching the solicitor's offices, is it true that you would capture any communications to or from the Board?

A.        Highly unlikely that they would have communicated about an individual investment or an individual investment advisor without including us in the -- in the chain.

JONATHAN LICHTENSTEIN

Q.        Okay.  And are you confident that the Retirement System produced all responsive documents by searching the files in the controller's office?

A.        Yes.

MR. BRITTON:  Okay.  All right. I have nothing further.

MS. BERKOWITCH:  Should we take another quick break?

MR. BRITTON:  If you'd like or we can finish, it's up to you.  If you want time to --

MS. BERKOWITCH:  Okay.  I actually think that that should be it for us.

MR. BRITTON:  Okay.

MS. BERKOWITCH:  I just reserve the right to reopen the deposition if necessary.

MR. BRITTON:  Very good.

THE VIDEOGRAPHER:  The time is now -- the time is now 4:23 p.m., we're going off the video record.  This concludes today's deposition.

**Page 217**

JONATHAN LICHTENSTEIN

MR. BRITTON:  Rough and daily.

MR. GANDER:  I think like the previous deposition, we'll get copies from the other defendants.

- - -

(JONATHAN LICHTENSTEIN was excused.)

- - -

(Deposition concluded at 4:23 p.m.)

Page 218

JONATHAN LICHTENSTEIN
C E R T I F I C A T E.

COMMONWEALTH OF PENNSYLVANIA:

COUNTY OF PHILADELPHIA:

I, Beau Dillard, RPR, a Notary Public within and for the County and State aforesaid, do hereby certify that the foregoing 30(b)(6) deposition of JONATHAN LICHTENSTEIN was taken before me, pursuant to notice, at the time and place indicated; that said deponent was by me duly sworn to tell the truth, the whole truth, and nothing but the truth; that the testimony of said deponent was correctly recorded in machine shorthand by me and thereafter transcribed under my supervision with computer-aided transcription; that the deposition is a true record of the testimony given by the witness; and that I am neither of counsel nor kin to any party in said action, nor interested in the outcome thereof.

WITNESS my hand and official seal this 14th day of February, 2023.

Beau Dillard, RPR
Notary Public

Page 219

JONATHAN LICHTENSTEIN

INSTRUCTIONS TO WITNESS

Please read your deposition over carefully and make any necessary corrections. You should state the reason in the appropriate space on the errata sheet for any corrections that are made.

After doing so, please sign the errata sheet and date it.

You are signing same subject to the changes you have noted on the errata sheet, which will be attached to your deposition.

It is imperative that you return the original errata sheet to the deposing attorney within thirty (30) days of receipt of the deposition transcript by you.  If you fail to do so, the deposition transcript may be deemed to be accurate and may be used in court.

Page 220

JONATHAN LICHTENSTEIN

- - - - -

E R R A T A

- - - - -

PAGE    LINE      CHANGE

_ _ _  _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

Reason for

Change:_____

_ _ _  _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

Reason for

Change:_____

_ _ _  _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

Reason for

Change:_____

_ _ _  _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

Reason for Change:

_____

_ _ _  _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

Reason for Change:

_____

_ _ _  _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

Reason for Change:

_____

_ _ _  _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

Page 221

JONATHAN LICHTENSTEIN

ACKNOWLEDGMENT OF DEPONENT

I, _____, do hereby certify that I have read the foregoing pages __ to ___ and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in form or substance, if any, noted in the attached Errata Sheet.

_____   _____
DATE          SIGNATURE

Subscribed and sworn to before me this _____ day of _____, 2022.

My commission expires:

_____

_____
Notary Public

**[& - 212-715-8994]**                                           Page 1

**&**

**&**  3:3,9,16 9:4 9:16

**0**

**03382**  1:5 8:14
**0749**  155:3
**0765**  198:22 199:3

**1**

**1**  4:12,12 6:14
  8:6 10:14
  19:14,14,18
  37:23 57:11
  74:9,10 75:14
  82:7,8 147:11
**10**  4:6,20,21
  21:2,6,10
  94:16,22,23
  95:7 110:20
  111:23 112:3
**10,000**  89:7 121:5
**100**  94:7
**10019**  3:13
**10036**  3:18
**108**  4:19 159:4
**108,336.42**
  155:24 159:5
**108,336.46**
  158:2
**10:04**  2:6 8:4
**10:12**  16:10,14
**10:14**  16:14,17

**10b**  194:4
**11**  4:21,22
  110:19 111:23
  113:7,11
**110**  4:20
**111**  4:21
**113**  4:22
**114**  4:23
**116**  187:8
**1177**  3:17
**118**  4:24
**11:03**  57:9,14
**11:26**  57:14,17
**12**  4:23 114:13
  114:17 182:6
**126**  4:25
**12:15**  95:13,18
**12:33**  95:18,21
**13**  1:21 4:24
  21:3,6,10
  118:8,12
**131**  5:2
**13th**  8:5 197:23
**14**  4:22,25
  37:21 113:7
  126:5,9
**146**  5:3
**148**  5:4
**14th**  218:15
**15**  5:2 94:23
  95:7 131:4,8
**150,000**  103:13
**153**  5:5
**15th**  44:4

**16**  4:23,24 5:3
  114:13 118:8
  146:20,24
  149:16 155:10
  198:24
**164**  5:6
**17**  5:4 148:13
  148:17
**17th**  60:6
  125:11
**18**  5:5 153:9,13
  198:19
**18th**  209:6
**19**  4:12,25 5:6
  126:5 164:19
  164:23
**1900**  3:5
**19086**  10:15
**197**  5:7
**199**  5:8
**1:28**  133:14,19
**1st**  195:6

**2**

**2**  4:13,13 36:19
  36:23 52:19
  57:19 59:17
  75:16 77:18
  95:15 115:12
  125:15 149:17
  155:5 167:7
  182:19
**20**  5:2,7 94:16
  94:22,24 131:4
  148:7 151:22
  168:13 197:3,7

**2000**  147:13
**201**  10:12,12
**2013**  80:10
  81:11 165:14
**2018**  131:13
**2019**  39:19,24
  40:9 126:15
**2020**  14:18
  17:7 28:12
  118:17 187:22
  188:9 194:14
  195:6 200:21
**2021**  32:5
  36:14 38:3
  39:20 40:3
  44:4,8,16
  45:14 48:11
  49:6 59:13
  71:4 97:14
  115:4,20 129:7
  153:16 155:7
  156:10,20
  199:5,8
**2022**  89:7
  112:20 209:7
  221:17
**2023**  1:21 8:5
  218:15
**208**  5:9
**21**  5:8 31:19
  199:17,21
**212**  4:7
**212-715-8994**
  3:18

**[212-728-8994 - absolutely]**                              Page 2

**212-728-8994**
  3:13
**21851**  218:18
**22**  5:3,9 146:20
  208:10,14
**22nd**  44:8,16
  48:11 49:6
  60:5 118:17,25
**23**  5:5 153:8
**231-1058**  3:6
**23rd**  115:20
  129:7 153:16
**25**  5:4 134:17
  148:13
**26**  5:6 164:19
**26th**  126:15
**27th**  59:13
  115:3
**28**  74:19
**28th**  131:13
**29th**  38:2
**2:01**  133:19,22
**2:21**  1:5 8:14

**3**

**3**  4:14,14 43:17
  43:17,21 66:3
  80:17 95:23
  126:17 131:16
  133:16 152:5
  165:25 176:11
  182:24,25
  198:23,24
**30**  2:3 21:13
  23:12 134:18
  218:7 219:16

**30th**  155:7
**32**  5:7 197:3
**33**  5:8 199:17
**35**  5:9 208:10
**36**  4:13
**39**  190:24
**3:04**  181:17,22
**3:21**  181:22,25
**3:55**  205:19,23
**3:57**  205:23
  206:2

**4**

**4**  4:15,15 48:2
  48:3,7 51:12
  133:24 149:17
  181:19
**4,000**  89:6
**400**  136:24
**43**  4:14
**48**  4:15
**49**  187:8
**4:00**  205:13
**4:04**  211:8,13
**4:18**  211:13,16
**4:23**  216:23
  217:11

**5**

**5**  4:16,17 59:4
  59:8 65:7 90:6
  90:12 115:3,24
  125:10 168:15
  182:3 194:4
  196:9 211:10

**50**  62:10
**500**  137:3,11
**59**  4:16
**5c**  131:17

**6**

**6**  2:3 4:16,17
  21:13 59:4
  65:7,11 155:9
  169:22 211:18
  218:7
**60**  62:10
**600**  90:6,12,25
  136:24,25
  196:9
**619**  3:6
**65**  4:17
**655**  3:5
**6a**  52:20 59:17
  126:18
**6b**  119:3

**7**

**7**  4:18,18 6:14
  79:19,19,23
  119:2 152:5
**754**  155:11,11
**78,341.60**  158:3
**78,341.60.**
  155:19 159:6
**787**  3:12
**79**  4:18

**8**

**8**  4:19 108:21
  109:2 174:21
  175:10 187:4

**85**  95:8
**89,043.01**  156:4
  159:5
**8th**  10:12

**9**

**9**  4:19,20 77:17
  77:18 108:21
  110:19,20,24
  177:25 187:3
**90**  14:4 62:9
  95:8 96:21
  97:18 98:2
  103:14
**92101**  3:6
**94**  190:25
**96**  14:6

**a**

**a.m.**  2:6 8:4
  16:10,14,14,17
  57:9,14,14,17
**aberkowitch**
  3:14
**ability**  49:12
  91:18 159:13
  173:20 174:14
**able**  17:17
  24:14 55:15
  103:6 117:12
  196:7 214:20
**above**  7:16
  115:19 175:10
**absolutely**
  109:10 206:17

**[access - addresses]**

access  183:12
183:13
account  124:12
149:19 150:10
151:15 152:7
155:6 162:25
199:5
accurate  67:4
116:7 122:19
123:12 183:7
183:24 184:8
219:19
accurately
11:13 12:20
accused  196:6
achieved
168:20
achieving
194:19
acknowledge
7:4,9
acknowledg...
221:2
acquired  32:13
183:18
acquisition
191:24 192:18
192:21
acquisitions
1:12 34:12,14
188:12 192:5
195:5
act  18:3 65:25
68:2,3 73:16
121:11 132:3

213:20 214:10
acting  65:4
action  1:5 8:22
25:8 33:24
34:24 36:12
38:5 41:8,19
42:14 43:11
44:19 46:13,20
49:10,14 50:22
51:7 52:14,17
56:2,16 59:23
67:8,12 69:7
70:8,10 72:11
72:21 73:20
74:2,11 75:19
75:20 77:23
78:15 79:3
84:2,5,7,25,25
89:8 91:25
92:18,20,23
94:2 96:25
97:11 98:25
100:11 106:20
112:25 115:25
117:7 125:21
126:23 127:6
127:10,14
128:3,8 130:7
130:10 132:24
196:19 201:21
206:16,20
218:13
actions  69:24
70:20 84:3,24
88:4,22 89:11

89:16 90:4,8
90:14,18 91:2
91:13 116:8
120:15,24
122:20 123:19
136:5
active  107:12
191:23 195:7
actively  142:25
actual  32:21,22
33:11 71:9,9
actually  13:14
20:2 33:17
48:25 60:3
84:17 112:25
115:22 123:23
124:23 125:9
129:13 138:20
142:22 155:4,4
178:20 188:11
200:23 216:15
adapthealth
1:11 3:15 8:10
9:5 30:21,24
31:9,10,13,16
32:7,14,18,19
33:5,18,23
34:2,8,13
37:11 40:6,23
41:5 51:12
52:24 59:23
71:6,25 73:7
74:4 78:19
81:9 85:7,14
96:15 98:15

100:23 104:8
116:17 133:3
141:11 155:15
156:10 157:5
157:13 174:11
177:7,16,20
183:7,21 184:4
184:11,16,21
185:2,5,9
186:17 188:6,9
189:5,10 190:4
196:15 197:16
200:5,20
210:16
adapthealth's
97:7 197:23
198:5
add  99:4
159:20,20
addendums
148:5
addition  69:14
87:8 108:16
116:12,15
178:9
additional  53:4
53:16 63:6
79:6 146:13
148:9
address  10:7,14
56:24 146:4
203:16,18
204:5
addresses
204:21

**[adequate - ambiguous]**

**adequate**
188:14,25
**adhered** 170:7
**administer**
8:21
**administered**
7:10,11 209:17
**administering**
28:19,24
**administers**
26:22
**administrative**
26:17 212:24
**administrator**
50:25
**admission**
113:4
**adopted** 170:13
205:10
**advance** 75:17
**advanced**
117:25
**advice** 55:6
62:17 145:20
**advise** 52:13
**advised** 66:23
127:20 178:11
**advises** 176:19
**advisor** 139:20
145:4 167:20
168:13 215:24
**advisories**
40:23 171:7
**advisors** 82:5
138:9,17

139:11 141:22
141:25 143:4
145:21 147:9
151:11 162:5
166:18 199:12
**advisory**
147:23 148:21
161:3
**affect** 63:18
**affected** 120:5
124:7
**affecting**
178:14
**affects** 169:12
**aforesaid** 218:6
**afternoon**
212:6
**agencies** 18:13
**ago** 108:9
145:9 148:7
**agree** 34:22
61:23 64:7
130:9 192:25
**agreed** 7:18
11:19 59:21
139:22 152:7,8
**agreement** 7:16
80:5,9,11,18,19
81:11,17 83:7
84:13,17 85:8
85:11 86:2,11
86:19 87:8
147:12,18,25
148:21 151:21
161:3 174:4,15

**agreements**
67:7,15 86:25
87:10,19
160:25
**agrees** 76:13
**ahead** 51:19,22
52:14 53:13
54:16,17 58:2
124:16 132:8
144:17 190:19
**aided** 218:11
**aims** 138:11
**al** 8:10,11
**alan** 1:15
**aligned** 107:5
107:10
**allegations**
34:6 35:11,17
36:5
**allege** 186:20
**alleged** 27:22
28:9 35:11,22
36:7 39:5,17
40:11,18 41:2
41:3 52:23
80:12 86:9
96:17 97:7
98:7 106:19
136:20 137:21
140:17 143:5
143:13 144:25
148:2 151:19
152:11 164:15
165:17 171:24
180:16,21

183:22 184:5
184:12,17
186:24 194:11
196:22 208:3
**alleges** 194:7
**alleging** 187:25
188:4 191:14
192:2,4,9
193:10 195:12
195:21
**allie** 36:25
57:20 109:11
134:2 139:25
140:2 144:10
158:5 159:12
**allison** 3:10 9:3
**allocation**
167:13
**allowed** 13:10
**allows** 87:21
**alternative**
69:15
**ambiguous**
22:16 24:19
29:3 30:15
31:2 35:3
40:20 46:15
51:16 56:10
68:11 73:12,23
75:12 83:3,9
84:20 86:6
88:7 89:19
90:21 92:4
93:14 103:18
121:2 122:5

141:17 143:20
143:25 173:3
173:14 185:11
185:24 191:18
193:4,16
**amended**  31:23
38:25 39:12,13
93:2
**amendment**
148:8,20
**amendments**
80:14 148:4
**americas**  3:17
**amount**  62:12
98:4 117:12
124:25 125:3
136:21 144:24
168:21
**analyses**
179:19
**analysis**  78:3
163:7
**analyst**  15:21
**analyzing**
82:21 190:7
**announced**
195:3
**annual**  39:5
**answer**  6:4
11:15,16 12:4
12:4,12 18:25
19:4,24 22:17
23:5 27:3
30:16 31:3
35:5,7 37:14

38:20 39:8
40:20 41:10
44:24 45:6
48:15,24 50:8
51:17,22 52:11
55:3,16,23
56:11 61:11,13
62:15 64:10,20
64:23 66:22
68:12 69:18
71:8 72:4 73:3
73:13,24 83:10
85:17 88:25
89:20 90:11,25
93:15 99:3,24
100:20 103:20
104:25 106:9
109:8 121:3
122:6 123:5,10
127:16 128:10
130:19 133:7
136:23 137:11
139:4 141:18
142:17 143:25
145:8 146:7
147:19 152:17
153:24 154:14
156:14 157:13
159:3,12,14,15
159:17 160:7
160:23 162:2
163:5 164:2
170:16 171:20
173:4 176:18
181:4 185:12

189:15,20
190:5 191:19
193:6,18
194:16 195:14
196:7,8,13
198:8
**answered**  32:9
41:10 42:16,18
52:11 64:10,20
69:12,18 71:8
72:3 75:11
93:15 95:6
99:3,24 100:19
103:20 104:14
104:21,25
105:23 106:8
108:14 121:3
124:10 127:16
142:17 146:7
152:15 157:7,9
158:5 166:14
167:2 171:20
174:3,13
190:16 192:12
194:3 195:14
198:8 205:2
**answering**  55:6
65:17 158:14
190:20,22
**answers**  11:7
221:6
**anticipate**
68:15 69:3
79:7

**anticipation**
97:2
**antitrust**  15:25
**anybody**  13:6
18:18 90:5
196:8,12
**anymore**
159:20 211:20
**apologies**  58:4
63:3
**apologize**
124:19 180:13
**appear**  48:24
67:3 162:21
184:12,17
**appearance**
92:14
**appearances**
8:25
**appearing**  21:8
**appears**  81:15
**application**
93:17
**applied**  33:10
155:22 156:9
157:3 160:2
**apply**  193:25
**applying**  92:25
**appoint**  145:3
175:15
**appointed**  28:6
31:22 32:3
39:15 54:8,12
54:23 103:9
115:16 145:10

**[appointed - authorized]** Page 6

175:24
**appreciate**
144:4 159:21
**approaching**
102:9
**appropriate**
50:20 61:16
66:24 69:11
127:23 167:10
167:20 168:2
176:13 177:15
179:5 206:23
206:25 209:15
210:8 219:6
**approval** 51:12
51:16 60:18,18
102:17 132:13
**approve** 49:9
**approved** 30:2
51:20 74:24,24
98:21 101:23
130:4
**approving** 52:6
**approximate**
136:20 144:23
178:18
**approximately**
14:10 23:12,16
39:19 89:6
96:21 103:13
113:24
**approximation**
125:4
**april** 165:14
197:23

**area** 62:9
**arnold** 153:17
154:21 199:7
**arrangement**
7:13 76:6
**arrangements**
75:6 77:11
**articulate**
170:4
**articulated**
170:8
**aside** 67:2
70:19
**asked** 16:4 32:8
41:9 42:16,17
52:10 58:5
64:9,19 69:17
71:7 72:2
75:10 93:14
95:5 99:2,23
100:19 103:19
104:13,24
105:22 106:7
108:13 121:2
124:9 126:25
127:2,15 128:7
130:3 137:16
142:16 143:16
143:22 146:6
152:14 157:6
158:4,11
159:10 163:12
166:13,25
171:19 174:2
174:12 190:15

192:11 194:2
194:23 195:13
198:7 204:25
206:7,7
**asking** 11:5
13:24 21:21,25
22:3 44:25
45:3 55:22
156:25
**aspects** 168:4
**asserted** 38:17
77:21 78:12
**asset** 167:12
**assets** 79:16
136:21 137:22
138:3 141:14
143:12,17,23
144:24 166:9
166:12 167:11
167:19 168:6
168:23 172:18
173:10 177:4
**assigned** 51:21
**assist** 166:7
175:15
**assistance**
171:2
**assistant**
209:18,24
**assisted** 183:15
**associate** 16:24
17:2,4
**associations**
82:13

**assume** 11:23
16:24 75:25
91:2
**assumes** 62:15
85:17 161:25
**attached** 44:6
44:11 47:16
199:4 219:13
221:9
**attend** 18:23,23
**attention** 36:2
56:3,15 70:16
83:6,12 87:22
88:13 91:13
118:6 119:15
164:12
**attorney** 44:23
55:2 61:10
125:25 160:22
189:13 219:15
**attorneys** 7:3
7:15 22:21
76:14,17,25
77:8,12,24
82:9 91:24
107:25,25
183:12
**attractive**
191:24 192:18
**august** 209:6
**authority**
143:18
**authorized**
8:20

**available**  28:4 30:17 79:14 127:12
**avenue**  3:12,17
**average**  89:17
**avoid**  214:21
**avrobio**  156:4 156:9 157:4 160:2
**awards**  88:3,22
**aware**  31:12 32:17 36:12 44:17 71:5 85:9 86:8 105:5 106:4 148:24 154:20 170:12 185:4 206:14 210:22

**b**

**b**  2:3 4:9 21:13 114:25 218:7
**back**  16:17 26:2,7 28:3 29:13,24 47:8 48:21 51:11 54:5 57:17 71:3 83:18 91:22 95:21 109:18 121:7 123:24 125:10 133:22 134:16 137:12,19 138:16 149:16 162:19 166:19 181:25 187:3

200:21 206:2 211:16
**background**  13:25 49:8
**backwards**  193:2,4
**backyard**  120:6
**bad**  159:16
**bank**  39:6
**banking**  14:14
**barasch**  1:14
**barrier**  112:24
**base**  113:2
**based**  34:24 35:16 39:4 62:22 63:6 84:7 96:19 97:25 98:4 119:24 123:12 129:19 132:11 169:16 192:9 198:5 214:2
**basically**  32:20 169:5
**basis**  71:13 74:11 75:2 92:22 133:4 178:7,17,19
**bates**  155:3,10 155:10 198:22 198:25 199:2
**beau**  2:6 8:18 218:6,18

**becoming**  52:2 92:24
**began**  188:9
**beginning**  2:6 120:9
**behalf**  1:7 9:11 9:17 17:22 28:17 29:12 35:25 45:21 46:9 64:15 79:7 82:6 83:20 91:17,20 96:11 99:5 135:10 142:2 150:3 166:18 167:16 168:8 170:16 173:21 180:15,20 203:19,23
**behavior**  169:16
**believe**  33:3,9 38:7,13 53:7 70:3,5 71:10 76:19 97:16 108:22 117:24 129:5,12 139:7 145:14,25 152:23 157:8 164:3 165:22 168:7 170:18 172:5 205:10 206:7
**believed**  67:23 149:7

**believes**  119:20
**belive**  64:2
**ben**  3:12 9:8 19:14 36:19 43:16 47:25 59:3 65:6 79:18 108:20 110:18 111:22 113:6 114:12 118:7 125:8 126:4 131:3 146:19 148:12 153:7 164:18 187:2 197:2 199:16 208:9
**benchmark**  179:5
**benchmarks**  166:21
**beneficial**  103:7,11
**benefit**  17:18 41:24 63:19 64:5 134:9,23 135:20
**benefits**  19:3 79:15
**berger**  87:6
**berkowitch**  3:10 4:6 9:2,3 10:5 15:9 16:19 20:4,10 20:13,17 22:18 22:19 23:8 24:21,23 27:7

**[berkowitch - board]** Page 8

| | | | |
|---|---|---|---|
| 29:4 30:19 | 113:6,14 | 164:18 165:2 | **bit** 44:10 |
| 31:7 32:11 | 114:12,24 | 166:22 167:5 | 105:12 |
| 35:8 37:3,7,8 | 115:5 116:14 | 171:8,22 172:9 | **blank** 147:13 |
| 37:17 38:15 | 116:19 118:7 | 172:15 173:8 | 147:13 |
| 39:2,10 40:25 | 118:15 119:11 | 173:18 174:7 | **blanking** 180:8 |
| 41:13 42:19,23 | 121:8,24 | 174:16 177:2 | **board** 17:20 |
| 43:16,23,25 | 122:14 123:6 | 177:24 181:10 | 18:4,21,25 |
| 44:25 45:10 | 123:14 124:13 | 181:12 182:4,8 | 19:5,9,9 24:17 |
| 46:16,18,24 | 124:20 125:8 | 182:21 185:17 | 24:24 25:2,8 |
| 47:3,7,25 48:9 | 125:13 126:3 | 186:4 187:2,6 | 26:14,22,24 |
| 49:3 50:10 | 126:12 127:25 | 189:16,25 | 27:14,22,25 |
| 51:24 52:15 | 128:13 129:5 | 190:18 191:21 | 28:9,11,12,13 |
| 55:8 56:18 | 129:12,17,18 | 192:13,24 | 28:18,22 29:6 |
| 57:4,25 58:18 | 129:24 130:5 | 193:12,21 | 29:15 30:2,12 |
| 59:3,11 61:17 | 130:15,24 | 194:5,25 | 43:10,12 44:8 |
| 62:23 64:16 | 131:3,11 | 195:17 197:2 | 47:13,22 48:11 |
| 65:6,19 66:25 | 133:11 134:2,3 | 197:10 198:12 | 49:5,6,9,14 |
| 68:16 69:5,21 | 134:6 137:7 | 199:16,24 | 50:21 51:8,13 |
| 71:14 72:8,18 | 139:5,14 140:6 | 205:16 206:4 | 52:6,8,13,16 |
| 73:8,18 74:5 | 140:9,11 141:5 | 208:9,17 210:5 | 53:23 54:2 |
| 75:15 76:11 | 141:13,23 | 210:10 211:5 | 55:15 56:25 |
| 79:18 80:2 | 142:20 144:3 | 211:19 216:9 | 59:13 60:5,6 |
| 83:4,15 84:23 | 144:11,16 | 216:14,18 | 60:11,12 63:5 |
| 85:19 86:12 | 146:15,19 | **best** 11:22 68:2 | 63:10,15,25 |
| 88:9 89:23 | 147:3,21 | 68:4 119:22,25 | 80:21 89:4 |
| 90:16 91:6,21 | 148:12,19 | 121:11 127:22 | 118:17 119:13 |
| 92:12 93:22 | 150:22 152:16 | **better** 14:23 | 121:10 125:11 |
| 95:9,24 99:10 | 152:20 153:7 | 137:14 | 126:14 127:8 |
| 100:7,24 104:4 | 153:15 154:5 | **beyond** 93:7 | 131:12 132:5,7 |
| 104:19 105:4 | 154:19 156:19 | 127:10 128:21 | 132:9,14 136:3 |
| 106:3,13 | 157:8,22 158:8 | 129:10 156:13 | 136:5 137:13 |
| 108:15,20 | 158:13,18,23 | **bigger** 157:11 | 138:5,15,16,18 |
| 109:14,17,19 | 159:7,23 160:9 | 157:12 158:16 | 139:3,8,8,10 |
| 110:18 111:3 | 160:17,24 | 158:17,22,24 | 140:4,4 142:19 |
| 111:22 112:6 | 162:7 163:11 | | 142:25 143:7 |

**[board - business]**                                              Page 9

144:19 145:5
145:22 146:8,9
146:16 162:13
163:6 164:9,12
166:7,10,15,20
166:23 168:18
170:25 171:15
175:15 176:20
178:7,11,16
179:12,20
181:6 204:16
204:17,20
205:9,9 208:2
208:6 209:16
210:25 212:13
212:18 213:9
213:22 214:3,4
214:10,19
215:21
**board's**  29:12
138:7,8
**bonds**  29:11
**bottom**  59:16
155:14 156:4
168:15 175:10
199:2
**bought**  96:13
**bound**  150:9
151:14
**bradley**  1:16
**breaches**  82:15
**break**  12:9,13
57:7 95:11
131:2 181:13
216:10

**brief**  53:10,15
**bring**  51:22
70:15 82:23
83:23 84:10
85:13 91:12
**brings**  74:21
**britton**  3:3 4:7
9:9,10 19:20
22:15,23 24:18
27:2 29:2
30:14,25 32:8
35:2 37:13
38:11,19 39:7
40:19 41:9
42:17,21 44:21
45:5 46:14,21
46:25 48:13,20
50:7 51:15
52:10 54:25
56:9 57:20
58:2 61:8
62:14 64:9,19
64:22 65:14
66:21 68:10,22
69:17 71:7
72:2,12 73:2
73:11,22 75:10
76:7 83:2,8
84:19 85:16
86:5 88:6,24
89:18 90:10,20
91:9 92:3
93:13 95:5
99:2,22 100:18
103:17 104:13

104:24 105:22
106:7 108:13
109:5,11,16
114:20 116:11
119:7 120:25
121:22 122:4
123:2,9 124:9
124:17 125:23
127:15 128:9
128:19 129:8
129:16,22
130:12,18
133:5 136:22
138:25 139:25
140:8,10,24
141:10,16
142:16 143:19
144:6,13 146:6
147:17 150:4
152:14,18
153:22 154:12
156:12 157:6
157:10 158:4
158:10,15,21
159:2,11 160:5
160:11,21
161:24 163:3
166:13,25
170:14 171:19
172:6,12 173:2
173:13 174:2
174:12 176:17
177:21 181:3
182:7,18
185:10,23

189:12,20
190:15 191:17
192:11 193:3
193:15 194:2
194:15 195:13
198:7 204:25
210:3 211:23
212:5,7 216:7
216:11,17,21
217:2
**broad**  150:20
**broadway**  3:5
**brought**  31:15
31:17 33:12,23
35:24 36:2
56:2 78:17
83:6,12 87:22
119:15 164:11
**bucks**  1:6 31:20
32:2 37:11
39:14 41:16
55:10,19 59:22
61:2,15,25
62:9 64:8
68:19 102:13
106:21,25
107:5 182:13
182:23 186:20
209:2
**bullet**  170:3,25
**business**  52:20
126:18 191:23
203:19,23,25
204:2,3

**[businesses - clarification]**

**businesses** 34:11 188:7

**busy** 191:12

**buy** 150:13 172:11 173:20 174:9

**buying** 104:6 123:12 150:15

**buys** 123:11

**c**

**c** 3:2 218:2,2

**cabot** 70:9 85:2 85:22 86:9 116:4,18,21 117:6,10 119:16

**calculate** 190:3 190:13

**calculated** 96:19 98:4 188:24,25 189:10

**calculates** 189:5

**california** 3:6

**call** 23:6,11 43:6 61:14 94:11 163:13 187:22 205:13

**called** 87:6,6 189:3 200:5

**calling** 188:10

**calls** 35:4 44:22 54:25 61:10 94:6 107:21

123:3 130:13 130:14 133:5 160:21 161:24 163:4 172:13 177:21 189:12 193:5,17 194:15

**candidates** 191:24 192:18 192:21

**cap** 138:12 150:19,23 170:18 171:10 171:21

**capacity** 21:13 89:22

**captioned** 37:9

**capture** 215:20

**care** 26:17

**carefully** 219:5

**case** 8:13 23:25 29:7 37:12 58:7,25 70:13 70:16 75:4,18 75:19 85:21 86:2 113:22 116:4,22 117:10,17 120:13 124:3 124:15 125:21 127:11,20,22 127:23 130:22 187:17 213:14

**cases** 16:2 120:11,14,19

122:12 128:16

**catania** 132:6 132:20

**caused** 73:6

**caution** 22:25 125:24

**center** 202:13

**ceo** 34:4

**certain** 33:16 93:11 100:2 142:21 162:8 168:20

**certification** 42:11 66:9 103:8 115:15 129:6 130:11 130:17 182:12 184:13

**certified** 2:9 42:8 99:8 133:4

**certify** 61:20 218:7 221:4

**cetera** 60:16 62:21 101:9 138:13 146:14 150:16 204:11

**chain** 215:25

**chair** 80:20

**change** 102:21 102:21 145:24 178:12 181:8 188:15 189:2 194:22 200:20 200:21 220:5,8

220:11,14,16 220:19,22

**changed** 34:13 188:14

**changes** 47:17 165:19,21,23 169:6 180:25 219:12 221:8

**chaplin** 10:14

**characterized** 93:7

**charge** 141:25 168:4

**charged** 196:21

**chart** 183:17

**charter** 213:4,6 213:13,15,19

**chatting** 13:13

**check** 165:23

**circulated** 33:9 132:6 161:11

**civil** 1:5

**claim** 33:25 35:25 82:24 107:18 113:3,5

**claims** 33:22 34:24 35:3,10 35:16,18 38:4 38:17,20 46:6 77:20,24 78:11 78:14,17,19 79:13 81:20,22 82:11 87:22

**clarification** 144:14,15

**[clarified - communication]**                                          Page 11

| | | | |
|---|---|---|---|
| **clarified** 31:8 | 101:23,24 | **classification** | **coming** 24:13 |
| **clarifies** 171:7 | 102:6 103:4,8 | 150:20 | 69:3 |
| **clarify** 22:18 | 103:9,16,22,24 | **clear** 11:4,7 | **commenced** |
| 24:21 38:8 | 104:2,17,18,23 | 51:25 98:19 | 38:5 |
| 47:9 62:24 | 105:3,7,8,9,14 | 140:2 174:5 | **commentary** |
| 63:20 71:15 | 105:16 106:2 | 210:3 | 199:4 |
| 74:20 94:3 | 106:11,19 | **clearly** 170:4,8 | **commented** |
| 101:10 114:25 | 107:8 108:2 | **clemens** 1:13 | 110:15 |
| 124:23 | 112:25 116:24 | **click** 48:21,21 | **comments** |
| **clarifying** | 117:4 119:23 | **client** 44:23 | 107:23 |
| 58:19 | 120:15,24 | 55:2 61:10 | **commission** |
| **class** 14:4,5 | 122:20 123:18 | 82:8,14 125:25 | 221:19 |
| 27:23 28:9 | 125:20 127:5 | 154:15 155:6 | **commonwealth** |
| 34:12 39:15,17 | 127:10 130:7 | 160:22 162:25 | 2:8 218:3 |
| 40:11,14,18,24 | 130:10 133:4 | 189:13 199:5 | **communicate** |
| 41:3,5 42:7,11 | 136:17,20 | **client's** 82:9 | 13:11 60:10,25 |
| 49:10,14 50:19 | 137:9,21 138:4 | **closed** 195:4 | 107:2 179:23 |
| 50:20,22 51:7 | 140:14,17 | **closer** 15:4 | 180:15,19 |
| 52:14 56:2,16 | 141:9,15 142:7 | **co.delaware....** | 214:11,12 |
| 59:22 62:3 | 143:5,13 | 202:22 204:18 | **communicated** |
| 64:15 67:22 | 144:25 148:2 | **colby** 3:24 | 71:3 92:19 |
| 68:4,8,14 69:3 | 151:19 152:11 | **colleagues** 9:7 | 106:18 180:18 |
| 69:23 70:10,19 | 164:15 165:17 | **colloquy** 171:6 | 215:23 |
| 72:7,11,15 | 165:22 167:17 | **column** 155:19 | **communicates** |
| 73:5,15,16,17 | 171:25 172:8 | 155:25 157:13 | 106:25 |
| 74:3,17,23 | 175:22 180:16 | 157:17 | **communicating** |
| 75:19 79:8 | 180:21 181:2 | **combine** 103:7 | 117:19 214:5 |
| 80:12 84:5,6 | 183:22 184:5 | **combined** | **communication** |
| 88:4,22 89:15 | 184:12,17 | 58:16 194:20 | 42:15 43:3,6 |
| 90:4,8,14,17 | 189:7 196:19 | **come** 18:25 | 44:14 45:7,8 |
| 91:2,12,18 | 204:19 208:3 | 19:5 29:13 | 92:24 93:6 |
| 96:11,13,18 | 211:2 | 109:17 149:3 | 144:21 163:17 |
| 97:4,25 98:3,5 | **classes** 34:23 | 162:4 | 202:2 212:17 |
| 98:11,14,20,21 | 35:3 89:13 | **comes** 162:15 | 214:18 |
| 99:6,7 100:6 | | | |

**communicati...** 44:17 45:3,9 45:11,12 61:7 61:12 93:10,19 94:5,9,13,22,24 95:2 125:25 164:14 189:14 189:22,23 196:17 215:21

**companies** 29:10 82:12 123:21 150:15 160:20 175:5 190:7

**company** 34:9 38:23 39:24,25 40:2 169:10,12 190:3,12 191:8 192:8,22 194:22 196:5 197:17

**company's** 150:24

**compare** 156:9

**compares** 179:3

**comparison** 157:25

**compensate** 86:17

**compensated** 26:4 74:16,21 75:3 98:7,11 98:23 104:6

**compensation** 63:6 97:4 98:17 99:15,19 100:4

**complaint** 31:23 36:15 37:22 38:10,14 38:18,24,25 39:4,6,12 40:4 66:9,10 93:2 93:18 186:21 187:4,12,12,14

**complete** 34:15 67:3 177:9

**compliance** 175:17

**comply** 18:12 28:18,22

**compound** 39:8 73:3 176:18

**computer** 218:11

**conceal** 34:19

**concealed** 34:18 104:10

**concern** 161:23

**concerns** 146:9

**concluded** 217:10

**concludes** 57:10 95:14 133:15 181:18 211:9 216:25

**conclusion** 35:4 123:4 130:14

193:5,17 194:16

**conduct** 46:12 46:20 68:24 203:19,22

**conducted** 215:17

**conducting** 215:16

**conference** 61:14

**confidence** 145:16

**confident** 215:13 216:2

**confirm** 61:15 85:25 96:6 124:22 163:23

**confirming** 134:7

**conflict** 68:6,11 68:17 105:24 106:12

**conflicts** 105:6 105:11,15,20 106:5

**conjunction** 19:2

**connection** 82:11 97:9,10 126:2 196:22

**connors** 1:15

**consent** 7:13

**consider** 17:14 50:14 62:6

69:6,13 119:13 160:19 193:13

**considerable** 41:20

**consideration** 94:25

**considered** 103:15,18 167:19

**considering** 103:25 104:12 104:22

**consistent** 136:7,12

**consists** 17:20

**constitute** 214:20

**construed** 213:24 214:15 214:17

**consult** 51:2 150:25

**consultant** 140:18 171:3 175:12,15,18 175:22 178:6 178:10

**consultants** 176:7

**consultation** 51:5 149:20

**consulted** 209:14

**consulting** 14:10 15:19,23

[consulting - counsel]                                    Page 13

15:24 16:4,22
149:24
**contact** 56:6
180:6 184:25
**contacted** 38:9
131:22 186:9
**contacts** 154:24
**contained**
186:18
**content** 45:2
**contents** 24:4
67:4 201:16
**contingency**
74:11,15,18
75:2 76:9
**continue**
107:23 117:2
133:2
**continued**
177:14
**continuous**
195:8
**contract** 56:22
147:8,23 148:6
148:10 177:8
**contracts** 18:11
18:24
**contradictory**
144:7
**contrary**
106:16
**contribute**
63:22
**contribution**
17:19 135:8

**contributions**
135:2,6,7
**controller**
17:21 24:3,7
27:4,19 45:23
46:10 47:14
51:2,3 60:13
110:6 111:14
112:14 113:19
185:20 202:15
209:17 210:24
213:3
**controller's**
26:16 30:6,10
33:21 47:11
153:6 161:10
202:12 204:15
206:25 207:23
213:2,17 214:6
216:5
**controllers**
33:8
**controls** 213:6
**convenience**
58:12,17
**conversation**
42:24 164:4,6
**conversations**
23:3,5 95:4
**coordinate**
61:16
**copied** 153:20
**copies** 217:4
**coppens** 1:16

**copy** 47:18
**core** 191:22
**cornell** 14:4
**corp** 1:11,12
8:10
**corporate** 78:8
89:5 91:15
183:13
**corporation**
30:21 31:10
85:23
**correct** 10:18
11:2 13:14
17:9,9,12
21:11,15,24
28:10 37:12
44:9 47:13
50:13 54:10
57:22 58:22
59:19 60:9
74:23 80:7
81:14 82:25
86:23 87:11,13
96:8 97:2,15
97:19 98:10
107:6 116:6
117:8 119:4
120:16 121:15
121:21 129:21
131:14 140:16
142:5 146:18
151:4 153:19
165:14,15
175:13,20
176:5 182:14

183:4,23,25
184:6,7 186:22
202:17 209:22
209:25 212:15
212:18,19
213:11 221:5
**corrections**
219:5,7 221:8
**correctly**
218:10
**cost** 74:11
101:11,13
120:11 124:2,7
**costs** 77:25
78:14,21 79:6
100:2 101:2,4
101:5,6
**counsel** 7:12,19
8:24 12:2,10
14:21 16:7
17:21 19:3
25:19,20 27:5
27:16,17,17,18
28:5 55:7
61:12 62:18
65:25 66:24
67:11,19 73:20
74:2,16 76:15
76:21,22 77:2
80:21 92:10
101:25 116:25
117:20 127:2,3
127:20 131:22
149:13 152:3
189:14,22

**[counsel - county's]**                                          Page 14

| | | | |
|---|---|---|---|
| 198:15,17 | 64:7,8,18,24 | 106:25 107:4,6 | 174:8,17 175:4 |
| 204:4 218:13 | 66:11 67:6,10 | 107:11 110:2 | 179:22 180:6 |
| **counsel's** | 67:15,18,25 | 111:10 112:10 | 180:16,20 |
| 212:12 | 68:5,9,18,19,20 | 113:15 114:9 | 183:3,14 184:4 |
| **counties**  41:21 | 69:6,13,23 | 115:25 116:20 | 184:11,16,20 |
| 41:25 | 70:12,21 71:2 | 117:5,10 | 185:4,7,16 |
| **county**  1:5,6 | 71:5,24 72:10 | 118:16 120:12 | 186:20,20 |
| 2:4 8:9 10:13 | 73:9,19,25 | 120:23 121:25 | 187:25 189:4,9 |
| 14:18 17:8,10 | 74:21 75:20,24 | 122:11 123:15 | 189:17 190:2,6 |
| 17:17,25 18:3 | 76:5,13 77:4 | 124:2 126:14 | 190:11 191:14 |
| 22:4,5,5 23:23 | 77:14,20,21 | 126:25 127:9 | 194:7 195:11 |
| 24:6,15 26:8 | 78:8,12,18,25 | 127:14,19,21 | 195:24 196:4 |
| 26:10,11,16,19 | 79:5 80:8,19 | 127:24 128:7 | 196:12,14,20 |
| 26:25 27:5,9 | 80:24 81:8,14 | 128:17 131:24 | 197:18,22 |
| 28:14 30:12 | 81:24 82:6 | 132:24 134:19 | 198:3,9,13 |
| 31:19,21,25 | 83:22 84:10,18 | 134:25 135:9 | 200:6,16,18,25 |
| 32:2,6,12,17 | 85:13,21 86:3 | 140:12,19 | 201:5,21,25 |
| 33:6,16,23 | 86:14,17,25 | 142:3,10 143:2 | 202:5,18 |
| 35:21,25 36:4 | 87:12 88:2,4 | 143:23 145:12 | 203:13,16,20 |
| 36:12 37:10,11 | 88:13,21,23 | 145:16 146:3 | 203:23,25 |
| 38:3,16 39:14 | 89:16 90:18 | 149:4,9,24,25 | 204:6,8,18,24 |
| 39:14 40:10,13 | 91:7,25 92:17 | 151:2,5,17,23 | 206:14,18 |
| 40:17,21 41:7 | 92:19 93:24 | 151:24 152:12 | 209:2,5,9 |
| 42:13 44:18 | 94:12 95:2 | 153:4 155:6,15 | 210:23 213:6 |
| 45:13,22,25 | 96:2,10,16 | 156:8 159:25 | 213:12,13,15 |
| 46:9,11,19 | 97:6 98:6,20 | 160:19 161:3,6 | 215:5 218:4,6 |
| 47:5,17 50:18 | 98:23 99:7,8 | 161:18,19 | **county's**  21:9 |
| 52:2 54:7,11 | 99:12,14,18 | 163:12,16,21 | 21:22 22:4 |
| 54:23 55:10,11 | 100:8 101:11 | 164:5,6,15 | 26:8 30:23 |
| 55:15,18,20 | 101:13,17,19 | 167:16 168:7,8 | 41:16 43:11 |
| 56:8,19,22 | 102:8,13,15,17 | 168:9,23 | 44:19 49:9 |
| 59:12,22 60:7 | 103:15,21 | 169:19 170:12 | 62:9 63:4,12 |
| 60:25 61:2,15 | 104:11,15,22 | 171:9 172:11 | 68:7 70:16 |
| 61:22,25 62:12 | 105:8 106:4,14 | 172:16,21,22 | 72:24 73:14 |
| 62:19 63:7,11 | 106:18,21,24 | 173:17,19 | 78:6 82:22 |

83:6 85:6 96:3
96:23 97:20
98:23,24
102:21 105:6
112:21 115:15
119:21 121:19
122:15 124:7
128:15 130:11
134:8 136:10
143:17 154:24
159:25 163:24
173:10 180:23
183:6,20
184:24 188:19
194:10 202:24
206:6
**couple** 24:10
205:12 212:10
**course** 58:25
**court** 1:2 7:5
8:12,17 9:19
11:12 16:9
58:14 60:24
74:25 96:10
99:25 100:12
100:23 101:9
101:14 219:19
**cover** 47:15
162:21
**covered** 20:25
35:7 101:3,14
**covering**
100:16
**cozen** 17:4

**create** 17:17
**created** 134:19
**current** 31:25
42:2 84:25
117:21 132:17
135:10 157:20
208:6
**currently** 17:11
27:14 42:4
70:3,6 86:15
87:5 90:19
137:3 143:17
143:23 205:5
**custodian**
60:14 213:4
**custodians**
213:9
**cut** 137:8
159:14,17
**cv** 1:5 8:14

**d**

**d** 4:2
**daily** 93:18
217:2
**dale** 1:16
**damaged** 72:7
**damages** 63:7
63:13 82:13
88:3,21 96:12
**dannenberg**
87:7
**date** 40:5
145:14 219:10
221:12

**dated** 115:19
155:7 205:4
**dates** 39:22
**david** 1:17
**day** 40:9 144:9
144:12 147:13
186:8 218:15
221:16
**days** 219:16
**dc** 14:10
**decide** 71:24
**decided** 14:15
51:19 69:10
92:17 96:24
145:3 214:22
**deciding** 93:25
207:13
**decision** 50:15
52:5,7,14 60:8
60:11,18 61:2
62:22 79:2
97:11 112:22
112:23 139:16
145:17
**decisions** 17:22
26:15 138:2,24
140:14,20
141:4,8,8
142:2 143:4,9
149:24 151:2
198:4,10
**declined** 83:23
84:10
**declines** 169:8
169:9

**decrease**
146:11
**decreasing**
144:19
**deemed** 219:18
**deeper** 200:19
**default** 203:10
**defend** 77:19
**defendant** 3:19
9:17 192:6,21
194:22 210:17
**defendant's**
113:3 149:5
208:24 215:15
**defendants**
1:18 3:14 9:5
33:24 41:6
103:23 108:8
217:5
**defense** 212:12
**defer** 152:3
**define** 135:24
**defined** 17:18
17:19 34:21
62:16 63:19
64:4 134:9,23
135:20
**delaware** 1:5
2:4 8:9 22:5
30:12 31:19,25
32:6 33:23
37:10 38:16
39:14 40:10,13
40:17 41:7
43:10 44:18

45:22 46:11
47:17 54:7,11
55:11,18 59:12
60:25 61:22
62:12 63:7,12
64:7,18 66:11
67:6,10,15,18
67:25 68:5,7,8
68:18,20 69:6
69:23 70:12,16
70:21 71:2,5
71:23 72:9,24
73:9,14,19,25
74:21 75:20,24
76:5,13 77:14
77:20,21 78:12
78:18,25 80:8
80:19,24 81:8
82:22 83:6,22
84:10,18 85:6
85:13,21 86:3
86:14,17,24
88:2,4,13,20,23
89:16 90:18
91:25 92:17
94:12 95:2
96:2,3,10,16
97:20 98:6,20
98:22 99:7,8
99:12,14,18
100:8 101:17
101:19 102:8
102:14 103:15
103:21 106:14
106:18,24

107:4,11
109:25 111:10
112:10,21
114:9 115:15
115:25 116:8
117:5,9 118:16
119:21 121:18
122:11,15
123:15 126:14
127:14 129:20
131:24 132:23
134:8 140:19
142:2,10
145:11 149:25
151:17 152:12
154:23 155:6
155:15 156:8
159:25 160:19
161:2,6 163:12
163:16 164:15
167:16 168:23
169:19 172:11
172:16 173:9
173:19,23
174:8,17 175:4
182:17 183:3,6
183:14,20
184:4,11,16,20
184:24 185:4,7
185:15 186:19
187:25 188:19
189:4,9,17
190:2,6,11
191:14 194:7
194:10 195:11

195:24 196:4
196:14,20
197:18,22
198:3 200:6,16
200:18 201:21
201:25 202:5
202:18,24
203:16,20
204:24 206:6
206:14,18
209:5,9 210:23
**delegated**
  170:21
**delete** 206:8,11
  207:2,24
**deleting** 214:25
**deletion** 206:12
**deliberation**
  213:24
**deliberations**
  214:16
**denied** 42:6
  113:3
**denmark**
  196:22
**department**
  203:2 204:9
  210:7
**departments**
  18:11
**depend** 133:8
**depending**
  63:15 92:22
  135:18

**depends** 62:18
  97:23
**deponent** 218:8
  218:10 221:2
**deposed** 10:19
**deposing**
  219:15
**deposition** 2:3
  6:2 7:4,6,7 8:7
  10:23 11:5,13
  12:24,25 13:11
  13:20 20:24
  21:4,14,21
  22:9,14 24:2
  24:25 25:4,6
  25:10,15,21,24
  35:10 57:24
  58:6,8 88:18
  100:3 101:8
  114:10 129:2
  154:11,13
  156:14 159:13
  160:7 185:22
  185:25 212:9
  216:19,25
  217:4,10 218:7
  218:12 219:4
  219:13,17,18
**depositions**
  58:12
**deputy** 18:2,5
**describe** 13:25
  14:7
**described**
  201:8

**[describing - documents]**                                         Page 17

**describing**
187:17
**description**
4:11 6:9
188:13
**designated**
21:20
**destroy** 207:2
207:24
**detailed** 163:7
207:16
**details** 25:5
127:11
**determination**
50:5 183:10
**determine**
49:20 82:22
105:11 172:10
**determined**
60:7
**developments**
184:21
**deviations**
174:18
**dfb** 1:12
**diaz** 44:3 47:9
**diego** 3:6
**difference**
72:14
**different** 34:18
87:19,23 97:21
138:10,11
143:21 146:13
179:4 180:9
203:24

**differently**
102:9
**digs** 200:19
**dillard** 2:6 8:18
218:6,18
**direct** 26:14
173:20,23
176:22 184:25
214:2
**directed** 174:9
**direction** 6:4
**directly** 23:25
63:14,21 76:23
82:3 107:2
120:5 152:12
166:24 176:24
184:22
**director** 196:5
**directors** 27:15
212:14
**disclose** 34:4
189:14
**disclosed**
194:12
**disclosure**
34:15 188:14
189:2 193:24
**discovery** 42:5
42:10,10 51:3
60:16 93:4,20
**discretion**
149:18,22
150:13,21
174:6 177:9

**discuss** 43:10
49:14 52:21
177:16 189:9
**discussed** 25:14
69:8,19 71:11
108:10 121:16
132:16 136:8
163:21 176:11
177:20 189:5
190:12,23
198:13
**discussing**
35:10 116:4
119:18 161:4
206:5 213:22
**discussion** 24:9
43:14 53:22
132:5
**discussions**
201:22 215:7
**disincentive**
123:21
**dismiss** 42:6
**disposed** 184:3
**distributor**
195:8
**district** 1:2,3
8:12,12
**divide** 76:14
**docket** 37:9,12
37:19,23 115:3
**document**
19:16 20:20
36:21 43:19
48:5 54:6 59:6

60:20 65:9,16
65:23 75:14
79:21 80:3
91:23 108:24
109:7 110:2,5
110:8,22 111:5
111:11,13,25
112:8 113:9,16
114:15 118:6
118:10 123:24
126:7 131:6
146:22 147:5
147:16 148:15
149:3,10
153:11,21,23
162:20 164:21
165:7,13 170:6
182:10 197:5
197:12,19
199:10,19,25
200:7,14,17
204:23 205:4
206:7 208:12
208:18 215:11
215:16
**document's**
148:25
**documentation**
213:5
**documented**
60:19
**documents** 6:8
18:24 25:17,21
45:25 46:4
51:21 58:5,6

**[documents - emerald]**                                    Page 18

58:16,20 66:23
117:18 137:19
149:5,8,12
162:25 185:8
185:13,19
186:13,16
205:3 206:15
206:19 207:3,8
207:15,19,21
207:24 208:24
208:25 209:11
209:19,21,21
212:22,24,25
212:25 215:2
215:14 216:4
**doing** 12:25
15:21 26:20
109:13 173:25
214:17 219:9
**dollar** 62:10
90:7,25 137:4
196:9
**dollars** 62:9
90:12 96:22
97:18
**domain** 202:19
204:11,13,18
204:21 206:6
**domains** 204:7
**double** 165:23
**doug** 3:3 9:10
144:3 158:8,23
212:7
**doug's** 190:21

**dougb** 3:7
**dowd** 3:3
**dr** 1:15
**draft** 18:10
44:7,11
**drafted** 187:15
**drafts** 110:14
111:20 113:22
113:23 187:12
**drinker** 17:2
**duly** 9:23 218:9
**duties** 26:20
82:15 102:4,5
102:20,22
121:18 148:11
**duty** 28:14,15
28:19,23,23
64:25 79:10,16
101:23,25
121:17 151:8
193:8

**e**

**e** 3:2,2,22,22
4:2,9 218:2,2
220:3
**earlier** 26:21
31:9 42:12
71:16 80:6
85:21 100:25
116:5 121:9
132:16 199:6
**earnings** 63:17
187:22 194:14
200:22

**easier** 102:14
215:10
**eastern** 1:3 8:5
8:12
**economic** 199:4
**economy**
179:17
**edits** 47:16
**education** 14:2
**effect** 80:11
147:25 165:17
**effectively**
166:7
**efficient** 122:19
122:25
**effort** 46:12
120:12 124:3
124:14
**efforts** 81:25
91:8,11 105:10
105:19 184:21
209:10
**eileen** 153:18
**either** 117:18
146:11 160:19
162:14 169:11
189:6 211:2
214:5
**ekono** 3:10 9:7
**elected** 27:6
**electronic**
13:19 209:21
**eligible** 63:16
64:3,4

**email** 13:15,15
33:21 43:6,7,8
43:9 44:2,6
47:15 132:6
153:5,17
162:21,22
180:10 199:7
202:19,24
203:8,16,18,24
204:5,20 206:6
206:11 209:15
210:7,14,19
**emailing** 13:12
**emails** 94:7
107:21 108:5
203:13 206:9
207:25 210:22
215:8
**emerald** 71:12
141:21,22
143:12,16
144:21,24
145:3,10,23
147:9 149:17
150:2,7,9,25
151:8,14,18,25
152:6,11,22
154:2,24 161:2
161:7 163:8,13
163:17 164:14
167:15 168:6,7
168:10,22
170:8,13 172:4
172:10,22
173:15,20,24

174:9,19 175:5
176:14,21,21
176:24 177:8
177:20 180:15
180:18 189:6
190:14,23
195:25 199:12
**emerald's**
145:17 180:20
180:25 181:6
**employ** 81:18
82:4 101:25
116:25
**employed**
26:18,24 27:8
70:24
**employee** 47:10
101:13
**employees** 1:5
2:4 8:9 17:18
23:22 26:9,14
26:19 27:5,12
31:20 37:10,11
63:11 67:14
85:22 100:9
119:22 122:12
134:24 135:2
135:11 138:5
138:19,23
139:3,6,9
140:12 143:3
163:21 184:25
206:8 207:5
**employees'** 1:6

**employment**
14:8 119:21
**employs** 17:11
166:15
**enacting**
176:15
**enclosures** 66:4
66:7,17,19
67:3
**ends** 155:11
199:3
**engage** 123:21
**engagement**
60:21 74:7
176:3 207:16
**engages** 82:8
**ensure** 11:6
87:21
**ensuring**
135:25
**entail** 18:6,22
**enter** 80:9
**entered** 67:6
86:25 148:7
**entire** 65:15
96:11 98:20
119:8 147:18
157:20
**entirety** 28:9
188:20,22
201:11
**entities** 82:12
141:7
**entitled** 77:9
131:17

**entity** 100:16
200:4
**environment**
13:3 14:16
**equities** 137:23
138:4 139:18
140:15 141:15
**errata** 219:7,9
219:12,15
221:9
**escalated**
162:10,12
164:9,10
**escalation**
162:17 164:11
**especially**
142:6
**esq** 3:3,4,4,10
3:10,11,11,12
3:17
**essential**
205:14
**establish** 167:9
176:13
**established**
121:9 175:19
**establishing**
168:3
**estimate** 96:21
97:7 112:19
137:10,10
**estimation**
84:14
**et** 8:10,11
60:16 62:21

101:8 138:13
146:14 150:16
204:11
**evaluate**
166:11
**evaluates**
166:17
**evaluating**
166:8
**event** 156:23
169:12
**events** 93:11
**evidence**
186:16
**exact** 10:13
38:7 40:9
83:14 88:14
90:15 124:25
125:3 130:22
137:11 145:14
**exactly** 38:24
42:14 52:2
83:17 104:20
104:21 110:7
110:16 147:15
154:17 209:13
**examination**
4:4 10:3 21:5
21:10 211:21
212:3
**examined** 9:24
**example** 22:20
51:3 90:19
92:23 93:16
101:5 204:8

**[examples - fees]**                                                    Page 20

**examples**
153:25 204:13
**exceed** 74:19
**excellent** 67:20
**except** 7:20
120:12 124:3
195:19 221:7
**exception**
12:10
**excess** 94:7
**excuse** 205:11
**excused** 217:8
**executed**
147:16 165:14
**exhibit** 4:12,13
4:14,15,16,17
4:18,19,20,21
4:22,23,24,25
5:2,3,4,5,6,7,8
5:9 19:13,14
19:18,23 20:6
20:14 36:19,23
43:17,21 47:8
48:3,7,15,17
51:12 59:4,8
65:7,11 79:19
79:23 108:21
109:2 110:19
110:20,24
111:23 112:3
113:7,11
114:13,17,21
114:25 118:8
118:12 125:10
126:5,9 131:4

131:8 146:20
146:24 148:13
148:17 149:16
153:9,13
164:19,23
182:6 187:4
197:3,7 198:19
199:17,21
208:10,14
**exhibits** 19:21
37:5 48:18,22
114:22
**exist** 105:21,25
**existed** 45:9,11
**existence** 23:2
25:6 45:7
134:17 148:25
**existing** 34:11
188:7
**expect** 67:25
68:3,9,20
73:19 96:16
99:18,21 100:8
172:22
**expectation**
96:24 100:14
124:5
**expected** 97:17
97:20
**expecting**
169:15 172:16
**expects** 73:25
**expenses** 75:17
75:21,23 76:4
101:2,4,5,6

**experience**
49:16 55:13
120:21,22
214:3,9,24
**experienced**
81:18
**expert** 101:8
114:2 123:3
**expert's** 114:4
**expires** 221:19
**explain** 15:15
132:15 212:20
**explains** 131:21
**exposed** 168:24
**express** 126:23
**extent** 45:6
61:11 76:20
90:5 99:7
128:24 189:21
206:12
**external** 101:4
**extraordinarily**
191:12
**extremely**
212:21 213:25

**f**

**f** 1:11 218:2
**fact** 76:22
82:23 193:14
193:16 207:15
213:16
**factors** 50:17
**facts** 34:25
62:15,22 85:17
161:25

**factual** 34:23
**fail** 219:17
**faille** 37:23
38:17 39:12
**failure** 113:4
**fair** 38:3 60:4
85:12 151:7
169:18
**fairly** 34:5
210:15
**faith** 210:19
**fall** 32:4 40:14
40:18 129:13
130:16
**falls** 60:16
**false** 188:2
191:15 192:3
195:12,21
**familiar** 19:24
30:20 111:4
112:7 147:4
165:6 197:11
**familiarize**
65:16 109:7
**farr** 3:9 9:4
**february** 1:21
8:5 218:15
**federal** 82:17
**fee** 74:11,15,18
75:9,12 76:10
**fees** 75:17,21
75:23 76:4,14
76:15 77:9,24
78:13 101:9

**[felt - fraud]** Page 21

**felt** 61:15,25
  72:5 132:20
**fiduciary** 28:14
  28:15,23 64:25
  79:10,16 82:15
  121:10 151:8
**fifth** 12:2
**file** 149:13
**filed** 8:11 31:21
  31:22 32:2
  36:16 37:22
  38:2,10,14
  39:12 40:4
  66:11,11 92:13
  93:2 108:7
  110:3,8 111:11
  111:16,19
  113:24 115:2
  119:16 182:11
  185:13
**files** 30:9 83:13
  161:9 202:8,11
  202:16 209:18
  216:4
**filing** 61:20
  93:18 101:9
  114:7
**filings** 58:14
  60:23 77:7
  93:3 107:16,19
  107:22 108:6
  113:21
**final** 47:18
  48:10,25 49:5
  50:5 113:23

147:22 195:19
**finally** 12:8
  13:18 55:24
**finance** 14:13
**financial** 29:9
  29:10 63:11
  88:16 98:16
**financially** 8:23
**find** 210:19
**fine** 10:11 22:7
  31:11 35:15
  54:18 55:24
  94:20 153:2
**fines** 34:7
**finish** 11:15,16
  124:17 159:12
  159:16 216:12
**finished** 65:21
**finishes** 12:5
**firm** 8:18 14:16
  15:23,24 81:4
  81:5,19 87:6,6
  87:13
**firms** 14:10,12
  15:19,20 16:22
  16:24,25 49:22
  69:7,14,20
  87:2,20,23
  91:12
**first** 9:23 10:23
  19:13 32:12
  35:21 36:5,5
  42:15 44:14
  57:22 71:2
  97:6 119:13

162:20 170:24
  175:14 183:16
  191:12 197:22
  200:25
**fist** 212:12
**five** 29:16
  178:19 180:12
  203:14
**fixed** 138:12
**flags** 200:20
**flip** 48:14 65:15
  109:6 111:9
  153:23
**flipped** 109:22
**focus** 109:13
**focused** 109:20
**focusing**
  152:10
**folks** 214:25
**follow** 12:16
  18:8 211:24
**followed** 170:5
**following**
  118:25 170:19
**follows** 9:24
  170:9
**foot** 15:8
**footnote** 74:14
  75:14
**foregoing**
  218:7 221:4
**foreign** 138:12
  150:15
**forget** 10:13
  31:18

**form** 7:21 29:3
  30:25 43:5
  44:22 66:9
  82:23 92:4
  100:18 138:25
  221:8
**formal** 14:2
  23:7 29:25
  41:8 52:17
**formally** 51:20
**former** 134:24
  135:11
**forth** 74:13
  75:13
**forward** 193:20
  207:13
**foundation**
  37:14 66:22
  76:8 90:11
  116:12 128:10
  130:13 136:23
  156:13 160:6
  163:4 172:13
**four** 137:18
  158:11 180:12
**fourth** 11:20
**frank** 1:14
**frankel** 3:16
  9:16
**frankie** 3:22
  8:15
**fraud** 34:6
  35:12 36:7
  73:6 74:3
  82:15 84:7

**[fraud - given]**                                    Page 22

85:10 86:9 96:14 97:8 98:15,17 104:17 120:3,5 122:21 136:16 160:3,15 192:7 194:24 196:6 196:23

**frauds** 122:8 123:21

**fraudulent** 119:16 169:16

**free** 19:22

**frequent** 92:21 92:21,24 93:5

**frequently** 49:13 92:18 93:11 152:21 178:20

**front** 87:14 145:14

**fulfilled** 136:2

**fulfilling** 79:15

**full** 10:7 34:15 98:2 174:5

**fund** 17:14,18 17:23 19:7,10 26:15,17,19,23 27:11 28:19,24 60:14 63:17,18 63:22,23 64:3 67:24 79:11,12 79:13,17 81:21 83:20 90:6 119:22 120:4

121:11 134:9,9 134:15,18,22 135:3,9,12 136:6,16 138:22 139:9 139:13 141:14 151:8,9 165:11 166:9,19 167:11,19,21 168:5,19 171:21,24 172:3 177:11 177:17 178:19 196:8,12 202:9 204:3 212:25 213:5

**fund's** 121:11 136:12,21 137:22 138:3 143:11 147:10 166:12,24 172:18,23 177:4,7 178:17

**funds** 59:23 64:25 65:3 121:17 135:16 149:19 166:18 167:23 173:7 177:10,11

**further** 7:9 33:10 44:10 91:4 121:7 128:2 162:6 165:23 175:9 191:25 192:19

216:8

**future** 135:10 194:18

**g**

**g** 10:10

**gain** 155:19,24 156:17 157:17 157:19

**gallagher** 3:9 9:4

**gander** 3:17 9:14,15 217:3

**gargled** 16:8

**gas** 85:23 86:9

**geller** 3:3 9:10 9:13 10:17 22:22 23:19 32:24 33:14 36:2,9 38:9 42:13 43:2 44:15,18 45:13 45:19,24 46:23 47:4 51:21 56:2,6,21 58:12 60:22 65:25 67:11,16 67:19 68:2,3,9 68:20 69:10,14 69:22 70:15,20 71:3,17 74:14 74:20 75:3,23 76:2,23 77:11 77:16,19 78:20 81:2 82:21 83:24 84:11

85:15 86:13,18 87:9 92:7,7,19 93:25 94:8 95:3,8 100:15 100:22 101:3 107:2,16 119:14,20 127:13 149:14 160:18 183:11 183:12 187:15 196:18 201:21 207:13 209:14 210:9,18 212:8

**geller's** 56:14 85:10 91:24

**general** 26:10 39:24 44:16 162:3 169:6 179:16 215:5

**generally** 18:8 24:6 25:8 53:12,14 56:12 169:14 203:9

**getting** 98:16 142:24

**give** 10:14 39:21 111:6 112:18 117:12 137:20 141:6 148:22 170:2 179:8,12 191:3 205:14

**given** 89:17 167:21 193:11 209:16 218:12

**[given - help]** Page 23

221:6
**glucose** 195:8
**go** 10:22 12:24
 15:5 16:7 21:2
 28:3 29:24
 37:21 48:21,23
 51:19 52:14,19
 53:13 54:5,16
 54:17 58:2
 59:16 66:3
 74:9 80:17
 122:13 124:16
 125:10,14
 126:4,17
 131:16 132:8
 134:16 137:12
 137:19 144:17
 147:11 149:16
 149:16 152:4
 155:2,4,9
 165:25 168:14
 169:4,22
 170:23 173:24
 182:9,23 187:3
 187:7 190:19
 191:10 198:21
 205:17 207:4
 211:5
**goal** 72:23
 135:12
**goals** 135:22,25
 136:7,12
 171:16 191:25
 192:19 193:20
 194:19

**goes** 20:3 150:8
**going** 8:4 11:5
 14:11 16:7,11
 16:17 22:25
 24:14,14 25:4
 26:2,7 31:9
 44:23 47:8
 51:11 52:9
 57:5,9,17
 74:18 83:18
 91:22 94:18
 95:13,21
 114:20 123:24
 125:23 133:14
 133:22 143:21
 143:24 173:11
 179:15,18
 181:14,17,25
 205:13,19
 206:2 211:8,16
 214:5 216:24
**good** 8:3 9:2,9
 9:14 10:6
 15:10 50:19
 57:6 64:14
 95:10 133:12
 181:13 210:19
 212:6 216:21
**gotten** 67:21
 88:15
**governing** 67:7
**government**
 202:13
**graduated** 14:3
 14:4,8

**great** 11:3
 12:19 15:12
 19:12 37:5
 47:15 115:11
 126:13,21
 213:7,12
 214:23 215:12
**greater** 157:4
 158:3,19
**griggs** 1:13
**ground** 10:23
**growing** 34:11
 200:23
**growth** 34:10
 34:10,14,20
 35:17,18,23
 39:6 52:24
 150:19,23
 170:18 171:10
 171:21 188:5,7
 188:10,14,17
 188:23 189:3,6
 189:10 190:3
 190:13 200:19
 200:21
**guess** 17:25
 52:6 94:16
 170:22 183:17
**guidelines**
 150:10 151:15
 151:18,25

|  | **h** |  |
| --- | --- | --- |

**h** 4:9
**hackett** 27:19

**half** 23:16
**hand** 29:21,25
 135:16 218:14
**handle** 91:19
**handled** 209:24
**handling** 91:20
**hannah** 153:17
 154:21 199:7
**happen** 93:10
 161:22
**happened**
 130:23
**happens** 15:5
 90:7 135:5
**happy** 14:16
**harass** 158:6
**harassing**
 158:9
**hard** 14:21
**hb** 1:5 8:14
**head** 11:9,9
 51:23 128:18
 180:11
**heading** 52:20
**health** 204:10
**healthcare** 1:12
 155:14
**hear** 15:7 134:3
 134:5,11
**hearing** 14:22
**held** 33:5
 157:18
**hello** 57:20
**help** 62:4
 191:25 192:19

**[helpful - individually]** Page 24

**helpful** 29:14 132:22
**helping** 18:9,9
**high** 14:2 26:15
**highly** 163:25 215:22
**hire** 91:11
**hired** 49:23
**hires** 29:6
**hiring** 46:23
**historical** 134:20 193:14 193:16
**history** 14:8 55:22 130:22
**hold** 10:13 22:23,24 24:18 48:17,23 61:9 99:22,23 123:2 139:25 140:24 179:3 206:22 207:4,11 208:4 212:13,17
**holding** 101:7 157:21
**holdings** 59:24 63:3,4 64:12 71:6 87:25 155:15 156:10
**holds** 91:16 183:14
**home** 10:10,14
**homeless** 204:10

**hope** 171:7
**hopefully** 131:2
**horizon** 167:12
**hosted** 203:3,6
**hour** 23:16 57:5 181:14
**hours** 23:17 117:15,15,16 117:16
**housed** 32:19
**housing** 204:10
**huh** 37:25 66:6 118:18 147:14 164:25 166:4 178:4
**human** 204:9
**hurt** 122:22
**hypothetical** 68:12

**i**

**i.e.** 138:11
**iannece** 3:11 9:8
**idea** 172:19 177:23
**identification** 19:17 36:22 43:20 48:6 59:7 65:10 79:22 108:25 110:23 112:2 113:10 114:16 118:11 126:8 131:7 146:23 148:16 153:12

164:22 197:6 199:20 208:13
**identify** 192:14
**identifying** 86:18 191:24 192:17
**ignores** 129:3
**iii** 1:17
**imperative** 219:14
**implementing** 176:25
**implicated** 192:7
**important** 11:3 62:3 78:25 79:2 101:17 122:8,9 195:5
**incentive** 122:21
**include** 34:14 189:21
**included** 193:23 194:21 210:16
**includes** 13:12
**including** 34:4 68:4 73:5 77:23 94:6 163:8 167:11 188:11 215:25
**inclusive** 210:15
**income** 138:12

**incomplete** 68:12 114:22
**increase** 146:11
**increasing** 144:19
**incurring** 168:20
**indefinite** 55:22
**indemnificati...** 78:24
**indemnify** 77:20
**independent** 46:22 47:3 171:2 175:11 178:6,9 195:8
**index** 6:2 177:13
**indicated** 7:15 218:8
**individual** 33:24 75:20 82:5 96:19 99:6 117:16 133:4 138:9,17 139:11 146:12 161:20 166:17 173:6,7 212:18 213:9 215:23 215:24
**individualized** 172:17 173:10
**individually** 1:7 172:23

173:3
**individuals**
25:13 27:22
141:7
**inflated** 96:12
104:7
**influence**
213:13 214:10
**influenced**
213:16
**information**
13:19 46:5
47:4 53:5 55:4
104:8 107:17
121:6 122:19
123:13 128:21
129:10 142:11
160:14 162:6
162:17 163:10
171:14 178:14
183:5 185:5
186:13 187:16
187:19 193:9
193:11 194:7
194:12,20
202:25
**informed** 43:13
207:14
**informing**
196:18
**initial** 10:9
36:15 112:24
**initially** 36:12
39:25

**initiated** 42:24
43:3 94:12
95:3
**input** 151:4
177:6
**inside** 109:25
**instance** 12:11
**institution**
77:22
**instruct** 44:24
160:23
**instructed**
207:2
**instructions**
219:2
**instructs** 12:3
**intend** 133:2
**interest** 62:2
63:12 68:2,4,7
68:7,8,13,18,18
68:19 73:14
98:8,24 107:9
**interested** 8:23
83:20 120:2
122:18 186:10
218:13
**interests** 103:6
103:16,19,25
104:5,12,22
105:6 106:16
107:5 119:23
121:12
**internally**
161:12 163:21
173:16

**international**
179:17
**introduce**
19:13 36:18
43:17 59:4
65:7 79:19
108:21 110:19
111:23 113:7
114:13 118:8
126:5 131:4
146:20 148:13
153:8 164:19
197:3 199:17
208:10
**invest** 29:10
150:17 166:18
168:12 169:15
175:6 176:20
196:4
**invested** 31:5
135:9 137:22
138:3 141:14
150:25 167:18
171:24 172:3
190:3,13
196:10
**investing**
167:23 168:11
168:22 169:15
172:23 173:4,6
173:7,9,17
**investment**
29:7,9 31:5
33:4 40:22
82:4,5 135:18

135:19 137:17
138:2,6,8,9,14
138:17,24
139:11,12,20
140:13,18,20
141:4,8,19,24
142:2 143:4,4
143:8 145:4,7
145:11,17,21
146:10,12,13
150:21,24
151:11 162:5
163:8 165:10
166:6,9,16,18
167:4,10,11,20
167:22 168:2,3
168:12 169:4
169:24 170:4,5
170:9,21 171:2
171:4,5,6
174:5,18
175:11,16,18
175:21 176:12
176:13,22,23
176:25 177:10
177:14 178:2,6
178:8,10,13
179:4,13,25
181:7 190:9
198:4,10,11
215:24,24
**investments**
19:9 28:16
29:11 65:2
82:2 139:17,17

139:21 149:19
150:2 151:3
166:11,24
172:24 176:23
177:7,10
178:15
**investor** 122:11
**investors** 62:4
72:7 122:10,18
136:18 173:12
193:9
**involve** 214:19
**involved** 45:18
45:21 50:4
52:3 61:3 69:2
72:20 87:15,16
89:16 90:5,18
90:21 92:8
116:17 131:25
177:12 190:6
204:14
**involvement**
35:12 36:6
85:7
**involving** 52:23
77:24
**issue** 39:4
206:22 214:24
**issued** 112:17
201:17
**issues** 19:4
35:13
**item** 119:13

**j**

**j** 1:14
**james** 27:19
**january** 14:18
17:7
**jason** 1:13
**jehoshaphat**
200:5 201:6,14
202:2 210:17
**joanne** 27:20
44:3 47:12
153:17 199:7
**job** 18:6
**john** 8:8
**join** 14:18
**joined** 9:6 17:8
**jonathan** 2:1,5
3:1 4:1,5 5:1
6:1 7:1 8:1 9:1
9:22 10:1,9
11:1 12:1 13:1
14:1 15:1 16:1
17:1 18:1 19:1
20:1 21:1 22:1
22:24 23:1
24:1 25:1 26:1
27:1 28:1 29:1
30:1 31:1 32:1
33:1 34:1 35:1
36:1 37:1 38:1
39:1 40:1 41:1
42:1 43:1 44:1
45:1 46:1 47:1
48:1 49:1 50:1
51:1 52:1 53:1

54:1 55:1 56:1
57:1 58:1,3
59:1 60:1 61:1
61:8 62:1 63:1
64:1 65:1 66:1
67:1 68:1 69:1
70:1 71:1 72:1
73:1 74:1 75:1
76:1 77:1 78:1
79:1 80:1 81:1
82:1 83:1 84:1
85:1 86:1 87:1
88:1 89:1 90:1
91:1 92:1 93:1
94:1 95:1 96:1
97:1 98:1 99:1
100:1,20 101:1
102:1 103:1
104:1 105:1
106:1,9 107:1
108:1 109:1
110:1 111:1
112:1 113:1
114:1 115:1
116:1 117:1
118:1 119:1
120:1 121:1
122:1 123:1
124:1 125:1
126:1 127:1
128:1 129:1
130:1 131:1
132:1 133:1
134:1 135:1
136:1 137:1

138:1 139:1
140:1,25 141:1
142:1 143:1
144:1 145:1
146:1 147:1,17
148:1 149:1
150:1 151:1
152:1 153:1,22
154:1 155:1
156:1 157:1
158:1 159:1
160:1 161:1
162:1 163:1
164:1 165:1
166:1 167:1
168:1 169:1
170:1 171:1
172:1 173:1
174:1 175:1
176:1 177:1
178:1 179:1
180:1 181:1
182:1 183:1
184:1 185:1
186:1 187:1
188:1 189:1
190:1 191:1
192:1 193:1
194:1 195:1
196:1 197:1
198:1 199:1
200:1 201:1
202:1 203:1
204:1 205:1
206:1 207:1

**[jonathan - lawsuit]**

208:1 209:1
210:1 211:1
212:1 213:1
214:1 215:1
216:1 217:1,7
218:1,7 219:1
220:1 221:1
**joseph**   3:4 9:13
**joshua**   1:14
**july**   31:19 38:2
39:20 40:3
45:14 153:16
195:6 199:8
**june**   112:20
126:15 155:7

**k**

**k**   1:11
**keep**   71:21
94:18 168:12
202:8 212:24
215:8
**keeping**   178:11
**keeps**   203:13
**kelly**   44:3 47:9
**kept**   161:9
202:11,12
213:2
**kevin**   3:4 9:12
**key**   192:5
**keys**   192:20
**kin**   218:13
**kind**   26:7 34:23
46:4 70:21
132:13,15
191:10

**knew**   114:9
**know**   10:12
11:21 12:9,10
14:25 15:22
19:2 22:11
24:3 30:7
32:24 33:6
37:14 38:6,23
39:3,8,11,23
40:5,9 41:21
42:14 43:5
45:16,18 49:24
50:2 55:13
58:16 60:23
62:3,18,19,20
62:22 63:24
64:2 65:20
66:12,22 70:4
70:5,7,24
74:16 75:25
76:4,24 77:5
78:11 79:12
81:4,21 83:16
83:19 84:2
89:12,14 90:11
90:17,24 91:4
92:13,23 93:4
93:7,20 100:13
101:7 103:3
114:4 117:15
117:16 120:5
121:4 125:6
127:13,17,24
128:10,11
129:8 130:6,19

132:19 136:23
137:5,17
138:11 139:22
142:3,21
144:22,23
147:15 150:12
150:15 154:23
156:15,25
157:17,24
160:7 162:22
162:23 164:2,3
164:3 170:23
173:15,16
177:19 179:8
179:14,16
180:5,7,17
181:9 190:21
193:6,18,24
196:9 199:13
201:5,13,16
203:7,10,12,13
204:10 205:4,5
205:12 206:23
210:11,13
213:15 215:6
**knowing**   81:10
**knowledge**
21:22,23 22:2
22:4 32:21,22
33:11,11 71:9
76:3 77:10
128:16,17
130:20 132:23
159:24,25
161:13 163:15

163:19,22,24
180:23 190:8
**known**   34:17
85:18
**kramer**   3:16
9:16
**kramerlevin....**
3:19

**l**

**l**   3:22
**laid**   166:2
**large**   14:12,16
16:24 122:9,10
122:17 138:12
**larger**   114:23
157:16 159:6
172:24 173:12
**laura**   43:4
45:20 55:25
56:5,24 81:3,7
81:12 94:10
119:14 131:22
**lavelle**   3:4 9:12
**law**   14:5,11,11
16:23 17:16,20
49:22 69:7,14
69:20 81:18
87:2 151:11
213:18
**laws**   82:17
103:4 194:4
**lawsuit**   49:10
56:20 70:21
83:23 85:14
99:6 113:2

**[lawsuit - lichtenstein]**                                   Page 28

133:3
**lawsuits**  49:20
  50:23 51:7
  83:5 84:16
**lawyers**  55:5
**lead**  31:22
  41:12,14,18
  42:7 54:8,12
  54:24 55:10,12
  55:18 61:3,21
  61:23 63:8
  64:8 70:13
  72:10,15,19
  86:3 88:5,23
  89:21,25 90:2
  90:23 92:25
  93:17 97:12,12
  99:15,19 102:5
  102:10,11,14
  102:15,18
  103:5 106:6
  113:25 114:23
  115:16 116:8
  116:21 124:6,8
  127:3,22 128:8
  129:20 131:25
  136:11 186:10
**leading**  42:10
  58:8 195:7
**learn**  32:13,16
  35:22 36:4,5
  186:14 196:14
  196:21 197:23
  201:2

**learned**  38:4
**learning**
  201:19
**leave**  192:8
  194:23 196:16
  197:17
**leaving**  192:22
**led**  192:8
**left**  66:5 171:11
**legal**  8:19
  18:24 19:4
  35:4 60:23
  67:7 75:21
  76:4 77:7 78:3
  92:16 93:3
  123:4 130:14
  192:23 193:5
  193:17 194:16
  206:22 207:4
  207:10 208:4
  212:24,25
  213:4
**legally**  18:12
  135:8
**legislation**
  18:10
**lesser**  158:20
**letter**  60:21
  65:24 66:8,13
  66:20 67:4
  74:7 77:16
  207:17
**letting**  24:3
  122:13

**level**  26:15
**levin**  3:16 9:16
**liable**  82:13
**library**  204:12
**lichtenstein**  2:1
  2:5 3:1 4:1,5
  5:1 6:1 7:1 8:1
  8:8 9:1,22 10:1
  10:6,10 11:1
  12:1 13:1 14:1
  15:1 16:1,20
  17:1 18:1 19:1
  19:20 20:1,19
  21:1 22:1 23:1
  24:1 25:1 26:1
  27:1 28:1 29:1
  30:1 31:1 32:1
  33:1 34:1 35:1
  36:1 37:1 38:1
  39:1 40:1 41:1
  42:1 43:1 44:1
  45:1 46:1 47:1
  48:1,13 49:1
  50:1 51:1 52:1
  52:22 53:1
  54:1 55:1 56:1
  57:1 58:1 59:1
  60:1 61:1 62:1
  63:1 64:1 65:1
  65:14 66:1
  67:1 68:1 69:1
  70:1 71:1 72:1
  73:1 74:1 75:1
  76:1 77:1 78:1
  79:1 80:1 81:1

82:1 83:1 84:1
85:1 86:1 87:1
88:1 89:1 90:1
91:1 92:1 93:1
94:1 95:1,25
96:1 97:1 98:1
99:1 100:1
101:1 102:1
103:1 104:1
105:1 106:1
107:1 108:1
109:1,6 110:1
111:1 112:1
113:1 114:1
115:1 116:1
117:1 118:1
119:1,9 120:1
121:1 122:1
123:1 124:1
125:1 126:1
127:1 128:1
129:1 130:1
131:1 132:1
133:1 134:1,8
135:1 136:1
137:1 138:1
139:1 140:1
141:1 142:1
143:1 144:1
145:1 146:1
147:1 148:1
149:1 150:1
151:1 152:1
153:1 154:1
155:1 156:1

**[lichtenstein - loss]**

Page 29

157:1 158:1
159:1,11,19
160:1 161:1
162:1 163:1
164:1 165:1
166:1 167:1
168:1 169:1
170:1 171:1
172:1 173:1
174:1 175:1
176:1 177:1
178:1 179:1
180:1 181:1
182:1 183:1
184:1 185:1
186:1 187:1
188:1 189:1
190:1 191:1
192:1 193:1
194:1 195:1
196:1 197:1
198:1 199:1
200:1 201:1
202:1 203:1
204:1 205:1
206:1 207:1
208:1 209:1
210:1 211:1
212:1,7 213:1
214:1 215:1
216:1 217:1,7
218:1,7 219:1
220:1 221:1
**lieu** 7:10

**likely** 192:22
194:21 207:7
210:20
**limitations**
213:21
**limited** 77:23
**line** 6:5,9,13,17
115:19 126:22
151:12 155:14
191:11,11,12
203:14 220:5
**list** 21:16 116:7
210:15
**listed** 21:5 33:5
33:17 37:23
82:10 115:25
116:18 130:11
155:16
**listing** 155:22
179:2
**litigation** 15:25
25:3 30:13
31:13,15 32:25
42:3 45:14
46:7 50:3
51:13,19 52:3
52:9,23 53:5
53:24 55:14
56:17 59:17
60:8,19 61:3
62:13 66:2
68:13 71:4,24
72:24 74:17
81:9 85:7
86:10,18 92:9

93:12 96:4
98:9,13 101:20
102:2,18 103:2
106:15 107:9
107:12 108:11
122:2 123:16
125:15 131:18
131:23 132:19
136:11 154:2,9
154:16 185:15
186:3,6 187:20
196:19 197:20
197:25 200:9
200:11 201:3
201:20 204:15
207:14,22
209:3 210:21
212:13,17
214:8
**litigations**
49:15 56:8
**little** 155:10
178:20 199:2
**livent** 128:4
129:22
**llp** 3:3,9
**lobbying** 15:23
**local** 76:15,21
76:22,25
**lodge** 114:20
140:25
**lodged** 128:20
**long** 23:11,15
24:8 157:18
175:7 191:25

192:19 193:19
194:18 203:14
209:18,23
215:8
**longer** 87:15,16
87:17
**look** 46:19
68:23 69:20
74:6 76:12
77:17 78:22,23
81:19 82:7
105:20 115:24
120:7 134:17
137:12,19
146:12 147:18
151:12 162:20
165:12 167:6
179:13 180:10
182:25 183:16
184:8 186:9,23
198:25
**looked** 33:7
199:6 213:16
**looking** 34:17
78:13 87:24
148:21 163:2
193:2,4,20
**looks** 44:7 81:2
**loss** 50:17
62:12 97:24
155:19,19,23
155:24 156:4
156:10,17
157:5,17,19
158:2,3

**[losses - matter]** Page 30

**losses** 34:20 41:21 54:14,19 61:25 62:7,21 71:5 72:5 73:6 82:22 85:14 96:17 97:5,7 97:23,25 98:7 98:11,14,16,23 100:4 103:7,13 104:3 136:15 156:8 157:3,16 169:20

**lot** 60:15 120:10,19 122:3

**lowey** 87:7

**luke** 1:13 3:20 9:17 34:4 35:11

**lunch** 133:12

**m**

**machine** 218:10

**made** 40:21,23 47:16 54:11 65:5 140:14 145:24 147:12 148:5 157:25 162:16 165:19 184:4 188:16 188:16 200:21 219:8

**maintain** 202:5 204:6

**maintained** 167:21

**maintaining** 175:16

**major** 194:22

**make** 17:22 26:16,23 34:15 50:18 65:15 91:8,11 102:14 105:18 109:6 135:2,15 144:8 149:23 153:22 183:9 184:20 193:8 198:3,9 205:13 215:9 219:5

**makes** 12:17 26:15 52:5 62:13 139:21 150:2 214:12

**making** 50:4,15 53:3 65:4 138:2 139:16 140:20 141:8 141:25 144:4,9 144:12,13,14 145:17 151:2

**manage** 28:16 108:12 138:9 147:9

**managed** 143:12 144:24 178:12

**management** 34:3 150:10

151:15 160:14 169:17

**manager** 29:7 32:23 33:4,13 71:22 82:4 138:6,15 139:13 141:20 144:20 145:7 145:11 166:16 167:4 170:4,21 171:4

**managers** 29:9 31:5 70:25 71:18 146:5,12 146:13 161:20 162:5 163:8 169:24 171:5 171:15 179:2 190:10 198:11

**manages** 19:9 26:14

**managing** 167:10 176:15

**manner** 7:14 73:20 190:4

**margot** 3:11 9:7

**mark** 48:2

**marked** 6:16 19:17 36:22 43:20 48:6,18 48:21 59:7 65:10 79:22 108:25 110:23 112:2 113:10

114:16 118:11 126:8,19 131:7 146:23 148:16 153:12 164:22 197:6 199:20 208:13

**market** 34:16 62:5 74:4 81:20 84:8 87:24 96:14 104:9,18 122:7 122:8,16,18,22 122:24 123:17 123:22 136:17 160:16 169:17 179:15 188:15 193:7

**markets** 169:6 179:17,18

**martin** 18:17

**massive** 192:7 194:24

**material** 38:22 104:8 178:11 180:24 181:9 192:5,16 193:23

**materials** 179:7 179:10,11

**matter** 8:8 24:6 39:18 62:22 77:13 86:14 114:2 117:22 119:17 125:18 126:2 128:4

**[matter - misleading]**                                    Page 31

129:23 186:9
214:21
**matters** 64:13
213:22 214:7
214:22
**matus** 3:22
8:15
**maximize**
73:10,16 74:2
101:24 117:3
121:18 123:19
135:13,15
**maximizes**
73:21
**maximizing**
105:2
**mcgee** 1:13
3:20 9:17 34:4
35:13 39:4
192:6,21
194:23 196:15
196:21 197:16
**mcgee's** 35:11
36:6
**mean** 22:11
32:16 53:20
55:20 62:8,24
63:21 71:18
72:14 74:12
75:22 78:2,5,9
82:20 83:18
90:4 102:4
116:12,14,15
119:25 120:18
122:23,25

125:5 149:22
163:25 169:3
172:19 173:5
188:6 203:6
**meaning** 71:21
120:2,3
**means** 71:20
92:11 124:23
149:23 152:8
206:12
**measure** 159:9
**media** 8:6
57:10,18 95:14
95:22 133:15
133:23 181:18
182:2 202:13
211:9,17
**medical** 195:6
**meet** 22:21
23:18 29:15
96:23 213:23
**meeting** 25:3
29:18 30:3
43:12 44:8
48:11 49:6,7
51:14 56:25
59:13 60:5,6
89:4 118:25
130:23 132:9
163:13 214:14
214:16
**meetings** 18:23
23:2,4,7,14
29:22 60:12
146:9 162:13

162:14,16
213:23
**meets** 178:19
**member** 17:3,5
27:17,18,18
40:10 50:21
63:25 68:14
73:15 81:4,5
92:6 97:4 98:2
100:5 103:22
104:16,18
105:9,14,16
106:2,11
**members** 17:21
24:17,25 25:8
26:24 27:5,17
28:5 41:3
53:23 54:2
60:11 63:16
65:2 67:22
69:2 79:11
96:13 103:16
103:25 104:2
104:23 105:7
106:19 107:8
132:7 135:10
136:17 137:13
139:8,8,9
140:5 143:7
204:20 208:2,6
210:25 212:18
213:9,22 214:4
214:10,20
**mental** 204:10

**mention** 56:15
**mentioned**
15:17 25:3
26:21 108:17
**mentioning**
192:20
**messaging**
13:12
**microphone**
15:4,8
**mid** 137:3
**middle** 10:9
**million** 90:7,12
90:25 136:25
137:4,11 196:9
**minute** 29:14
108:9 111:6
148:22 211:6
**minutes** 23:13
24:10 29:17,25
30:2,5,7,12
44:7,11 45:15
47:19 48:12
49:2,5 52:21
53:6 59:13
118:17,20
125:11 126:14
127:19 129:13
129:19 130:2
131:12 132:12
169:5
**misleading**
186:20 188:3,5
188:16,21
191:16 192:3

192:15 195:12 195:15,22
**mismanaged** 169:11
**misrepresent...** 82:16 84:7
**misrepresent...** 52:23
**missing** 67:2
**misspelled** 195:16
**misstatements** 35:22 38:22 39:5,5,6 186:17,24
**misstates** 27:3 38:12 42:21 86:6 90:22 91:10 100:19 121:23 129:3 139:2 140:23 141:2 150:5 170:15
**mitigate** 73:20
**moment** 76:20 165:3
**monday** 71:20
**money** 79:12 79:14 88:20 120:10,19 122:3 146:5 172:23 178:12 179:2
**monitor** 32:23 33:14 71:21

81:19,25 82:9 91:8 101:25 107:24 116:25 139:10 166:11 166:23 184:21
**monitored** 107:20
**monitoring** 36:3 56:15 62:17 80:5 86:10,25 87:10 87:17,19 91:12 108:3 145:20 161:20 166:8 170:10,20 177:12
**monitors** 49:23 56:23 138:15 166:16 195:9
**montague** 87:6
**month** 24:12 110:10,10 111:18 113:24
**monthly** 152:23
**months** 110:10
**mooney** 3:11 9:7
**morning** 8:3 9:2,9,14 10:6 71:21
**motion** 32:2 42:5,11 113:4 114:23 115:2 115:17 118:3

**motions** 103:7 103:8
**move** 97:12 158:6 207:13
**moved** 117:25
**moving** 177:25
**mullen** 1:14
**multiple** 41:18 87:19 110:14 111:19 121:3

**n**

**n** 3:2,22 4:2
**naftalis** 3:16 9:16
**name** 8:15 10:7 31:18 81:12 87:14 114:5 180:8,13 203:7 204:21 212:7
**names** 210:16
**nature** 51:5 61:6
**nearly** 57:5
**necessary** 75:17 216:20 219:5
**need** 13:2 15:12 19:23 76:21 141:20 150:25 152:2 194:12 205:12,14
**needed** 19:3 93:6 151:5 192:18 194:19 194:20 207:14

**needs** 91:13
**negative** 200:24
**negotiated** 74:19
**neighboring** 41:21
**neither** 218:12
**network** 202:24 203:3 203:24
**never** 180:12
**new** 2:8 3:13,13 3:18,18 14:5
**newly** 188:24
**news** 117:17
**nods** 11:9
**noise** 40:16
**nonpublic** 185:5
**notary** 2:7 218:6,19 221:25
**note** 128:19
**noted** 219:12 221:9
**notes** 132:11
**notice** 20:23 21:14 22:9,10 92:14 156:14 218:8
**notified** 207:10
**november** 39:19,24 40:9 44:4 59:13

60:6,12 115:3
125:11 131:13
**number** 4:11
8:13 14:9,17
19:18 34:18
36:23 37:23
43:21 48:7
57:11,19 59:8
65:11 79:23
83:14 89:13
90:15 95:15,23
109:2 110:24
112:3 113:11
114:17 115:3
118:12 126:9
131:8 133:16
133:24 137:2
137:20 146:24
148:17 153:13
155:10 159:4,4
159:5,5,6
164:23 167:7
181:19 182:3
188:10,24,25
197:7 198:22
199:2,21
208:14 211:10
211:18
**numbering**
117:14
**numbers** 88:15
137:15,17
156:16,16,24
157:11,14
158:15,16,22

158:24

**o**

**o** 3:22 195:16
**o'clock** 205:13
**o'connor** 17:4
**oath** 7:10,11
8:21 10:24
**object** 12:3
**objected** 129:9
**objection** 12:5
22:15 24:18,19
27:2 29:2,3
30:14,25 32:8
35:2 37:13
38:11,19 39:7
40:19 41:9
42:17,22 44:21
44:22 46:14,21
50:7 51:15
52:10 54:25
56:9 61:9
62:14 64:9,19
66:21 68:10
69:17 71:7
72:2,12 73:2
73:11,22 75:10
75:11 76:7
83:2,8 84:19
85:16 86:5
88:6,24 89:18
90:10,20 91:9
92:3 93:13
95:5 99:2,23
100:18 103:17
104:13,24

105:22 106:7
108:13 114:21
116:11 120:25
121:22 122:4
123:3,10 124:9
127:15 128:9
128:20 129:4
130:12 133:5
136:22 138:25
140:25 141:2
141:16 142:16
143:19,24
144:5 146:6
150:4 152:14
154:12 156:12
157:6 158:4
160:5,11,21
161:24 163:3
166:13,25
170:14 171:19
172:6,12 173:2
173:13 174:2
174:12 176:17
177:21 181:3
185:10,23
189:12 190:15
191:17 192:11
193:3,15 194:2
194:15 195:13
198:7 204:25
**objections** 7:14
7:20 68:22
130:18 144:9
160:12 167:16
190:21 209:6

**objective**
176:21
**objectives**
168:8,19
**obligation**
162:11 206:15
**obligations**
85:11 121:10
**obtain** 73:4
98:14
**obviously**
12:25 34:17
212:9
**occur** 93:11
**occurred** 42:15
120:3
**office** 10:10,11
26:16 30:6,10
33:9,21 47:11
49:11,17,18,20
50:9 51:4,18
52:4,7,12 60:6
60:16 96:5
108:10 153:6
161:10 202:6
202:13 204:4
204:15,16
206:24,25
207:10,23
212:23 213:2
213:17,17
214:6,7 216:5
**office's** 60:17
**officer** 196:5

**offices** 215:20
**official** 218:14
**officials** 27:6
  213:21
**oh** 13:17 26:2
  54:15 110:19
  134:11 137:8
  152:25 189:17
  190:19 198:22
**oil** 70:9 85:2,22
  86:9 116:4,18
  116:21 117:7
  117:10 119:17
**okay** 13:5,23
  15:2,7,12,14
  17:13 19:12
  20:11 21:19
  22:6 24:8 26:2
  27:8 28:13
  29:13 31:10,12
  32:6 33:22
  35:9,14,19
  38:16 43:15
  45:24 48:23
  49:4 51:11
  52:19 53:22
  55:9,24 57:3,8
  57:25 58:19,23
  59:2 67:2
  81:16 83:11
  91:7 101:16
  105:5 108:19
  109:16 111:21
  115:13,21
  118:5 119:2

120:7 121:9
124:21 125:7,7
126:3,13,16,21
128:2,14
129:16,17
132:10 133:2
133:11 134:7
134:14 135:21
135:24 139:15
140:8 141:16
142:9 143:2
149:15,21
152:4 153:7
154:20 155:2,8
155:9,20 156:2
156:5 158:2
165:5,25 167:6
168:14,17
169:22,25
175:9 180:14
181:11,15
183:5,19
186:23,25
195:18,24
196:25 199:9
199:15,15
210:2 211:4
213:7 214:23
215:12 216:2,7
216:14,17
**old** 52:20
  126:18 137:18
**omission** 192:5
  192:16 193:23

**omitted** 194:8
  194:11
**once** 65:20
  110:17
**ones** 83:12 91:4
**ongoing** 25:4
  49:14 176:3
**open** 215:6,9
**operates**
  173:16 201:13
**opinion** 123:4
  132:18
**opinions**
  133:10
**opportunities**
  86:19
**opportunity**
  14:17 201:20
**opposed** 173:6
  173:7 176:6
**opposite** 215:4
  215:7
**order** 99:25
  100:22 101:15
  132:3
**orders** 117:18
**ordinances**
  18:10
**organic** 34:10
  34:13,20 35:17
  35:18,23 188:5
  188:10,13,17
  188:23 189:3,6
  189:10 190:3
  190:13 200:19

200:21
**original** 219:15
**originally**
  31:17
**originate** 85:8
**originated** 86:2
  86:7
**originating**
  84:17
**outcome** 8:23
  99:11 218:13
**outcomes** 162:9
**outlook** 203:4,9
  206:11,13
**outside** 19:2
  127:2,3 131:22
  150:16 160:6
  164:7,13 175:3
  179:23 198:14
  198:16 213:23
  214:16
**overall** 26:20
  29:6 62:3 89:2
  96:21 122:22
  138:6 139:10
  139:12 169:3,5
  173:15 176:20
  177:12 179:3,4
  179:13 181:6,8
  193:8 213:18
**overcome**
  112:24
**oversee** 132:18
  177:3

**overseeing** 96:2 108:11 143:3,8 202:16,24
**oversees** 29:8 50:22
**overview** 179:16
**overviews** 179:20
**owe** 28:13
**owes** 28:15
**own** 27:12 46:12,15 81:25 90:7,12 106:16 120:6 202:19 204:11,12

**p**

**p** 1:13 3:2,2,22
**p.m.** 95:13,18 95:18,21 133:14,19,19 133:22 181:17 181:22,22,25 205:19,23,23 206:2 211:8,13 211:13,16 216:23 217:11
**pa** 10:15
**page** 4:4,11 6:5 6:9,13,17 21:2 21:3 37:21 52:19 59:17 66:3 74:9 77:17,18 80:17 82:7 115:7,9,9

115:11,12 119:2 125:15 126:17 131:16 147:11,12 149:17 152:5 155:2,5,9,15 156:25 157:15 162:20 165:12 165:13,25 168:15 169:22 174:21 175:10 176:11 177:25 182:10,19,23 182:24,25 187:8 190:24 198:21,23 220:5
**pages** 21:6,10 221:4
**paid** 34:6 99:8 100:21,22
**pandemic** 29:22
**paper** 37:16
**papers** 58:14 60:23 92:16
**paragraph** 54:15 55:9,25 59:20 74:10 75:16 76:12 77:18,18 82:8 115:24 119:19 120:8 124:2 126:19,22 128:3 131:17

131:18,21 149:17 152:5 167:7 168:15 170:24 174:24 187:8,23 188:16,20 190:25 195:3
**paragraphs** 119:6
**parameters** 210:8
**parnes** 1:14
**part** 25:5 26:20 33:18 36:3 42:10 58:15 72:15 79:7 121:16,17 149:12 154:2,8 154:16 167:25 172:24 183:16 185:15 186:2,5 187:20 196:17 197:20,25 200:8,11 201:3 207:12 209:3
**participant** 107:12 122:7
**participants** 135:13,17,17
**participate** 50:6 60:7,19 62:4 63:21 89:13 91:18 93:25 96:18,24 97:3,11 100:5

124:8 128:8 130:3,21 132:3
**participated** 124:6 130:21
**participating** 7:3 99:5 103:21 104:16 105:13 106:11
**participation** 43:11 44:19 49:10 60:24 96:3 136:11 194:24
**particular** 50:22 64:17 161:15 173:20 174:10 194:8 194:13 210:23
**parties** 7:12,20 152:8
**parts** 204:7
**party** 8:22 31:18 116:3 218:13
**past** 69:24 70:22 85:3 116:3
**patches** 117:14
**pay** 79:14
**paying** 75:23 76:4 101:7
**payment** 19:4 100:2
**payments** 19:10 134:24

**[pays - plaintiff]**                                                    Page 36

**pays** 88:13
**peeking** 68:24
**penalties**
  214:15
**pending** 12:11
**pennsylvania**
  1:3 2:8 8:13
  17:16 65:3
  118:2 119:24
  120:4,4 134:18
  202:14 213:18
  213:20 218:3
**pension** 134:9
  134:18,24
**people** 34:16
  103:22 141:7
  161:15 180:9
  205:12 207:6
  207:20
**percent** 74:19
  94:24 95:7
**percentage**
  74:18 94:21
**performance**
  64:5,6 138:16
  139:10 145:21
  145:23 146:10
  162:8 163:7
  166:20 168:10
  169:19 171:16
  177:13 178:8
  178:14,17,23
  180:2,25 181:7
  181:8

**performances**
  146:5 178:3
**performed**
  76:16 77:13
  191:23 213:14
**performs**
  179:19
**period** 27:23
  28:2,7,10 31:6
  34:2,12 39:17
  40:24 41:5
  44:16 58:7
  80:12 93:19
  103:24 104:3
  111:18 122:5
  128:22 129:11
  129:14 130:17
  136:20 137:21
  138:4 140:14
  140:18 141:9
  141:15 142:7,7
  143:5,13
  144:25 148:2
  151:19 152:11
  156:18 157:21
  164:16 165:17
  165:22 167:17
  171:25 172:8
  175:22 180:16
  180:21 181:2
  183:22 184:5
  184:12,17
  186:6 189:7
  204:19 208:3
  211:2 215:8

**periods** 28:6
  143:21 179:5
**permanent**
  206:12
**perpetrated**
  98:15 160:15
**perpetuated**
  136:16
**person** 7:11
  56:7 161:14
  206:25
**personal** 21:22
  22:2 63:11
  78:4 178:13
  179:8
**personalized**
  173:11
**personally**
  149:2,11
  203:15
**personnel**
  178:12
**persons** 82:12
  204:14 207:22
**perspective**
  72:25
**pertaining**
  207:21,21
**philadelphia**
  14:13 218:4
**phillips** 27:20
  44:3 47:12
  60:13 120:9,17
  123:25 131:23
  132:6 153:17

  199:7
**phone** 13:15
  23:6,11,20
**physical** 202:6
  202:8 209:21
  210:4,6
**physically** 7:5
**piece** 37:16
**place** 10:15
  16:13 23:9
  24:4,11 32:4
  57:13 61:18
  95:17 133:12
  133:18 145:15
  145:24 146:4
  148:10 151:22
  162:18 170:23
  175:4,25 176:9
  181:21 205:22
  211:12 218:8
**placed** 196:15
  197:16
**plaintiff** 41:15
  54:8,13,24
  55:11,12,19
  59:22 61:23
  63:8 64:8
  70:13 72:10,15
  72:20 86:3
  88:5,23 89:21
  89:25 90:2,23
  92:25 93:17
  97:12,13 99:16
  99:20 101:21
  102:5,10,11,14

**[plaintiff - preserve]**

102:15 103:5
106:6 114:23
115:16 116:9
116:21 119:24
124:6,8 127:3
127:23 128:8
129:20 131:25
136:12 186:10
**plaintiffs** 1:9
3:7 9:11 31:22
31:25 32:3
39:14 41:12,12
41:19 42:7
61:4,21 102:18
112:24 113:25
115:2 212:8
**plan** 17:15,19
50:25 63:19
64:6 80:22
135:20 150:18
**play** 138:23
139:15,19,19
140:13 141:4
150:2,6
**played** 138:19
140:19
**please** 9:19
10:7 11:7,14
13:25 15:15
19:13,14 20:10
20:12 21:2
36:19 37:3
39:21 43:16
48:2 59:3 65:6
65:20 79:18

108:20 110:18
111:23 113:7
114:12 115:7
118:7 119:5
125:9,10 126:4
131:4 144:5
146:19 148:13
153:8 158:6
159:17 164:19
182:6 187:2,7
190:24 197:2
199:17 211:6
219:4,9
**plus** 151:22
**point** 12:8
137:18 170:3
170:25 188:8
**points** 53:19,21
212:11
**police** 122:16
**policed** 122:9
**policies** 204:24
**policing** 123:17
**policy** 138:8
165:10,16
166:2,6 175:17
176:12,19
205:4 206:8
**portfolio** 32:18
32:22,23 33:2
33:13,19 36:3
49:23 56:14,23
70:25 71:11,18
81:19 82:10
86:25 87:17

89:11 90:7,25
91:3,12 138:10
139:23 147:10
150:17,18
162:4 167:21
169:20 171:17
175:8 196:10
199:4
**portion** 137:22
139:23 143:11
147:9 168:5
171:17 177:4
188:21 192:14
**portions**
138:10 176:24
186:15,19
**position** 132:20
188:20
**positioned** 54:7
54:12,23 67:24
72:6 127:22
**possession**
215:15
**possible** 20:5,5
**posted** 47:20
**potential** 32:25
35:25 38:4
46:6 49:14
50:2 52:22
53:5 56:8,16
73:10,21 81:22
82:11 83:5,23
84:9,16 107:18
108:2 121:19
131:23 196:19

201:20
**potentially**
178:14
**power** 99:25
100:13 132:18
**practice** 118:4
**preamble** 166:5
**precise** 137:2
137:20
**prefer** 109:21
**preparation**
57:23 88:18
154:10,13
185:22,24
200:8
**prepare** 22:8
22:11,12,13,16
25:24
**prepared** 21:12
21:17 29:25
107:16 129:2
**preparing**
25:10 71:12
114:9 183:15
**present** 7:6
78:19 178:23
**presentation**
179:12
**presentations**
179:9
**presented**
19:21 53:16
178:25
**preserve** 79:11
206:15,19

**[preserve - publically]**

207:15,19
**press** 197:15,23 198:5,14
**pretty** 174:5
**prevent** 178:22
**previous** 35:7 72:4 188:18 217:4
**previously** 34:21 58:17 87:16 103:9 145:19 154:16 188:6,25 195:3
**price** 96:13 104:7
**primarily** 14:13 51:6 176:14
**primary** 56:6 154:24 180:5
**principle** 168:21
**printed** 13:19
**prior** 15:13 21:3 51:13 61:19 110:10 110:11 111:18 149:20 187:11 187:14 191:7 201:19
**private** 35:6
**privilege** 44:23 55:2 61:10 160:22 189:13 189:24

**privy** 163:9 164:4,5
**probably** 117:14 137:19 196:11 204:13
**procedures** 12:16
**proceed** 59:21 119:14 132:8
**proceedings** 93:3 117:2 118:3
**proceeds** 75:19
**process** 42:4,9 52:2 93:4 132:13 146:4 154:3,9,17 162:3,18 164:10 175:16 185:15 186:3,6 187:20 197:21 198:2 200:12 201:4
**produce** 128:18
**produced** 30:12 66:20,23 149:7,14 215:13 216:3
**production** 6:8 149:6 208:23 208:25
**productive** 191:13
**professional** 2:9 29:10

68:24 166:15 167:4 198:10
**professionals** 91:19
**progress** 107:20 108:4
**prohibited** 174:22
**promised** 99:11
**promoted** 17:3 17:5
**properly** 62:2
**proportionate** 97:24
**proposed** 55:10 84:11 85:15 103:24 127:10
**propounded** 221:7
**prosecute** 74:10 75:18
**prosecuted** 117:3
**prosecuting** 75:4
**prosecution** 77:22
**protect** 68:9,21
**protected** 189:24
**protecting** 79:16
**provide** 16:4 25:19,20 45:25 53:4 134:23

151:17 152:6 152:11,22 161:2 171:14 180:24
**provided** 30:18 47:5 51:13 58:11,13,15,21 59:18 104:9 107:17,23 125:16 128:22 129:11 150:11 151:16,25 153:3 160:13 160:15 181:5 185:8
**provides** 163:6
**providing** 128:21 129:10
**provision** 78:25
**provisions** 74:7
**pslra** 128:23 129:11
**public** 2:7 14:13 40:6 151:11 185:8 186:13,16 213:21,23 214:14,16 218:6,19 221:25
**publically** 28:4 30:17 39:25 40:2,7 47:21 185:13

**[pulling - read]**

**pulling** 48:25
**purchase** 82:6
  96:20 151:6
**purchased** 32:7
  41:4 103:23
**purchases**
  40:21,23
  149:20 183:6
  183:21 184:10
**purports**
  148:23
**purpose** 72:23
  81:16 87:18
  98:13 134:21
  166:2,6 167:8
  167:9 176:12
**purposes** 19:17
  36:22 43:20
  48:6 59:7
  65:10 79:22
  108:25 110:23
  112:2 113:10
  114:16 118:11
  126:8 131:7
  146:23 148:16
  153:12 164:22
  167:9 197:6
  199:20 208:13
**pursuant** 77:16
  83:7 161:3
  218:8
**pursue** 64:14
  71:24 72:11
  74:2 81:23
  92:18 121:25

  122:12 127:20
  127:24 167:15
**pursued** 84:18
  91:14 106:14
  122:20 132:24
  168:7
**pursuing** 49:21
  62:13 78:15
  79:7 98:8,25
  102:18,25
**put** 47:23 135:9
**puts** 213:20
**putting** 67:2
  70:19

**q**

**q2** 156:10,20
  194:13 199:5
**q4** 187:22
**qualified**
  151:24
**quantifiable**
  124:24
**quarter** 191:13
**quarterly**
  152:7,24
  163:14,18
  164:13 178:7
  178:17,19,21
  179:23 199:13
  200:22
**quasha** 1:15
**question** 7:21
  11:15,17,21,24
  12:4,11,12
  26:3 28:21

  42:25 48:16,25
  55:3 69:13
  72:17 98:19
  104:21 124:18
  143:22 157:2
  158:11,14,19
  159:3 160:23
  190:5,20,22
  195:18 196:13
**questions** 6:16
  11:6,8 12:3,15
  13:2,24 18:11
  18:25 19:25
  21:21,25 54:3
  65:17 109:9,23
  130:25 144:7
  147:19 153:24
  162:4,14
  211:20,24
  212:12 221:7
**quick** 57:6
  216:10
**quickly** 15:15
  109:23
**quite** 22:11
  78:4 92:10
  137:4 203:5
**quoted** 191:11

**r**

**r** 3:2,22 218:2
  220:3,3
**raise** 146:8
**raised** 49:17,18
**range** 62:10
  94:17 137:4

**ranges** 167:12
**rarely** 180:4
**rather** 122:13
  173:11
**ratification**
  132:8
**rbc** 29:7 138:6
  138:7,14
  140:18 141:3
  142:14,18,24
  144:20,22
  145:20 146:9
  146:11,17
  161:21 162:5
  162:13,16,22
  162:23,24
  163:6,9 166:16
  166:19 167:4
  170:11,15,24
  171:4,12,13,14
  175:18,21,24
  176:6,14,19
  177:3,6,11,16
  177:19 178:16
  179:23 180:6,9
  180:14,17,19
  180:24 181:5
**reached** 42:13
  81:8
**reaches** 56:7
**read** 119:5,8
  126:19,20
  129:25 130:2
  131:18 174:24
  187:9 191:3

**[read - regarding]**                                                 Page 40

201:10 219:4
221:4
**reading** 49:2
127:18
**reads** 47:16
52:21 74:10
119:12 132:2
149:17 152:5
**really** 93:7
**reason** 12:19
64:17 78:15
162:15 213:8
219:6 220:7,10
220:13,16,19
220:22
**reasons** 72:9
169:10
**recall** 31:24
36:11 110:12
110:17 111:15
121:14,20
154:6 187:17
200:10,13
212:14
**receipt** 219:16
**receive** 63:5
74:15 91:17
97:3,24 99:19
120:10,19,23
122:3 142:13
142:14 208:3,7
**received** 33:3
33:20 66:14
88:3,21 89:5
99:14 132:7

161:6,18
162:24
**receives** 162:23
**recent** 90:2
121:6
**recess** 16:13
57:13 95:17
133:18 181:21
205:22 211:12
**recites** 66:8
**recognize**
20:19 80:3
199:25
**recognizes**
168:19
**recognizing**
93:10
**recommend**
138:8
**recommendat...**
144:18
**recommended**
83:24
**record** 7:17 8:4
8:25 10:8 11:4
13:10 15:6
16:8,11,18
57:10,18 95:14
95:22 123:8
128:20 129:3,9
129:15 133:15
133:23 140:3
144:14,15
181:18 182:2
183:13 205:17

205:20 206:3
211:6,9,17
216:24 218:12
**recorded** 8:7
29:17,20,21,23
34:13 218:10
**recording** 30:5
**records** 88:16
88:18 205:10
215:6,10
**recover** 78:23
96:17
**recovered** 98:3
98:5
**recoveries** 63:7
63:13 89:14
91:17
**recovers** 74:22
74:23
**recovery** 73:4
74:3 89:8
97:17,21,23
98:14,16 100:4
100:23 101:15
101:24 104:2
104:17 105:2,9
105:16,25
107:8 117:3
123:19 136:15
**refer** 22:2,4
31:9 35:12,17
72:4 92:15
120:14 122:24
139:6

**reference** 13:22
53:18 124:15
125:18 188:23
**referenced**
37:22 42:12
76:18 85:20
128:4 138:19
187:23 193:22
**references**
126:23
**referencing**
80:6
**referral** 76:15
77:9
**referred** 71:17
138:23 139:3,7
151:13
**referring** 58:10
101:10,10
102:7,16
124:22 171:3,6
186:7 188:23
**refers** 183:20
**reflected** 53:6
77:6 107:18
**reflects** 129:15
**refresh** 114:7
117:24
**regarding**
44:18 45:13
46:6 53:24
106:19 107:18
131:23 152:6
183:6

**regardless** 75:18

**registered** 2:9

**regular** 71:13

**regulators** 18:13

**reimbursed** 100:9

**reimbursement** 100:17 101:16

**related** 8:21 19:6 35:11 36:6 70:9 78:21 89:9,10 96:12 97:4 106:15 180:25 202:9 204:8 206:15,19

**relates** 131:15 140:15

**relating** 57:23

**relationship** 30:24 31:2 56:19

**relative** 63:4 158:7 166:20

**release** 197:15 197:24 198:6 198:14

**relevant** 28:2 193:9,10 210:17,20 212:22 214:7

**relied** 195:25

**relief** 96:9

**rely** 49:22 62:17 145:19 167:3

**remember** 180:13

**remotely** 7:8,12 13:2

**reopen** 216:19

**repeat** 15:13 40:16 42:25 157:14

**rephrase** 11:22 46:16 138:21 210:12

**replaced** 146:2

**report** 18:14,18 52:21 53:4,23 54:3 119:3 154:2 162:12 163:14,18 178:6 188:9 200:4 201:2,9 201:10,17,22

**reported** 52:22 54:6 89:4 139:12

**reporter** 2:9 8:17 9:19 11:12 16:9

**reporting** 7:7 7:14 51:7 85:10 188:18

**reports** 33:4,7 33:17 53:9,12

53:14 56:13 71:11 91:17 138:15 142:12 142:13,15,18 152:6,12,22 153:3 161:2,7 161:18 162:9 162:13 163:20 164:14 166:19 199:13 200:22

**represent** 49:4 62:2 67:12,24 69:7 70:23,24 72:6 86:14 101:22 102:6 119:23

**representation** 65:24 67:8 76:10

**representations** 68:25

**representative** 21:9,20 50:19 50:20 64:14 73:15 78:8 103:5,10 116:3 128:15

**representatives** 39:16

**represented** 10:17 69:22 70:20 127:14

**representing** 3:7,14,19 8:16 81:13 86:15

91:24 92:5,8 92:11 105:13 123:18 212:8

**represents** 157:20

**reputation** 67:21

**request** 6:8 61:20 146:11 146:16 162:16 208:23,24 215:16

**requested** 174:18 209:11 210:21

**requests** 18:9 18:12 149:5 209:5 215:6,10

**require** 132:3

**required** 52:16 121:11 132:14 135:8 162:9 194:8

**requirements** 193:24

**research** 15:21 16:3 46:12,15 46:20 83:21 84:12 85:5 88:8 89:3 91:5 121:7 127:8 128:12 132:25 137:3 141:20 142:6,8 145:2 148:9 151:20

165:24 200:5
201:6,14 202:3
**researched**
143:15 152:2
**researching**
15:22
**reserve** 216:18
**reserved** 7:21
**resolution**
77:22
**respect** 23:25
136:6 138:2
141:13 149:18
179:25 198:4
**respective** 7:19
**respond** 11:8
**responded**
107:21
**response**
212:11 215:15
**responses**
149:5 209:6
**responsibilities**
15:16 18:7,22
102:20,23
116:24
**responsibility**
75:21
**responsible**
30:4 51:6
78:10,20 96:2
108:10 135:25
137:25 143:3,8
161:15,19
168:6 176:15

178:10 202:16
202:23
**responsive**
30:11,15 149:8
149:10 209:19
215:14 216:4
**rest** 195:2
**restate** 28:20
**restrictions**
139:22 175:3,5
**result** 78:18
79:14 82:14
86:10 96:14
98:15 123:19
169:20
**results** 78:16
**retain** 69:9
212:23
**retained** 67:10
113:25
**retaining**
207:12
**retention**
203:11 204:23
205:4,11 206:8
215:11
**retire** 64:3
**retiree** 19:3
79:15
**retirees** 19:10
28:16
**retirement** 1:5
1:6 2:4 8:9
17:13,14,15,17
18:4 19:7 25:2

26:12,13,23
28:19,24 31:20
31:21 37:10
40:22 41:16
47:22 55:15
63:17,18,22,23
64:3,24 65:3
68:25 73:5
79:11 80:22
81:21,21 85:22
89:4 106:21
119:22 122:12
132:5 134:9
135:11 136:3
138:5,18,22
139:3,6 145:5
147:10 151:9
165:11 202:9
204:3,17 205:8
205:9 209:2,2
213:22 214:25
215:13 216:3
**return** 73:10,12
73:17,21,23
121:19 135:15
198:18 219:14
**returns** 65:2
67:21 122:22
135:13,19
167:22 179:4
179:13
**reuse** 15:24
**reuther** 27:18
**reveal** 61:12
125:24

**revenue** 188:11
**revenues** 34:14
**review** 18:24
19:23 21:4
25:17,21 28:3
29:24 46:2,8
55:14 66:13,16
69:20 83:13
88:17 109:13
109:21 110:2,8
111:10 112:15
114:6 117:2
118:22 148:23
155:6 162:25
165:4 178:2,7
182:10 186:14
186:18 187:21
199:5 205:5
209:4
**reviewed** 22:10
33:7,17 37:18
58:6,20 107:15
107:17,22
110:5,13,15
111:13,16,19
112:10,13
113:15,18,20
113:22 118:19
118:23 142:15
142:22,24
146:10 149:12
149:13 154:7
181:9 185:8,14
185:18,21
186:2,12

187:13,15
191:6 197:18
200:7,14
208:18
**reviewing**
18:10,11 58:24
65:21 107:22
108:5,6,7
117:18,18,19
161:16 163:14
163:18 187:11
191:7 210:8
**reviews** 178:24
**rgander** 3:19
**rgrdlaw.com**
3:7
**richard** 1:14
**ricketts** 153:18
**right** 13:3,20
14:24 17:8
18:9 107:7
109:22 116:5
118:17 126:15
129:7 135:14
139:17 140:10
140:15,24
155:7,11,21
156:21,22
159:2 175:10
183:2,22 205:6
210:2 216:7,19
**risk** 167:12
168:16 169:5,7
169:9

**risks** 168:24
169:2
**robbins** 9:10
9:13 10:17
22:21 23:19
32:24 33:14
36:2,9 38:9
42:13 43:2
44:15,18 45:13
45:19,24 46:23
47:4 51:21
56:2,6,14,21
58:12 60:22
65:25 67:11,16
67:19 68:2,3,9
68:20 69:10,14
69:22 70:15,20
71:3,17 74:14
74:20 75:3,22
76:2,23 77:11
77:15,19 78:19
81:2 82:21
83:24 84:11
85:10,15 86:13
86:18 87:9
91:24 92:7,7
92:19 93:24
94:8 95:3,8
100:15,22
101:3 107:2,16
119:14,20
127:13 149:14
160:18 183:11
183:11 187:15
196:18 201:20

207:12 209:14
210:9,18 212:8
**robins** 3:3
**role** 15:19
16:21 18:20,21
19:11 41:8
50:25 52:6
60:14 101:20
102:9 116:21
117:6,6 122:15
123:16 138:20
138:23 139:16
139:20 140:13
140:20 141:4
149:25 150:6,6
197:17
**roles** 15:17
**room** 7:6 13:7
**ross** 3:24
**rough** 84:14
112:18 125:4
217:2
**rpr** 2:7 218:6
218:18
**rudman** 3:3
**rules** 10:23
12:24 68:24
**run** 51:4
209:16
**ryan** 3:17 9:15

| s |
|---|

**s** 1:17 3:2,22,22
4:9
**sales** 149:20
183:6 184:3,15

**san** 3:6
**sanctions** 77:24
78:14
**sandra** 81:3
**satisfied** 168:9
**satisfy** 98:8,24
**says** 37:15
52:20 54:6
55:9,25 59:21
66:4 119:20
123:25 127:19
147:12 166:6
167:8 170:3,25
183:17 195:4
**schaefer** 27:17
**schedule**
182:22
**school** 14:2,5
14:11,12 16:23
**scope** 40:14,18
156:13 160:6
191:18
**score** 194:14
**screen** 20:6,15
37:2 48:19
115:12
**scroll** 21:3
44:10 115:6
162:19
**seal** 218:14
**search** 149:12
209:10,18,24
210:4,6,7,8,11
210:13,14,19
213:10,13

**searched**
  209:20 210:23
**searches**  149:4
  209:15 215:16
**searching**
  215:19 216:4
**seasoned**  34:3
**sec**  185:13
**second**  11:3
  22:24,24 36:19
  59:20 61:9
  99:23 119:6
  120:8 123:3
  126:22 132:2
  140:2 151:13
  156:3 170:3
  191:13 205:12
**secondly**  34:8
**secretary**  80:21
  120:9,17
  123:25
**section**  109:12
  119:8 120:9
  167:8 169:23
  174:22 175:11
  178:2 194:9
**sector**  168:11
  169:8,13 175:8
  177:15 179:6
**sectors**  146:14
**securities**  69:23
  70:10,19 71:24
  72:21 81:20,25
  82:6,10,17,23
  84:4,6 88:4,22

  89:15 90:13
  91:16 103:4
  106:15 112:25
  119:15 120:15
  120:24 122:20
  125:20 127:5
  130:7,10 138:6
  138:7 141:12
  160:2 172:11
  174:22 183:14
  194:4
**security**  150:14
  172:17 173:21
  174:10
**see**  37:24 44:4
  52:25 54:9
  56:3 59:14
  66:4 72:13
  80:18 82:18
  115:18 119:12
  126:21 128:5
  155:13 156:6
  156:24 167:13
  180:11
**seeing**  20:3
**seeking**  96:10
  96:12 105:9,25
  107:7 136:15
**seemed**  41:22
**seems**  132:12
**seen**  58:17
  112:16 153:21
  153:25 154:15
  187:20 190:8
  199:10,12,14

**select**  67:18
  213:8
**selected**  145:6
  176:6 186:15
**selecting**
  139:20 150:7
**selection**
  169:23 172:17
**sell**  174:9
**selling**  34:2
  40:6
**send**  180:10
  212:16
**sending**  71:12
**sense**  12:17
  65:5
**sent**  44:3
  110:14 153:5
  163:16
**sentence**  53:9
  53:17 132:2
  150:8 151:13
  175:14 191:22
  192:3,10,15,17
  193:13,23
  195:19
**separate**  34:24
  213:19
**separately**
  87:24
**september**  44:8
  44:16 48:11
  49:6 60:5,12
  115:20 118:17
  118:25 129:7

**serena**  153:20
  154:21
**series**  11:5 29:8
**serious**  34:5
**serve**  102:15
  116:2,2 129:20
  145:11
**served**  55:11,18
  209:5
**service**  63:15
  63:25 99:15
  107:24
**services**  16:4
  76:16 77:13
  204:9
**serving**  70:12
  76:14,25 86:3
  116:8
**session**  57:22
**set**  17:20 58:13
  58:16 74:13
  75:13
**sets**  34:25
**setting**  203:11
**settlements**
  63:6,12 88:3
  88:21
**seventh**  3:12
**several**  161:14
**shakes**  11:9
**share**  20:7 37:2
**shared**  25:5
  142:18 187:16
**shareholder**
  17:6 89:12

**[shares - specific]**                                     Page 45

**shares** 32:7,13
  40:2,7 150:15
  179:20 183:17
  184:2
**sheet** 219:7,10
  219:12,15
  221:9
**short** 93:19
  111:18
**shortened**
  215:10
**shorthand**
  218:10
**shortly** 36:14
  36:15 112:16
  181:2
**show** 20:6
  200:17
**showing** 48:18
  115:9
**shown** 200:22
**shows** 47:17
  155:18,23
  156:4
**shut** 13:15
**side** 26:17
  47:24
**sign** 219:9
**signatories**
  80:18 91:22
**signature** 66:5
  115:8,19
  165:13 218:18
  221:12

**signatures**
  115:9
**signed** 60:22
  80:19 81:4,11
  129:6
**significant**
  34:10 214:19
**signing** 219:11
**similar** 84:5,5
  103:6 117:6,13
  190:4
**similarly** 1:8
  136:17 156:3
  184:15
**simple** 158:19
**sit** 28:8
**sits** 27:14 47:12
**sitting** 33:15
**situated** 1:8
  136:18
**situation** 41:23
**size** 50:16,16
  54:14,19 62:20
  62:21,25 63:2
  63:2,3
**slowed** 118:2
**small** 150:19,23
  170:18 171:10
  171:21
**software** 15:24
  203:8
**solara** 195:6,7
**sold** 34:8
**sole** 19:11
  102:11 132:18

  149:18,22
**solely** 68:14
  69:2 100:5
  101:14 104:18
  107:8
**solicitor** 18:2,3
  18:5,15,21
  27:9 28:12
  50:12 51:8
  69:9 96:7
  132:17,19
  133:10
**solicitor's**
  49:11,17,18,19
  50:9 51:18
  52:4,7,12
  60:17 96:5
  119:3 204:4,16
  206:24 207:10
  212:23 213:17
  214:6 215:19
**solutions** 8:19
**somebody** 46:8
  161:22
**sorry** 14:20
  20:5,16 23:6
  26:3 28:20
  32:19 36:5
  40:15 45:11
  49:25 53:11
  54:17,20 55:19
  60:2,18 77:18
  86:19,21,24
  94:19 106:8
  110:20 115:13

  119:21 124:16
  126:4 127:2
  129:24 132:11
  134:11,14
  136:25 137:8
  140:6,22,22
  150:24 152:25
  155:4 167:7
  170:2 171:21
  178:23 189:18
  189:19 194:9
  195:11 210:5
  210:12
**sort** 162:18
  179:14
**sought** 116:2
  129:20
**sound** 35:19
**sounds** 15:10
**space** 219:7
**speak** 15:3
  23:22 24:5,16
  24:24 25:14
  77:11 90:4
  110:16 151:24
  206:10,13
**speaking**
  120:20 144:5,9
**specific** 39:22
  56:13 74:7
  91:14 109:23
  137:14,17
  141:6 144:20
  148:8 150:18
  150:18 151:5

**[specific - subscribed]** Page 46

168:11 169:7,9 169:10 171:16 171:17 190:7 192:10 214:21

**specifically** 26:18 98:22 100:10 141:3 143:9 152:10 154:4 174:9 199:13 200:14 203:12 207:16

**speculate** 90:14 133:10 137:4 157:2 176:8

**speculated** 133:9

**speculation** 130:13 133:6 161:25 163:4 172:13 177:22

**speculative** 164:2

**spend** 117:10

**spent** 117:16

**spoken** 23:24 25:7 93:24 94:3

**sporadic** 93:21 117:13

**spring** 28:12

**squares** 132:16

**stand** 20:11

**start** 11:16 13:23 89:24 102:19

**started** 17:3 40:6

**starting** 158:5 188:8

**state** 2:8 8:24 10:7 75:25 82:17 113:4 123:8 179:14 218:6 219:6

**stated** 38:24,25 92:10 113:3 175:8

**statement** 156:11,21 165:16 166:2,7 176:12 187:13 188:2 191:7,15 191:15,19 193:2,14 194:13 195:21 201:9

**statements** 154:7,16 161:23 187:18 196:2

**states** 1:2 8:11 75:16 77:19 80:20 82:8,10 112:23 168:18 175:14 178:5 192:17

**stating** 12:5 123:9 129:9

**status** 42:2 99:19 117:21

205:6

**stein** 43:4 45:20 55:25 56:5,24 81:3,3 81:7,12 91:23 94:10 119:14 131:22,24

**stenographer** 7:5

**stenographic** 7:17

**stephen** 1:13

**steps** 22:13 206:19 207:18

**stipulated** 7:18

**stipulation** 7:16

**stipulations** 6:12

**stock** 33:18 40:23 41:5 62:19,20,25 64:6 96:14,20 103:23 104:7 123:11 169:7,9 174:11 183:7 183:21 184:4 184:11,16 198:5

**stocks** 29:11 31:4 32:19,25 33:5 90:7 91:3 138:12,13 157:18 167:23 173:6 177:9

**stop** 133:12 144:4

**stored** 30:8,9

**strategic** 191:25 192:19 193:19 195:4

**strategically** 195:5

**strategies** 135:19 172:4

**strategy** 117:19 167:10 168:2,3 170:5,6,9,13,20 171:11,23 172:25 173:12 174:19 176:14 176:16,25 178:13 194:18

**strike** 26:3 36:17 54:21 60:3 88:10 115:22 123:23 125:9 138:20 194:9

**structure** 26:8

**style** 195:7

**sub** 167:9

**subject** 34:5 90:8,13 91:3 132:8 214:13 219:11

**submitted** 115:16

**subscribed** 221:15

Page 47

**substance**
  109:18 221:8
**substantial**
  34:7 59:24
  61:24 62:6
  64:12 67:21
  72:5
**substantive**
  158:7
**successfully**
  170:7
**sue**  159:25
**suffered**  82:14
**sufficient**  99:9
  135:16
**suggest**  160:18
**suggesting**
  128:25
**suing**  160:19
**suit**  33:12 56:2
  74:22
**suited**  119:22
  119:25
**suites**  56:16
  67:23 84:9
**summary**  46:5
  187:16,18
**summer**  36:14
  71:4 97:14
**sun**  150:14
**sunshine**
  213:20 214:10
**supervise**
  166:10

**supervises**
  166:17
**supervising**
  166:8
**supervision**
  218:11
**supervisors**
  82:5
**supplies**  195:6
**support**  6:2
  120:12 124:3
  124:14
**supposed**
  150:17
**sure**  10:9 14:3
  14:9 26:23
  28:22 32:16
  38:9 40:17
  43:2 44:14
  53:20 55:17
  58:8 65:15
  74:8 78:4
  92:10 102:6
  105:18 109:6
  111:8 115:8
  126:20 131:20
  135:16 142:23
  153:23 165:5
  182:7 193:8
  203:5 205:16
**susan**  1:15
**swear**  9:19
**sworn**  9:23
  218:9 221:15

**system**  1:6,7
  2:4 8:10 17:14
  26:12,13 31:20
  31:21 37:10
  40:22 41:17
  73:5 85:22
  106:21 122:12
  135:11 136:4
  204:12 209:2,3
  214:25 215:13
  216:3
**systems**  69:2

**t**

**t**  3:22 4:9
  195:16 218:2,2
  220:3
**tab**  4:12,13,14
  4:15,16,17,18
  4:19,20,21,22
  4:23,24,25 5:2
  5:3,4,5,6,7,8,9
  19:14 36:19
  43:17 48:2,22
  59:4 65:7
  79:19 108:21
  110:19,20
  111:23 113:7
  114:13 118:8
  126:4,5 131:4
  146:20 148:13
  153:8 164:19
  187:3 197:3
  199:17 208:10
**take**  12:9,13
  19:22 22:13

  23:9 24:11
  48:14 52:8,17
  57:6 61:18
  68:23 79:6
  83:13,21 84:12
  88:8 89:2
  95:10 119:7
  131:2 136:5
  137:2 142:5,8
  147:18 149:15
  165:3 181:13
  206:18 207:18
  209:15 216:9
**taken**  2:5 29:25
  124:11 218:7
**takes**  26:16
  52:12
**talk**  11:14
  21:17 214:21
**talking**  46:22
  53:18,21 98:19
  140:4 141:10
  193:7 194:17
**talks**  171:5
  193:19
**tasked**  82:21
**tax**  34:6 35:12
  35:13 36:7
  39:4 192:7
  194:24 196:6
  196:22
**taylor**  27:18
**team**  23:20
  34:3 94:10

**tech**  20:8,11,16
  36:25 37:6
**technical**
  206:13
**technician**  3:24
**technologies**
  131:17
**technology**
  203:2
**tell**  154:3,17
  218:9
**telling**  16:21
  24:13
**ten**  29:8 83:19
  84:13 145:9,15
  145:25 176:2,9
**tenant**  153:20
  154:21
**terence**  1:15
**term**  188:5
  191:25 192:19
  193:19 194:18
**terms**  58:11
  60:15 62:12
  71:16 77:16
  89:3 100:3
  101:13 102:19
  102:25 124:24
  124:25 125:3
  170:19,23
  194:19 205:8
  210:13,18
  213:3
**testified**  9:24
  47:2 52:4

96:20 101:2
  141:3 145:19
  212:11
**testify**  12:20
  21:12 22:8
  23:2 48:15
  141:21 212:16
**testifying**  26:5
**testimony**  27:3
  38:12 42:22
  57:21 86:6
  90:22 91:10
  100:20 121:23
  139:2 140:23
  141:2 150:5
  170:15 212:14
  218:9,12
**texas**  118:2
**text**  191:11
**texting**  13:12
**thank**  10:16
  12:17 13:17
  20:2,13 29:14
  33:22 37:7
  125:14 132:22
  134:7,14 159:8
  159:10 165:5
  211:21
**thanks**  43:24
  58:19 152:21
**theory**  169:4
**therapeutic**
  156:9
**therapeutics**
  155:23 157:4

160:2
**thereof**  218:13
**thing**  19:8
  198:23
**things**  14:17
  51:4 56:14
  58:14 78:15
  137:5 179:15
  179:18 185:14
  214:13
**think**  15:14
  31:19 35:6
  36:13,14 57:5
  62:8 69:12
  74:13 89:6
  93:24 95:7,9
  98:18 104:20
  122:10,17,17
  127:18 133:11
  137:16 139:2,5
  143:20 149:9
  150:19 152:8
  164:5 169:14
  174:4 175:18
  181:12 182:18
  182:22 187:4
  195:4 196:8,11
  207:15 211:19
  216:15 217:3
**thinking**
  188:17
**third**  11:12
  119:6 120:8
  123:25 182:9

**thirty**  219:16
**thought**  64:13
  65:4 100:25
  131:24 207:7
**thousand**  62:9
  62:10 96:21
  97:18 136:25
**three**  14:10
  17:21 23:10
  27:16 70:4,6
  76:13 84:21
  85:3 91:12
  116:3 128:22
  129:11,14
  130:17 137:18
**threshold**
  62:11,17
**tied**  64:5
**time**  7:22 8:5
  11:14 14:22
  16:10,16 19:22
  24:20 28:6
  31:6 44:16
  48:14 56:10
  57:6,9,16 58:7
  83:9 84:20
  88:7 89:17,19
  93:14,16,19
  94:22 95:10,12
  95:20 97:16
  100:2,9 101:6
  101:14 109:15
  111:18 112:18
  117:9 118:24
  118:24 119:7

**[time - u.s.]**

120:12 121:2
122:5 124:3,14
125:2,4 127:9
127:9 128:22
132:4,20
133:13,21
137:9 140:19
141:17 143:21
150:11,11
151:16,16
152:9,9 154:18
156:18 157:21
165:20 167:11
170:7 172:7
179:4 181:13
181:16,24
185:11 186:6
187:19 192:6
203:14 205:18
205:25 209:18
209:23 211:7
211:15,22
215:9 216:13
216:22,23
218:8
**timeframe**
36:16 58:9
**times** 12:2
22:20 29:16
71:17 93:23
94:7,15 110:12
121:3 158:11
178:19 180:12
**timing** 38:7

**title** 15:16
17:24
**today** 9:12
10:17,24 12:16
12:21 20:24
21:8 22:9
23:21 25:11
26:5 33:15
81:14 116:9
176:4 186:11
**today's** 11:4
21:4 25:15,21
25:24 88:18
216:25
**together** 41:22
41:24 61:3,25
64:12 65:4
135:7
**told** 33:13
157:10 158:12
158:16 207:23
**tolerance**
167:12
**tolerances**
168:16
**took** 16:13 32:4
57:13 95:17
116:16 132:21
133:18 181:21
205:22 211:12
**top** 37:15 51:22
126:18 128:18
131:15 147:12
180:11 199:3

**topic** 24:20
158:7
**topics** 15:22
16:3 20:24
21:5,10,14
22:9
**total** 93:23
117:12 178:8
**towards** 155:14
**track** 166:24
**tracked** 47:17
**traded** 40:2,3
**transaction**
119:16
**transactions**
115:10 183:3
**transcribe**
11:13
**transcribed**
218:11
**transcript** 11:7
187:22 219:17
219:18
**transcription**
218:11 221:6
**transmitted**
199:6
**treasurer** 17:22
27:4,19
**treatment**
204:11
**trial** 7:22
**troubles** 192:23
**true** 215:4,8,20
218:12

**trustee** 89:5
91:15 183:13
**truth** 218:9,9,9
**truthfully**
12:20
**try** 11:13 15:2
**tull** 3:4 9:13
**turn** 118:5
119:2 182:5
190:24
**turned** 13:15
127:21
**turning** 174:21
**two** 14:12
16:23 23:6,14
23:17 34:23,24
53:9,17 61:20
84:22 87:9
90:3,23 103:12
110:10 116:17
143:20 157:15
180:8 195:4
**twofold** 33:25
**type** 96:9
167:22,23
194:13
**typical** 76:9
179:14
**typically**
120:10,18,23
122:2

**u**

**u.s.** 126:23
131:17 137:23
138:3,11,11,12

139:16,18,18 140:15 141:14 151:10,11 169:6 175:5 179:16,17 195:9

**ubs** 125:18

**uh** 37:25 66:6 118:18 147:14 164:25 166:4 178:4

**ultimately** 75:19

**unable** 145:8

**uncommon** 81:12

**undefined** 142:6

**under** 10:24 17:16,19 52:20 56:21 85:11 86:19 89:6 119:3 121:5 150:14 167:7 205:5 213:3,5 213:18 218:11

**underneath** 66:4 86:10 155:13,21

**understand** 10:25 11:10,18 11:20,24 12:6 12:13 13:9 21:19 26:24 52:3 72:16,16

78:9 83:19 100:12 101:20 105:19 123:16 144:2 168:23 200:17 208:21

**understanding** 44:13 78:4,7 102:22 103:3 112:22 137:14 148:9 151:10 171:10,14,18 194:6,11

**understandings** 75:7

**understands** 104:15 200:18

**understood** 11:11,23,25 12:7,14 22:7 55:21 59:2 169:19

**undertake** 46:11 79:3 81:24 85:5 209:10,16

**undertaken** 73:6 74:4 105:10,19

**unhappy** 145:22

**unit** 3:5 8:6 57:11,18 95:14 95:22 133:15 133:23 181:18 182:2 211:9,17

**united** 1:2 8:11 82:10

**university** 14:4 14:5

**unlimited** 150:13

**unmute** 133:25

**unpaid** 196:15 197:16

**unrealized** 155:18,24 156:17 157:17 157:19

**unsatisfactory** 146:4

**update** 59:17 108:6 125:15 178:16 180:24 205:15

**updates** 179:24 181:6

**updating** 205:7

**use** 203:9 204:17

**used** 71:16 123:7 186:16 188:6 203:19 210:14 219:19

**using** 203:23

**usually** 56:7 90:9

**v**

**vague** 22:15 24:19 29:3 30:14 31:2

35:2 40:19 46:14 51:15 56:9 68:10 73:11,22 75:11 83:2,8 84:19 86:6 88:6 89:18 90:20 92:4 93:13 103:17 120:25 122:4 141:17 143:19,25 154:12 172:6 173:2,13 181:3 185:10,23 191:17 193:3 193:15

**variety** 64:13 67:22 87:23 89:10 91:2

**various** 15:22 16:2 18:13 28:6 58:13 60:22 63:15

**verbally** 11:8

**veritext** 8:16,19

**version** 47:18 48:10 147:22

**versus** 8:10 37:11 85:22 94:4 166:20 172:24 177:13

**video** 8:7 16:11 16:18 29:23 57:10,18 95:13 95:22 133:14

**[video - year]**                                                    Page 51

133:23 181:17
182:2 205:19
206:3 211:8,17
216:24
**videographer**
3:23 8:3,17
9:18 14:20,24
15:3 16:6,16
57:8,16 95:12
95:20 133:13
133:21 181:16
181:24 205:18
205:25 211:7
211:15 216:22
**videotaped**  2:3
**view**  54:22
**views**  107:4
117:5
**vincent**  3:11
9:8
**violations**
82:16
**virtual**  179:9
**visit**  212:10
**visually**  156:24
**voice**  62:4
**volatility**
168:21 169:16
**vote**  132:4
214:20
**vs**  1:10

**w**

**w**  3:5 195:16
**wait**  198:25

**waive**  7:13
**wallingford**
10:15
**want**  36:25
73:9 78:3,6
79:5 85:13
182:24 212:10
214:14,17
216:13
**wanted**  72:10
72:11 173:23
**wants**  57:21
**way**  38:24 49:8
75:3 81:10
103:11 173:11
189:5,10
190:12 209:16
213:23
**we've**  25:14
57:4 64:12
76:22 107:15
107:20,21
108:5 119:17
128:20 129:9
160:13 181:13
187:19 215:7
**weaver**  1:16
**website**  28:5
47:21,21
**weeks**  23:10
**went**  16:23
33:8 40:6
**west**  10:12
**william**  18:17

**williams**  1:17
**willing**  106:5
**willingness**
124:8
**willkie**  3:9 9:4
**willkie.com**
3:14
**withdraw**
106:5
**witness**  3:8 6:4
9:11,20 14:22
24:15 57:21
123:6 125:24
128:25 158:6,9
159:18 218:12
218:14 219:2
**witnesses**  101:8
**wolf**  1:16
**wolters**  3:12
9:8 133:25
**wonderful**
12:23 13:17
**word**  49:2,2
123:7
**words**  129:25
130:2
**work**  35:14
41:23 60:15
80:23 102:16
116:20 117:14
215:6,9
**worked**  14:9,12
14:19 15:25
16:22,23 41:22
64:12 100:10

210:18
**working**  15:18
76:23 170:15
**works**  171:11
**worries**  115:14
**worry**  105:15
**worth**  49:20
62:13
**writing**  16:3
**written**  13:18
150:9 151:14
151:18,25
163:17 179:7
179:10,11,19
**wrong**  164:10

**x**

**x**  4:2,9

**y**

**yeah**  15:10
16:6 19:8
32:10 43:23
58:4 60:8
64:22 72:13
92:6 115:11
129:24 155:5
155:11 157:10
199:3 210:6
**year**  29:16
84:13 89:3
121:5 128:22
129:11,14
130:17 136:19
157:20 178:20
180:12

**years** 14:11
  29:8 63:15,25
  67:22 70:4,6
  83:19 84:21
  85:3 90:3
  116:4 134:18
  137:18 145:9
  145:15,25
  148:7 151:22
  168:13 176:2
  176:10 196:10
  203:14
**yep** 44:12
  65:22 79:25
  109:4 111:2
  114:19 118:14
  119:10 121:13
  124:4 125:17
  155:12 174:23
  175:2 187:5
  191:2 198:20
  208:16
**york** 2:8 3:13
  3:13,18,18
  14:5

**z**

**zeh** 3:10 9:7
**zoom** 2:5 12:24
  13:13 43:24

Federal Rules of Civil Procedure

Rule 30


(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.


DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.