UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM and BUCKS COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) | Civ. Action No. 2:21-cv-03382-HB <u>CLASS ACTION</u> MEMORANDUM OF LAW IN SUPPORT |
| Plaintiffs, | ) ) ) | OF LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN |
| vs. | ) ) | OF ALLOCATION |
| ADAPTHEALTH CORP. f/k/a DFB HEALTHCARE ACQUISITIONS CORP., LUKE MCGEE, STEPHEN P. GRIGGS, JASON CLEMENS, FRANK J. MULLEN, RICHARD BARASCH, JOSHUA PARNES, ALAN QUASHA, TERENCE CONNORS, DR. SUSAN WEAVER, DALE WOLF, BRADLEY COPPENS, and DAVID S. WILLIAMS III, | ) ) ) ) ) ) ) ) ) ) ) | ELECTRONICALLY FILED |
| Defendants. | ) ) ) ) | |

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ........................................................................1

II. BACKGROUND ...........................................................................................2

    A.  Procedural History .............................................................................2

        1.  The Initial Complaints and Lead Plaintiff Appointment ...........................2

        2.  Lead Counsel's Investigation and the Consolidated Complaint ................3

        3.  Defendants' Motion to Dismiss and Answer ..............................................4

        4.  Class Certification and Merits Discovery ....................................................4

        5.  Class Certification ...........................................................................................5

        6.  The Court's Preliminary Approval of the Settlement .................................6

    B.  The Notice Program Approved by the Court Has Been Fulfilled...........................6

III. THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS
     FOR PURPOSES OF EFFECTUATING THE SETTLEMENT........................................7

IV.  THE SETTLEMENT WARRANTS FINAL APPROVAL................................................8

V.   THE SETTLEMENT SATISFIES THE REQUIREMENTS OF RULE 23(e)(2) ............10

    A.  Lead Plaintiffs and Lead Counsel Have More than Adequately
        Represented the Settlement Class ............................................................10

    B.  The Settlement Negotiations Were Conducted at Arm's-Length and Under
        the Oversight of an Experienced Mediator ............................................................12

    C.  The Settlement Is Adequate Considering the Costs, Risks, and Delays of
        Trial and Appeal ........................................................................................14

        1.  Risks and Costs of Establishing Liability and Damages ...........................14

        2.  The Risks of Maintaining the Class Action Through Trial........................18

        3.  The Ability of Defendants to Withstand a Greater Judgment....................18

        4.  The Settlement Falls Well Within the Range of Reasonableness..............18

    D.  The Settlement Satisfies the Remaining Rule 23(e)(2) Factors............................20

        1.  The Proposed Method for Distributing Relief Is Effective........................20

4863-6536-0825.v1

**Page**

2.      The Requested Attorneys' Fees Are Reasonable .......................................21

3.      The Parties Have No Other Agreements Besides an Agreement to Address Requests for Exclusion ...............................................................21

4.      Settlement Class Members Will Be Treated Equitably, and the Reaction of the Settlement Class Supports Final Approval.......................22

E.      The Settlement Satisfies the Applicable *Prudential* Factors .................................23

VI.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION...........................23

VII.   CONCLUSION.....................................................................................................................25

4863-6536-0825.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alves v. Main*,
  2012 WL 6043272 (D.N.J. Dec. 4, 2012),
  *aff'd*, 559 F. App'x 151 (3d Cir. 2014)..................................................................12

*Beltran v. SOS Ltd.*,
  2023 WL 319895 (D.N.J. Jan. 3, 2023),
  *report & recommendation adopted*, 2023 WL 316294 (D.N.J. Jan. 19, 2023). .............. *passim*

*Copley v. Evolution Well Servs. Operating, LLC*,
  2023 WL 1878581 (W.D. Pa. Feb. 10, 2023) ..........................................................13

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010)..................................................................................8

*Frederick v. Range Res.-Appalachia, LLC*,
  2022 WL 973588 (W.D. Pa. Mar. 31, 2022),
  *aff'd*, 2023 WL 418058 (3d Cir. Jan. 26, 2023)......................................................9

*Fulton-Green v. Accolade, Inc.*,
  2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ..........................................................14

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975)............................................................................ *passim*

*Huffman v. Prudential Ins. Co. of Am.*,
  2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) .......................................................10, 11, 16, 23

*In re AT&T Corp.*,
  455 F.3d 160 (3d Cir. 2006)..................................................................................19

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)..................................................................................22

*In re Hemispherx Biopharma, Inc., Sec. Litig.*,
  2011 WL 13380384 (E.D. Pa. Feb. 14, 2011) ..........................................................19

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
  2022 WL 16533571 (E.D. Pa. Oct. 28, 2022)........................................................23, 24

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
  2022 WL 717254 (E.D. Pa. Mar. 10, 2022)............................................................21

**Page**

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
307 F.R.D. 351 (E.D. Pa. 2015),
*amended*, 2015 WL 12827803 (E.D. Pa. May 8, 2015),
*aff'd*, 821 F.3d 410 (3d Cir. 2016) .................................................................13

*In re NFL Players Concussion Inj. Litig.*,
821 F.3d 410 (3d Cir. 2016) ...........................................................................10

*In re Par Pharm. Sec. Litig.*,
2013 WL 3930091 (D.N.J. July 29, 2013) ......................................................19

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1999) .........................................................................9, 11

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
2024 WL 815503 (E.D. Pa. Feb. 27, 2024) ......................................................8

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
2020 WL 3166456 (D.N.J. June 15, 2020) ......................................................10

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
2021 WL 358611 (D.N.J. Feb. 1, 2021), *aff'd in part,*
*dismissing appeal in part*, 2021 WL 6881210 (3d Cir. Dec. 20, 2021) .................................11

*In re Viropharma Inc. Sec. Litig.*,
2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ................................................13, 16

*In re Vivendi Universal, S.A. Sec. Litig.*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011),
*aff'd*, 838 F.3d 223 (2d Cir. 2016) ..................................................................17

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ................................................................... *passim*

*Jackson v. Wells Fargo Bank, N.A.*,
136 F. Supp. 3d 687 (W.D. Pa. 2015) ..............................................................18

*Kanefsky v. Honeywell Int'l Inc.*,
2022 WL 1320827 (D.N.J. May 3, 2022) .........................................10, 14, 17, 24

*McDermid v. Inovio Pharms. Inc.*,
2023 WL 227355 (E.D. Pa. Jan. 18, 2023) ..................................................... *passim*

*McDermid v. Inovio Pharms., Inc.*,
467 F. Supp. 3d 270 (E.D. Pa. 2020) ...............................................................12

Page

*Rossini v. PNC Fin. Servs. Grp., Inc.*,
   2020 WL 3481458 (W.D. Pa. June 26, 2020)..........................................................24

*Schuler v. Medicines Co.*,
   2016 WL 3457218 (D.N.J. June 24, 2016) .............................................................19

*Se. Pa. Trans. Auth. v. Orrstown Fin. Servs., Inc.*,
   2023 WL 1454371 (M.D. Pa. Feb. 1, 2023) .....................................................21, 22

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011).....................................................................................24

*Utah Ret. Sys. v. Healthcare Servs. Grp.*,
   2022 WL 118104 (E.D. Pa. Jan. 12, 2022) ................................................... *passim*

*Whiteley v. Zynebra Pharms., Inc.*,
   2021 WL 4206696 (E.D. Pa. Sept. 16, 2021) .........................................................18

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
   §78j(b)..............................................................................................................2, 4
   §77k..............................................................................................................4, 20
   §77l......................................................................................................................4
   §77o.....................................................................................................................4
   §78t(a).........................................................................................................2, 4
   §78u-4...........................................................................................................1, 7
   §78u-4(a)(4)................................................................................................1, 21

Federal Rules of Civil Procedure
   Rule 23 .................................................................................................... *passim*
   Rule 23(a)..................................................................................................7, 8
   Rule 23(b)(3)............................................................................................7, 8
   Rule 23(e)..........................................................................................................9
   Rule 23(e)(2)............................................................................................ *passim*
   Rule 23(e)(2)(A)..................................................................................10, 12
   Rule 23(e)(2)(B)........................................................................................12
   Rule 23(e)(2)(C)(i)....................................................................................14
   Rule 23(e)(2)(C)(ii)...................................................................................20
   Rule 23(e)(2)(C)(iii)..................................................................................20
   Rule 23(e)(2)(C)(iv)..................................................................................20
   Rule 23(e)(2)(D)..................................................................................20, 22
   Rule 23(e)(3)....................................................................................................9

**Page**

17 C.F.R.
   §240.10b-5 ...................................................................................................................2, 20

## SECONDARY AUTHORITIES

*Securities Class Action Settlements: 2023 Review and Analysis*,
   Laarni T. Bulan and Laura E. Simmons
   (Cornerstone Research 2024)...........................................................................................19, 20

Lead Plaintiffs Bucks County Employees' Retirement System ("Bucks County") and Delaware County Employees Retirement System ("Delaware County") (together "Lead Plaintiffs"), individually and on behalf of the Settlement Class, respectfully submit this memorandum in support of their motion for final approval of the class-wide Settlement of this Action, including the proposed Plan of Allocation for distributing Settlement proceeds (the "Motion").[1]

## I.    PRELIMINARY STATEMENT

Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rules") and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), this Motion seeks final approval of the proposed Settlement following completion of the notice program approved by the Court.  The Settlement provides for the payment of $51 million in cash, one million shares of AdaptHealth common stock, and significant corporate governance changes at AdaptHealth Corp. ("AdaptHealth" or the "Company").[2]  The Settlement here resulted from arm's-length mediation overseen by highly respected mediator David M. Murphy ("Mr. Murphy") of Phillips ADR Enterprises, and represents an excellent recovery for the Settlement Class.  The Settlement follows over two years of hard-fought litigation including: (i) drafting a detailed consolidated complaint (ECF 19) (the "Complaint"); (ii) opposing a complex motion to dismiss; (iii) full briefing and expert analysis concerning Lead Plaintiffs' class certification motion; (iv) the exchange of written discovery requests and responses thereto; (v) the review of hundreds of thousands of pages of discovery and the taking or defending of nine depositions; (vi) numerous meet-and-confers; and (vii) two mediation

---

[1]    Unless otherwise defined herein, all capitalized terms have the meaning set forth in the Stipulation and Agreement of Settlement, dated February 26, 2024 (ECF 149) (the "Stipulation"). All declarations cited herein refer to the declarations attached to the Declaration of Douglas R. Britton in Support of Motions for: (I) Final Approval of Settlement and Approval of Plan of Allocation; and (II) Attorneys' Fees and Litigation Expenses, and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Britton Declaration"), filed herewith.

[2]    AdaptHealth common stock closed at $7.22 per share on the date that the parties reached an agreement-in-principle to settle the litigation.  It closed at $9.83 per share on May 14, 2024.

sessions, including the submission of written mediation statements and reply statements. Through these efforts, Lead Counsel gained a full understanding of all relevant issues, which it brought to bear in negotiating and agreeing to the Settlement. The Settlement secured by Lead Plaintiffs and Lead Counsel represents an aggregate recovery significantly higher than the median settlement in securities class actions over the last decade.

As detailed herein, the Settlement easily satisfies the factors set forth in Rule 23(e)(2) and *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), for approving class action settlements, balancing the objective of attaining the highest possible recovery against the risks of continued litigation. This includes the risk that the Settlement Class could receive nothing, or far less than the Settlement, after trial and any appeal. In addition, the Plan of Allocation treats Settlement Class Members equitably and ensures that each Authorized Claimant will receive a *pro rata* share of the proceeds from the Settlement. Moreover, given the absence of any objections to date, the Settlement appears to enjoy unanimous support from the Settlement Class.

Lead Plaintiffs therefore respectfully request that the Court grant final approval of the proposed Settlement and Plan of Allocation.

## II.    BACKGROUND

### A.    Procedural History

#### 1.    The Initial Complaints and Lead Plaintiff Appointment

Robert Charles Faille Jr. ("Faille") commenced this securities class action on July 29, 2021. ECF 1. The complaint in *Faille* alleged that Defendants violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by materially overstated AdaptHealth's financial prospects by failing to disclose that "AdaptHealth had misrepresented its organic growth trajectory by retroactively inflating past organic growth numbers without disclosing the changes, in violation of SEC regulations." ECF 1, ¶¶1, 6. Faille alleged that

"AdaptHealth's stock price fell $1.51 per share, or 5.93%" on news contained in a July 19, 2021 Jehoshaphat Research report stating that AdaptHealth was "obscur[ing] its organic growth by '[r]etroactively changing past organic growth numbers to be higher, with no disclosure about the change.'"  *Id.*, ¶¶7, 8.

The Court appointed Bucks County and Delaware County as Lead Plaintiff and approved their selection of Robbins Geller Rudman & Dowd LLP as Lead Counsel on October 14, 2021.  ECF 12.

### 2.      Lead Counsel's Investigation and the Consolidated Complaint

Prior to and after being appointed, Lead Counsel conducted a comprehensive investigation into AdaptHealth's alleged wrongful acts, which included, *inter alia*, reviewing and analyzing AdaptHealth's filings with the SEC and other publicly available material related to AdaptHealth and DFB Healthcare Acquisitions Corp. ("DFB") – the special purpose acquisition company ("SPAC") that merged with and into AdaptHealth to make AdaptHealth's securities publicly traded – including news articles, analyst reports, and information published in connection with the merger, AdaptHealth's revenue growth, and its management, specifically defendant Luke McGee ("McGee").  Lead Counsel also consulted with a damages and loss causation expert.

On November 22, 2021, Lead Plaintiffs filed the Complaint.  ECF 19.  The Complaint expanded the case as alleged by Faille considerably, including by: (i) adding allegations about defendant McGee's alleged involvement in an international tax scheme, (ii) adding an additional corrective disclosure about the effect of that scheme on defendant McGee's status as Chief Executive Officer, (iii) naming as defendants members of AdaptHealth's board of directors, and(iv) adding claims under the Securities Act of 1933 (the "Securities Act").  *Id.*  The Complaint also narrowed the case concerning AdaptHealth's organic revenue growth, alleging that AdaptHealth failed to adequately disclose a material change to its organic revenue growth metric.  *Id.*  The

Complaint alleged violations of §§10(b) and 20(a) of the Exchange Act, and §§11, 12, and 15 of the Securities Act. *Id.*

### 3.    Defendants' Motion to Dismiss and Answer

On January 20, 2022, Defendants filed a motion to dismiss, arguing that the Complaint failed to allege a materially false or misleading statement or omission, failed to plead facts supporting scienter, and failed to allege loss causation. ECFs 37, 37-1. On March 21, 2022, Lead Plaintiffs filed their opposition to the motion to dismiss and opposed Defendants' request for judicial notice of certain exhibits attached to their motion. ECF 40. Defendants filed their reply briefs on April 15, 2022. ECFs 44-45. On May 26, 2022, Lead Plaintiffs filed a notice of recent authority relating to a decision from the Second Circuit Court of Appeals relevant to Lead Plaintiffs' opposition to Defendants' pending motion to dismiss. ECF 46. Defendants filed a response on June 1, 2022. ECF 49.

The Court denied Defendants' motion to dismiss on June 9, 2022. ECF 51. Defendants then answered the Complaint on August 5, 2022. ECFs 76-77. Defendants expressly denied any and all allegations of fault, liability, wrongdoing, or damages, and denied that Lead Plaintiffs had asserted valid claims.

### 4.    Class Certification and Merits Discovery

On July 15, 2022, the Court, after a conference with counsel, ordered the parties to proceed with class certification discovery and set deadlines for both class certification discovery and briefing of any class certification motion. ECF 62. With respect to merits discovery, the Court authorized written discovery to proceed but prohibited any merits-related depositions.

Discovery into and litigation of class certification issues was heavy. It included: (i) document productions by Lead Plaintiffs and Lead Plaintiffs' investment manager; (ii) responses to written interrogatories by Lead Plaintiffs; (iii) depositions of Lead Plaintiffs and Lead Plaintiffs'

investment manager; and (iv) expert discovery, with Lead Plaintiffs and Defendants submitting a total of eight expert reports from seven experts.  Six of the parties' experts were deposed.

Defendants also produced documents and responded to written interrogatories on merits issues.  In response to discovery requests, the AdaptHealth Defendants produced approximately 6,000 documents, totaling more than 35,000 pages, defendant McGee produced approximately 700 documents, totaling over 3,000 pages, and numerous third parties collectively produced approximately 53,000 documents, totaling more than 427,000 pages.

On November 21, 2022, Lead Plaintiffs filed a motion to compel defendant McGee to produce documents regarding the tax scheme allegations pursuant to Lead Plaintiffs' requests for production.  ECF 85.  On December 7, 2022, the Court granted Lead Plaintiffs' motion and ordered that the documents be produced by December 30, 2022.  ECF 91.

On March 13 and 28, 2023, Lead Plaintiffs filed motions to compel AdaptHealth and certain other Defendants to comply with the Court's scheduling orders and respond to Lead Plaintiffs' interrogatories.  ECFs 103, 111.  After a conference with counsel, the Court denied those motions without prejudice on April 11, 2023, subject to further meet and confers between the parties.  ECFs 126-127.

### 5. Class Certification

On July 28, 2022, Lead Plaintiffs filed their motion for class certification.  ECF 65. Defendants filed a 75-page opposition on March 30, 2023, supported by five expert reports and 98 exhibits totaling over 2,000 pages.  ECF 113.  Lead Plaintiffs filed a 50-page reply brief on May 22, 2023, supported by two expert reports.  ECF 134.  Lead Plaintiffs' motion for class certification was pending at the time parties agreed to engage in private mediation.  On June 7, 2023, the Court stayed the Action and placed it on its Civil Suspense Docket pending the parties' private mediation.  ECF 139.

At that time, the parties engaged nationally recognized neutral mediator Mr. Murphy.  The parties participated in two mediation sessions and extensive settlement discussions between August 2023 and February 2024 after exchanging mediation statements, reply statements, and numerous exhibits addressing the merits of Lead Plaintiffs' claims and Defendants' defenses to those claims.

On February 14, 2024, the parties reached an agreement-in-principle to resolve the Action. Britton Decl., ¶6.  The agreement included, among other things, mutual releases and: (i) a cash payment of $51 million, including a $1 million cash payment from defendant McGee – not funded by insurance or corporate funds; (ii) one million shares of freely-tradeable AdaptHealth common stock; and (iii) Corporate Governance Changes to be adopted by AdaptHealth. *Id.*, ¶¶4, 81.  The Corporate Governance Changes are described in the Britton Decl., ¶84.  The parties continued their negotiations and signed a Stipulation and Agreement of Settlement on February 26, 2024. *Id.*, ¶82.

### 6.    The Court's Preliminary Approval of the Settlement

On February 27, 2024, Lead Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement, together with supporting papers, including the Stipulation and Agreement of Settlement.  ECFs 148-149.  On March 5, 2024, the Court entered an order granting preliminary approval of the Settlement and authorizing notice to the Settlement Class   (ECF 153) (the "Preliminary Approval Order").  As provided therein, objections to the Settlement, or requests to be excluded from the Settlement Class, are due by May 29, 2024, and a Final Approval Hearing is scheduled for June 20, 2024, at 1:30 p.m. *Id.*

### B.    The Notice Program Approved by the Court Has Been Fulfilled

In the Preliminary Approval Order, the Court approved the form and content of the Notice and Summary Notice, and ordered the Claims Administrator, Gilardi & Co. LLC ("Gilardi"), to: (i) send the Notice to potential Settlement Class Members by First-Class Mail by no later than April 4, 2024; and (ii) publish the Summary Notice by no later than April 11, 2024.  ECF 153, ¶¶7-10.

The Court further found that these notice procedures "meet the requirements of [Rule 23], the [PSLRA], and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto." *Id.*, ¶7.

The notice program approved by the Court has since been carried out.  Britton Decl., ¶¶90-92.   On April 4, 2024, Gilardi established the Settlement website at www.AdaptHealthSecuritiesSettlement.com, which includes, among other things, the Stipulation, the Notice, the Proof of Claim and Release, and an online claim submission page. *See* Murray Decl., ¶14.  Gilardi commenced its distribution of the Notice on April 4, 2024. *Id.*, ¶¶5-8.  In total, over 16,400 copies of the Notice were mailed or emailed to potential Settlement Class Members and nominees. *Id.*, ¶11.  On April 11, 2024, Gilardi also published the Summary Notice in *The Wall Street Journal*, and over a national newswire. *Id.*, ¶12.  To date, there have been no objections to any aspect of the Settlement, nor have any Settlement Class Members requested exclusion from the Settlement Class. *Id.*, ¶16; Britton Decl., ¶123.  The notice program "was adequate and the best practicable under the circumstances." *McDermid v. Inovio Pharms. Inc.*, 2023 WL 227355, at \*4 (E.D. Pa. Jan. 18, 2023) (finding identical notice procedures adequately satisfied due process, Rule 23 and the PSLRA).

## III.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT

In their motion for preliminary approval of the Settlement, Lead Plaintiffs requested that the Court certify the Settlement Class for settlement purposes so that notice of the Settlement, the Final Approval Hearing, and the rights of Settlement Class Members with respect thereto, could be issued. *See* ECF 148-1 at 17-22.  In the Preliminary Approval Order, the Court addressed the requirements for settlement class certification as set forth in Rules 23(a) and 23(b)(3).  The Court found that Lead Plaintiffs had met the requirements for certification of the Settlement Class for purposes of settlement.  ECF 153, ¶¶2-3.  The Court preliminarily certified a Settlement Class of "all Persons

who purchased or otherwise acquired AdaptHealth common stock or call options on AdaptHealth common stock or sold put options on AdaptHealth common stock between November 8, 2019 and July 16, 2021, inclusive." *Id.*, ¶2.  In addition, the Court preliminarily certified Lead Plaintiffs as Class Representatives and Lead Counsel as Class Counsel.  *Id.*, ¶4.

Nothing has changed since the Court's entry of the Preliminary Approval Order to alter the propriety of the Court's preliminary certification of the Settlement Class for settlement purposes. Thus, for all of the reasons stated in Lead Plaintiffs' motion for preliminary approval (incorporated herein by reference), Lead Plaintiffs respectfully request that the Court affirm its preliminary certification and finally certify the Settlement Class for purposes of carrying out the Settlement pursuant to Rules 23(a) and 23(b)(3), and appoint Lead Plaintiffs as Class Representatives and Lead Counsel as Class Counsel.

## IV.     THE SETTLEMENT WARRANTS FINAL APPROVAL

In the Third Circuit, there is a "strong presumption in favor of voluntary settlement agreements," which is "especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'"  *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").  *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2024 WL 815503, at *5 (E.D. Pa. Feb. 27, 2024) (same).

Rule 23(e)(2) governs the settlement of class action claims.  It provides that a class action settlement may be approved by the Court upon a finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  To guide that assessment, the rule directs the Court to consider whether:

> (A)     the class representatives and class counsel have adequately represented the class;
>
> (B)     the proposal was negotiated at arm's length;

(C)      the relief provided for the class is adequate, taking into account: (i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)      the proposal treats class members equitably relative to each other.

*Id.* The first two factors focus on "procedural" concerns, whereas the final two focus on the "substantive" terms of the settlement. Fed. R. Civ. P. 23, advisory committee note to 2018 amendments (the "2018 Advisory Note"). These points of inquiry overlap with the nine factors that traditionally guided the fairness analysis, as adopted by the Third Circuit in *Girsh v. Jepson*:

"(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."[3]

521 F.2d at 157 (ellipses omitted); *see also Frederick v. Range Res.-Appalachia, LLC*, 2022 WL 973588, at *14 (W.D. Pa. Mar. 31, 2022) (Rule 23(e)(2) "overlap[s]" with *Girsh*.), *aff'd*, 2023 WL 418058 (3d Cir. Jan. 26, 2023).[4]

In 1999, in *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, the Third Circuit added additional factors for a court to consider, when appropriate. *See* 148 F.3d 283, 323 (3d Cir. 1999). These factors include:

[T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent

---

[3]    Unless otherwise noted, citations are omitted and emphasis is added throughout.

[4]    Rule 23(e) was amended in 2018 to specify the matters which trial courts must consider when evaluating whether a proposed settlement is fair, reasonable, and adequate. As explained in the accompanying 2018 Advisory Note, this amendment was not designed to "displace" any of the multi-factor tests used by courts to review class action settlements, such as *Girsh*, but rather to focus the inquiry. Fed. R. Civ. P. 23, 2018 Advisory Note, subdiv. (e)(2).

4863-6536-0825.v1

of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved – or likely to be achieved – for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable. *Id.*

The *Girsh* and *Prudential* factors "'are a guide and the absence of one or more does not automatically render the settlement unfair.'" *Kanefsky v. Honeywell Int'l Inc.*, 2022 WL 1320827, at *4 (D.N.J. May 3, 2022). Instead, the Court "must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under *Girsh*." *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2020 WL 3166456, at *7 (D.N.J. June 15, 2020).

Finally, the Third Circuit has repeatedly held that a class action settlement is entitled to an initial presumption of fairness if: "'(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *Warfarin*, 391 F.3d at 535; *see also In re NFL Players Concussion Inj. Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) (same).

As described below and in the Britton Declaration, the Settlement is an excellent result, is presumptively fair, and clearly satisfies each element of Rule 23(e)(2) and the *Girsh* and *Prudential* factors. This is especially so in light of the difficulties in proving falsity, scienter, loss causation, and damages.

## V.   THE SETTLEMENT SATISFIES THE REQUIREMENTS OF RULE 23(e)(2)

### A.   Lead Plaintiffs and Lead Counsel Have More than Adequately Represented the Settlement Class

The first factor under Rule 23(e)(2) addresses the adequacy of representation by the class representative(s) and class counsel. Fed. R. Civ. P. 23(e)(2)(A). This overlaps with the third *Girsh*

factor, which covers the stage of proceedings and the amount of discovery completed.  *See Girsh*, 521 F.2d at 157; *Prudential*, 148 F.3d at 323; *see also Warfarin*, 391 F.3d at 535 (similar factor for presumption of fairness).

The Court previously expressed confidence in the abilities of Lead Plaintiffs and Lead Counsel by appointing each to their respective positions.  *See* ECF 12.  The Court's confidence was well-placed as, since then, they have vigorously pursued this litigation.  Among many other undertakings, Lead Counsel: (i) conducted a thorough investigation into the alleged violations of the federal securities laws; (ii) drafted a detailed consolidated complaint that expanded the initial allegations and claims in the case; (iii) successfully opposed Defendants' motion to dismiss; (iv) engaged in extensive discovery, including the review of over 450,000 pages of documents and propounding and responding to document requests, interrogatories, and requests for admission; (v) negotiated discovery disputes, bringing them to the Court when necessary; (vi) defended the depositions of Lead Plaintiffs, cross examined Lead Plaintiffs' investment manager following Defendants' examination; (vii) filed multiple briefs in support of class certification and who retained an expert witness who produced opening and rebuttal expert reports on market efficiency in support of Lead Plaintiffs' motion for class certification; (viii) responded to expert reports from five experts that Defendants filed to support their opposition; (ix) deposed Defendants' experts; prepared opening and reply statements for private mediation; and (x) engaged in protracted settlement negotiations and two mediation sessions led by an experienced mediator.  *See generally* Britton Decl. & ¶¶5, 6, 14-89. At each of these stages, Lead Counsel successfully advanced this case on behalf of the Settlement Class.

Lead Counsel are highly qualified lawyers, well-versed in prosecuting complex class actions under the federal securities laws.  Robbins Geller has successfully prosecuted hundreds of securities class actions on behalf of damaged investors.  *See, e.g.*, *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,

- 11 -

2021 WL 358611, at *6 (D.N.J. Feb. 1, 2021) (finding Robbins Geller skilled and efficient and noting that it "achieved a $1.21 billion settlement – the ninth largest PSLRA class action ever recovered – for the benefit of the class"), *aff'd in part*, *dismissing appeal in part*, 2021 WL 6881210 (3d Cir. Dec. 20, 2021); *McDermid v. Inovio Pharms., Inc.*, 467 F. Supp. 3d 270, 281 (E.D. Pa. 2020) ("Robbins Geller is a preeminent litigation firm with a record of winning complex securities class actions."); *see also* Declaration of Douglas R. Britton Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, Ex. F (Robbins Geller firm resume).  In addition, Bucks County and Delaware County are sophisticated institutional investors that oversee approximately $1.5 billion of investments on behalf of their beneficiaries.  Their support for the Settlement carries substantial weight as well.  *See* Bucks County Decl., ¶¶2-4; Delaware County Decl., ¶¶2-4.

Lead Plaintiffs and Lead Counsel have thus adequately represented the Settlement Class under Rule 23(e)(2)(A) and have secured "'an adequate appreciation of the merits of the case'" by means of substantial discovery and litigation.  *Warfarin*, 391 F.3d at 537.  "[C]ourts in this Circuit traditionally 'attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class.'"  *Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014).

**B.     The Settlement Negotiations Were Conducted at Arm's-Length and Under the Oversight of an Experienced Mediator**

The second factor under Rule 23(e)(2) considers whether the Settlement was negotiated at arm's length.  *See* Rule 23(e)(2)(B).  A class action is considered presumptively fair where, as here, the parties, through capable counsel, informed by meaningful discovery and motion practice, have engaged in arm's-length negotiations.  *See also Warfarin*, 391 F.3d at 535 (citing arm's-length negotiations as a factor in assessing presumption of fairness).

- 12 -

The Settling Parties engaged in extensive arm's-length negotiations, including mediation conducted by an experienced mediator of securities class actions, Mr. Murphy.  The Settling Parties engaged in two mediation sessions – in September 2023 and January 2024.  In advance of the first mediation session, AdaptHealth produced documents in response to specific search terms.  The Settling Parties then exchanged opening and reply mediation statements.  These mediation statements were extensively informed by the facts obtained throughout the discovery process.  The Settling Parties negotiated in good faith, but were unable to reach a resolution at either mediation session, as the Settling Parties' positions remained too far apart.  Britton Decl., ¶¶6, 78-89.  Following each session, Mr. Murphy worked closely with the Settling Parties to achieve a settlement in this matter.  After numerous discussions and continued negotiations following the second mediation session, the Settling Parties ultimately agreed to settle the case.  *Id.*

This record demonstrates that the parties negotiated at arm's length.  *See Copley v. Evolution Well Servs. Operating, LLC*, 2023 WL 1878581, at *4 (W.D. Pa. Feb. 10, 2023) (settlement from "two full-day mediation sessions" with experienced mediator was "arm's length"); *Utah Ret. Sys. v. Healthcare Servs. Grp.*, 2022 WL 118104, at *8 (E.D. Pa. Jan. 12, 2022) (involvement of neutral mediator points to an arm's-length negotiation).  Indeed, participation of "'an independent mediator . . . virtually [e]nsures that the negotiations were conducted at arm's length and without collusion.'"  *Inovio*, 2023 WL 227355, at *5.

When a settlement results from arm's-length negotiations, the assessment by experienced counsel that a settlement is in the best interest of the class is entitled to "'considerable weight.'"  *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *11 (E.D. Pa. Jan. 25, 2016) (courts "'afford[] considerable weight to the views of experienced counsel regarding the merits of the settlement'"); *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 387 (E.D. Pa. 2015) ("'A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations

between experienced, capable counsel after meaningful discovery.'"), *amended*, 2015 WL 12827803 (E.D. Pa. May 8, 2015), *aff'd*, 821 F.3d 410 (3d Cir. 2016). This flows from the principle that "a settlement represents the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither side chooses to risk taking to final resolution." *Fulton-Green v. Accolade, Inc.*, 2019 WL 4677954, at *9 (E.D. Pa. Sept. 24, 2019).

Based on its experience and knowledge of this case, Lead Counsel believes that the Settlement is in the best interests of the Settlement Class. This factor supports approval.

### C. The Settlement Is Adequate Considering the Costs, Risks, and Delays of Trial and Appeal

The third consideration under Rule 23(e)(2), which overlaps with *Girsh* factors 1 and 4-9, is the adequacy of the settlement in light of the costs, risks, and delay of continued litigation. Fed. R. Civ. P. 23(e)(2)(C)(i). Securities cases are "'notably complex, lengthy, and expensive . . . to litigate.'" *Beltran v. SOS Ltd.*, 2023 WL 319895, at *4 (D.N.J. Jan. 3, 2023) (Pascal, M.J.), *report & recommendation adopted*, 2023 WL 316294 (D.N.J. Jan. 19, 2023). This case has already been pending for over two years. Lead Plaintiffs would undoubtedly face substantial additional costs, risks, and delays if litigation continued, including at summary judgment, trial, and appeal. At a minimum, proceeding through these stages of litigation would significantly prolong the time until any Settlement Class Member receives a financial recovery. "The Court weighs the value of an immediate guaranteed settlement against the challenges that remain in proceeding with litigation." *Honeywell*, 2022 WL 1320827, at *5. As explained below, the Settlement is more than adequate in light of these obstacles.

### 1. Risks and Costs of Establishing Liability and Damages

Lead Plaintiffs and Lead Counsel believe that their case is strong but acknowledge that there would be risks involved in further litigation. Defendants have maintained, for example, that the evidence adduced during discovery confirmed that their statements were neither false nor

- 14 -

misleading, because: (i) the statements were accurate; (ii) defendant McGee's involvement in the alleged tax scheme was not related to the statements alleged to be false and misleading; (iii) there was no duty to disclose any uncharged, unadjudicated wrongdoing; (iv) AdaptHealth adequately disclosed the change in methodology to its organic growth metric, which was the subject of extensive questioning by analysts and was understood by the market; and (v) Lead Plaintiffs could not prove that Defendants could not, and did not, reasonably believe that they could report organic growth as they did.  Britton Decl., ¶¶114-120.

Defendants also argued that the evidence did not support a finding that any statement, even a potentially misleading one, was made with the requisite intent to defraud and Defendants had no motive to commit fraud.  *Id.*, ¶116.  Defendants argued that: (i) defendant McGee's alleged misconduct was unrelated to AdaptHealth's business; (ii) there was no allegation that the other defendants knew about defendant McGee's involvement; (iii) there was no allegation that defendant McGee knew that he would be criminally charged in Denmark; (iv) defendant McGee's stock sales were made under innocuous circumstances, including to pay taxes and as he was departing the Company, and thus did not supply a motive to commit fraud; (v) there were no facts showing that Defendants did not believe AdaptHealth's organic growth metrics or possessed information that was not aligned with AdaptHealth's disclosures; and (vi) later disclosures about organic growth showed that the Company tried to make more detailed disclosures.  At the same time, evidence concerning defendant McGee's involvement in the alleged international tax scheme was in Denmark, which added further complications to presenting the case.  *See Beltran*, 2023 WL 319895, at *5 (evidence in China "further complicates [the] chances of success") (Pascal, M.J.).  Lead Plaintiffs would also have to locate and retain one or more expert witnesses concerning the criminal justice system in Denmark to assist the jury with understanding the true nature of Lead Plaintiffs' claims based on the McGee tax scheme.

Further, nearly all of the evidence would need to be reviewed by subject-matter experts given the complex nature of Lead Plaintiffs' claims. As courts recognize, "proving damages in securities fraud cases . . . 'invariably requires expert testimony which may, or may not be, accepted by a jury.'" *Id.* Because Lead Plaintiffs bear the burden of proof, Defendants could win at summary judgment on any of these issues through a well-placed *Daubert* motion. If the case proceeded to trial, these issues would be resolved through an inherently uncertain "battle of the experts." *Viropharma*, 2016 WL 312108, at *12; *see also Inovio*, 2023 WL 227355, at *8 ("Conflicting expert testimony at trial would introduce further uncertainty . . . .").

Defendants also challenged Lead Plaintiffs' theory of loss causation, maintaining that losses on the alleged "corrective disclosure" dates were not caused by any alleged fraud, because nothing in the disclosures revealed to the market that any of AdaptHealth's prior statements were false or misleading. Britton Decl., ¶¶108-113. Rather, Defendants argued that the disclosures revealed information that was already known by the market and, in the context of organic growth as disclosed by Jehoshaphat Research, was incorrect. At trial, expert testimony would have been critical to establish loss causation and damages. Defendants' experts would have marshalled various arguments against loss causation and damages as to each of the disclosure dates at issue; Lead Plaintiffs' experts would have defended their own conclusions on those topics; and each expert's testimony would have relied on complex and, in some cases, highly technical economic arguments. Such a "battle of the experts" would have necessarily involved substantial expenses and risks. *See ViroPharma*, 2016 WL 312108, at *13 (stating that "this issue of causation directly impacts the difficulty in proving damages").

While there are strong responses to Defendants' arguments on liability and damages, they pose undeniable risks. Any one of these arguments, if successful, could have resulted in the claims at issue being severely curtailed or even eliminated. *See Huffman v. Prudential Ins. Co. of Am.*,

- 16 -

2019 WL 1499475, at *4 (E.D. Pa. Apr. 5, 2019) (Courts should "'give credence to the estimation of

the probability of success proffered by class counsel, who are experienced with the underlying case,

and the possible defenses which may be raised to their cause of action.'").  Moreover, any trial

victory for Lead Plaintiffs would inevitably lead to an appeal, which at a minimum would have

resulted in substantial delays before any financial recovery.  *See Honeywell*, 2022 WL 1320827, at

*4 ("The time and expense of a securities class action trial is substantial and would very likely lead

to post-trial motions and subsequent appeals . . . .").  The risks associated with establishing liability

and damages at trial, and preserving any trial victory through appeal, thus weigh in favor of

approving the Settlement.

At a minimum, the Settlement spares the Settlement Class of the substantial costs and delays

associated with further litigation.  *Inovio*, 2023 WL 227355, at *6.  Indeed, it is not uncommon for a

securities fraud case to take many years to proceed from filing through appeal.[5]  This case is no

exception.  Here, it took over two years of litigation and the parties had still not completed the

discovery phase of the litigation.  Based on the course of litigation to date, continued proceedings

would likely be lengthy, procedurally complex, and thus costly.

In short, a potential recovery for the Settlement Class – if any – would occur years from now

after incurring significant costs.  By contrast, the Settlement provides an immediate and substantial

recovery without the risks, expense, and delays of continued litigation.  None of the Corporate

Governance Changes would have occurred without this Settlement.  The risks and costs associated

with establishing liability and damages at trial and appeal thus weigh in favor of approving the

Settlement.  *See Beltran*, 2023 WL 319895, at *5 ("certainty" of settlement is favorable to the

---

[5]     The time required to prosecute a full-length securities claim to fruition itself poses the risk that a change in law could jeopardize even seemingly secure victories under then-existing standards.  *See, e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533 (S.D.N.Y. 2011), *aff'd*, 838 F.3d 223 (2d Cir. 2016) (Supreme Court decision after entry of verdict in plaintiffs' favor reduced a billion-dollar verdict into a $78 million recovery in case brought in 2005).

- 17 -

"gamble" of bringing securities claims to trial); *Whiteley v. Zynebra Pharms., Inc.*, 2021 WL 4206696, at *3 (E.D. Pa. Sept. 16, 2021) ("[A]voidance of unnecessary expenditure of time and resources benefits all parties and weighs in favor of approving the settlement.").

### 2.    The Risks of Maintaining the Class Action Through Trial

Lead Plaintiffs' class certification motion was fully briefed and awaiting decision when the Settlement was reached.  Defendants vigorously opposed the motion (*see* Britton Decl., ¶¶108-113). Had the Court declined to certify the class, the case would likely be over.  Even if the Court granted Lead Plaintiffs' motion, Defendants still could have pressed a Rule 23(f) petition or moved to decertify the class or trim the class period before trial or on appeal, as class certification may be reviewed at any stage of the litigation.  *Beltran*, 2023 WL 319895, at *5.  Therefore, the sixth *Girsh* factor supports approval of the Settlement.

### 3.    The Ability of Defendants to Withstand a Greater Judgment

This *Girsh* factor is neutral.  Although Defendants may be able to withstand a greater judgment, "where the other *Girsh* factors weigh in favor of approval, this factor should not influence the overall conclusions that the settlement is fair, reasonable, and adequate." *Healthcare Servs.*, 2022 WL 118104, at *10.

### 4.    The Settlement Falls Well Within the Range of Reasonableness

"'The last two *Girsh* factors ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial.'"  *Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687, 705 (W.D. Pa. 2015).  In making this "range of reasonableness" assessment, a precise estimate of damages is not necessary.  *See Inovio*, 2023 WL 227355, at *8 ("inability to determine the precise amount of damages . . . does not render the Court unable to conduct this [range of reasonableness] analysis").  "These factors examine 'whether the settlement represents a good value for a weak case or a poor value for a strong case.'"  *Healthcare*

- 18 -

*Servs.*, 2022 WL 118104, at *10 (quoting *Warfarin*, 391 F.3d at 538).  "'"[T]he fact that a proposed settlement may only amount to a fraction of the potential recovery"'" is not dispositive, particularly in securities class actions.  *In re AT&T Corp.*, 455 F.3d 160, 170 (3d Cir. 2006).  Rather, the recovery must be considered relative to "'all the risks considered under *Girsh*.'"  *Id.*

It is not possible to quantify precisely the risks to recovery posed by Defendants' arguments as to falsity, materiality, scienter, loss causation, and damages described above.  Nevertheless, the Settlement represents a substantial percentage of damages that could reasonably be expected to be proved at trial.  Britton Decl., ¶103.  The $51 million cash component of the Settlement, which is approximately 10% of estimated damages surpasses many securities class action settlements in this Circuit.  *See, e.g.*, *Beltran*, 2023 WL 319895, at *6 (6.5% recovery) ("Typical settlement recoveries in securities class action cases range from roughly 1.6 to 14 percent."); *Healthcare Servs.*, 2022 WL 118104, at *8 (6.4% recovery); *Schuler v. Medicines Co.*, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (4% recovery); *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *8 (D.N.J. July 29, 2013) (7% recovery); *In re Hemispherx Biopharma, Inc., Sec. Litig.*, 2011 WL 13380384, at *6 (E.D. Pa. Feb. 14, 2011) (5.2% recovery); *see also AT&T*, 455 F.3d at 170 (affirming approval of settlement that provided a 4% recovery).  In addition, the cash component here is significantly larger than the median securities class action settlement values over the last five years, which range from $11.7 million to $15 million.  *See* Britton Decl., ¶¶124-126; Ex. B at 1 (Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements, 2023 Review and Analysis* (Cornerstone Research 2023)).  The value of the Settlement Shares further distinguishes this Settlement from many other securities class action settlements in this Circuit.

The total monetary value of the Settlement, including the value of the Settlement Shares as of May 14, 2024, exceeds 12% of estimated reasonably recoverable damages, which assumes that Lead Plaintiffs would prevail on all of their arguments regarding the causes of the declines in

AdaptHealth's stock price on the "corrective disclosure" dates that Lead Plaintiffs alleged, among other issues.  Britton Decl., ¶127.  This result exceeds the 4.5% recovery for the median settlement in securities class actions settled in 2023 and the 4.8% recovery for those cases settled between 2014-2022.  *Id.*, ¶126; & Ex. B at 6, fig. 5.  It also exceeds: (i) the 3.5% recovery for the median settlement in securities class actions settled in 2023 for cases in the same damage range ($250m-$499m); (ii) the 4.3% recovery for those cases in that range settled between 2014-2022; and (iii) the 6.6% recovery for the median settlement for cases including both Rule 10b-5 and §11 and/or §12(a)(2) claims between 2014 and 2023.  *Id.*, ¶126; & Ex. B at 6, fig. 5 and 8, fig 6.

Given the complexity of this case and the risks and delay inherent in continued litigation, a minimum $51 million cash recovery with one million AdaptHealth shares of common stock is an outstanding result.[6]  Taking into account that this case has been litigated for more than two years, and the significant amount of the recovery, the Settlement here falls well within the range of reasonableness and should be approved.  *See Girsh*, 521 F.2d at 157.

### D.    The Settlement Satisfies the Remaining Rule 23(e)(2) Factors

The remaining factors of Rule 23(e)(2) require courts to consider: (i) the effectiveness of the proposed method for distributing relief; (ii) the terms of the proposed attorneys' fees, including the timing of payment; (iii) the existence of any other agreements; and (iv) whether the settlement treats class members equitably relative to each other.  *See* Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv); Fed. R. Civ. P. 23(e)(2)(D).  These factors also support approval here.

### 1.    The Proposed Method for Distributing Relief Is Effective

Under Rule 23(e)(2)(C)(ii), the court must "scrutinize the method of claims processing to ensure that it facilitates [the] filing [of] legitimate claims."  Fed. R. Civ. P. 23, 2018 Advisory Note,

---

[6]    Lead Plaintiffs also insisted upon meaningful corporate governance changes which will benefit AdaptHealth and its shareholders going forward.  Britton Decl., ¶84.

subdiv. (e)(2).  Here, the method for processing claims follows well-established and effective procedures.  Settlement Class Members must provide basic personal information and trading records to substantiate their transactions in AdaptHealth Securities.  Requiring such documentation is reasonable because "there is no central repository of the owners of the securities" and it "prevent[s] fraudulent claims."  *Beltran*, 2023 WL 319895, at *7; *see also In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2022 WL 717254, at *5 (E.D. Pa. Mar. 10, 2022) ("*Innocoll I*") (It is "standard" to require the submission of records "proving ownership of the shares" in securities cases.).  In addition, claimants have the opportunity to cure claim deficiencies or request that the Court review any claim denial (Stipulation, ¶¶8.8-8.9).  *See Se. Pa. Trans. Auth. v. Orrstown Fin. Servs., Inc.*, 2023 WL 1454371, at *11 (M.D. Pa. Feb. 1, 2023) (allowing claimants to "cure any deficiencies . . . or request that the Court review a denial" supports approval under Rule 23(e)(2)).

### 2.    The Requested Attorneys' Fees Are Reasonable

As set forth in more detail in the accompanying Memorandum of Law in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses, and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Fee Brief"), Lead Counsel's 25% fee request is reasonable and appropriate.  Further, because the $51 million cash component of the Settlement has already been fully funded – which is the largest component of the Settlement – there is no risk that counsel will be paid but Settlement Class Members will not.  Importantly, the Settlement may not be terminated based on a ruling regarding attorneys' fees.  *See* Stipulation, ¶7.5.  This further supports approval. *See Innocoll I*, 2022 WL 717254, at *5.

### 3.    The Parties Have No Other Agreements Besides an Agreement to Address Requests for Exclusion

As discussed in the motion for preliminary approval, and described in the Notice, Lead Plaintiffs and AdaptHealth have entered into a standard supplemental agreement providing AdaptHealth with the right (but not the obligation) to terminate the Settlement if valid requests for

exclusion from the Settlement Class exceed certain criteria.  As other courts have recognized, "'[t]his type of agreement is standard in securities class action settlements,'" *Orrstown Fin. Servs.*, 2023 WL 1454371, at \*12, and "does not affect the adequacy of the relief provided to the class." *Inovio*, 2023 WL 227355, at \*6.

### 4.   Settlement Class Members Will Be Treated Equitably, and the Reaction of the Settlement Class Supports Final Approval

Rule 23(e)(2)(D) requires the Court to consider whether class members will be treated equitably.  All Settlement Class Members will be treated equitably under the terms of the Stipulation, which provides that each Settlement Class Member who properly submits a valid Proof of Claim Form – including Lead Plaintiffs – will receive a *pro rata* share of the Settlement proceeds based on the terms of the Plan of Allocation.  This treats class members fairly relative to one another.  *See id.* (payments proportional to investment losses treats class members equitably); *Healthcare Servs.*, 2022 WL 118104, at \*9 (apportion[ing] the net settlement fund among class members based on when they purchased and sold . . . ensures that settlement class members' recoveries are based on the relative losses they sustained, and eligible class members will receive a pro rata distribution from the net settlement fund calculated in the same manner").

Further, out of the thousands of potential Settlement Class Members, there have been no objections filed to date.  Britton Decl., ¶123.  "[W]hen . . . objectors are few and the class members many, there is a strong presumption in favor of approving the settlement."  *Healthcare Servs.*, 2022 WL 118104 at \*9.  "The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement . . . ."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001).  Therefore, the second *Girsh* factor, which "'attempts to gauge whether members of the class support the settlement,'" *Inovio*, 2023 WL 227355, at \*7, clearly supports approval of the

- 22 -

Settlement.  *See Beltran*, 2023 WL 319895, at *4 (same).  Lead Plaintiffs will address future objections, if any, in their reply.

       **E.**       **The Settlement Satisfies the Applicable *Prudential* Factors**

The applicable *Prudential* factors also support the Settlement.  Lead Plaintiffs are well-informed of the strengths and weaknesses of the case after an extensive investigation and significant discovery and have made an informed decision about the appropriate settlement value; Settlement Class Members had an opportunity to opt out of the Settlement Class; the method for processing claims is fair and reasonable; and, as explained in the Fee Brief, the requested attorneys' fees are fair and reasonable.  *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2022 WL 16533571, at *7-*8 (E.D. Pa. Oct. 28, 2022) ("*Innocoll II*").

Each factor required for approval is satisfied.  And pursuant to *Warfarin*, the Settlement is entitled to a presumption of fairness.  391 F.3d at 535.  Given the litigation risks involved, and the complexity of the underlying issues, the Settlement is an outstanding recovery that could not have been achieved without the commitment of Lead Plaintiffs and the hard work of Lead Counsel.  It is fair, reasonable, and adequate, and should be granted final approval.

**VI.**      **THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION**

As set forth in the Notice, the Net Settlement Fund will be divided among Settlement Class Members who submit valid Claims pursuant to the Plan of Allocation.  *See* ECF 149-2 (the "Notice").  "'Approval of a plan of allocation . . . is governed by the same standards of review applicable to approval of the settlement as a whole:  the distribution plan must be fair, reasonable and adequate.'"  *Innocoll II*, 2022 WL 16533571, at *8.  A plan of allocation need not be "perfect," it "'need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'"  *Beltran*, 2023 WL 319895, at *9.  "'Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be

reasonable.'"  *Rossini v. PNC Fin. Servs. Grp., Inc.*, 2020 WL 3481458, at *17 (W.D. Pa. June 26, 2020) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011)).

Here, the proposed Plan of Allocation developed by Lead Counsel's loss causation and damages expert – is fair and reasonable.  *See* Britton Decl., ¶¶93-100.  The calculations set forth therein were based on: (i) an event-study analysis that estimated the artificial inflation in the prices of AdaptHealth securities during the Class Period; and (ii) statutory damages provided under the Securities Act.  *Id.*  The Plan of Allocation distributes the Net Settlement Fund on a *pro rata* basis, as determined by the ratio between each valid claim and the sum of all valid claims.  *Id.*  The calculation of each claim will depend upon several factors, including when the securities were purchased or acquired, and whether they were sold or held.  *Id.*  Once each claim is calculated and verified, and the distribution ratio is determined, the Net Settlement Fund (*i.e.*, the Settlement Fund less Notice and Administration Expenses, Taxes and Tax Expenses, and all Court-approved attorney's fees, litigation expenses, and lead plaintiff awards) will be distributed to Authorized Claimants entitled to a distribution of at least $10.00.  *Id.*  Any amount remaining following the initial distribution will be further distributed among Authorized Claimants to the extent economically feasible.  *Id.*  When no longer cost effective, the Plan of Allocation calls for any remaining balance to be contributed to the Investor Protection Trust, a nonprofit organization devoted to independent and unbiased investor education, research, and support of investor protection efforts.  *Id.*

This plan is fair, reasonable, and adequate, and consistent with standard practice in securities cases.  *See Inovio*, 2023 WL 227355, at *9 (approving plan that allocates funds in proportion to each member's losses based on "when each member purchased and sold his . . . stock[]"); *see also, e.g.*, *Beltran*, 2023 WL 319895, at *7 (same); *Honeywell*, 2022 WL 1320827, at *6 (same); *Healthcare Servs.*, 2022 WL 118104, at *11 (same); *Innocoll II*, 2022 WL 16533571, at *8 (same).  No

objections to the Plan of Allocation have been filed by Settlement Class Members.  For all these reasons, the Plan of Allocation should be approved.

## VII.    CONCLUSION

The Settlement here is an excellent one, and the proposed Plan of Allocation equitably distributes the Net Settlement Fund.  For the reasons above and in the accompanying declarations, Lead Plaintiffs respectfully request that the Court grant their motion for final approval of the Settlement and the Plan of Allocation as fair, reasonable, and adequate.

DATED:  May 15, 2024                    Respectfully submitted,

ROBBINS GELLER RUDMAN
    & DOWD LLP
ELLEN GUSIKOFF STEWART (admitted *pro hac vice*)
DOUGLAS R. BRITTON (admitted *pro hac vice*)
KEVIN A. LAVELLE (admitted *pro hac vice*)
JOSEPH J. TULL (admitted *pro hac vice*)


                    s/ DOUGLAS R. BRITTON
                DOUGLAS R. BRITTON

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
dougb@rgrdlaw.com
klavelle@rgrdlaw.com
jtull@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

4863-6536-0825.v1

KESSLER TOPAZ MELTZER
   & CHECK, LLP
ANDREW L. ZIVITZ (PA #76554)
HELEN J. BASS (PA # 330646)
280 King of Prussia Road
Radnor, PA  19087
Telephone:  610/667-7706
610/667-7056 (fax)
azivitz@ktmc.com
hbass@ktmc.com

Local Counsel for Lead Plaintiffs

4863-6536-0825.v1