UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM and BUCKS COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiffs,<br><br>   vs.<br><br>ADAPTHEALTH CORP. f/k/a DFB HEALTHCARE ACQUISITIONS CORP., LUKE MCGEE, STEPHEN P. GRIGGS, JASON CLEMENS, FRANK J. MULLEN, RICHARD BARASCH, JOSHUA PARNES, ALAN QUASHA, TERENCE CONNORS, DR. SUSAN WEAVER, DALE WOLF, BRADLEY COPPENS, and DAVID S. WILLIAMS III,<br><br>                Defendants. | Civ. Action No. 2:21-cv-03382-HB<br><br><u>CLASS ACTION</u><br><br>MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES, AND AWARDS TO LEAD PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4)<br><br><br>ELECTRONICALLY FILED |

4880-0647-3145.v1

**TABLE OF CONTENTS**

                                                                                                    **Page**

I.      OVERVIEW ....................................................................................................................1

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY ......................................3

III.    THE REQUEST FOR ATTORNEYS' FEES AND EXPENSES SHOULD BE
        APPROVED ...................................................................................................................4

        A.      Lead Plaintiffs' Counsel Are Entitled to a Fee from the Common Fund ................5

        B.      The Court Should Award Attorneys' Fees Using the Percentage Approach ...........6

        C.      The Requested Fee Is Presumptively Reasonable Because It Has Been
                Approved by the Court-Appointed Lead Plaintiffs....................................................7

        D.      The Requested Fee Is Fair and Reasonable Under the *Gunter* Factors ...................7

                1.      The Size of the Common Fund Created and the Number of Persons
                        Benefited by the Settlement ..........................................................................8

                2.      Reaction of Settlement Class Members to the Fee Request ........................9

                3.      The Skill and Efficiency of Counsel .............................................................9

                4.      The Complexity and Duration of the Litigation .......................................11

                5.      The Risk of Non-Payment ..........................................................................12

                6.      The Significant Time Devoted to This Case ..............................................14

                7.      The Range of Fees Typically Awarded ......................................................15

        E.      The Requested Fee Is Reasonable Under a Lodestar Cross-Check .......................16

        F.      Reasonably Incurred Litigation Expenses Should Be Awarded ...........................18

        G.      Lead Plaintiffs Are Entitled to Awards Pursuant to 15 U.S.C. §78u-4(a)(4) ........19

IV.     CONCLUSION..............................................................................................................21

4880-0647-3145.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Abrams v. Lightolier, Inc.*,
  50 F.3d 1204 (3d Cir. 1995) ............................................................................................18

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
  77 F. 4th 74 (2d Cir. 2023) .............................................................................................14

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985) ..........................................................................................................5

*Beltran v. SOS Ltd.*,
  2023 WL 319895 (E.D. Pa. Jan. 3, 2023),
  *report & recommendation adopted*,
  2023 WL 316294 (D.N.J. Jan. 19, 2023) ........................................................................16

*Bodnar v. Bank of Am., N.A.*,
  No. 14-3224, ECF 90 (E.D. Pa. Aug. 4, 2016) ...............................................................17

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ........................................................................................................5, 6

*Dartell v. Tibet Pharms., Inc.*,
  2017 WL 2815073 (D.N.J. June 29, 2017) ...............................................................6, 8, 11

*Fanning v. Acromed Corp.*,
  2000 WL 1622741 (E.D. Pa. Oct. 23, 2000) .....................................................................6

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ..............................................................................................16

*Grier v. Chase Manhattan Auto. Fin. Co.*,
  2000 WL 175126 (E.D. Pa. Feb. 16, 2000) .......................................................................6

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000) ..................................................................................... *passim*

*Hall v. Accolade, Inc.*,
  2020 WL 1477688 (E.D. Pa. Mar. 25, 2020) ....................................................................6

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ...........................................................................................................8

*High St. Rehab., LLC v. Am. Specialty Health Inc.*,
  2019 WL 4140784 (E.D. Pa. Aug. 29, 2019) ................................................................9, 13

4880-0647-3145.v1

**Page**

*Howard v. Arconic Inc.*,
No. 2:17-cv-01057-MRH, ECF 253
(W.D. Pa. Aug. 8, 2023) ..................................................................................15, 18

*In re Aetna Sec. Litig.*,
2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ...................................................................18

*In re Alstom SA Sec. Litig.*,
741 F. Supp. 2d 469 (S.D.N.Y. 2010)......................................................................14

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002)..................................................................................18

*In re AT&T Corp.*,
455 F.3d 160 (3d Cir. 2006)........................................................................6, 16, 19

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)......................................................................................9

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005).....................................................................................6

*In re CIGNA Corp. Sec. Litig.*,
No. 02-8088, ECF 288
(E.D. Pa. July 13, 2007)..........................................................................................21

*In re Computron Software, Inc.*,
6 F. Supp. 2d 313 (D.N.J. 1998) .............................................................................10

*In re DaimlerChrysler AG Sec. Litig.*,
2004 WL 7351531 (D. Del. Jan. 28, 2004)..............................................................18

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
2020 WL 256132 (N.D. Ga. Mar. 17, 2020),
*aff'd in part, rev'd in part*, 999 F. 3d 1247 (11th Cir. 2021)..................................18

*In re Gen Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995).......................................................................................6

*In re Ikon Office Sols., Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)....................................................................... *passim*

*In re Ins. Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009)......................................................................................4

4880-0647-3145.v1

**Page**

*In re Lucent Techs., Inc. Sec. Litig.*,
    327 F. Supp. 2d 426 (D.N.J. 2004) ........................................................................7, 11

*In re Lucent Techs., Inc. Sec. Litig.*,
    No. 2:00-cv-621, ECF 236
    (D.N.J. July 23, 2004) ................................................................................................19

*In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*,
    2016 WL 11575090 (D.N.J. June 28, 2016) ..............................................................19

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
    2010 WL 547613 (D.N.J. Feb. 9, 2010) .....................................................................16

*In re Novo Nordisk*,
    No. 3:17-cv-00209-ZNQ-LHG, ECF 361
    (D.N.J. July 13, 2022) ................................................................................................16

*In re Oracle Corp. Sec. Litig.*,
    2009 WL 1709050 (N.D. Cal. June 16, 2009),
    *aff'd*, 627 F.3d 376 (9th Cir. 2010) ..........................................................................14

*In re Par Pharm. Sec. Litig.*,
    2013 WL 3930091 (D.N.J. July 29, 2013).................................................................21

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005).......................................................................................17

*In re S.S. Body Armor I, Inc. v. Carter Ledyard & Milburn LLP*,
    927 F.3d 763 (3d Cir. 2019)........................................................................................17

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
    2012 WL 1964451 (D.N.J. May 31, 2012) ...........................................................13, 19

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
    2013 WL 5505744 (D.N.J. Oct. 1, 2013)...............................................................20, 21

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
    2024 WL 815503 (E.D. Pa. Feb. 27, 2024) ...............................................................15

*In re Tesla, Inc. Sec. Litig.*,
    2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) ..............................................................13

*In re Tesla, Inc. Sec. Litig.*,
    No. 3:18-cv-04865-EMC, ECF 671
    (N.D. Cal. Feb. 3, 2023)..............................................................................................13

4880-0647-3145.v1

**Page**

*In re Veritas Software Corp. Sec. Litig.*,
    396 F. App'x 815 (3d Cir. 2010) ........................................................................17

*In re Viropharma Inc. Sec. Litig.*,
    2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ......................................... *passim*

*J.I. Case Co. v. Borak*,
    377 U.S. 426 432 (1964) .................................................................................5

*Kanefsky v. Honeywell Int'l Inc.*,
    2022 WL 1320827 (D.N.J. May 3, 2022) ...............................................13, 15, 21

*Li v. Aeterna Zentaris Inc.*,
    2021 WL 2220565 (D.N.J. June 1, 2021) ...........................................................21

*McDermid v. Inovio Pharms., Inc.*,
    2023 WL 227355 (E.D. Pa. Jan. 18, 2023) ........................................... *passim*

*Mo. v. Jenkins by Agyei*,
    491 U.S. 274 (1989).........................................................................................18

*Moore v. GMAC Mortg.*,
    2014 WL 12538188 (E.D. Pa. Sept. 19, 2014) .........................................................16

*Morrison v. Nat'l Austl. Bank Ltd.*,
    561 U.S. 247 (2010)........................................................................................14

*P. Van Hove BVBA v. Universal Travel Grp. Inc.*,
    2017 WL 2734714 (D.N.J. June 26, 2017) .............................................................6

*Pelletier v. Endo Int'l PLC*,
    No. 2:17-cv-05114, ECF 417
    (E.D. Pa. Apr. 8, 2022) ...................................................................................16

*Schuler v. Meds. Co.*,
    2016 WL 3457218 (D.N.J. June 24, 2016) ...........................................5, 8, 17, 18

*Stevens v. SEI Invs. Co.*,
    2020 WL 996418 (E.D. Pa. Feb. 28, 2020) .........................................................17

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)..........................................................................................5

*Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*,
    2022 WL 118104 (E.D. Pa. Jan. 12, 2022) ...............................................7, 12, 21

4880-0647-3145.v1

**Page**

*Whiteley v. Zynerba Pharms., Inc.*,
 2021 WL 4206696 (E.D. Pa. Sept. 16, 2021) ....................................................................15, 17

*Yedlowski v. Roka Bioscience, Inc.*,
 2016 WL 6661336 (D.N.J. Nov. 10, 2016) .................................................................8, 11, 19

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
 §78u-4(a)(4) ....................................................................................................1, 4, 20, 22
 §78u-4(a)(6) .........................................................................................................................4

Federal Rules of Civil Procedure
 Rule 23(h) .............................................................................................................................4

**SECONDARY AUTHORITIES**

H.R. Conf. Rep. No. 104-369 (1995),
 *reprinted in* 1995 U.S.C.C.A.N. 730 (1995)........................................................................20

4880-0647-3145.v1

Lead Counsel,[1] on behalf of all Lead Plaintiffs' Counsel, respectfully submits this memorandum of law in support of its motion for attorneys' fees and litigation expenses, and awards to Lead Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4) for their work on behalf of the Settlement Class.

## I.    OVERVIEW

This Settlement, which consists of $51 million in cash, one million shares of freely-tradeable AdaptHealth common shares, and corporate governance reforms, represents an exceptional recovery for the Settlement Class.  The Settlement followed more than two years of lengthy and hard-fought litigation and resulted from arm's-length mediation overseen by David M. Murphy of Phillips ADR Enterprises, an experienced mediator.  *See* Declaration of Douglas R. Britton in Support of Motions for: (I) Final Approval of Settlement and Approval of Plan of Allocation; and (II) Attorneys' Fees and Litigation Expenses, and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Britton Declaration" or "Britton Decl."), ¶¶4, 6, 78-89, submitted herewith.[2]

Lead Counsel's request for an award of attorneys' fees and litigation expenses, and Lead Plaintiffs' requests for awards pursuant to 15 U.S.C. §78u-4(a)(4), are reasonable and well within the range approved in similar matters, and should be approved.  Lead Plaintiffs' Counsel advanced costs and devoted substantial time on a contingent basis to this complex matter, despite not knowing how long the litigation would last or whether there would ultimately be any recovery.  At each stage of the litigation, Lead Counsel faced off against highly sophisticated defense counsel.  Since this suit was filed over two years ago, Lead Counsel successfully opposed Defendants' motion to dismiss Lead Plaintiffs' claims, which motion the Court denied in its entirety; briefed class certification;

---

[1]    Unless otherwise stated or defined, all capitalized terms used herein have the meanings provided in the Stipulation and Agreement of Settlement (the "Stipulation"), dated February 26, 2024 (ECF 149).  All citations are omitted and emphasis is added unless otherwise indicated.

[2]    All declarations cited herein refer to the declarations attached to the Britton Declaration.

4880-0647-3145.v1

undertook fact and expert discovery, including written and documentary discovery; and litigated a number of discovery disputes. Britton Decl., ¶¶14-77. Discovery in this case was extensive: although it was incomplete at the time of settlement, to date Defendants and third parties produced nearly 500,000 pages of documents, nine witnesses were deposed, written discovery was exchanged and responded to, and detailed expert reports were exchanged and depositions taken in connection with Lead Plaintiffs' class certification motion. *Id.* Lead Counsel also engaged in two rounds of mediation and negotiations overseen by Mr. Murphy. *Id.*, ¶¶78-89. All of this work resulted in the superb result presented here for final approval and supports Lead Counsel's fee and expense request.

Lead Counsel firmly believes that the Settlement is the result of its strenuous, diligent, and creative efforts, as well as its well-earned reputation as a firm whose attorneys are unwavering in their dedication to the interests of the class and willing to zealously prosecute a meritorious case through trial and subsequent appeals. Here, in a case asserting claims based on complex legal and factual issues that were opposed by highly skilled and experienced defense counsel, Lead Counsel succeeded in securing an outstanding result for the Settlement Class.

Lead Plaintiffs' Counsel dedicated a total of more than 8,500 hours of attorney and other professional staff time to achieve this favorable resolution for Settlement Class Members. Britton Decl., ¶138. In class actions like this one, which are prosecuted on a contingent-fee basis, courts often award fees representing a "multiplier" of counsel's lodestar (often one to four times the amount of their lodestar) to compensate counsel for taking the risks of non-recovery and other factors. Here, Lead Plaintiffs' Counsel's requested fee is a modest lodestar multiplier of approximately 2.56. *Id.*, ¶10.[3] As detailed herein, this multiplier falls within the range approved by courts in this Circuit.

---

[3]    AdaptHealth common stock closed at $9.83 per share on May 14, 2024. Therefore, Lead Counsel has valued the Settlement Shares portion of the fee at $2,457,500 for purposes of this calculation.

4880-0647-3145.v1

Further, the requested fees have been approved by the Court-appointed Lead Plaintiffs. *See* Declaration on Behalf of Delaware County Employees Retirement System in Support of Motion for Final Approval of Settlement, Plan of Allocation, Award of Attorneys' Fees and Expenses, and Award to Lead Plaintiff ("Delaware County Decl."), ¶5; Declaration on Behalf of Bucks County Employees Retirement System in Support of Motion for Final Approval of Settlement, Plan of Allocation, Award of Attorneys' Fees and Expenses, and Award to Lead Plaintiff ("Bucks County Decl."), ¶5. Lead Plaintiffs evaluated the request for fees and expenses and have determined that the requested fees are warranted based on counsel's diligent and aggressive prosecution of the Action. *Id.*; Delaware County Decl., ¶5. As a result, the fee request is entitled to a "presumption of reasonableness." *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *15-*16 (E.D. Pa. Jan. 25, 2016) ("Where the Lead Plaintiff approves the Lead Plaintiff's counsel's request[ed] fee award – as Lead Plaintiff does here – the Court should afford the fee requested a presumption of reasonableness.").

For all the reasons set forth herein, in the Britton Declaration, and in the Memorandum of Law in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Brief"), Lead Counsel respectfully submits that the requested attorneys' fees and expenses are fair and reasonable under the applicable legal standards and should be awarded by the Court. Likewise, the awards sought by Lead Plaintiffs are fully justified given their substantial efforts on behalf of the Settlement Class.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

To avoid repetition, Lead Counsel respectfully refers the Court to the accompanying Settlement Brief and the Britton Declaration for detailed discussions of the factual background and procedural history of the litigation, the extensive efforts undertaken by Lead Plaintiffs' Counsel and

- 3 -

4880-0647-3145.v1

Lead Plaintiffs during the course of the litigation, the risks of the litigation, and the negotiations leading to the Settlement. *See generally* Britton Declaration.

In summary, however, in the more than two years that this case was actively litigated, the parties briefed pleading motions and Lead Plaintiffs' motion for class certification; conducted extensive fact and expert discovery; retained experts and exchanged discovery and reports; and engaged in arm's-length settlement negotiations over the course of nearly a year, overseen by an eminently qualified mediator. *Id.*

## III.    THE REQUEST FOR ATTORNEYS' FEES AND EXPENSES SHOULD BE APPROVED

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Private Securities Litigation Reform Act of 1995 (the "PSLRA") provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6). The ultimate determination of the proper amount of attorneys' fees rests within the sound discretion of the court based on the facts of the case. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 280 (3d Cir. 2009).

Here, Lead Counsel requests attorneys' fees of 25% of the Settlement Fund plus litigation costs, charges, and expenses. Per the Stipulation, Lead Counsel will allocate the attorneys' fees among Lead Plaintiffs' Counsel in a manner that Lead Counsel in good faith believes reflects the contributions of such counsel to the prosecution and resolution of the litigation. Stipulation, ¶7.2. Also, Lead Plaintiffs Bucks County and Delaware County seek awards of $3,528.00 and $9,500.00, respectively, in connection with their representation of the Settlement Class pursuant to 15 U.S.C. §78u-4(a)(4).

- 4 -

These requests are fair, reasonable, and well within the range of fees, expenses, and PSLRA awards typically granted in similar matters. The Settlement is an exceptional result for the Settlement Class in the face of significant risks. This case involved substantial outlays of costs and attorney and staff time, with no guarantee of any ultimate recovery. Further, Lead Plaintiffs' Counsel brought substantial experience to their work on this case, and skillfully overcame defense counsel's determined opposition. For these reasons, and as detailed below, Lead Counsel respectfully requests that these attorneys' fees, expenses, and class representative awards be approved.

### A. Lead Plaintiffs' Counsel Are Entitled to a Fee from the Common Fund

It is well established that an attorney "who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also, e.g.*, *Viropharma*, 2016 WL 312108, at *15 (same). Courts have recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund ensure that "'competent counsel continue to be willing to undertake risky, complex, and novel litigation.'" *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000); *Schuler v. Meds. Co.*, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016). The Supreme Court has emphasized that private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426 432 (1964)); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007).

Courts in this Circuit have consistently adhered to these teachings. *See, e.g.*, *Viropharma*, 2016 WL 312108, at *15 ("'The common fund doctrine provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a

- 5 -

claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'")

(quoting *In re Gen Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820

n.39 (3d Cir. 1995)); *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000)

("[T]here is no doubt that attorneys may properly be given a portion of the settlement fund in

recognition of the benefit they have bestowed on class members.").

> **B.      The Court Should Award Attorneys' Fees Using the Percentage Approach**

The Supreme Court has recognized that it is appropriate to award counsel a reasonable

percentage of a common fund as a fee. *See Boeing*, 444 U.S. at 478-79. Further, the Third Circuit

has noted that "the PSLRA has made percentage-of-recovery the standard for determining whether

attorneys' fees are reasonable." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir.

2005). This is because the percentage method aligns counsel's interests with those of the class.

Courts in this Circuit recognize that the percentage-of-recovery method is preferred in

common fund cases because it rewards counsel for success, penalizes counsel for failure, and

ensures that "'competent counsel continue to be willing to undertake risky, complex, and novel

litigation.'" *Gunter*, 223 F.3d at 198. *See also McDermid v. Inovio Pharms., Inc.*, 2023 WL

227355, at *11 (E.D. Pa. Jan. 18, 2023) (same); *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006)

("In common fund cases such as this one, the percentage-of-recovery method is generally

favored . . . ."); *see also Dartell v. Tibet Pharms., Inc.*, 2017 WL 2815073, at *8 (D.N.J. June 29,

2017) ("The percentage-of-recovery method is preferred in common fund cases because it 'rewards

counsel for success and penalizes it for failure.'"); *P. Van Hove BVBA v. Universal Travel Grp. Inc.*,

2017 WL 2734714, at *10 (D.N.J. June 26, 2017) (same); *Hall v. Accolade, Inc.*, 2020 WL 1477688,

at *10 (E.D. Pa. Mar. 25, 2020); *Fanning v. Acromed Corp.*, 2000 WL 1622741, at *5 (E.D. Pa. Oct.

23, 2000); *Grier v. Chase Manhattan Auto. Fin. Co.*, 2000 WL 175126, at *7 (E.D. Pa. Feb. 16,

2000).

4880-0647-3145.v1

### C.    The Requested Fee Is Presumptively Reasonable Because It Has Been Approved by the Court-Appointed Lead Plaintiffs

Lead Plaintiffs, each sophisticated institutional investors that took an active role in the litigation, support approval of the requested fee.  Lead Plaintiffs' endorsement of the fee request supports its approval.  *See, e.g.*, *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("Significantly, the Lead Plaintiffs, both of whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request.").  Indeed, while approval of the fee is left to the sound discretion of the Court, the fact the requested award has the support of Lead Plaintiffs affords it a "presumption of reasonableness." *See Viropharma*, 2016 WL 312108, at *15; *Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*, 2022 WL 118104, at *11 (E.D. Pa. Jan. 12, 2022) ("Given that Lead Plaintiff, a sophisticated entity, reviewed and approved the fee, this presumption applies.").

### D.    The Requested Fee Is Fair and Reasonable Under the *Gunter* Factors

Under Third Circuit law, district courts have considerable discretion on setting an appropriate percentage-based fee award in traditional common fund cases. *See, e.g.*, *Gunter*, 223 F.3d at 195 ("We give [a] great deal of deference to a district court's decision to set fees.").

Nonetheless, in exercising that broad discretion, the Third Circuit has also noted that a district court should consider, "among other things," the following factors in determining a fee award:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

4880-0647-3145.v1

*Gunter*, 223 F.3d at 195 n.1.  These factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest."  *Id.*; *Schuler*, 2016 WL 3457218, at *9.  Here, each factor supports the requested 25% fee award.

### 1.    The Size of the Common Fund Created and the Number of Persons Benefited by the Settlement

In awarding fees, the "most critical factor is the degree of success obtained."  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Viropharma*, 2016 WL 312108, at *16 (same).  To assess this factor, courts "'consider[] the fee request in comparison to the size of the fund created and the number of class members to be benefitted.'"  *Dartell*, 2017 WL 2815073, at *9 (quoting *Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at *20 (D.N.J. Nov. 10, 2016)).

Here, the Settlement is an outstanding result that provides an immediate cash recovery to a large class of investors.  There were substantial risks to proceeding and proving liability and damages.  Britton Decl., ¶¶114-120; Settlement Brief, §V.C.1.  If this litigation were to continue absent the Settlement, insurance proceeds would continue to be depleted by defense costs, decreasing the likelihood of obtaining a comparable recovery in the future.  In light of these and other factors, after multiple rounds of discussions and negotiations, the Settling Parties reached a settlement consisting of $51 million in cash, including a $1 million contribution from defendant McGee, plus one million shares of AdaptHealth common stock and important corporate governance improvements.  As discussed in the Settlement Brief (§V.C.4.), the cash and stock portion of the Settlement is several times the median values of securities class action settlements over the last ten years.

Additionally, the "number of class members to be benefitted" by the Settlement is undoubtedly large, since the Settlement Class includes all Persons who purchased or otherwise acquired AdaptHealth common stock or call options on AdaptHealth common stock or sold put options on AdaptHealth common stock during the period between November 8, 2019 and July 16,

- 8 -

2021, inclusive (excluding those individuals and entities who are excluded by definition or who request exclusion from the Settlement Class).  Likely thousands of investors who bought or acquired AdaptHealth common stock or call options on AdaptHealth common stock or sold put options on AdaptHealth common stock during that period will benefit from the Settlement.  *See* Settlement Brief, §II.B. (over 16,400 copies of the Notice sent to potential Settlement Class Members and nominees).  For these reasons, the first *Gunter* factor clearly weighs in favor of approving the negotiated fee.

### 2.    Reaction of Settlement Class Members to the Fee Request

Over 16,400 copies of the Notice of this Settlement, including the fee request, has been provided to potential Settlement Class Members and nominees.  *See* Declaration of Ross D. Murray, ¶11.  To date, ***no*** objections to the fee request have been submitted.  Britton Decl., ¶123.  Thus, the reaction of the Settlement Class weighs in favor of approval of the requested fee*.  See In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (stating that "[t]he vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement"); *see also Inovio*, 2023 WL 227355, at *12 (fact that there were no objections to fee request "favors approval"); *High St. Rehab., LLC v. Am. Specialty Health Inc.*, 2019 WL 4140784, at *4 (E.D. Pa. Aug. 29, 2019) ("A low number of objectors or opt-outs is persuasive evidence of the proposed settlement's fairness and adequacy.").

### 3.    The Skill and Efficiency of Counsel

The third *Gunter* factor – the skill and efficiency of the attorneys involved – is measured by the "'quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *Viropharma*, 2016 WL 312108, at *16 (quoting *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998)).

- 9 -

Here, each of these considerations demonstrates the skill and efficiency of Lead Counsel and supports the requested fee.

Among other things, Lead Counsel: (i) investigated Defendants' conduct; (ii) drafted a detailed Consolidated Complaint; (iii) successfully opposed Defendants' motion to dismiss, which the Court denied in its entirety; (iv) obtained hundreds of thousands of pages of documents from Defendants and third parties; (v) litigated discovery disputes; (vi) propounded and responded to written discovery; (vii) moved for class certification; (viii) served expert reports on topics relevant to class certification; and (ix) defended their experts' depositions and deposed Defendants' experts. Britton Decl., ¶¶14-77. Finally, Lead Counsel engaged in contentious, arm's-length settlement negotiations with an experienced mediator over the course of many months, including two separate in-person mediation sessions. *Id.*, ¶¶78-89.

By any measure, Lead Counsel's efforts have resulted in a highly favorable outcome for the benefit of the Settlement Class. The substantial and certain recovery obtained is the direct result of the significant efforts of highly skilled and specialized attorneys who possess substantial experience in prosecuting complex securities class actions. Lead Counsel's well-earned reputation as a firm whose attorneys will zealously litigate a meritorious case through the trial and appellate stages, as well as their demonstrated ability to vigorously develop the evidence in this Action, enabled them to negotiate the outstanding Settlement for the benefit of the Settlement Class. *See, e.g.*, *Lawrence E. Jaffe Pension Plan v. Household Int'l, et al.*, No. 1:02-cv-05893 (N.D. Ill.) (Robbins Geller Rudman & Dowd LLP ("Robbins Geller") obtained $1.575 billion settlement after 14 years of litigation and prevailing at trial); *Hsing Ching Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865 (C.D. Cal.) (Robbins Geller securing 2019 jury verdict in securities fraud class action). "Additionally, Robbins, Geller, Rudman & Dowd LLP's skill and experience in securities class actions has been well noted (ECF 149-3) and favors approval of the requested award." *Inovio*, 2023 WL 227355, at *12.

- 10 -

Defendants undoubtedly considered this fact when they decided to forego further legal challenges and agreed to settle this case for $51 million in cash (with a $1 million contribution from defendant McGee), one million shares of AdaptHealth common stock (valued at $9.83 million as of May 14, 2024), and corporate governance reforms at AdaptHealth.  Ultimately, this outstanding result is the best indicator of the skill and expertise that Lead Counsel brought to this matter.  *See Lucent*, 327 F. Supp. 2d at 436 ("Indeed, 'the results obtained' for a class evidence the skill and quality of counsel.").

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by Lead Plaintiffs' Counsel.  *See, e.g.*, *Ikon*, 194 F.R.D. at 194; *Dartell*, 2017 WL 2815073 at *9 ("'The quality and vigor of opposing counsel' is relevant when evaluating the quality of services rendered by Lead Counsel.") (quoting *Yedlowski*, 2016 WL 6661336, at *21). Defendants were represented by attorneys from Willkie Farr & Gallagher LLP, Saxton & Stump, Kramer Levin Naftalis & Frankel LLP, and Griesing Mazzeo Law, LLC, prominent law firms with widely recognized experience and skill.  The ability of Lead Counsel to obtain such a favorable settlement for the Settlement Class in the face of such formidable opposition further confirms the superior quality of the representation.

### 4.     The Complexity and Duration of the Litigation

As detailed in the Britton Declaration and the Settlement Brief, this litigation has spanned more than two years and involved: (i) significant document discovery; (ii) full briefing on Defendants' motion to dismiss; (iii) discovery and extensive briefing regarding Lead Plaintiffs' motion for class certification; and (iv) detailed expert reports and depositions at the class certification stage.  *See, e.g.*, Britton Decl., ¶¶17-77.

Each of these stages of litigation presented obstacles that Lead Counsel skillfully overcame. In order to secure this recovery, Lead Counsel analyzed a large quantity of internal documents; and

4880-0647-3145.v1

used the fact and expert discovery record to support Lead Plaintiffs' claims that Defendants' alleged statements were materially false and misleading. Further, because this case involves multiple corrective disclosures, Lead Counsel had to establish that each such disclosure in fact revealed corrective information to the market, and marshalled expert opinion that the stock price declines on the relevant dates were not caused by other market-wide, industry-specific, or AdaptHealth-specific factors. Lead Plaintiffs' and Defendants' experts also differed as to the proper measure of damages as an economic matter—Defendants maintained (supported by expert opinion) that even if liability were established, Lead Plaintiffs' allegations did not give rise to any cognizable damages.

These and multiple other complex issues arose in the course of this Action or were expected to arise if litigation continued. In light of the complexity and duration of this case, this factor favors approval of the requested attorneys' fees. *See Healthcare Servs.*, 2022 WL 118104, at *12 ("Regarding the fourth [*Gunter*] factor, securities litigation is inherently complex, expensive, and lengthy, usually requiring expert testimony on variety of issues. Without a settlement, a significant amount of time and resources would be necessary to bring the case to a close."). *See also Inovio*, 2023 WL 227355, at *12 ("With efforts spanning almost three years, Counsel's requested fees [of 27.5%] are justified.").

### 5.     The Risk of Non-Payment

Lead Plaintiffs' Counsel prosecuted this case on a contingency fee basis. Thus, without a settlement or a trial victory, they would go unpaid. This created an incentive to litigate the case aggressively and seek the best recovery possible. Unlike defendants, who are paid on an hourly rate and paid for their expenses on a regular basis, Lead Plaintiffs' Counsel have not been compensated for any time or expense since this case began in 2021. Since that time, Lead Plaintiffs' Counsel have expended 8,556.50 hours prosecuting this Action and incurred $669,883.07 in litigation costs, charges, and expenses. "'Courts routinely recognize that the risk created by undertaking an action

- 12 -

on a contingency fee basis militates in favor of approval.'" *High St. Rehab.*, 2019 WL 4140784, at *13; *see also In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012) ("*Schering-Plough I*") (approving 33.3% fee; noting that "the risk created by undertaking an action on a contingency fee basis militates in favor of approval").

Even though Lead Plaintiffs' claims survived the pleading stage, Lead Plaintiffs still faced hurdles in prevailing on their pending class certification motion and on Defendants' summary judgment motion, which they would undoubtedly file at the end of discovery, and later, at trial. As set forth in more detail in the Settlement Brief and the Britton Declaration, Defendants argued that discovery would confirm that they did not make any materially false or misleading statement or omission, with scienter or otherwise, and that there is no evidence to support loss causation or damages. Britton Decl., ¶¶108-113, 130-132; Settlement Brief, §V.C.1; *see also, e.g.*, *In re Tesla, Inc. Sec. Litig.*, 2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) and *In re Tesla, Inc. Sec. Litig.*, No. 3:18-cv-04865-EMC, ECF 671 (N.D. Cal. Feb. 3, 2023) (jury verdict in favor of securities fraud defendants where court had previously granted summary judgment in favor of plaintiffs on certain elements). In a "battle of the experts," the Court or jury could side with Defendants' experts and find no damages or only a fraction of the damages Lead Plaintiffs claimed. *Kanefsky v. Honeywell Int'l Inc.*, 2022 WL 1320827, at *10 (D.N.J. May 3, 2022) (noting the various risks of nonpayment supporting the requested fee).

The risk of no recovery for the class and counsel in complex cases of this type is very real. There are scores of hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, extensive professional efforts of members of the plaintiffs' bar produced no fee for counsel. *See, e.g.*, *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F. 4th 74 (2d Cir. 2023) (class decertified following more than 12 years of litigation and appellate and

- 13 -

Supreme Court review, after plaintiffs' counsel incurred nearly $7 million in expenses, and worked over 115,000 hours); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 16, 2009) (court granted summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million), *aff'd*, 627 F.3d 376 (9th Cir. 2010). Even the most promising cases can be eviscerated by a sudden change in the law after years of litigation. *See, e.g.*, *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (After completing significant foreign discovery, 95% of plaintiffs' damages were eliminated by the Supreme Court's reversal of some 40 years of unbroken circuit court precedents in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010).).

Because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result and that such a result would be realized only after considerable effort. This factor strongly favors approval of the requested fee.

### 6.    The Significant Time Devoted to This Case

The significant time that counsel devoted to this case favors approval of the requested attorneys' fees. Counsel collectively invested more than 8,500 hours of attorney and support staff time over the course of two-plus years and incurred $669,883.07 in expenses prosecuting this case for the benefit of the Settlement Class, without promise of payment of attorneys' fees or expenses if Lead Plaintiffs did not prevail on their claims. *See* Britton Decl., ¶¶133-149; *see also* Declaration of Douglas R. Britton Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Decl."), ¶¶4-5; Declaration of Andrew L. Zivitz Filed on Behalf of Kessler Topaz Meltzer & Check, LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Kessler Topaz Decl."), ¶¶4-5.

4880-0647-3145.v1

As discussed above and in the Britton Declaration, this Action was actively litigated and vigorously defended for more than two years at the time the Settling Parties agreed to the Settlement. Defendants fought Lead Plaintiffs at every step of the Action. The successful resolution of this Action required Lead Plaintiffs' Counsel to commit a significant amount of time and expense to the case.[4]

### 7. The Range of Fees Typically Awarded

"While there is no benchmark for the percentage of fees to be awarded in common fund cases, the Third Circuit has noted that reasonable fee awards in percentage-of-recovery cases generally range from nineteen to forty-five percent of the common fund." *Whiteley v. Zynerba Pharms., Inc.*, 2021 WL 4206696, at *12 (E.D. Pa. Sept. 16, 2021) (holding that this factor weighs in favor of approval where 33% fee request "falls in the middle" of the range of fees granted in comparable securities class actions in the Third Circuit); *see also Kanefsky*, 2022 WL 1320827, at *11 (finding 29.2% fee request "well within the reasonable range of awards approved by the Third Circuit and is consistent with similar class action settlements"); *Viropharma*, 2016 WL 312108, at *17 (noting that "[i]n this Circuit, 'awards of thirty percent are not uncommon in securities class actions'") (quoting *Ikon*, 194 F.R.D. at 194) (citing cases).

Courts in the Third Circuit award fee percentages similar to (or above) the requested fee of 25% in this case. *See In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2024 WL 815503, at *17 (E.D. Pa. Feb. 27, 2024) (awarding 32% of $385 million settlement); *Howard v. Arconic Inc.*, No. 2:17-cv-01057-MRH, ECF 253 (W.D. Pa. Aug. 8, 2023) (awarding 33-1/3% of $74 million settlement); *In re Novo Nordisk*, No. 3:17-cv-00209-ZNQ-LHG, ECF 361 (D.N.J. July 13, 2022) (awarding 29% of $100 million settlement); *Pelletier v. Endo Int'l PLC*, No.

---

[4] Lead Counsel's efforts will not end at final approval of the Settlement. Many additional hours and resources will be expended assisting Settlement Class Members with claim administration. *Kanefsky*, 2022 WL 1320827, at *11.

- 15 -

4880-0647-3145.v1

2:17-cv-05114, ECF 417 (E.D. Pa. Apr. 8, 2022) (awarding 25% of $63.4 million settlement); *Beltran v. SOS Ltd.*, 2023 WL 319895, at \*8 (E.D. Pa. Jan. 3, 2023) (Pascal, M.J.),(awarding one-third of settlement as "within the typical range and . . . reasonable"), *report & recommendation adopted*, 2023 WL 316294 (D.N.J. Jan. 19, 2023); *Inovio*, 2023 WL 227355, at \*12 (approving 27.5% of settlement as "within the norm for awards in common fund cases"). Because the requested fee is reasonable in relation to fees typically awarded in similar cases, this factor favors approval of the requested fee award.[5]

### E.    The Requested Fee Is Reasonable Under a Lodestar Cross-Check

Courts in the Third Circuit may also use a "lodestar cross-check" to confirm the reasonableness of a percentage fee. *See Moore v. GMAC Mortg.*, 2014 WL 12538188, at \*2 (E.D. Pa. Sept. 19, 2014) (stating that the "lodestar cross-check is 'suggested,' but not mandatory"). If used, the lodestar cross-check "should not displace a district court's primary reliance on the percentage-of-recovery method." *AT&T*, 455 F.3d at 164.[6]

The Third Circuit has recognized that when used, the lodestar cross-check "need entail neither mathematical precision nor bean-counting," and "district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec.*

---

[5]   In evaluating attorneys' fee requests, courts in the Third Circuit have also considered factors such as whether the fee award "reflects commonly negotiated fees in the private marketplace," and any benefit received from the efforts of government agencies, or any innovative terms of settlement. *In re Merck & Co., Inc. Vytorin ERISA Litig.*, 2010 WL 547613, at \*12-\*13 (D.N.J. Feb. 9, 2010). These additional factors also favor approval of the requested fee here, as the advancement of this case was based upon the efforts of counsel, not government agencies, and a 25% fee is lower than commonly negotiated contingent fees. *See id.* at \*13 (noting that contingent fees in the private marketplace are commonly 30% to 40%).

[6]   Placing too much emphasis on the lodestar method "may encourage attorneys to delay settlement or other resolution to maximize legal fees" and "may also compensate attorneys insufficiently for the risk of undertaking complex or novel cases on a contingency basis." *Ikon*, 194 F.R.D. at 193. Given its limited value, some courts consider a lodestar review "an inevitable waste of judicial resources." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49 (2d Cir. 2000).

4880-0647-3145.v1

*Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005). The lodestar cross-check involves simply comparing counsel's "lodestar" – *i.e.*, timekeepers' hourly rates multiplied by the number of hours spent on the case – to the fee resulting from the requested percentage award, and assessing the reasonableness of the resulting multiplier. The appropriate multiplier varies based on the specifics of each case and "'need not fall within any pre-defined range, provided that the [d]istrict [c]ourt's analysis justifies the award.'" *Schuler*, 2016 WL 3457218, at \*10 (quoting *Rite-Aid*, 396 F.3d at 307).

The Third Circuit has recognized that percentage awards that result in multipliers "'ranging from one to four'" are frequently awarded in common fund cases when the lodestar method is applied. *In re S.S. Body Armor I, Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 774 (3d Cir. 2019); *In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x 815, 819 (3d Cir. 2010) (same); *see also Stevens v. SEI Invs. Co.*, 2020 WL 996418, at \*13 (E.D. Pa. Feb. 28, 2020) (approving multiplier of 6.16; noting that "multiples ranging from 1 to 8 are often used in common fund cases" to "compensate counsel for the risk of assuming the representation on a contingency fee basis"). *See also Bodnar v. Bank of Am., N.A.*, No. 14-3224, ECF 90 at 10 (E.D. Pa. Aug. 4, 2016) (A 4.69 multiplier was "appropriate and reasonable."). *See also Zynerba Pharms.*, 2021 WL 4206696, at \*14 ("Such multipliers are necessary to compensate counsel for the risk of [nonrecovery]").

Here, the lodestar cross-check further demonstrates the reasonableness of the requested fee percentage because the fee request is a modest multiple of Lead Plaintiffs' Counsel's total lodestar. As detailed in the Britton Declaration, Lead Plaintiffs' Counsel spent more than 8,500 hours of attorney and other professional time prosecuting the Action for the benefit of the Settlement Class. Britton Decl., ¶136. Counsel's lodestar, derived by multiplying the hours spent on the litigation by each attorney or other professional by his or her current hourly rate,[7] is $5,930,250.50.[8]

---

[7] The Supreme Court has approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflation, and the loss of interest. *See Mo. v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989).

- 17 -

Thus, the requested fee of 25% of the cash portion of the Settlement Fund (plus interest), along with 250,000 Settlement Shares (valued at $2,457,500 as of May 14, 2024), represents a multiplier of approximately 2.56 on counsel's lodestar. That multiplier is well within the range approved in other securities class actions. *See Arconic*, ECF 253 at 1-3 (approving one-third fee, representing multiplier of 3.54); *Schuler*, 2016 WL 3457218, at *10 (approving 33.33% award with 3.57 multiplier); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134-35 (D.N.J. 2002) (same for 4.3 multiplier); *In re Aetna Sec. Litig.*, 2001 WL 20928, at *15 (E.D. Pa. Jan. 4, 2001) (same for 3.6 multiplier). Indeed, a multiplier of 4.2 is appropriate in "a hard-fought [securities] case with a substantial risk." *In re DaimlerChrysler AG Sec. Litig.*, 2004 WL 7351531, at *19 (D. Del. Jan. 28, 2004).

### F.    Reasonably Incurred Litigation Expenses Should Be Awarded

Lead Counsel also requests payment of costs, charges, and expenses incurred by Lead Plaintiffs' Counsel in connection with prosecuting this litigation in the aggregate amount of $669,883.07. Britton Decl., ¶¶144-149. Counsel in class actions are entitled to recover expenses that are "'adequately documented and reasonable and appropriately incurred in the prosecution of the class action.'" *Viropharma*, 2016 WL 312108, at *18 (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)); *Schering-Plough I*, 2012 WL 1964451, at *8 (approving litigation expenses and noting that "[t]his type of reimbursement has been expressly approved by the Third Circuit").

---

[8]    Courts have noted that it is appropriate to consider further time in the lodestar crosscheck; for example, time that will be needed to administer the settlement. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *39 (N.D. Ga. Mar. 17, 2020) (noting that "[i]n addition to time spent through final approval, class counsel estimate they will spend [significantly more time] to implement and administer the settlement"), *aff'd in part, rev'd in part*, 999 F. 3d 1247 (11th Cir. 2021). Such additional time will reduce the multiplier.

4880-0647-3145.v1

The expenses borne by Lead Plaintiffs' Counsel are documented in the accompanying firm declarations.  These expenses consist of typical categories, such as consultants, experts, travel, document hosting and production, research costs, mediation fees, filing fees, postage, copying, and delivery.  *See* Robbins Geller Decl., ¶6; Kessler Topaz Decl., ¶6.  These expenses were reasonable and necessary to Lead Plaintiffs' prosecuting the claims and achieving the Settlement and are of the same type routinely approved in securities class actions.  *See Viropharma*, 2016 WL 312108, at \*18 (approving costs and expenses for, among other things, experts, travel, copying, postage, telephone, filing fees, and online and financial research); *Yedlowski*, 2016 WL 6661336, at \*23 (approving costs and expenses for experts, investigation, mediation, publishing notice, and online legal research, and noting that "[c]ourts have held that all of these items are properly charged to the [c]lass").

The requested expense amount is significantly lower than the expenses approved in many other securities class actions.  *See, e.g.*, *AT&T*, 455 F.3d at 169 (approving expenses of nearly $5.5 million); *In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, 2016 WL 11575090, at \*5 (D.N.J. June 28, 2016) (approving award of $9.5 million in expenses); *Ikon*, 194 F.R.D. at 197 (approving award of over $3.5 million in expenses); *In re Lucent Techs., Inc. Sec. Litig.*, No. 2:00-cv-621, ECF 236 at 1 (D.N.J. July 23, 2004) (approving award of $3.5 million in expenses).  Further, the requested amount is less than the expense figure of up to $800,000 set out in the Notice; to date, there have been no objections to that proposed figure.  For all of these reasons, the requested expense award should be approved.

### G.    Lead Plaintiffs Are Entitled to Awards Pursuant to 15 U.S.C. §78u-4(a)(4)

The Third Circuit has "favor[ed] encouraging class representatives, by appropriate means, to create common funds and to enforce laws." *In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at \*37 (D.N.J. Oct. 1, 2013) ("*Schering-Plough II*").  The PSLRA expressly permits an "award of reasonable costs and expenses (including lost wages) directly relating to the

- 19 -

representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4). In enacting this provision, "Congress explicitly acknowledged the importance of awarding appropriate reimbursement to class representatives." *Schering-Plough II*, 2013 WL 5505744, at *37. The reason behind permitting payment for services of a lead plaintiff was made clear in the congressional record: "These provisions are intended to increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. No. 104-369, at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, at 731 (1995). Thus, courts provide awards under 15 U.S.C. §78u-4(a)(4) to compensate class representatives for their time and effort in representing the class.

Lead Plaintiffs Bucks County and Delaware County seek awards of $3,528.00, and $9,500.00, respectively, for a total of $13,028.00, for the time Lead Plaintiffs devoted to supervising counsel and participating in the litigation. *See* Bucks County Decl., ¶6; Delaware County Decl., ¶6; Britton Decl., ¶¶150-152. The declarations describe Lead Plaintiffs' activities directly related to representing the Settlement Class, including: (i) consulting with counsel regarding the litigation and the Court's orders; (ii) reviewing and commenting upon pleadings, motions, and briefs; (iii) reviewing correspondence and status reports from counsel; (iv) responding to discovery requests and collecting documents for production; (v) preparing for and participating in depositions; (vi) conferring with counsel concerning litigation strategy; and (vii) monitoring settlement negotiations. *Id.*; Bucks County Decl., ¶6.

The requested class representative awards are reasonable and are less than or equal to awards in many similar cases. *See, e.g.*, *Kanefsky*, 2022 WL 1320827, at *12 (awarding $10,000 to each of two class representatives); *Healthcare Servs. Grp.*, 2022 WL 118104, at *33 (awarding $12,500 to class representative); *In re CIGNA Corp. Sec. Litig.*, No. 02-8088, ECF 288 at 1-2 (E.D. Pa. July 13,

- 20 -

2007) (approving awards to four lead plaintiffs totaling more than $130,000); *Schering-Plough II*, 2013 WL 5505744, at *37 (approving awards to four lead plaintiffs totaling more than $102,000); *id.*, at *56-*57 (in related matter, approving awards to four separate lead plaintiffs totaling more than $109,000); *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *11 (D.N.J. July 29, 2013) (approving award to lead plaintiff of $18,000); *Li v. Aeterna Zentaris Inc.*, 2021 WL 2220565, at *2 (D.N.J. June 1, 2021) (approving awards of $17,000 to each of the three lead plaintiffs).  Lead Plaintiffs respectfully request that the proposed awards be approved.

## IV.    CONCLUSION

For all the reasons stated above and in the accompanying declarations, Lead Counsel respectfully request that the Court: (i) award Lead Plaintiffs' Counsel attorneys' fees of 25% of the cash portion Settlement Fund plus the Settlement Stock and payment of litigation expenses of $669,883.07; and (ii) award Lead Plaintiffs a total of $13,028.00, in connection with their representation of the Settlement Class pursuant to 15 U.S.C. §78u-4(a)(4).

DATED:  May 15, 2024              Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART (admitted *pro hac vice*)
DOUGLAS R. BRITTON (admitted *pro hac vice*)
KEVIN A. LAVELLE (admitted *pro hac vice*)
JOSEPH J. TULL (admitted *pro hac vice*)

s/ Douglas R. Britton
DOUGLAS R. BRITTON

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
dougb@rgrdlaw.com
klavelle@rgrdlaw.com
jtull@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

- 21 -

- 22 -

KESSLER TOPAZ MELTZER
  & CHECK, LLP
ANDREW L. ZIVITZ (PA #76554)
HELEN J. BASS (PA # 330646)
280 King of Prussia Road
Radnor, PA  19087
Telephone:  610/667-7706
610/667-7056 (fax)
azivitz@ktmc.com
hbass@ktmc.com

Local Counsel for Lead Plaintiffs

4880-0647-3145.v1