UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM and BUCKS COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br>                 Plaintiffs, <br><br>     vs. <br><br> ADAPTHEALTH CORP. f/k/a DFB HEALTHCARE ACQUISITIONS CORP., LUKE MCGEE, STEPHEN P. GRIGGS, JASON CLEMENS, FRANK J. MULLEN, RICHARD BARASCH, JOSHUA PARNES, ALAN QUASHA, TERENCE CONNORS, DR. SUSAN WEAVER, DALE WOLF, BRADLEY COPPENS, and DAVID S. WILLIAMS III, <br><br>                 Defendants. | Civ. Action No. 2:21-cv-03382-HB <br><br> <u>CLASS ACTION</u> <br><br> DECLARATION OF DOUGLAS R. BRITTON IN SUPPORT OF MOTIONS FOR: (I) FINAL APPROVAL OF SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION; AND (II) ATTORNEYS' FEES AND LITIGATION EXPENSES, AND AWARDS TO LEAD PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4) <br><br> ELECTRONICALLY FILED |

4872-8149-2922.v1

**EXHIBIT LIST**

| Ex. | Description |
|---|---|
| A | Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date |
| B | Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements, 2023 Review and Analysis* (Cornerstone Research 2023) |
| C | Declaration of Douglas R. Britton Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses |
| D | Declaration of Andrew L. Zivitz Filed on Behalf of Kessler Topaz Meltzer & Check, LLP in Support of Application for Award of Attorneys' Fees and Expenses |
| E | *Securities Class Action Filings, 2023 Year in Review* (Cornerstone Research 2024) |
| F | Declaration on Behalf of Delaware County Employees Retirement System in Support of Motion for Final Approval of Settlement, Plan of Allocation, Award of Attorneys' Fees and Expenses, and Award to Lead Plaintiff |
| G | Declaration on Behalf of Bucks County Employees' Retirement System in Support of Motion for Final Approval of Settlement, Plan of Allocation, Award of Attorneys' Fees and Expenses, and Award to Lead Plaintiff |

I, DOUGLAS R. BRITTON, declares as follows pursuant to 28 U.S.C. §1746:

1.      I am a partner of the law firm Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or "RGRD").[1] RGRD serves as Court-appointed Lead Counsel for Lead Plaintiffs Bucks County Employees' Retirement System ("Bucks County") and Delaware County Employees Retirement System ("Delaware County") (collectively, "Lead Plaintiffs") in the above-captioned action (the "Action"), which alleges (i) defendant AdaptHealth, in addition to Luke McGee, Stephen P. Griggs, and Jason Clemens (the "Officer Defendants"), violated §10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"); (ii) the Officer Defendants violated §20(a) of the Exchange Act;

---

[1]    Unless otherwise stated or defined in this declaration, all capitalized terms used herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated February 26, 2024 (the "Stipulation") (ECF 149).

4872-8149-2922.v1

(iii) Defendants violated §11 of the Securities Act of 1933 (the "Securities Act"); (iv) defendant AdaptHealth violated §12(a)(2) of the Securities Act; and (v) the Officer Defendants and Frank Mullen, Richard Barasch, Joshua Parnes, Alan Quasha, Terence Connors, Dr. Susan Weaver, Dale Wolf, Bradley Coppens, and David S. Williams III violated §15 of the Securities Act. I have personal knowledge of the matters set forth herein based on my active supervision of and participation in the prosecution and resolution of the Action.

2. I submit this declaration in support of Lead Plaintiffs' motion, pursuant to Federal Rule of Civil Procedure 23(e), for final approval of the proposed Settlement with Defendants that will resolve the claims asserted in the Action and for approval of the proposed plan of allocation of the proceeds of the Settlement (the "Plan of Allocation") and in support of Lead Counsel's motion, on behalf of all Lead Plaintiffs' Counsel, for an award of attorneys' fees and litigation expenses and for awards to the Lead Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4) (the "Fee and Expense Application").

3. In support of the motions, Lead Plaintiffs and Lead Counsel are also submitting the exhibits attached hereto, the Memorandum of Law in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation (the "Settlement Memorandum") and Memorandum of Law in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses, and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Fee Memorandum").

## I.    INTRODUCTION

4. Since this Action began over two years ago, Lead Plaintiffs and Lead Counsel actively and vigorously prosecuted the Settlement Class's claims. Only after significant effort did Lead Plaintiffs and Lead Counsel succeed in obtaining an outstanding settlement, including: (i) a cash payment of $51,000,000, including a $1 million cash payment from defendant McGee not

funded by insurance or corporate funds, for the benefit of the Settlement Class (the "Settlement Cash"); (ii) one (1) million shares of Company common stock for the benefit of the Settlement Class (the "Settlement Shares"); and (iii) Corporate Governance Changes.  As detailed herein, Lead Plaintiffs and Lead Counsel believe the proposed Settlement represents an excellent result and is in the best interest of the Settlement Class.

5.      Lead Plaintiffs and Lead Counsel were well informed of the strengths and weaknesses of the claims and defenses in this Action at the time they reached the proposed Settlement.  As described in further detail herein, by the time they agreed to the proposed Settlement, Lead Plaintiffs and Lead Counsel had:

(a)      Conducted an extensive investigation into the alleged violations of the securities laws at issue, including a thorough review of U.S. Securities and Exchange Commission ("SEC") filings and other publicly filed documents, analyst reports, press releases, media reports, and other publicly available information;

(b)      Drafted a detailed Consolidated Complaint for Violations of the Federal Securities Laws ("Consolidated Complaint") based on this investigation;

(c)      Successfully defeated, in full, Defendants' Motion to Dismiss the Consolidated Complaint under Fed. R. Civ. P. 9(b) and 12(b)(6);

(d)      Engaged in discovery related to class certification, including depositions of Lead Plaintiffs and the parties' experts;

(e)      Moved for and fully briefed class certification;

(f)      Undertook extensive discovery, including reviewing over 38,000 pages of documents produced by Defendants, and over 427,000 pages produced by third parties; taking or defending the depositions of nine expert and fact witnesses; and serving and/or responding to interrogatories and requests for admission;

- 3 -

(g)     Successfully moved to compel defendant Luke McGee ("McGee") to produce certain documents relating to his involvement in an alleged tax fraud;

(h)     Attended an in-person discovery conference with the Honorable Harvey Bartle III to resolve two discovery disputes; and

(i)     Participated in two formal mediations.

6.     This Settlement was achieved only after extensive and contentious arm's-length negotiations between the parties, including two formal mediation sessions overseen by David Murphy, Esq. of Phillips ADR on September 18, 2023, and January 11, 2024. Although neither mediation resulted in resolution on the day of the mediation, the parties continued discussions with Mr. Murphy throughout the process, and reached an agreement-in-principle to settle the Action on February 14, 2024.

7.     Lead Plaintiffs and Lead Counsel believe that the Settlement represents a very favorable outcome for the Settlement Class and that its approval would be in the best interests of the Settlement Class because, as detailed below, the proposed Settlement, including $51,000,000 in Settlement Cash, the Settlement Shares, and Corporate Governance Changes, represents a substantial recovery for the Settlement Class in light of the significant risks in establishing Defendants' liability in the Action, not to mention the possibility that Lead Plaintiffs' pending motion for class certification could have been denied in part or in its entirety.

8.     Thus, the Settlement provides a considerable benefit to the Settlement Class by conferring a substantial, certain, and immediate recovery in the Settlement Cash and Settlement Shares, and important corporate governance reforms designed to improve AdaptHealth's operations, while avoiding the significant risks of continued litigation, including additional litigation expenses and the risk that the Settlement Class could recover less than the amount of the Settlement Cash and Settlement Shares (or nothing at all) after years of additional litigation and delay.

- 4 -

4872-8149-2922.v1

9.      In addition to seeking final approval of the proposed Settlement, Lead Plaintiffs seek approval of the proposed Plan of Allocation.  The Plan of Allocation, which is set forth in the Notice mailed to Settlement Class Members, provides for the distribution of the Net Settlement Fund to Settlement Class Members who submit Proof of Claim Forms that are approved for payment on a *pro rata* basis based on the their purchases, acquisitions and sales of AdaptHealth Securities.

10.      Lead Counsel worked hard and skillfully to overcome substantial obstacles and achieve a favorable result for the Settlement Class.  Lead Counsel prosecuted this Action on a fully contingent basis and incurred significant litigation expenses, therefore bearing all of the financial risk of an unfavorable result.  For its considerable efforts in prosecuting the case and negotiating the Settlement, Lead Counsel is applying for an award of attorneys' fees of 25% of the Settlement Amount.[2]  As discussed in the Fee Memorandum, the requested fee – which has been reviewed and approved by Lead Plaintiffs – is well within the range of percentage awards granted by courts in this Circuit and elsewhere in similarly sized securities class action settlements.  The requested fee is further confirmed as reasonable when compared to Lead Plaintiffs' Counsel's lodestar in this Action of approximately $5.9 million, representing a modest lodestar multiplier of approximately 2.56 based on the monetary value of the Settlement, including the value of the requested Settlement Shares as of the close of trading on May 14, 2024[3].  Lead Counsel respectfully submits that the fee request is fair and reasonable in light of the result achieved in this Action, the efforts of Lead Counsel, and the risks and complexity of the litigation.

11.      Lead Plaintiffs' Counsel also seek payment of litigation expenses incurred in connection with the prosecution and settlement of this Action, totaling $669,883.07, plus an award

---

[2]    This requests 25% of the Settlement Cash (and the interest gained therein) plus 250,000 shares of AdaptHealth common stock.

[3]    AdaptHealth common stock closed at $7.22 per share on the date that the parties reached an agreement-in-principle to settle the litigation.  It closed at $9.83 per share on May 14, 2024.

4872-8149-2922.v1

of $13,028.00 in the aggregate to the Lead Plaintiffs for their time and expenses directly related to their representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4(a)(4) ("PSLRA").

## II.     HISTORY AND PROSECUTION OF THE ACTION

12.     In this Action, Lead Plaintiffs alleged that Defendants were liable for false and misleading statements and omissions of material fact to investors, including in AdaptHealth's' SEC filings and other public statements, between November 8, 2019 and July 16, 2021, inclusive (the "Class Period").

13.     Specifically, Lead Plaintiffs allege that Defendants made false and misleading statements and omissions regarding the methodology used to calculate the Company's organic growth and defendant McGee's involvement in an alleged foreign tax fraud arising from certain past private activity.  Accordingly, Lead Plaintiffs allege that as a result of these false and misleading statements and omissions, AdaptHealth Securities traded at artificially inflated prices until the truth was revealed to the market.

### A.     Commencement of the Action and Appointment of Lead Plaintiffs and Lead Counsel

14.     The initial complaint in this Action was filed on July 29, 2021.  ECF 1.  Bucks County and Delaware County moved for appointment as lead plaintiffs and approval of Robbins Geller as lead counsel on September 27, 2021 (ECF 5), and the Court appointed Lead Plaintiffs and Lead Counsel on October 14, 2021 (ECF 12).

15.     On November 22, 2021, Lead Plaintiffs filed the Consolidated Complaint (the "CC"), which alleged that: (i) defendant AdaptHealth, in addition to the Officer Defendants, violated §10(b) of the Exchange Act; (ii) the Officer Defendants violated §20(a) of the Exchange Act; (iii) Defendants violated §11 of the Securities Act; (iv) defendant AdaptHealth violated §12(a)(2) of the Securities Act; and (v) the Officer Defendants and Frank Mullen, Richard Barasch, Joshua

- 6 -

4872-8149-2922.v1

Parnes, Alan Quasha, Terence Connors, Dr. Susan Weaver, Dale Wolf, Bradley Coppens, and David S. Williams III violated §15 of the Securities Act.  ECF 19.

16.     The CC alleged that, throughout the Class Period, Defendants made numerous materially false and misleading statements and omitted material information regarding the methodology used to calculate the Company's organic growth and defendant McGee's involvement in an alleged foreign tax fraud arising from certain past private activity, which caused the price of the Company's common stock to trade at artificially inflated prices, until the market learned of the false and misleading nature of the statements and omissions, and the Company's stock price declined on April 13, 2021, and July 19, 2021.  ECF 19.

### B.     Defendants' Motion to Dismiss

17.     On January 20, 2022, Defendants moved to dismiss the CC for failure to state a claim under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and under the PSLRA.  *See* ECF 37-38.  Defendants argued, among other things, that the CC should be dismissed because Lead Plaintiffs: (i) failed to allege a material false or misleading statement or omission; (ii) failed to plead facts supporting scienter; and (iii) failed to allege loss causation.  *See* ECF 37-1.

18.     Lead Plaintiffs filed their opposition to the motion to dismiss on March 21, 2022, ECF 40-41, and Defendants filed their reply in support of the motion to dismiss on April 15, 2022, ECF 44-45.  On May 26, 2022, Lead Plaintiffs filed a notice of recent authority regarding a decision from the Second Circuit Court of Appeals relevant to Lead Plaintiffs' opposition to Defendants' pending motion to dismiss.  ECF 46.  Defendants filed a response on June 1, 2022, arguing that the case was distinguishable from this Action.  ECF 47-49.

19.     On June 9, 2022, the Court denied Defendants' motion to dismiss the CC in its entirety.  ECF 50-51.

20.     On August 5, 2022, Defendants answered the CC.  ECF 76-77.

4872-8149-2922.v1

**C.      Class Certification**

21.      On July 15, 2022, the Court ordered the Settling Parties to proceed with class certification discovery and set deadlines for class certification discovery and briefing, and authorized written merits discovery to proceed, but prohibited merits depositions and did not set deadlines for fact discovery.  ECF 62.

22.      On July 28, 2022, Lead Plaintiffs filed their motion for class certification.  ECF 65.

23.      On March 30, 2023, Defendants filed a 75-page opposition to class certification supported by five expert reports.  ECF 113-18.  In their opposition, Defendants argued, among other things, that class certification would be improper because: (i) Lead Plaintiffs were not adequate or typical class representatives; (ii) the information allegedly revealed in the corrective disclosures was already publicly available, thus rebutting the *Basic*[4] presumption of class-wide reliance; and (iii) Lead Plaintiffs could not trace purchases of AdaptHealth common stock under §11 to AdaptHealth's Secondary Offering.  ECF 113.  Defendants further argued that Lead Plaintiffs' expert had failed to establish that AdaptHealth's stock traded in an efficient market, and that Lead Plaintiffs had not put forward an adequate methodology for measuring class-wide damages.  In preparation for their reply in support of the motion to certify the class, Lead Plaintiffs deposed each of Defendants' five experts and Defendants deposed: (i) Lead Plaintiffs' expert; (ii) Lead Plaintiffs' investment manager; and (iii) representatives from Bucks County and Delaware County.

24.      On May 22, 2023, Lead Plaintiffs filed their 50-page reply in support of their class certification motion, including a rebuttal expert report by their class certification expert, and a rebuttal expert report from an additional tracing expert.  ECF 134.

25.      Lead Plaintiffs' motion for class certification was pending at the time the Settling Parties reached an agreement-in-principle to settle the Action.

---

[4]      *See Basic v. Levinson*, 485 U.S. 224 (1988).

## III.    THE SETTLING PARTIES' EXTENSIVE DISCOVERY EFFORTS

26.    On June 9, 2022, when the Court denied Defendants' motion to dismiss, the PSLRA's automatic discovery stay lifted and discovery in this Action began according to the Court's July 15, 2022 scheduling order.

27.    Between July 15, 2022, and September 2023, the Settling Parties produced almost 40,000 pages of documents, conducted depositions of nine expert and fact witnesses, and served and responded to interrogatories and requests for admission.  The parties additionally served subpoenas on over 50 third parties, which produced approximately 53,000 documents totaling over 427,000 pages.

28.    As further detailed below, the Settling Parties participated in numerous meetings to address discovery issues, and litigated three motions to compel discovery, two of which Judge Bartle addressed at an in-person discovery conference on April 11, 2023.  ECF 87-92, 103-104, 106, 108-112, 120, 123-124, 126.

### A.    Document Discovery

29.    On July 1, 2022, Lead Plaintiffs served their First Request for Production of Documents ("Lead Plaintiffs' First RFPs") on Defendants.

30.    On July 19, 2022, Defendants served their First Set of Requests for Production of Documents ("Defendants' First RFPs") on Lead Plaintiffs.

31.    On August 1, 2022, the AdaptHealth Defendants served responses and objections to Lead Plaintiffs' First RFPs, and on August 31, 2022, defendant McGee served responses and objections to Lead Plaintiffs' First RFPs.

32.    On August 18, 2022, Lead Plaintiffs served their responses and objections to Defendants' First RFPs.

33. On March 14, 2023, Lead Plaintiffs served their Second Request for Production of Documents ("Lead Plaintiffs' Second RFPs") on defendant Quasha and defendant McGee.

34. On April 13, 2023, defendants Quasha and McGee served responses and objections to Lead Plaintiffs' Second RFPs.

35. Overall, Defendants collectively produced over 38,000 pages of documents in response to Lead Plaintiffs' requests for production.

**B.    Requests for Admission**

36. On July 6, 2022, Lead Plaintiffs served their First Request for Admission to defendant McGee ("Lead Plaintiffs' First RFAs").

37. On August 31, 2022, defendant McGee served responses and objections to Lead Plaintiffs' First RFAs.  Defendant McGee served amended responses and objections to Lead Plaintiffs' First RFAs on November 3, 2022.

**C.    Interrogatories**

38. On July 6, 2022, Lead Plaintiffs served separate First Set of Interrogatories on AdaptHealth, defendants McGee and Quasha, and the remaining Individual Defendants.

39. On August 5, 2022, defendant Quasha served responses and objections to Lead Plaintiffs' First Set of Interrogatories.  On September 19, 2022, defendant Quasha served amended responses and objections to Lead Plaintiffs' First Set of Interrogatories.  On November 18, 2022, defendant Quasha served second amended responses and objections to Lead Plaintiffs' First Set of Interrogatories.

40. On August 5, 2022, Defendants Griggs, Quasha, Mullen, Weaver, Barasch, Parnes, Williams, Clemens, Wolf, Coppens, and Connors served responses and objections to Lead Plaintiffs' First Set of Interrogatories.  Defendants Griggs, Quasha, Mullen, Weaver, Barasch, Parnes,

4872-8149-2922.v1

Williams, Clemens, Wolf, Coppens, and Connors served amended responses and objections on September 19, 2022, and second amended responses and objections on November 18, 2022.

41. On August 31, 2022, defendant McGee served responses and objections to Lead Plaintiffs' First Set of Interrogatories. On October 4, 2022, defendant McGee served amended responses and objections to Lead Plaintiffs' First Set of Interrogatories.

42. On August 5, 2022, defendant AdaptHealth served responses and objections to Lead Plaintiffs' First Set of Interrogatories. Defendant AdaptHealth served amended responses and objections to Lead Plaintiffs' First Set of Interrogatories on September 19, 2022, second amended responses and objections to Lead Plaintiffs' First Set of Interrogatories on November 18, 2022, and third amended responses and objections to Lead Plaintiffs' First Set of Interrogatories on April 28, 2023.

43. On March 23, 2023, Lead Plaintiffs served their Second Set of Interrogatories on defendant AdaptHealth.

44. On April 24, 2023, defendant AdaptHealth served responses and objections to Lead Plaintiffs' Second Set of Interrogatories.

45. On July 7, 2022, Defendants served their First Set of Interrogatories on Lead Plaintiffs.

46. On August 8, 2022, Lead Plaintiffs served their responses and objections to Defendants' First Set of Interrogatories.

47. On October 7, 2022, Defendants served their Second Set of Interrogatories on Lead Plaintiffs.

48. On November 7, 2022, Lead Plaintiffs served their responses and objections to Defendants' Second Set of Interrogatories. Lead Plaintiffs served amended responses and objections on January 31, 2023.

4872-8149-2922.v1

49.     Overall, the Settling Parties served and responded to approximately 30 interrogatories and requests for admission.

**D.      Depositions**

50.     Defendants conducted the following depositions:

| Date | Witness |
|---|---|
| February 10, 2023 | Lead Plaintiff Bucks County |
| February 13, 2023 | Lead Plaintiff Delaware County |
| February 16, 2023 | Lead Plaintiffs' third-party investment manager, Emerald Asset Management |
| February 28, 2023 | Lead Plaintiffs' class certification expert, Matthew Cain, Ph.D. |

51.     Lead Plaintiffs conducted the following depositions:

| Date | Witness |
|---|---|
| May 2, 2023 | Defendants' class certification expert, L. Adel Turki, Ph.D. |
| May 4, 2023 | Defendants' class certification expert, Susan G. Markel |
| May 8, 2023 | Defendants' class certification expert, Jack R. Wiener |
| May 10, 2023 | Defendants' class certification expert, Craig Lewis |
| May 12, 2023 | Defendants' class certification expert, Fabio Savoldelli |

**E.      Third Party Discovery**

52.     Lead Plaintiffs served approximately 38 subpoenas for the production of documents on third parties to this litigation.

53.     As of May 14, 2024, at least 33 of those third parties had served responses and objections, and/or produced documents.

- 12 -

54.     Defendants served approximately 20 subpoenas for the production of documents on third parties to this litigation.  At least nine of those third parties served responses and objections and three parties produced documents.

55.     In all, third parties produced approximately 53,000 documents in this Action, totaling over 427,000 pages.

**F.      Expert Discovery**

56.     In addition to conducting comprehensive fact discovery, Lead Counsel retained experts while investigating and prosecuting this Action.  These experts offered opinions in the areas of class-wide damages and market efficiency.

57.     The expert opinions were used to support Lead Plaintiffs' class certification motion and during mediation, and would have been used to prepare Lead Plaintiffs' case for trial.

58.     Lead Plaintiffs retained Matthew D. Cain, Ph.D., senior fellow at Berkeley Law School, University of California, to opine on the efficiency of the market for the AdaptHealth common stock, whether the value impact of any alleged misstatements or omissions would be reflected in AdaptHealth's options prices, and whether the calculation of damages on a class-wide basis for purchases of AdaptHealth common stock and options would be subject to a common methodology.  Lead Plaintiffs attached Cain's class certification-related expert report ("Cain Report") as an exhibit to Lead Plaintiffs' Motion to Certify Class on July 28, 2022.  Cain opined that AdaptHealth's common stock traded in an efficient market during the Class Period, that the value impact of any alleged misstatements or omissions would be reflected in AdaptHealth's Options prices, and that damages could be calculated on a class-wide basis using a common methodology. *See* ECF 65-3.

59.     On February 28, 2023, Defendants deposed Dr. Cain.

4872-8149-2922.v1

60.     Defendants retained L. Adel Turki as an expert to evaluate price impact and to rebut the Cain Report. Turki's report, dated March 29, 2023, questioned whether Cain had demonstrated that AdaptHealth's stock traded in an efficient market, questioned Cain's damages methodology, and disputed price impact. *See* ECF 114-15.

61.     Defendants' Counsel also retained Dr. Craig Lewis as an expert to evaluate whether the alleged misrepresentations were pertinent to equity investments in AdaptHealth stock, and whether investors would consider AdaptHealth's April 13, 2021 press release to be relevant to the accuracy of the alleged misrepresentations. Dr. Lewis's report, dated March 29, 2023, opined that the information in the alleged misrepresentations about AdaptHealth's executive team would not have been pertinent to investors, and investors would not consider the press release to reveal information relevant to the accuracy of the information in any alleged misrepresentations. *See* ECF 114-12.

62.     Defendants' Counsel also retained Susan G. Markel as an expert to evaluate whether the calculations in the Jehoshaphat Report were based on information other than what was publicly available. Markel's report, dated March 29, 2023, opined that Markel had not identified any evidence suggesting that the Jehoshaphat Report calculations were based on non-public information, and that Jehoshaphat Research likely made an error in its calculations. *See* ECF 114-13.

63.     Defendants' Counsel also retained Fabio Savoldelli as an expert to evaluate whether any decline in AdaptHealth stock on July 19, 2021 was attributable to the mere publication of the Jehoshaphat Report or to its contents. Savoldelli's report, dated March 29, 2023, opined that the Jehoshaphat Report exhibited characteristics of short seller reports that cause a stock price decline based solely on their publication, separate from their underlying contents. *See* ECF 114-14.

64.     Defendants' Counsel also retained Jack R. Wiener as an expert to evaluate whether it is factually possible to trace shares of a security held that the Depository Trust Company ("DTC") or

- 14 -
4872-8149-2922.v1

its sub-custodian in the street name of DTC to a particular registration statement when multiple issuances of the security represented by the same CUSIP number had been deposited at DTC. Wiener's report, dated March 29, 2023, opined that he was not aware of any methodology by which Lead Plaintiffs could show they acquired AdaptHealth stock traceable to the Secondary Offering. *See* ECF 114-16.

65.    On May 2, 2023, Lead Plaintiffs deposed L. Adel Turki, Ph.D.

66.    On May 4, 2023, Lead Plaintiffs deposed Susan G. Markel.

67.    On May 8, 2023, Lead Plaintiffs deposed Jack R. Wiener.

68.    On May 10, 2023, Lead Plaintiffs deposed Craig Lewis.

69.    On May 12, 2023, Lead Plaintiffs deposed Fabio Savoldelli.

70.    Cain submitted a 30-page expert reply report (the "Cain Reply") dated May 22, 2023, thoroughly responding to Turki's criticisms of his market efficiency analysis, rebutting Turki's price impact analysis, and defending his damages methodology.  *See* ECF 134-7.  Cain also criticized Savoldelli's dismissal of short-seller reports, Markel's analysis as flawed, and Dr. Lewis's analysis as incomplete, subjective, and contradicted by Dr. Lewis's own testimony.  *Id*.

71.    Lead Plaintiffs also retained as a rebuttal expert Professor Daniel Taylor, the Arthur Andersen Chaired Professor at The Wharton School, to analyze the economic implications of the DTC's holding securities in fungible bulk and allocating associated rights on a *pro rata* basis, and to opine whether there are methodologies that would allow one to trace securities ownership in modern markets.  *See* ECF 134-19.  Taylor's report, dated May 22, 2023, opined that he and others had recently co-authored an amici curiae brief that contended that application of FIFO and LIFO accounting methods combined with timestamped account-level transaction records available from FINRA and the SEC could be used to conduct share tracing in modern markets, thus offering a solution to courts on issues related to share tracing.  *Id*.

- 15 -

### G.    Discovery Disputes

72.    As noted above, discovery in this Action was hard fought.  Lead Counsel expended significant time and effort to resolve discovery disputes as they arose.  Per Local Rule 26.1(f), disputes solely between the parties which the parties were unable to resolve without involvement of the Court were summarized in joint letters and submitted to the Court for review.

### H.    Disputes with Defendants

73.    On November 21, 2022, following unsuccessful negotiations, Lead Plaintiffs moved to compel the production of certain documents from defendant McGee regarding McGee's alleged participation in a foreign tax fraud.  ECF 85, 87.  Defendant McGee opposed Lead Plaintiffs' motion on December 2, 2022, on the grounds that the documents were not relevant to Lead Plaintiffs' claims.  ECF 89-90.  On December 7, 2022, before Lead Plaintiffs' reply brief was due, the Court granted Lead Plaintiffs' motion in full, ordering defendant McGee to produce said documents on or before December 30, 2022.  ECF 91.

74.    On December 12, 2022, the Court entered a second scheduling order ("Second Scheduling Order") setting forth deadlines for class certification discovery, and noting that "[a]ll non-deposition discovery as it relates to the merits shall proceed at this time."  ECF 93 at 1.  A dispute arose between Lead Plaintiffs and the AdaptHealth Defendants regarding document production.  Lead Plaintiffs took the position that the AdaptHealth Defendants were not complying with the Second Scheduling Order, and the AdaptHealth Defendants took the position that the agreed-upon search terms were too burdensome to review.  On March 13, 2023, after unsuccessful negotiations, Lead Plaintiffs filed a motion to compel compliance with the Second Scheduling Order and to set a certain date for substantial completion of fact discovery.  ECF 103.  The AdaptHealth Defendants opposed this motion on March 15, 2023.  ECF 104.  Lead Plaintiffs filed a reply brief on March 17, 2023.  ECF 106.

4872-8149-2922.v1

75.    After unsuccessful negotiations, on March 28, 2023, Lead Plaintiffs also filed a motion to compel further responses to Lead Plaintiffs' first set of interrogatories from the AdaptHealth Defendants. ECF 110-111. The AdaptHealth Defendants opposed this motion on April 7, 2023. ECF 123. Lead Plaintiffs filed a reply brief on April 10, 2023. ECF 124.

76.    The Court held an in-person discovery hearing on April 11, 2023 to address the compliance and interrogatories issues. After hearing arguments from the AdaptHealth Defendants and Lead Plaintiffs, and after AdaptHealth Defendants represented that they had already produced all "price impact" documents to Lead Plaintiffs, the Court denied the motions without prejudice, and ordered that after the May 22, 2023 deadline for Lead Plaintiffs' class certification reply brief, the parties would meet and confer to discuss further refinement of the discovery search protocol. ECF 126. The Court also set an in-person status conference for June 15, 2023 concerning deadlines for non-deposition merits discovery. *Id.*

77.    On June 6, 2023, the Court held a telephonic conference, wherein the Settling Parties notified the Court of their intention to participate in a private mediation. On June 7, 2023, the Court stayed this Action and placed the Action on the Court's Civil Suspense Docket pending the results of the mediation.

## IV.    MEDIATIONS AND THE SETTLEMENT

78.    On September 18, 2023, the Settling Parties participated in a confidential mediation via videoconference with David M. Murphy ("Mr. Murphy") of Phillips ADR Enterprises, an experienced mediator. This mediation was preceded by the Settling Parties' exchange of mediation statements, responses, and other relevant documents, which were also provided to Mr. Murphy. The mediation briefs addressed the specific evidence and legal arguments each side believed supported their respective claims and defenses.

4872-8149-2922.v1

79.     The Settling Parties engaged in good-faith negotiations, but were unable to reach an agreement to resolve the Action. But, settlement discussions with Mr. Murphy continued.

80.     On January 11, 2024, the Settling Parties participated in a second confidential mediation via videoconference with Mr. Murphy. Despite once again engaging in good-faith negotiations, the Settling Parties were unable to reach an agreement resolving this Action on that day. However, the Settling Parties continued further settlement discussions with Mr. Murphy. These negotiations were protracted, complex, and challenging, and included detailed discussions about AdaptHealth's financial condition.

81.     On February 14, 2024, after extensive further discussions and negotiations, the Settling Parties reached an agreement-in-principle to settle the Action, including the payment of $51 million in cash, with $1 million to be paid directly by defendant McGee, one million shares of freely tradeable AdaptHealth common stock, and Corporate Governance Changes.

82.     On February 26, 2024, the parties executed the Stipulation, which included the terms of the Settlement as described herein, dependent on the payment of $17.8 million of the AdaptHealth Settlement Cash into the Escrow Account within ten days of the date of the execution of the Stipulation, and the payment of the remainder of the AdaptHealth Settlement Cash and the McGee Settlement Amount into the Escrow Account 14 days after the Court approved Lead Plaintiffs' motion for preliminary approval. ECF 149 at 21-23.

83.     The Stipulation also conditioned settlement on the issuance and delivery of the Settlement Shares into the Escrow Account within 14 days after the date of entry by the Court of the Final Judgment finally approving the Settlement. *Id*. at 22-23.

84.     The Stipulation also conditioned settlement on the adoption of the Corporate Governance Changes for a period of six years from the date of enactment, the adoption of which shall occur no later than 90 days following the date of entry by the Court of a Final Judgment finally

approving the Settlement. *Id*. at 26. The Corporate Governance Changes include: (1) amending AdaptHealth's Board's charter (subject to shareholder approval) phasing out the staggered three-year terms for Board members and transitioning to annual elections; (2) prohibiting single-trigger accelerated vesting provisions from future contracts with AdaptHealth's executive officers; (3) providing that the Board may elect a Lead Independent Director; (4) amending AdaptHealth's bylaws to provide for access to management proxy materials for an investor or group of investors aggregately owning at least three percent of AdaptHealth's voting stock for at least three years to nominate the greater of (i) two director candidates in any given year, or (ii) the equivalent of 20% of the Board in any given year; and (5) requiring AdaptHealth to maintain a resignation policy requiring any director who receives more "Withheld" votes than "For" votes to offer his or her resignation, subject to Board acceptance. *See* ECF 149-6 at 3-4.

85.     The Settlement Class is defined as all Persons who purchased or otherwise acquired AdaptHealth common stock or call options on AdaptHealth common stock or sold put options on AdaptHealth common stock during the Class Period. Excluded from the Settlement Class are: (a) Defendants; (b) any Person who served as an officer or director of AdaptHealth during the Class Period; (c) the Immediate Family Members of Defendants and the excluded officers and directors; (d) any firm, trust, corporation, or other entity in which any excluded person or entity has, or had during the Class Period, a controlling interest; (e) the legal representatives, parents, subsidiaries, agents, affiliates, heirs, successors-in-interest, predecessors, or assigns of any such excluded person or entity, in their capacities as such; and (f) any Person who would otherwise be a Settlement Class Member but who validly and timely requests exclusion in accordance with the requirements set by the Court. Notwithstanding the foregoing, any AdaptHealth employee retirement, savings, or benefit plan shall not be deemed an affiliate of any Defendant, except that any Claim submitted on behalf of any AdaptHealth employee retirement, savings, or benefit plan shall be pro-rated to exclude the

- 19 -

4872-8149-2922.v1

proportion owned by Defendants and other specifically excluded persons or entities.  *See* Stipulation, ¶1.49.

86.     On February 27, 2024, Lead Plaintiffs filed an unopposed Motion for Preliminary Approval of Class Action Settlement, together with supporting papers, including the Stipulation. ECF 148-149.

87.     On March 5, 2024, the Court issued an order Preliminary Approving Settlement and Providing for Notice (the "Preliminary Approval Order").  ECF 153.

88.     Between March 7, 2024 and March 21, 2024, with an overpayment refund, AdaptHealth transferred or caused to be transferred in separate payments $50,000,000 to the Escrow Agent, who promptly deposited these payments (and this amount) into the Escrow Account.

89.     On March 19, 2024, McGee transferred $1,000,000 to the Escrow Agent, who promptly deposited this amount into the Escrow Account.

## V.     LEAD PLAINTIFFS' COMPLIANCE WITH THE PRELIMINARY APPROVAL ORDER

90.     Pursuant to the Court's Preliminary Approval Order, ECF 153, Lead Counsel, through the Claims Administrator, implemented a comprehensive notice program whereby, beginning on April 4, 2024, notice was given to members of the Settlement Class by mailing the Notice and Proof of Claim Form (together, the "Notice Packet") to potential Settlement Class Members and nominees.  *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), ¶¶5-8, attached hereto as Exhibit A.  As of May 13, 2024, a total of 16,448 copies of the Notice Packet were disseminated to potential Settlement Class Members and nominees.  *Id.*, ¶11.  Pursuant to the Court's Preliminary Approval Order, Summary Notice was also published in *The Wall Street Journal* and over *Business Wire* on April 11, 2024.  *Id.*, ¶12 & Ex. C.  The Notice and Proof of Claim Form, as well as other relevant documents and information about the Action, are available for review and easy

- 20 -

downloading, on www.AdaptHealthSecuritiesSettlement.com (the "Settlement Website"). *Id.*, ¶14. Further, the Claims Administrator established a toll-free phone line to provide information and to answer potential Settlement Class Members' questions. *Id.*, ¶13.

91.     The Notice describes, among other things, the following information necessary to evaluate the benefits of the Settlement to Settlement Class Members: (i) the rights of Settlement Class Members, including the right to submit a Proof of Claim Form, exclude oneself, or object to the Settlement; (ii) the nature, history, and progress of the litigation; (iii) the proposed Settlement, including the Settlement Amount; (iv) the process for filing a Proof of Claim Form; (v) a description of the Plan of Allocation; (vi) the fees and maximum expenses to be sought by Lead Counsel and the maximum reasonable costs and expenses to be sought by Lead Plaintiffs; (vii) the claims that will be released by Settlement Class Members who remain in the Settlement Class; and (viii) contact information, including telephone numbers and email addresses, for the Claims Administrator and Lead Counsel should Settlement Class Members have questions about the Settlement.  The Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name.  Additionally, the Notice explains the procedures and deadlines for opting out of the Settlement Class or submitting comments or objections, and advises potential Final Approval Class Members of the scheduled Final Approval Hearing before this Court.  Murray Decl., Ex. A (Notice).

92.     As set forth in the Preliminary Approval Order, the deadline for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement, the Plan of Allocation, or to the application for attorneys' fees and expenses is May 29, 2024.  While this deadline has not yet passed, to date, not a single Settlement Class Member has objected to, or requested exclusion from, the Settlement.  *See* Murray Decl., ¶¶15-16.  Should any objections or

4872-8149-2922.v1

requests for exclusion be received, Lead Plaintiffs will address them in their reply papers, which are due June 12, 2024.

## VI.    THE PROPOSED PLAN OF ALLOCATION

93.    Lead Plaintiffs prepared the Plan of Allocation after careful consultation with their damages expert, Matthew Cain, Ph.D., with the objective of equitably distributing the Net Settlement Fund to Settlement Class Members.

94.    The Plan of Allocation allocates the Net Settlement Fund to Settlement Class Members on a *pro rata* basis after determining the Settlement Class Members' Recognized Loss Amounts.  Each Settlement Class Member that suffered damages and properly submits a valid Proof of Claim Form will receive a *pro rata* share of the Net Settlement Fund, subject to the $10.00 minimum payment.

95.    A "Recognized Loss Amount" will be calculated for each purchase or acquisition of AdaptHealth Securities for which adequate documentation is provided.  The calculation of Recognized Loss Amounts is explained in detail in the Notice and incorporates several factors. Recognized Loss calculations will be based on the expert's event-study analysis estimating the amount of artificial inflation in the price of AdaptHealth Securities during the Class Period, and will involve an analysis of when and for what price an Authorized Claimant purchased and sold their AdaptHealth Securities.  The Net Settlement Fund will then be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Loss Amounts.

96.    Once the Claims Administrator has processed all submitted claims, the Court has approved the Settlement, and all appeals are resolved, distribution will be made to Authorized Claimants.  An explanation of the thorough claim-review process, including how deficiencies will be addressed, is explained in the Stipulation, ¶¶8.5-8.9.

- 22 -

4872-8149-2922.v1

- 23 -

97.     After an initial distribution, if there is any balance remaining in the Net Settlement Fund after a reasonable amount of time from the initial date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), the Claims Administrator shall, if feasible, reallocate the remaining balance among Authorized Claimants in an equitable fashion.  If necessary, such reallocations will be repeated until it is no longer feasible or economical to distribute.

98.     Any *de minimis* balance that still remains in the Net Settlement Fund after such reallocation(s), which is not feasible or economical to reallocate, shall be donated to the Investor Protection Trust.

99.     Claims processing like the method proposed here is standard in securities class action settlements as it has long been found to be effective, as well as necessary insofar as neither Lead Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.  In sum, the Plan of Allocation, developed in consultation with Lead Plaintiffs' damages expert, was designed to fairly and equitably allocate the Net Settlement Fund among Authorized Claimants, does not provide preferential treatment to any Settlement Class Member, segment of the Settlement Class, or to Lead Plaintiffs and is thus fair, reasonable, and adequate and should be approved.

100.    The Plan of Allocation was fully described in the Notice.  To date, there has been no objection to the proposed plan.

## VII.    RISKS OF CONTINUED LITIGATION

101.    Because of the extensive discovery undertaken and advanced posture of this Action, Lead Plaintiffs and Lead Counsel have a thorough understanding of the strengths and potential weaknesses of the case.  Lead Plaintiffs and Lead Counsel had confidence in the merits of this Action.

- 23 -

4872-8149-2922.v1

102.    Nonetheless, Lead Plaintiffs and Lead Counsel recognize that they faced considerable challenges and defenses if the Action were to continue to a decision on the pending class certification motion, summary judgment, and trial, as well as the likely appeals that would follow even if Lead Plaintiffs won a favorable verdict against Defendants.

103.    The Settlement provides an immediate and certain benefit to the Settlement Class in the form of a $51,000,000 cash payment, plus interest, and 1 million Settlement Shares.  The Settlement Cash represents approximately 10% of the estimated recoverable damages in this Action.

104.    The Settlement also provides for future protections to the Settlement Class and current AdaptHealth shareholders through the Corporate Governance Changes.  Lead Plaintiffs allege, among other things, that the Settlement Class was harmed by AdaptHealth's Board's failure to disclose its former CEO's looming potential punishment due to his alleged involvement in a foreign tax fraud.  The Corporate Governance Changes significantly reduce the likelihood that the same or similar conduct will damage AdaptHealth investors in the future.  Specifically, the annual elections (subject to shareholder approval), the shareholder nomination, and the resignation provisions will make members of the Board more accountable to AdaptHealth investors.  The removal of single-trigger accelerated vesting provisions will also ensure that executives such as McGee will not be able to profit from the vesting of shares when they are placed on leave.  The Board's ability to appoint a Lead Independent Director will add further oversight to the Board and protect the Settlement Class and future AdaptHealth investors.

105.    It is well recognized that such corporate governance reforms confer both non-monetary and monetary value to the Settlement Class.  The non-monetary benefits are described in more detail in ¶104, above.  Academic and industry research also indicates that firms with better corporate governance perform better financially.  *See, e.g.*, Lawrence D. Brown & Marcus L. Caylor, *The Correlation between Corporate Governance and Company Performance*, Institutional

- 24 -

Shareholder Services (2004); Ira M. Millstein and Paul W. MacAvoy, *The Active Board of Directors and Performance of the Large Publicly Traded Corporation*, 98 Colum. L. Rev. 1283, 1318 (1998); *see also* Lucian A. Bebchuk & Assaf Hamdani*, The Elusive Quest for Global Governance Standards*, 157 U. Pa. L. Rev. 1263, 1266 (2009).  Indeed, strong corporate governance correlates with higher stock prices for public companies.  Jack Duffy, *How Long Can U.S. Stocks Keep Their Edge*, N.Y. Times, Sun. Bus., Jan. 9, 2011 at 16.

106.    Thus, as a direct result of the Settlement, the Settlement Class and other AdaptHealth investors are positioned to reap long-term benefits of strong corporate governance while materially reducing the risks of harm from improper actions by management in the future.

107.    Lead Plaintiffs and Lead Counsel believe that the proposed Settlement is a positive, outstanding result for the Settlement Class considering the risks of continued litigation.  Some of the most serious risks to the Settlement Class are discussed below.

### A.    Risks Concerning Class Certification

108.    While Lead Plaintiffs and Lead Counsel believe that the class would have been certified over Defendants' objections, they recognize that the Court could have agreed with Defendants that class certification was improper in this Action.  If the Court sided with Defendants on this issue, no class-wide recovery would have been possible.

109.    In the opposition to class certification, Defendants argued that Lead Plaintiffs cannot invoke the *Basic* presumption of class-wide reliance in this Action.  Defendants claimed that the allegedly concealed information regarding the organic growth issue and McGee tax issue was already available to the market prior to the Jehoshaphat Report and AdaptHealth's April 13, 2021 press release.  Defendants sought to undermine class-wide reliance on the organic growth issue by arguing that the Jehoshaphat Report was based on public information.  Defendants also sought to undermine class-wide reliance regarding McGee's tax fraud by arguing that his involvement in the

- 25 -

tax fraud was already published in foreign, non-English news sources. Without the *Basic* presumption, individual reliance issues would likely predominate class-wide issues and likely render class certification improper under Fed. R. Civ. P. 23(b)(3).

110. Defendants further argued that the organic growth issue and the McGee tax issue were unrelated, and thus, there would have to be two class periods, if any. Defendants sought to expand that argument to argue that Lead Plaintiffs could not represent either of these purported two classes.

111. Defendants also argued that Lead Plaintiffs could not trace purchases of AdaptHealth common stock to the Secondary Offering, which would preclude Lead Plaintiffs from establishing standing for their §11 claims. Defendants had also stated that they would seek to preclude the expert rebuttal of Daniel Taylor as an improper expert report.

112. Even if the Court agreed with Lead Plaintiffs that Defendants' arguments lacked merit and granted Lead Plaintiffs' class certification motion, Defendants would likely have sought to appeal that decision under Fed. R. Civ. P. 23(f). The outcome of any appeal would be uncertain, but would undoubtedly cause additional delay and expense.

113. Prevailing at class certification and on a Rule 23(f) appeal would by no means end the litigation. Even if the class certification motion was granted, Lead Plaintiffs would still have to successfully argue liability at summary judgment, trial, and any appeals that would follow a favorable verdict.

**B.    Risks Concerning Liability and Damages**

114. Lead Plaintiffs and Lead Counsel also recognize that there were several substantial risks to establishing Defendants' liability. Throughout the litigation, Defendants vigorously contended that they made no actionable misstatements or omissions, and lacked the requisite scienter. At trial, Lead Plaintiffs would have to prove falsity, materiality, scienter, loss causation,

4872-8149-2922.v1

and damages.  Lead Plaintiffs would have to succeed on each element to secure recovery for the Settlement Class.  If Defendants' myriad arguments with respect to just one element were successful, the Settlement Class could recover nothing.

115.    In particular, Defendants have argued, and would have continued to argue, that some of their statements were inactionable "puffery" and that that they were under no duty to disclose McGee's involvement in an international tax fraud.

116.    Defendants had also argued throughout the litigation that Lead Plaintiffs could not establish that they made statements with the requisite scienter because the evidence did not support an intent to defraud.

117.    Defendants likewise would have challenged Lead Plaintiffs' theory of loss causation, arguing that losses on the "corrective disclosure" dates alleged in the CC were not proximately caused by the alleged fraud.  Defendants likely would have argued that the information allegedly disclosed by the Jehoshaphat Report and April 13, 2021 press release was already public.  In other words, Defendants' position is the disclosures on these dates revealed no new information to the market demonstrating that any of AdaptHealth's prior statements or omissions were false or misleading.

118.    Defendants therefore likely would have tried to mount a "truth-on-the-market" defense to the Settlement Class's losses suffered on those dates by arguing that the allegedly misleading statements could not have caused AdaptHealth's stock price decline if the relevant facts had already been disclosed.

119.    Furthermore, at trial, Lead Plaintiffs' claims would be subject to complex expert testimony, including testimony offered by Defendants' experts that would conflict with Lead Plaintiffs' expert analysis.  Indeed, the opinions of each side's experts had thus far varied substantially.  Continued litigation posed the risks that Defendants could prevail in a complex,

- 27 -

uncertain, and inevitable "battle of the experts" which would, at the very least, increase the expense involved with advancing the litigation toward a positive resolution at trial. Expert battles are unpredictable. A jury might credit Defendants' experts and accordingly reject Lead Plaintiffs' claims, or substantially reduce recoverable damages.

120. The proposed Settlement would avoid exposing the Settlement Class to these significant risks and delays by providing an immediate, certain recovery of $51,000,000, plus accrued interest, 1 million shares of AdaptHealth common stock, and significant Corporate Governance Reforms.

## VIII.    THE FEE AND EXPENSE APPLICATION

121. For its extensive efforts on behalf of the Settlement Class, Lead Counsel is applying to the Court for an award of attorneys' fees of 25% of the cash and stock portions of the Settlement. The percentage method is the standard and appropriate method of fee recovery because it aligns the lawyers' interest in being paid a fair fee with the interests of Lead Plaintiffs and the Settlement Class in achieving the maximum recovery in the shortest amount of time required under the circumstances. Use of the percentage method has been recognized as appropriate by the Supreme Court and the Third Circuit for cases of this nature where a common fund has been recovered.

122. Based on the quality of the result achieved, the extent and quality of the work performed, the significant risks of the litigation, and the fully contingent nature of the representation, Lead Counsel respectfully submits that the requested fee award is reasonable and should be approved. As discussed in greater detail in the Fee Memorandum, a 25% fee award is consistent with fee award percentages granted in this Circuit in similar complex, contingent litigation, and is fair and reasonable in light of all the circumstances in this Action.

123. To date, there have been no objections to the request for attorneys' fees and litigation expenses.

4872-8149-2922.v1

#### A.      The Settlement Benefit Achieved

124.    Courts in this Circuit have consistently recognized that the result achieved is a major factor to be considered in making a fee award.  Here, the $51,000,000 Settlement Cash, 1 million Settlement Shares, and Corporate Governance Reforms are excellent results in both absolute terms and when viewed in light of the risks of continued litigation.

125.    Attached hereto as Exhibit B is Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements, 2023 Review and Analysis* (Cornerstone Research 2023).  Exhibit B is also available at https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf.

126.    According to Cornerstone Research's annual report on securities class action settlements, the median securities class action settlement values over the last five years ranged from $11.7 million to $15 million.  Ex. B. at 1.  The percentage recovery for the median settlement in securities class actions was 4.5% for cases settled in 2023 and 4.8% for cases settled between 2014-2022.  *Id.* at 6, fig. 5.  And for cases in the same damages range as this case ($250m-$499m), the percentage recovery for the median settlement in securities class actions was 3.5% for cases settled in 2023 and 4.3% for cases in that range settled between 2014-2022.  When cases involving both Rule 10b-5 and §11 and/or §12(a)(2) claims were considered, the percentage recovery for the median settlement between 2014 and 2023 was 6.6%.  *Id.* at 6, fig. 5 and 8, fig 6.  The Settlement here far exceeds all of these measures.

127.    The Settlement here provides an immediate and certain recovery for the Settlement Class of $51,000,000, in Settlement Cash which is approximately 10% of estimated reasonably recoverable damages (assuming Lead Plaintiffs could prevail on all of their arguments about the causes of the declines in the price of AdaptHealth's common stock on the "corrective disclosure" dates Lead Plaintiffs alleged, among other issues).  The Settlement Cash alone well exceeds the

median and average recoveries in securities class actions dating as far back as 2014. Additionally, the Settlement provides an immediate and certain recovery of 1 million Settlement Shares, and provides for significant Corporate Governance Reforms. And with the price of AdaptHealth stock closing at $9.83 on May 14, 2024, the total monetary value of the Settlement, including the one million Settlement Shares as of that date, exceeds 12%.

128. The cash recovery was obtained through the extensive efforts of Lead Counsel, but without the substantial expense, delay, risk, and uncertainty of continued litigation and trial. As a result of the Settlement, Settlement Class Members will receive compensation for their losses in AdaptHealth Securities and avoid the substantial expense, delay, and uncertainty of continued litigation.

129. The Settlement obtained provides an immediate and substantial benefit to the Settlement Class and supports Lead Counsel's fee request.

### B. The Substantial Risks of the Litigation

130. As described above, there would be substantial risks facing Lead Plaintiffs and the Settlement Class if this litigation continued. From the outset, Defendants adamantly denied any wrongdoing and aggressively litigated their defenses through discovery and class certification. They would have continued to contest liability and damages at summary judgment, trial, and on appeal. This Action presented a number of significant risks and uncertainties, including whether a class would have been certified and whether Defendants could have prevailed on their truth-on-the-market or scienter arguments, among others.

131. Continued litigation posed additional challenges, including successfully defending class certification on appeal (assuming the Court granted the pending class certification motion), and establishing loss causation and damages at trial. Indeed, it became clear that issues relating to market efficiency, loss causation, tracing, and damages would have likely come down to a contested

4872-8149-2922.v1

and unpredictable "battle of the experts." Accordingly, in the absence of the Settlement, there was a very real risk that the Settlement Class would have recovered an amount significantly less than the total Settlement Amount – or even nothing at all.

132. Although Lead Counsel believes that the case against Defendants is strong, there is no question that to prevail here, Lead Plaintiffs would have had to overcome a number of significant legal and factual challenges. The $51 million in Settlement Cash, 1 million Settlement Shares, and Corporate Governance Reforms are an outstanding result under any scenario. When taking into consideration the substantial risks involved in this case, Lead Counsel's fee request is fair and reasonable.

**C.      The Skill Required and the Quality of Work**

133. The requested fee is also warranted in light of the extensive efforts on the part of Lead Plaintiffs' Counsel, as outlined above, required to produce this result.

134. As evidenced by their firm resumés, included as exhibits to the Declaration of Douglas R. Britton Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Decl.") and the Declaration of Andrew L. Zivitz Filed on Behalf of Kessler Topaz Meltzer & Check, LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Kessler Topaz Decl.") attached hereto as Exhibits C and D, respectively, Lead Plaintiffs' Counsel are among the most experienced and skilled practitioners in the corporate and securities litigation fields, and the firms have long and successful track records in securities cases throughout the country, including within this Circuit. Lead Plaintiffs' Counsel's reputation and experience in complex cases facilitated their ability to negotiate the favorable Settlement on behalf of the Settlement Class.

135. The AdaptHealth Defendants were primarily represented by Willkie Farr & Gallagher LLP, a firm with a strong reputation for the tenacious defense of class actions and other complex

- 31 -

4872-8149-2922.v1

civil matters. Defendant McGee was primarily represented by Kramer Levin Naftalis & Frankel LLP, a firm with a strong reputation for the tenacious defense of white collar issues and other complex civil matters. The fact that Lead Plaintiffs' Counsel achieved this excellent Settlement in the face of such formidable legal opposition further evidences the quality of their work.

136. Lead Plaintiffs' Counsel[5] spent approximately 8,550 hours of time on this case, including: (i) conducting a comprehensive investigation into the allegedly wrongful acts, which entailed reviewing and analyzing AdaptHealth's SEC filings, press releases, and other public statements, as well as: (a) publicly available documents, reports, announcements, and news articles concerning AdaptHealth; and (b) research reports prepared by securities and financial analysts regarding AdaptHealth; (ii) working with a damages and loss causation expert to analyze AdaptHealth's stock price movement and to opine at class certification; (iii) drafting the comprehensive, factually-detailed Consolidated Complaint; (iv) briefing Defendants' motion to dismiss; (v) engaging in the substantial discovery efforts described above, which included: (a) drafting and serving discovery requests on Defendants and third-parties; (b) receiving and analyzing over 450,000 pages of documents; (c) taking or defending nine fact and expert witness depositions; (d) responding to Defendants' discovery requests; (e) engaging in multiple telephonic meet and confer conferences with Defendants and third-parties; (f) briefing multiple discovery disputes involving Defendants; and (g) attending an in-person discovery conference; (vi) fully briefing class certification; (vii) drafting and exchanging detailed mediation statements; (viii) engaging in two separate mediation sessions overseen by an experienced mediator; (ix) conducting negotiations regarding the terms of the proposed Settlement; (x) and drafting the Stipulation and its exhibits, along with the preliminary approval brief.

---

[5] "Lead Plaintiffs' Counsel" means Robbins Geller and Kessler Topaz Meltzer & Check, LLP.

4872-8149-2922.v1

137.    Lead Plaintiffs' Counsel will continue to work towards effectuating the distribution of the Net Settlement Fund in the event the Court grants final approval.

138.    Lead Plaintiffs' Counsel expended a total of 8,556.50 hours prosecuting this Action. The billing rates for partners and counsel range from $785-$1,400, associates' rates range from $440-$580, and paralegals' rates range from $240-$410.  Detailed information concerning the rates and times billed by counsel on this case is provided in the accompanying firm-specific declarations. *See* Robbins Geller Decl., Ex. A; Kessler Topaz Decl., Ex. A.

139.    Accordingly, the requested fee of 25% of the cash recovery, which equates to $12,750,000, and of 25% of the Settlement Shares, which equates to a value of $2,457,500 as of the close of trading on May 14, 2024, represents a modest multiplier of approximately 2.56.  This multiplier is within the multiplier range of one to four frequently used as a cross check.  Given the extraordinary results achieved in this Action, Lead Plaintiffs' Counsel's 8,556.50 hours, valued at $5,930,250.50, support the reasonableness of the fee request.

### D.    The Contingent Nature of the Fee

140.    The substantial risks of the litigation, described herein and in the Settlement Memorandum, also constituted risks that Lead Plaintiffs' Counsel might never be paid for their efforts.  Indeed, Lead Plaintiffs' Counsel have not been compensated for any time or expense since this case began in 2021, over two years ago.

141.    Courts consistently recognize that the risk of receiving little or no recovery is a major factor in considering an award for attorneys' fees.  This risk is even more pronounced in securities class actions.  A study of securities class actions filed after the passage of the PSLRA in 1995, found that between 1997 and 2023, 43% of the cases filed were dismissed in defendants' favor. *See Securities Class Action Filings, 2023 Year in Review* (Cornerstone Research 2024) at 19 (attached hereto as Exhibit E).

4872-8149-2922.v1

142.    Moreover, courts have repeatedly recognized that it is in the public interest to have experienced and able counsel enforce the securities laws and regulations pertaining to the duties of officers and directors of public companies.  Vigorous private enforcement of the federal securities laws can only occur if private plaintiffs take an active role in protecting the interests of shareholders.

143.    Lead Counsel knows from experience that despite the most vigorous and competent of efforts, attorneys' success in contingent litigation such as this is never assured.  Even plaintiffs who succeed at class certification, summary judgment, and trial may find a judgment in their favor overturned on appeal or on a post-trial motion.  Because the fee to be awarded is entirely contingent, the only certainty from the outset was that there would be no fee without a successful result and that such a result would be realized only after a lengthy and difficult effort.  As discussed in greater detail above, this case was fraught with significant risk factors concerning liability and damages.  Indeed, were this Settlement not achieved, Lead Plaintiffs and Lead Counsel faced potentially years of costly and risky litigation with an uncertain outcome.  It is possible that a jury could have found no liability or no damages.  Lead Counsel therefore believes that the contingent nature of counsel's representation strongly favors approval of the requested fee.

## IX.    PAYMENT OF THE REQUESTED EXPENSES IS FAIR AND REASONABLE

144.    Lead Plaintiffs' Counsel are also moving for payment of $669,883.07 in costs, charges, and expenses that were reasonably and necessarily incurred in prosecuting and resolving this Action, as outlined in the accompanying firm-specific declarations.  Lead Plaintiffs' Counsel advanced all of the litigation expenses.  *See* Robbins Geller Decl., Ex. B; Kessler Topaz Decl., Ex. B.

145.    From the beginning of this Action, Lead Plaintiffs' Counsel were aware that they might never recover any of their expenses, and, at the very least, would not recover anything until the Action was successfully resolved.  Counsel also understood that, even assuming the case was

ultimately successful, payment of expenses would not compensate them for the lost use of funds advanced by them to prosecute this Action. Thus, counsel were motivated to, and did, take steps to assure that only necessary expenses were incurred for the vigorous and efficient prosecution of the case.

146.    Of the total amount of expenses, $433,501.51, or approximately 64%, was expended on experts, consultants, and investigators, including Lead Plaintiffs' loss causation and market efficiency expert, Matthew Cain, Ph.D., Lead Plaintiffs' tracing rebuttal expert, Professor Daniel Taylor, and Lead Plaintiffs' corporate governance consultant, ValueEdge Advisors, LLC. These experts, consultants, and investigators were retained to assist in the prosecution of the Action. Dr. Cain also assisted Lead Counsel with the development of the proposed Plan of Allocation.

147.    Another substantial component of Lead Counsel's expenses was for hosting the over 450,000 pages of documents that were produced in this case. Robbins Geller has installed top tier database software, infrastructure, and security. *See* Robbins Geller Decl., ¶6(h). Robbins Geller's hosting fees are $56,375.80, which is significantly less than what outsourcing these services to a third-party vendor would cost.

148.    The other expenses for which counsel seeks payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. Those expenses include, among others, court fees and copying costs.

149.    In view of the complex nature of this Action, the expenses incurred were reasonable and necessary to pursue the interests of the Settlement Class. Accordingly, Lead Plaintiffs' Counsel respectfully submit that the request for expenses be granted.

## X.    THE REQUESTED AWARDS FOR LEAD PLAINTIFFS ARE FAIR AND REASONABLE

150.    Lead Counsel respectfully requests that the Court approve awards for Lead Plaintiffs Delaware County in the amount of $9,500.00 and Bucks County in the amount of $3,528.00, for a

total of $13,028.00.  An award for reimbursement of a class representative's reasonable costs and expenses is authorized under the PSLRA, 15 U.S.C. §78u-4(a)(4).

151.    As set forth in the accompanying declarations, Lead Plaintiffs spent a significant amount of time contributing to the litigation and benefitting the Settlement Class by reviewing the relevant documents; staying apprised of developments in the case and making themselves available to Lead Counsel; providing Lead Counsel with extensive information and materials, including in response to discovery requests; reviewing pleadings and briefs; conferring with Lead Counsel throughout the litigation, including about the settlement negotiations and mediations; and preparing for and providing deposition testimony.  *See* Declaration on Behalf of Delaware County Employees Retirement System in Support of Motion for Final Approval of Settlement, Plan of Allocation, Award of Attorneys' Fees and Expenses, and Award to Lead Plaintiff, ¶¶3, 6; Declaration on Behalf of Bucks County Employees' Retirement System in Support of Motion for Final Approval of Settlement, Plan of Allocation, Award of Attorneys' Fees and Expenses, and Award to Lead Plaintiff, ¶¶3, 6 (attached hereto as Exhibits F and G, respectively).  Overall, Delaware County devoted approximately 75 hours and Bucks County approximately 43 hours to this Action.

152.    Moreover, the Notice stated that Lead Plaintiffs would request reimbursement of costs and expenses in an amount not to exceed $60,000 in the aggregate.  To date, there have been no objections to such a request.  Thus, Lead Counsel believes that the requested awards for the time and effort Lead Plaintiffs have expended on behalf of the Settlement Class is fair and reasonable.

## XI.    CONCLUSION

153.    For all the foregoing reasons, Lead Counsel respectfully requests that the Court: (1) grant final approval of the Settlement and Plan of Allocation as fair, reasonable, and adequate; (2) approve the application for an award of attorneys' fees of 25% of the Settlement Amount (or $12,750,000.00 and 250,000 shares of Settlement Stock), plus $669,883.07 in expenses that were

4872-8149-2922.v1

- 37 -

reasonably and necessarily incurred by Lead Plaintiffs' Counsel in prosecuting and resolving this Action, plus interest on both amounts; and (3) approve payments totaling $13,028.00 for Lead Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4).

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed in San Diego, California this 15th day of May 2024.

s/ DOUGLAS R. BRITTON
DOUGLAS R. BRITTON

4872-8149-2922.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on May 15, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Douglas R. Britton
DOUGLAS R. BRITTON

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  dougb@rgrdlaw.com

# Mailing Information for a Case 2:21-cv-03382-HB DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM v. ADAPTHEALTH CORP. F/K/A DFB HEALTHCARE ACQUISITIONS CORP. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **MICHAEL ALBERT**
  malbert@rgrdlaw.com

- **NAUMON A. AMJED**
  namjed@ktmc.com,hpaffas@ktmc.com,iyeates@ktmc.com,4980043420@filings.docketbird.com,mswift@ktmc.com

- **Lee Albert**
  lalbert@glancylaw.com,lee-albert-5832@ecf.pacerpro.com,info@glancylaw.com

- **ALLISON A. BERKOWITCH**
  ABERKOWITCH@WILKE.COM

- **DOUGLAS R. BRITTON**
  dougb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Helen Jane Bass**
  hbass@ktmc.com

- **JENNIFER N. CARINGAL**
  jcaringal@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **STEVEN D. COSTELLO**
  sdc@saxtonstump.com,lk@saxtonstump.com,dmk@saxtonstump.com,bkilgore@saxtonstump.com

- **Vincent A. Coppola**
  vcoppola@pribanic.com,gregory@pribanic.com

- **Todd Cosenza**
  tcosenza@willkie.com,mao@willkie.com

- **MELISSA HAZELL DAVIS**
  mdavis@griesingmazzeo.com,dquay@griesingmazzeo.com

- **Zeh S. Ekono**
  zekono@willkie.com

- **STEPHEN J. FLEURY , JR**
  sjf@saxtonstump.com,lk@saxtonstump.com,dmk@saxtonstump.com,bkilgore@saxtonstump.com

- **RYAN GANDER**
  RGander@KRAMERLEVIN.com

- **FRANCINE FRIEDMAN GRIESING**
  fgriesing@griesingmazzeo.com

- **VINCENT P. IANNECE**
  VIANNECE@WILLKIE.COM

- **DANI R. JAMES**
  djames@kramerlevin.com

- **CHRISTOPHER R. KINNON**
  ckinnon@rgrdlaw.com

- **KEVIN A. LAVELLE**
  klavelle@rgrdlaw.com,e_file_sd@rgrdlaw.com,bengfelt@rgrdlaw.com

- **MARGOT G. MOONEY**
  MMOONEY@WILLKIE.COM

- **MATTHEW MUSTOKOFF**
  mmustokoff@ktmc.com,5558085420@filings.docketbird.com,mswift@ktmc.com

- **DANIELLE S. MYERS**
  danim@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **JUAN CARLOS SANCHEZ**
  jsanchez@rgrdlaw.com

- **MARJORIE E. SHELDON**
  MSheldon@KRAMERLEVIN.com

- **ELLEN GUSIKOFF STEWART**
  elleng@rgrdlaw.com,jstark@rgrdlaw.com,E_file_sd@rgrdlaw.com

- **JOSEPH J. TULL**
  jtull@rgrdlaw.com

- **ANDREW L. ZIVITZ**
  azivitz@ktmc.com,3949407420@filings.docketbird.com,rhrouda@ktmc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing. You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)