```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DELAWARE COUNTY EMPLOYEES      :    CIVIL ACTION
RETIREMENT SYSTEM, et al.      :
                               :
        v.                     :
                               :
ADAPTHEALTH CORP. f/k/a DFB    :
HEALTHCARE ACQUISITIONS        :    NO. 21-3382
CORP., et al.                  :
```

MEMORANDUM

Bartle, J.                                          July 10, 2024

Before the court is the motion of lead plaintiffs Delaware County Employees Retirement System ("Delaware County") and Bucks County Employees' Retirement System ("Bucks County") for final approval of the settlement agreement (Doc. # 154) in this putative class action.

The case involves alleged violations by defendants AdaptHealth Corp. and certain of its officers and directors of the Securities Act of 1933, 15 U.S.C. §§ 77a, et seq., the Securities and Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78j(b) and 78(t), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  The settlement, in summary, consists of $51 million in cash, plus 1,000,000 common shares of AdaptHealth.[1] In addition, the settlement requires AdaptHealth to put in place

---

1. As of the close of the market on May 14, 2024, shares of AdaptHealth (NASDAQ: AHCO) were valued at $9.83.

a series of corporate governance reforms.  Lead plaintiffs also seek approval of the complex plan of allocation of the settlement funds.

There is also pending a motion for attorneys' fees for lead counsel and litigation expenses (Doc. # 155).  Lead plaintiffs seek approval of a payment of $12,750,000, that is 25% of the cash portion of the settlement amount of $51 million, and 250,000 shares, that is 25% of the 1,000,000 settlement shares, to Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or "lead counsel").  Additionally, lead plaintiffs seek to reimburse lead counsel for $669,883.07 in litigation expenses and to reimburse local counsel, Kessler Topaz Meltzer & Check LLP ("Kessler Topaz"), for $433.88 in litigation expenses.  Finally, lead plaintiff Delaware County moves for an award of $9,500 and lead plaintiff Bucks County moves for an award of $3,528.

On March 5, 2024, the court granted preliminary approval of the settlement.  Pursuant to court order (Doc. # 153), 19,143 copies of the settlement notice were provided to putative class members who owned shares of AdaptHealth during the relevant time period.  Additionally, the notice was published in The Wall Street Journal and Business Wire on April 11, 2024.  There were no objections to the settlement.  The court held a hearing on the pending motions on June 20, 2024.

I

Lead plaintiffs allege in their amended complaint that AdaptHealth, a home medical equipment business, inflated its organic growth metrics and failed to inform investors of the role of Luke McGee, the former CEO, in a tax scheme.  Under McGee, AdaptHealth acquired at least fifty-nine businesses between 2012 and 2019.  It increased its revenue 200% in the three years preceding its 2019 merger with DFB, a special purpose acquisition company.[2]  At that time, it became publicly traded.  On or about November 8, 2019, defendants stated that AdaptHealth had a goal to acquire $100 million in revenue and reported strong growth each quarter during the class period, projecting organic revenue growth of 6 to 8%.

During this period, McGee allegedly failed to pay his Danish taxes and was under investigation by the tax authorities.  In May 2019, McGee settled with Danish tax authorities to repay 1.55 billion Danish Kroner in connection with this scheme.  This settlement did not provide immunity from criminal prosecution.  Additionally, North Channel Bank, which McGee co-owned, agreed to pay criminal fines of 110 million Danish Kroner in September 2019 for faking trades to secure tax reimbursements.

---

2.  A special purpose acquisition company ("SPAC") is a company without commercial operations that is formed strictly to raise capital through an initial public offering for the purposes of acquiring or merging with an existing company.

AdaptHealth and McGee failed to disclose these material facts to investors.

Plaintiffs also alleged that AdaptHealth's organic growth had slowed in late 2020 but, in order to disguise this fact, defendants changed the definition of the "organic revenue growth" metric.

On April 13, 2021, AdaptHealth announced that McGee would be on unpaid leave from his role as co-CEO and Director because he had been formally charged with tax fraud.  On this news, AdaptHealth's stock price dropped 20%.

On July 19, 2021, the Jehoshaphat Research reported that, although AdaptHealth reported strong organic growth, AdaptHealth's organic revenue growth, when calculated in line with industry standards, was actually negative for the first six months of 2021.  This resulted in a stock decline of 6% on the last day of the class period.

Plaintiff Robert Charles Faille Jr. filed a complaint in this court on July 29, 2021.  Several other plaintiffs initiated actions as well.  On October 14, 2021, this court appointed the Delaware County Employees Retirement System and the Bucks County Employees' Retirement System as lead plaintiffs and approved Robbins Geller Rudman & Dowd LLP as lead counsel (Doc. # 12).  Lead plaintiffs filed an amended consolidated class action complaint, which added allegations regarding

McGee's alleged involvement in an international tax scheme and regarding the effect of defendants' statements clarifying the effect McGee's tax scheme had on his status as CEO on AdaptHealth stock price. The amended complaint added members of AdaptHealth's board of directors as defendants and claims under the Securities Act of 1933.

Defendants moved to dismiss lead plaintiffs' amended consolidated complaint on January 20, 2022. They argued that lead plaintiffs had failed to allege materially false or misleading statements or omissions, failed to plead sufficient facts supporting scienter, and failed to allege loss causation. The court denied this motion on June 9, 2022. Del. Cnty. Emps. Ret. Sys v. AdaptHealth Corp., 606 F. Supp. 3d 124 (E.D. Pa. 2022) (Doc. # 50).

The parties engaged in extensive fact discovery over many months, which included various third parties. In response to discovery requests, defendants produced over 38,000 pages of documents. On November 21, 2022, lead plaintiffs moved to compel defendant McGee to produce documents regarding the tax scheme allegations (Doc. # 87). The court granted lead plaintiffs' motion on December 7, 2022 and ordered the documents to be produced on or before December 30, 2022 (Doc. # 92).

Plaintiffs moved to certify a class on July 28, 2022 (Doc. # 65). While that motion was pending, the parties

continued with discovery. During that time, the court resolved multiple motions to compel. On February 28, 2023, the court set dates for discovery and briefing for class certification and fact discovery. The court ordered that discovery as to class certification would end on February 28, 2023. Lead plaintiffs' motion for class certification was fully briefed on May 22, 2023.

At the request of the parties, the court stayed the action on June 7, 2023 so that they could engage in private mediation (Doc. # 139). The parties participated in two mediation sessions with extensive settlement discussions from August 2023 and February 2024. On February 14, 2024, the parties reached an agreement-in-principle to resolve the action.

The proposed settlement class consists of all persons who purchased or otherwise acquired AdaptHealth common stock or call options on AdaptHealth common stock or sold put options on AdaptHealth common stock during the period between November 8, 2019 and July 16, 2021, inclusive. As noted, no member of this putative class has objected to the settlement agreement.

II

A district court may only approve a settlement of class action litigation after a hearing and upon finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Our Court of Appeals has identified nine

factors to guide the lower courts in approving proposed class action settlements.  See Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975).  Those factors are:

> (1) The complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 534-35 (3d Cir. 2004) (citing Girsh, 521 F.2d at 156-57).  The court should presume that a settlement was fair if it makes a preliminary finding that (1) the settlement was developed as a result of arms' length negotiations; (2) there was sufficient discovery in the litigation; (3) proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.  In re Cendant Corp. Litig., 264 F.3d 201, 232 n.18 (3d Cir. 2001).

The law favors settlement of class action litigation. In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 784 (3d Cir. 1995).  Such settlement conserves valuable judicial resources, avoids the expense of

formal litigation, and resolves disputes that would otherwise linger for years.  See id.

The parties engaged in two mediation sessions with David Murphy, a mediator with experience in securities class actions.  The involvement of a neutral mediator and multiple mediation sessions demonstrates that these negotiations were conducted at arm's length.  See Utah Ret. Sys. v. Healthcare Servs. Grp., Civ. A. No. 19-1227, 2022 WL 118104, at *8 (E.D. Pa. Jan. 12, 2022).  The mediation sessions occurred after extensive discovery.  In advance of the mediation session, defendants produced documents in response to specific search terms, and defendants, as noted above, produced over 38,000 pages in connection with this action.  Robbins Geller's resume demonstrates that lead counsel have excellent experience and success in class action settlements.  Finally, no member of the class has objected to the settlement.  Accordingly, the court presumes that this settlement is reasonable.

Regardless of this presumption, the court will nevertheless evaluate the settlement in light of the factors enunciated by our Court of Appeals in Girsh.

The first Girsh factor is the complexity, expense, and likely duration of the litigation.  The litigation has been ongoing for more than two years and had progressed through discovery prior to settlement.  The parties attended multiple

mediation sessions which included separate briefing and discovery into specific search terms. Continued litigation would have required additional discovery, and plaintiffs likely would have needed to retain one or more expert witnesses concerning the Danish criminal justice system so that the jury could better understand lead plaintiffs' claims against McGee. Finally, securities litigation invariably requires economic and financial expert testimony, which would inevitably lead to a vigorous and complex "battle of the experts." The first factor favors approval of the settlement.

The second Girsh factor is the "reaction of the class to the settlement." Again, no member of the class objected to the award. The lack of any objection supports approval of the settlement.

The third Girsh factor which the court evaluates is the stage of the proceedings and the amount of discovery completed. This factor requires the court to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating." Warfarin, 391 F.3d at 537 (quoting Cendant, 264 F.3d at 235). The case was pending for two years prior to settlement, and defendants produced over thirty thousand pages of documents in response to discovery requests. During discovery as to class certification, parties exchanged eight expert reports. Counsel undoubtedly understood the merits

of the case prior to reaching a settlement. The third Girsh factor favors settlement approval.

Next, the court will take into account the potential risks that lead plaintiffs would encounter in establishing liability as set forth in the fourth Girsh factor. Significantly, lead plaintiffs would face the risk that defendants did not have a duty to disclose wrongdoing that was, at the time, uncharged and unadjudicated. Additionally, lead plaintiffs would face a risk in establishing that AdaptHealth did not adequately disclose its changes to the method by which it calculated organic growth. An analysis of this factor favors the settlement.

Girsh states as the fifth factor that the court should weigh the potential risks that lead plaintiffs would confront in establishing damages. Defendants challenged lead plaintiffs' theory of loss causation. Thus lead plaintiffs would risk failure in establishing that the losses AdaptHealth shareholders suffered were in fact the result of corrective disclosures made by defendants instead of information already known to the market. This dispute would require highly technical economic testimony. Plaintiffs faced the "uncertainty attendant to such a battle[.]" See, e.g., Sullivan v. DB Invs., Inc., 667 F.3d 273, 322 (3d Cir. 2011).

The court next turns to the sixth Girsh factor, the risks to the lead plaintiffs in maintaining their litigation through trial. There is always a risk that a class, upon proceeding through litigation, could become decertified. Warfarin, 391 F.3d at 537. The risk of decertification shows this factor favors approval of settlement.

The seventh Girsh factor focuses on "whether the defendants could withstand a judgment for an amount significantly greater" than the settlement reached. Cendant, 264 F.3d at 240. There is no evidence in the record as to defendants' ability to withstand a greater judgment. This factor weighs neither in favor nor against approval of the settlement. See Warfarin, 391 F.3d at 538.

The final two Girsh factors are the range of reasonableness of the settlement in light of both the best possible recovery and the attendant risks of litigation. A $51 million cash settlement is approximately 10% of the total damages estimated in this action. That recovery surpasses many other approved settlements in our circuit. See, e.g., Beltran v. SOS Ltd., Civ. A. No. 21-7454, 2023 WL 319895, at *6 (D.N.J. Jan. 3, 2023). When the value of the settlement shares is taken into account,[3] the settlement value exceeds 12%. If lead

---

3. As noted, on May 14, 2024, shares of AdaptHealth (NASDAQ: AHCO) were valued at $9.83. Therefore the total value of the settlement shares as of that day was $9.83 million.

plaintiffs continued to trial, it is possible that any one of the corrective disclosure dates, that is dates on which defendants corrected a misstatement or omission, resulting in a diminished stock price, would be successfully challenged by defendants.  Successfully challenging whether a decreased stock price was in fact the result of defendants' statements would limit the class's total recovery.  The settlement is within the range of reasonableness and thus these factors counsel toward approval.

The settlement is fair and reasonable and accordingly will be approved.

III

Lead plaintiffs also move for approval of fees for lead counsel in the amount of $12,750,000 plus 250,000 shares of AdaptHealth to be paid out of the approved settlement in favor of the class.  Under the settlement agreement before the court, the parties agreed that lead counsel, as Escrow Agent, "shall hold the Settlement Shares as fiduciary for the benefit of the Settlement Class and, as applicable, as Court-awarded attorneys' fees[.]"  Stipulation & Agreement of Settlement ¶ 4.6(f), Del. Cnty. Emps. Ret. Sys. v. AdaptHealth Corp., Civ. A. No. 21-3382 (E.D. Pa. Feb. 27, 2024) (Doc. # 149).  The agreement further states that

> [N]either the Escrow Agent nor the Claims Administrator shall sell, transfer or

> otherwise dispose of more than 250,000 Settlement Shares on any given day.  Except as set forth in the preceding sentence and subject to compliance applicable securities laws, there will be no restriction on the Escrow Agent's . . . right to hold or sell the Settlement Shares as they see fit.

Id. at ¶ 4.6(f).

Lead counsel under this Agreement are the ones who have the authority to sell all the shares.  The court, at the recent hearing, expressed serious concern that the sale by lead counsel of their own shares would likely result in the receipt of different prices than the prices received from their sale of the shares designated for the class since the sales would necessarily occur at different times.  Such different sale prices could result in the appearance of a breach of fiduciary duty if lead counsel sold their 250,000 shares for more per share than they sold the 750,000 shares reserved for the class.  It is important for lead counsel to avoid the image that they have put their own interests ahead of the class.  As our Court of Appeals stated in Huber v. Taylor, lead counsel must exercise their fiduciary duty to look after the best interests of the class members, and that duty "may not be dispensed with or modified simply for the conveniences and economies of class actions."  469 F.3d 67, 81 (3d Cir. 2006).

In response to the court's concern, lead counsel requested an opportunity to consider this issue anew and to file

a letter in support of the application for attorneys' fees. This letter, filed on July 1, 2024 (Doc. # 166), amended lead plaintiffs' proposal for distribution of the settlement shares. First, lead counsel stated they would work with their advisors at Merrill Lynch to sell all one million settlement shares upon final approval of the settlement.  Only after lead counsel have fully liquidated all the settlement shares would lead counsel take their 25% of the total net proceeds received.  This scheme ensures that lead counsel, along with the class members, "will bear the same risks (and reap the same benefits) with respect to the Settlement Shares."  The court finds this solution to be fair and equitable to all concerned.

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that the attorneys for the class are not to be paid more than a "reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6).  Both the Supreme Court and our Court of Appeals favor calculation of attorney's fees as a percentage of class recovery.  See Boeing Co. v. Van Gemert, 444 U.S. 472, 478-79 (1980); In re AT&T Corp., 455 F.3d 160, 164 (3d Cir. 2006).

A court may presume that a fee is reasonable when lead plaintiff approves of the fee request.  See In re Viropharma Inc. Secs. Litig., Civ. A. No. 12-2714, 2016 WL 312108, at *15

(E.D. Pa. Jan. 25, 2016) (citing Cendant, 264 F.3d at 220).  In this action, lead plaintiffs Delaware County and Bucks County endorse the fee request, and therefore the court presumes this fee is reasonable.

In determining the reasonableness of a proposed award for counsel in class action settlements such as this, our Court of Appeals has stated that a district court should consider the following seven so-called Gunter factors:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, and (7) the awards in similar cases.

Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000) (citing In re Prudential Ins. Co. of Am. Sales Pracs. Litig. Agent Actions, 148 F.3d 283, 336-40 (3d Cir. 1997)).  If the court does not reach a conclusion upon consideration of the Gunter factors, it may conduct a lodestar cross-check.  Cendant, 264 F.3d at 284-85.

First, the court will take into account the size of the fund created and the number of beneficiaries.  Lead plaintiffs achieved a cash settlement of $51 million, which includes a $1 million contribution from McGee, plus one million

shares of AdaptHealth common stock and governance reforms.  As noted above, the cash and stock portion of the settlement is approximately 12% of the total damages alleged, which is in line with or higher than class action settlements over the last ten years in this circuit.  Over 19,100 copies of the notice were sent to potential class members.  The first Gunter factor supports an approval of this fee.

No class members objected to the settlement.  Thus, the reaction of the settlement class, the second Gunter factor, weighs in favor of approval of the attorneys' fee requested.

The third Gunter factor is the skill and efficiency of the attorneys involved.  Lead counsel are highly experienced in securities law and class action litigation and was chosen specifically due to their expertise.  This factor certainly weighs in favor of approval of the fee request.

The fourth Gunter factor is the complexity and duration of the litigation.  The litigation was pending for two years, during which time the parties briefed a motion to dismiss and a motion for class certification as well as engaged in expedited discovery for the purposes of mediation.  While it is possible that lead counsel could have secured an even greater payment, such settlement secures certain payment rather than an uncertain payment far into the future.  These circumstances favor the granting of the award of attorneys' fees.

The court, pursuant to the fifth Gunter factor, considers the risk of nonpayment.  Lead counsel represented the class on an entirely contingent basis.  The risk created by representing a party on a contingent fee basis "militates in favor of approval."  Viropharma, 2016 WL 312108, at *17 (citing In re Schering-Plough Corp. Enhance ERISA Litig., Civ. A. No. 08-1432, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012)).

The court turns to the sixth Gunter factor, which concerns the amount of time lead counsel devoted to this action.  They have certified that they worked 8,500 hours on this litigation.  This amount of time is reasonable.  Lead counsel's time supports this award of the attorneys' fees.

Finally, under the seventh Gunter factor, the court will compare this proposed award to awards in similar cases.  First, courts in this district have awarded counsel fees that include stock.  See, e.g., McDermid v. Inovio Pharms., Inc., Civ. A. No. 20-1402 (E.D. Pa. Feb. 1, 2023) (Doc. # 166); Seidman v. Am. Mobile Sys., 965 F. Supp. 612, 623 (E.D. Pa. 1997).  As noted, lead counsel will sell all of the settlement shares prior to their receipt of the 25% of the net proceeds from the sale of shares.  They will share equally with the class members in the risks and benefits of the sale.  Therefore, inclusion of proceeds from the sale of settlement shares is appropriate.

-17-

An award of 25% of the settlement fund is typical for lead counsel in class action settlements. See, e.g., Petellier v. Endo Int'l, Civ. A. No. 17-5114, 2022 WL 888813, at *3 (E.D. Pa. Mar. 25, 2022) (Doc. # 415); McDermid v. Inovio Pharms., Inc., Civ. A. No. 20-1402, 2023 WL 227355, at *12 (E.D. Pa. Jan. 18, 2023). An attorneys' fee of 25% of the settlement here is fair and reasonable.

The award of attorneys' fees requested will be approved, with the caveat, as explained above, that all settlement shares must first be sold. Lead counsel may not receive their 25% of the net proceeds of the sale of shares until all the shares are sold.

IV

Lead plaintiffs, as is standard practice, also seek an award to lead counsel to reimburse them for litigation expenses. See McDonough v. Toys R Us, Inc., 80 F. Supp. 3d 626, 658 (E.D. Pa. 2015). As stated in Lachance v. Harrington, "there is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of his reasonable litigation expenses from that fund." 965 F. Supp. 630, 651 (E.D. Pa. 1997). Such expenses must be well documented and not only contain the total expense for a category of service, but also a breakdown of the "price per unit and the number of units consumed[.]" Id.

Lead counsel submitted expense reports that identify the total expenses by category as well as a detailed breakdown of what these categories constitute. This is sufficient documentation. Such expenses were reasonable and their payment will be approved.

V

Lead plaintiffs seek an award of $9,500 for lead plaintiff Delaware County and $3,528 for lead plaintiff Bucks County. The PSLRA provides that lead plaintiffs may receive awards in connection with their representation of the settlement class pursuant to 15 U.S.C. § 78u-4(a)(4). Such incentive payments are meant to ensure that parties with significant holdings will participate in the litigation and exercise control over their retained counsel.

Lead plaintiffs participated in meetings with counsel regarding the litigation, reviewing and commenting on pleadings, motions, and briefs, responding to discovery requests and collecting documents, preparing for and participating in depositions, and monitoring settlement negotiations. These awards are in line with payments made to lead plaintiffs in similar actions. See, e.g., Kanefsky v. Honeywell Int'l, Inc., Civ. A. No. 18-15536, 2022 WL 1320827, at *12 (D.N.J. May 3, 2022). The court will approve the payment of $9,500 to lead plaintiff Delaware County Employees Retirement System and

$3,528.00 to lead plaintiff Bucks County Employees' Retirement System.